## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DISH NETWORK L.L.C.

      Plaintiff,

v.

AMERICAN BROADCASTING
COMPANIES, INC., *et al.*,

                Defendants.

12 Civ. 4155 (LTS)(KNF)

**FOX'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS DISH NETWORK'S COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) AND 28 U.S.C. § 2201**

# <u>TABLE OF CONTENTS</u>

**Page**

I.      PRELIMINARY STATEMENT ........................................................................1

II.     STATEMENT OF FACTS ..............................................................................2

      A.      Dish Copies Fox's Primetime Programming Without Authorization To Create A Bootleg Video-On-Demand Library Called Primetime Anytime ...........2

      B.      Dish Rolls Out Auto-Hop, A New Primetime Anytime Feature That Allows Subscribers To View The Unlawfully Copied Programs Commercial-Free ...........4

      C.      Dish Also Distributes Fox Programming Over The Internet Via Sling .................5

      D.      Fox's Lawsuit Against Dish.................................................................................5

      E.      Dish's Admittedly Anticipatory Declaratory Relief Action ...................................6

III.    DISH'S ADMITTEDLY ANTICIPATORY DECLARATORY JUDGMENT ACTION MUST BE DISMISSED ...........................................................................8

      A.      Inappropriate Declaratory Relief Actions Can And Should Be Dismissed ............8

      B.      Because Dish's Declaratory Judgment Action Is An Improper Anticipatory Action, It Should Be Dismissed............................................................9

            1.      Dish Conceded This Lawsuit Was Filed In Response To A Direct Threat Of Litigation .................................................................................9

            2.      The Allegations In Dish's Complaint Are Binding Judicial Admissions That The Court May Not Disregard .....................................10

            3.      As Numerous Courts In This District Have Recognized, The Threat Of Litigation Does Not Have To Be In The Form Of A Written Cease And Desist Letter For The Complaint To Be Anticipatory .....................12

      C.      Dish's Lawsuit Serves No Useful Purpose, Since The California Action Can Provide Complete Relief To The Parties ............................................................16

IV.     CONCLUSION......................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*AmSouth Bank v. Dale*,
   386 F.3d 763 (6th Cir. 2004) ...............................................................9

*Apotex v. Sanofi-Synthelabo*,
   386 F. Supp.2d 549 (S.D.N.Y. 2005).....................................................8

*Armour v. Knowles*,
   512 F. 3d 147 (5th Cir. 2007) .............................................................11

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
   757 F.2d 523 (2d Cir. 1985) ...............................................................11

*BuddyUSA*, 21 F. App'x 52 (2d Cir. 2001) ..............................................15, 16

*Cartoon Network, LP v. CSC Holdings, Inc.*,
   536 F.3d 121 (2d Cir. 2008) ................................................................7

*Chicago Ins. Co. v. Holzer*,
   No. 00 Civ. 1062, 2000 WL 777907 (S.D.N.Y. June 16, 2000) ..........................10

*Cooperative Centrale Raiffeisen-Boerenleen Bank B.A. v. Nw Nat'l Ins. Co. of
   Milwaukee*, 778 F. Supp. 1274 (S.D.N.Y. 1991) ...................................15

*Crosman Corp. v. Heckler & Koch, Inc.*,
   No. 08-CV-6034, 2008 WL 4347528 (W.D.N.Y. Sept. 17, 2008) .....................15

*Dow Jones & Co., Inc. v. Harrods, Ltd.*,
   237 F. Supp. 2d 394 (S.D.N.Y. 2002)....................................................9

*Emp'rs Ins. of Wausau v. Fox Entm't Group, Inc.*,
   522 F.3d 271 (2d Cir. 2008)...............................................................10

*Factors Etc., Inc. v. Pro Arts, Inc.*,
   579 F.2d 215 (2d Cir. 1978) ................................................................2

*Gianni Sport Ltd. v. Metallica*,
   No 00 Civ. 0937, 2000 WL 1773511 (S.D.N.Y. Dec. 4, 2000)...........................17

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.*,
   735 F. Supp. 581 (S.D.N.Y. 1990)..............................................8, 9, 16

*Hoodho v. Holder*,
   558 F.3d 184 (2d Cir. 2009)................................................................11

*John Wiley & Sons, Inc. v. Visuals Unltd, Inc.*,
   No. 11-CV-5453, 2011 WL 5245192 (S.D.N.Y. Nov. 2, 2011) ....................12, 13

*Laxman v. Shapiro*,
   No. 06 Civ. 11408, 2006 WL 3423807 (S.D.N.Y. Nov. 29, 2006) ................10, 17

*Nat'l Union Fire Ins. Co. v. Int'l Wire Group, Inc.*,
 No. 02 Civ. 10338, 2003 WL 21277114 (S.D.N.Y. June 2, 2003)......................8, 9

*Perez v. Ledesma*,
 401 U.S. 82 (1971)......................................................................................................2

*Reliance Ins. Co. v. Six Star, Inc.*,
 155 F. Supp. 2d 49 (S.D.N.Y. 2001)....................................................................10

*Revise Clothing, Inc. v. Levi Strauss & Co.*,
 No. 10 Civ. 5843, 2010 WL 4964099 (S.D.N.Y. Dec. 6, 2010) ..............13, 14, 17

*Scarola Ellis LLP v. Skyworks Ventures, Inc.*,
 No. 09 Civ. 10003, 2010 WL 452381 (S.D.N.Y. Sept. 1, 2010) ........................15

*U.S. v. Davis*,
 332 F. 3d 1163 (9th Cir. 2003) ............................................................................11

*U.S. v. Doherty*,
 786 F.2d 491 (2d Cir. 1986)....................................................................................2

*Utica Mutual Insurance Company v. Computer Sciences Corporation*,
 No. 5:03-CV-0400, 2004 WL 180252 (N.D.N.Y. Jan. 23, 2004).........................14

*Wilton v. Seven Falls Co.*,
 515 U.S. 277 (1995)..................................................................................................8

## STATUTES

Declaratory Judgment Act, 28 U.S.C. § 2201……………………………………………17

Federal Rules of Civil Procedure 12(b)(6)...........................................................17

## TREATISE

2 McCormick on Evidence §254 (6th ed. 2009)...................................................11

29A George Blum et al, Am. Jur. 2d *Evidence* §783 (2012) ..............................11

30 B Michael H. Graham, *Fed. Practice and Procedure: Evidence* §7026
 (2d ed. 2012) ......................................................................................................11

I.   **Preliminary Statement**

Every night, Dish, through its recently launched Primetime Anytime service, copies all of the broadcast networks' primetime programming without authorization, to offer its subscribers an unlicensed on-demand library of over 100 hours of primetime network programming that they can view commercial free on their televisions or, if they purchase Dish's Sling adapter, on their computers or mobile devices via the Internet.  This is not a case about whether consumers should have the "choice" to skip commercials; it is about whether Dish is entitled to steal the networks' copyrighted programming to create a bootleg, commercial-free video-on-demand service that competes with legitimate, licensed services such as iTunes and Amazon, interferes with the secondary market for commercial-free, on-demand content, and undermines the advertiser-supported broadcast television model.

On May 23, 2012, *The Hollywood Reporter* published an on-line article in which anonymous sources revealed that the broadcast networks were going to file lawsuits against Dish for copyright infringement and breach of contract within a month.  The *very next day*, Dish raced to the courthouse in the Southern District of New York with a hastily-drafted complaint against all four networks seeking a declaratory judgment that it is not liable for copyright infringement and did not breach any contracts.  Dish's complaint – which names incorrect defendants, omits necessary parties, does not identify the contracts that were allegedly not breached, focuses only on the commercial-skipping feature and not the wholesale copying occurring through Primetime Anytime, and which consists primarily of public relations talking points about Dish products and services – beat Fox's lawsuit in the Central District of California to the filing window by just 29 minutes.  In addition to quoting *The Hollywood Reporter* article at length, Dish's complaint conceded: "DISH brings this Complaint seeking declaratory relief, because the Major Television Networks have threatened it with litigation…."  Dish Complaint ("Dish Cplt"), ECF No. 1, ¶ 1.

Accordingly, this is not the typical case where a court tasked with determining whether a lawsuit was filed in response to a threat of litigation must examine the pre-lawsuit communications between the parties. This and other binding judicial admissions in Dish's complaint conclusively establish Dish's lawsuit is an improper anticipatory action filed because of a threat of litigation.

It is axiomatic that "'[t]he federal declaratory judgment is not a prize to the winner of a race to the courthouses.'"[1] Rather, the purpose of a declaratory relief action is to "bring an issue before the court that otherwise might need to await a coercive action" so that one who is uncertain of his rights can obtain an early adjudication instead of waiting for his adversary to sue after damages have accrued.[2] Courts in this circuit have consistently recognized that this purpose is not served when a party threatened with litigation races into court and files a preemptive declaratory relief action in order to deprive the true plaintiff of its choice of forum. Courts have discretion as to whether to accept jurisdiction over claims brought under the Declaratory Judgment Act, and it is well-settled that jurisdiction should be declined under these circumstances so that the true plaintiff can prosecute the coercive action in its chosen forum. Accordingly, Fox respectfully requests that the Court decline jurisdiction over Dish's declaratory relief action, and dismiss this case in its entirety.

## II.    Statement of Facts

### A.    Dish Copies Fox's Primetime Programming Without Authorization To Create A Bootleg Video-On-Demand Library Called Primetime Anytime

Services that permit cable and satellite television subscribers to select from a library of previously-aired programs for immediate viewing on television are known as video-on-demand. Video-on-demand programs are distributed after a short window following a program's original

---

[1] *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978) (quoting *Perez v. Ledesma*, 401 U.S. 82, 119 n. 12 (1971)).
[2] *U.S. v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986).

air date and time; however, the ability to fast-forward through commercials while watching video-on-demand is often restricted.  Consumers also have the option of viewing programs on demand, with no commercials, through authorized electronic rental and/or sell through merchants such as iTunes, Amazon, Netflix, and Vudu.

Most of Fox's primetime programming is available after broadcast on demand over the Internet on its website (fox.com), and on Hulu (Hulu.com), and Fox also licenses its programming to Amazon and iTunes, among others, which provide consumers with on-demand access to the programming.  Fox also makes video-on-demand content available to cable and satellite providers including Dish.  But Dish chose not to use and comply with its license from Fox, which requires that fast-forwarding be disabled during the commercials on broadcast programming video-on-demand content.  Instead, Dish engaged in self-help to further its goals of differentiating itself in the market as a premier provider of on-demand content and competing against Hulu and Netflix – but without paying for the licenses these other services paid for.  In March 2012, Dish launched a broadcast video-on-demand service called Primetime Anytime that is available to top-tier Dish subscribers who lease the Hopper set top box from Dish.  According to Dish, Primetime Anytime "creates an on-demand library of approximately 100 hours of primetime TV shows".[3]  Dish's website touts Primetime Anytime as providing "On Demand access for 8 days to all HD programming that airs during primetime hours on ABC, CBS, FOX, and NBC without needing to schedule individual recordings."[4]

---

[3] *Hopper Whole-Home HD DVR System Now Available From Dish* (March 15, 2012), *available at* http://press.dishnetwork.com/press-releases/hopper-whole-home-hd-dvr-system-now-available-from-nasdaq-dish-0862975/
[4] Dish Network L.L.C, *Watch Commercial-Free TV* (2012), *available at* http://www.dish.com/technology/receivers-dvrs/; *see also* Dish Network L.L.C, *Watch Commercial-Free TV* (2012), *available at* http://www.dish.com/technology/hopper/ (touting the Hopper as providing "instant On-Demand access to your favorite primetime shows for 8 days.").

Dish creates Primetime Anytime's "on demand library of approximately 100 hours of primetime TV shows" by copying copyrighted content from Fox and the other broadcast networks.  Specifically, Dish records, without authorization, all programming aired by the four national broadcast networks during primetime hours every night, and saves it on a 1-terabyte section of the Hopper's partitioned 2-terabyte hard drive that is controlled by Dish.  During the eight days that copy of the recorded programming is available, the user can select individual programs to watch or to permanently save to the user-controlled section of the hard drive.

> **B.  Dish Rolls Out Auto-Hop, A New Primetime Anytime Feature That Allows Subscribers To View The Unlawfully Copied Programs Commercial-Free**

In May 2012, Dish added the Auto Hop feature to Primetime Anytime.  Auto Hop makes the programming Dish records through Primetime Anytime available for on-demand viewing without commercials.  Auto Hop is <u>not</u> fast-forwarding.  Once Auto Hop is turned on, the entire program is delivered to the viewer in a commercial free format.[5]  Dish <u>only</u> offers Auto Hop on programs it unlawfully records through Primetime Anytime; viewers <u>cannot</u> use Auto Hop to skip commercials on any other shows.[6]  The express, advertised purpose of Auto Hop is to permit subscribers using Primetime Anytime to watch their on-demand copies of network primetime programming commercial free.  Auto Hop's launch was accompanied by a media blitz in which DISH announced that it was now offering "COMMERCIAL-FREE TV."[7]

---

[5] Dish Network L.L.C, *AutoHop Quick Start Guide,* p.1, available at https://docs.google.com/viewer?a=v&q= cache:949GFCRBPr4J:press.dishnetwork.com/getattachment/6f7fb8c8-59cd-46ca-9d6d-e57f8433988c/DISH-Hopper-s-Auto-Hop?disposition%3Dattachment+&hl=en&gl=us&pid=bl&srcid=ADGEESiaPqiPSfoSSURu_6jn PWuXbVve2RGpfDGDV2MV8coLYFATTM3-D4NyS6nijvcPm7NgdSpx-0iemXLUVj_oIpXvIQOGPR1rFkwZ 4rowknTMU0Yr5qoB9CEHyBH-hVQTxb_GEU-T&sig=AHIEtbQ4EXEdnu_lE8NlZ5xhV9LxeBFypw&pli=1.
[6] *Id*., p. 2.
[7]*Watch Commercial-Free TV,* Dish.com, *available at* http://www.dish.com/redirects/promotion/offer2/?WTsrch=1& KBID=62283&WT.mc_id=GSBNAUTHOP_3194&gclid=CITpuP3GkrACFQ5rhwodOkMsp (last visited 6/5/12).

**C.     Dish Also Distributes Fox Programming Over The Internet Via Sling**

DISH also retransmits and distributes copyrighted programming over the Internet to subscribers' computers and mobile devices through its Sling Adapter without authorization and in violation of Dish's license from Fox.  The Sling Adapter is a device which, when connected to a DISH set-top box such as the Hopper, streams live television programming and DVR recordings over the Internet, where they can be remotely viewed on a computer or mobile device running DISH's Remote Access application.  DISH subscribers using the Sling Adapter can view Primetime Anytime programming without commercials using the Auto Hop feature.

**D.     Fox's Lawsuit Against Dish**

On May 24, 2012, Fox filed a complaint for copyright infringement and breach of contract against Dish in the Central District of California.  *See* Complaint, *Fox Broadcasting Company, et. al. v. Dish Network L.L.C. and Dish Network Corp.*, C.D. Cal. No. 12-04529, Ex. 4 to the Declaration of Elyse Echtman, ECF. No. 12-4, ("Fox Cplt.") ¶ 24.  The plaintiffs are Fox Broadcasting Company, which operates the FOX Network, Twentieth Century Fox Film Corporation ("Twentieth Century Fox"), which owns the copyrights on certain original primetime television programs broadcast on the FOX Network, and Fox Television Holdings, Inc., which is the parent company of the owned-and-operated local broadcast stations that carry the prime time programming licensed by the FOX Network.  Fox Broadcasting Company and Fox Television Holdings are signatories to the Retransmission Consent Agreement (and subsequent amendments) between Dish and Fox under which Fox grants Dish a license to distribute its broadcast programming to Dish subscribers.  Fox Broadcasting Company and Twentieth Century Fox are headquartered in California, have their major operations in California, and most or all of their executives are in California.

5

The Fox Complaint is not limited to Auto Hop.  To the contrary, the Fox Complaint asserts Copyright Act claims for Dish's unauthorized recording and distribution of Fox's copyrighted primetime programming through Dish's Primetime Anytime service, and its distribution of the Fox programs over the Internet via Sling.  *See generally*, Fox Cplt.  The Fox Complaint also asserts contract claims because Dish's provision of commercial-free Fox Programs on demand violates Fox's contractual protections against the distribution of commercial-free Fox programming on demand.  *Id.*, ¶¶ 46-50, 77-85.  And Dish's distribution of Fox programming over the Internet via Sling violates the provisions in Fox's contract with Dish that bar Dish from distributing Fox programming over the Internet.  *Id.*, ¶¶ 79-80.

Because Dish's ongoing infringement is causing irreparable harm to Fox, Fox filed with its complaint a motion for expedited discovery in aid of its anticipated motion for a preliminary injunction, as well as an application for an order allowing the expedited discovery motion to be heard on shortened notice.  *See* Echtman Decl., Ex. 7.  Shortly after Fox filed its complaint, NBC and CBS filed their own lawsuits against Dish in the Central District of California, which assert copyright infringement claims but not contract claims.

### E.    Dish's Admittedly Anticipatory Declaratory Relief Action

On May 23, 2012 – one day before Fox filed its complaint – *The Hollywood Reporter* published an online article revealing that the major television networks, including Fox, were planning to sue DISH.  Dish Cplt., ¶ 34.  According to the article, inside sources disclosed "that the parent companies of the four major broadcasting networks – Fox Broadcasting, NBCUniversal, ABC/Disney Television Group and CBS Corp. – have begun consulting with major law firms with the expectation that litigation will be filed against Dish."  *Id.*  (quoting article). The article further stated that "'[t]he networks are said to be examining their DISH

license agreements, looking for breaches of contract that can be alleged along with claims for copyright infringement.  One top exec said a lawsuit should be expected within a month.'" *Id*.

The next day, Dish raced to Court in the Southern District of New York and hastily filed the instant declaratory relief action against Fox, NBC, CBS, and ABC.  Dish's complaint has all the hallmarks of a rush to the courthouse.  Dish did not identify the proper defendants before filing suit, did not name the copyright holders in its complaint, and did not identify any of the contracts or provisions that it allegedly did not breach.[8]  Dish's complaint is narrowly directed at the Auto Hop feature only, and does not seek declaratory relief in connection with the unauthorized Primetime Anytime copying, or in connection with its distribution of Fox's signal over the Internet via Sling.  Dish's race was obviously motivated by its desire to secure a forum it views as favorable to distributors as opposed to content providers.[9]

There is no question that Dish filed its lawsuit in response to *The Hollywood Reporter* article and for the purpose of preempting the networks' threatened lawsuits.  Dish expressly admitted this fact in its complaint.  The first sentence of the complaint states:  "DISH brings this Complaint seeking declaratory relief, because the Major Television Networks have threatened it with litigation . . . ."  Dish Cplt., ¶ 1.  Dish's complaint then quotes *The Hollywood Reporter* article at length including, specifically, the statements from unnamed sources and an unidentified network "top exec" that the networks "have begun consulting with major law firms with the

---

[8] As set forth in the brief of NBC and CBS, these deficiencies are further grounds to dismiss the complaint, and Fox joins CBS and NBCs arguments and request for dismissal on this basis.

[9] As the media quickly recognized, Dish likely intends to argue that the Second Circuit's ruling in *Cartoon Network, LP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008) (*"Cablevision"*), a highly fact-specific and distinguishable case involving remote storage DVRs, should be interpreted to protect its infringing conduct.  *See, e.g.*, Meg James, *Dish Network Wins First Ruling Against Networks In Ad Skipping Case*, LATIMES.COM, (May 30, 2012, 8:23 PM) (reporting that Dish "selected New York, in part, because of a ruling several years ago [*Cablevision*] that could buttress Dish's position that its AutoHop feature does not violate the networks' copyrights"); Eriq Gardner, *New York Judge Halts Fox Lawsuit Over Dish Ad-Skipper*, THE HOLLYWOOD REPORTER, (May 30, 2012 4:38 PM) (reporting that "Dish chose New York likely with an eye on the fact that in 2008, the 2nd Circuit handed TV distributors a huge victory over content holders in a case involving Cablevision's plan to introduce remote-storage DVRs ….").

expectation that litigation will be filed against Dish" and that "a lawsuit should be expected within a month."  *Id.*, ¶ 34.  Dish then alleges:  "Based on these statements and actions, DISH is reasonably apprehensive that it will soon be the target of litigation."  *Id.*, ¶ 36.

### III.   DISH's Admittedly Anticipatory Declaratory Judgment Action Must Be Dismissed

#### A.   Inappropriate Declaratory Relief Actions Can And Should Be Dismissed

In actions brought under the Declaratory Judgment Act, federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants[,]"  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995), "particularly when there is a pending proceeding in another court . . . that will resolve the controversies between the parties."  *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 584 (S.D.N.Y. 1990).   In deciding whether to exercise jurisdiction under the Declaratory Judgment Act, courts in this circuit consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."  *Apotex v. Sanofi-Synthelabo*, 386 F. Supp.2d 549, 551 (S.D.N.Y. 2005) (citations omitted).   "In addition, the Court considers the purpose of the Declaratory Judgment Act, namely, to 'allow a plaintiff not certain of his rights to avoid accrual of avoidable damages and to afford him an early adjudication without waiting until his adversary should see fit to begin suit.'   *Id.* (citations omitted).   "Further, the Court takes into account whether the litigation is being used as "procedural fencing" and whether there is a better or more effective remedy."   *Id.* (citations omitted).

Additionally, it is well settled in this circuit that anticipatory lawsuits are not proper declaratory judgment actions, and courts should not hear them.  "Courts in the Second Circuit have repeatedly refused to exercise jurisdiction over declaratory actions motivated by a desire to wrest the choice of forum from the real plaintiff."  *Nat'l Union Fire Ins. Co. v. Int'l Wire Group,*

*Inc.*, No. 02 Civ. 10338, 2003 WL 21277114, at * 6 (S.D.N.Y. June 2, 2003); *see also Great Am. Ins. Co*, 735 F. Supp. at 586 ("[T]he misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action."); *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 440 (S.D.N.Y. 2002) ("A rush to file first in anticipation of litigation in another tribunal, thereby enabling a potential defendant to choose the forum and governing law by which to adjudicate the dispute, and otherwise to interfere with or frustrate the other party's pursuit of claims elsewhere, is one of the equitable considerations a court may weigh in ruling on a request for declaratory relief."); *accord AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004) ("Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.").

**B.    Because Dish's Declaratory Judgment Action Is An Improper Anticipatory Action, It Should Be Dismissed**

1.    Dish Conceded This Lawsuit Was Filed In Response To A Direct Threat Of Litigation

Dish admitted, in its complaint, that it filed its declaratory judgment action in response to a direct threat of litigation by the networks.  As noted above, the first sentence of the complaint expressly alleges:  "DISH brings this complaint seeking declaratory relief, **because the Major Television Networks have threatened it with litigation** . . . ." Dish Cplt., ¶ 1 (emphasis added). Later in the complaint, Dish explains that it believed it was about to be sued because *The Hollywood Reporter* disclosed that the networks had been "consulting with major law firms with the expectation that litigation will be filed against Dish," and were "looking for breaches of contract that can be alleged along with claims for copyright infringement."  *Id.*, ¶ 34.  According to the article as quoted by Dish in its complaint, "[one] top exec said a lawsuit should be

expected within a month."  *Id.*  Dish then concedes that "[b]ased on these statements and actions, DISH is reasonably apprehensive that it will soon be the target of litigation."  *Id.*, ¶ 36.  These admissions conclusively establish that Dish's lawsuit is an improper anticipatory action.  *See Emp'rs Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 276 (2d Cir. 2008) (anticipatory action is action "filed in response to direct threat of litigation"); *Reliance Ins. Co. v. Six Star, Inc.,* 155 F. Supp. 2d 49, 55 (S.D.N.Y. 2001) (Swain, J.) ("[a]n improper anticipatory filing is one made under the apparent threat of a presumed adversary filing the mirror image of that suit in another court." ) (citations omitted)

The fact that Dish prepared and filed its declaratory relief action the *very next day* after *The Hollywood Reporter* article was published further underscores the fact that Dish perceived itself as having been directly threatened with litigation, and filed its declaratory relief action for the purpose of preempting the networks' lawsuits.  *See Laxman v. Shapiro*, No. 06 Civ. 11408, 2006 WL 3423807, *2 (S.D.N.Y. Nov. 29, 2006) (finding "overwhelming evidence" of anticipatory conduct and dismissing case where the complaint was filed one day after receiving intent-to-sue letter, and the complaint appeared to have been prepared in haste); *Chicago Ins. Co. v. Holzer*, No. 00 Civ. 1062, 2000 WL 777907, at *3 (S.D.N.Y. June 16, 2000) (dismissing case where plaintiff filed declaratory relief action less than 24 hours after receiving notice letter, and holding that the short time interval  "demonstrate[ed] that [plaintiff] interpreted defendant's threat of legal action as a firm intention").

## 2.   The Allegations In Dish's Complaint Are Binding Judicial Admissions That The Court May Not Disregard

Because Dish admitted in its complaint that it filed its lawsuit in response to threatened litigation, this is now an established fact that Dish may not dispute.  It is hornbook law that the factual allegations in a complaint constitute judicial admissions which are binding throughout the

entire litigation on both the parties and the court.  *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.").  "Judicial admissions are not evidence at all.  Rather, they are formal concessions in the pleadings in the case . . . that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.  Thus, a judicial admission, unless allowed by the court to be withdrawn, is conclusive in the case." 2 McCormick on Evidence §254 (6th ed. 2009).

District courts do not have discretion to disregard judicial admissions.  "Admissions by parties are not subject to judicial scrutiny to ensure that the admissions are fully supported by the underlying record." *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009); *see also Armour v. Knowles*, 512 F. 3d 147, 153-54 (5th Cir. 2007) (holding that fact admitted in response to request for admissions was "a binding judicial admission that this court must deem conclusively established[.]"); *U.S. v. Davis*, 332 F. 3d 1163, 1168 (9th Cir. 2003) ("Such [judicial] admissions, which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of this fact, are binding on both the parties and the court[.]").

Similarly, Dish may not submit evidence contradicting its judicial admissions.  *See* 30B Michael H. Graham, *Federal Practice and Procedure: Evidence* §7026 (2d ed. 2012) ("A judicial admission is binding upon the party making it; it may not be controverted at trial or on appeal of the same case."); 29A George Blum et al, Am. Jur. 2d *Evidence* §783 (2012). ("A judicial admission bars the admitting party from disputing it. The party who made a judicial admission may not controvert the admission on trial or on appeal, and may not create a question of fact for purposes of a summary judgment motion by trying to contradict a previous judicial admission.").

11

> ### 3. As Numerous Courts In This District Have Recognized, The Threat Of Litigation Does Not Have To Be In The Form Of A Written Cease And Desist Letter For The Complaint To Be Anticipatory

Dish contends that its lawsuit cannot possibly be anticipatory because Fox did not send a demand letter with specific warnings as to deadlines and subsequent legal action prior to filing suit. Dish Br., p. 21. However, numerous courts within this circuit have recognized that demand letters with specific dates and deadlines are not required – especially where, as here, the plaintiff's state of mind was undisputed because it admitted the declaratory judgment action was filed in response to threatened litigation.

*John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 11-CV-5453, 2011 WL 5245192 (S.D.N.Y. Nov. 2, 2011) (McMahon, J.) is on point. In *Wiley*, the plaintiff filed an action seeking a declaration of non-infringement after the copyright holder "made Wiley aware that it retained litigation counsel and threatened to file claims against Wiley for copyright infringement and fraud, but never set any deadlines or issued specific warnings with respect to the timing of actually doing so." *Id.* at *1. On the defendant's motion to dismiss, Wiley argued that there was no evidence that it filed suit to preempt the coercive action that was filed shortly thereafter by the copyright holder, because the copyright holder never set any deadlines or issued any specific warnings with respect to the timing of litigation. *Id.* at *8. Judge McMahon rejected this argument because Wiley – like Dish here – pled in its complaint that the suit was being filed in response to threats of litigation. Specifically, the court held:

> Here, the evidence suggests that Wiley filed its complaint in an attempt to get its choice of forum by filing first. **While VUI did not issue specific warnings as to when it would file suit, Wiley was clearly operating under the direct threat of litigation**. (Compl., § 14 ("VUI has retained litigation counsel who is threatening to file claims against Wiley for copyright infringement and fraud.")).

*Id.* (emphasis added)

The court in *Wiley* identified several other facts that supported its finding that Wiley filed its complaint in order to get its choice of forum by filing first, all of which are also present here. For example, Wiley filed its complaint just two and a half weeks after its last correspondence with the copyright holder, which led the court to conclude "Wiley was trying to get the jump on VUI[.]"  *Wiley*, 2011 WL 5245192 at *8  Here, Dish raced to court just <u>one day</u> after it learned that the networks were planning to file suit, beating Fox to the filing window by just 29 minutes. By bringing its suit in New York, Wiley believed it could take advantage of favorable Second Circuit law; Dish likely believes (incorrectly) that Second Circuit law favors its position.  *Id*. Wiley's complaint "appear[ed] to the court to have been quickly assembled," "sought to bring the exact mirror image of the claims VUI threatened," and "only request[ed] judgment on Wiley's defenses."  *Id*.  Here, Dish's complaint also appears to have been quickly assembled: Dish asserts claims against the wrong parties, and apparently did not even have time to identify the copyright holders (a matter of public record), or the contracts that are the subject of its lawsuit.  And Dish's complaint plainly seeks to bring the "mirror image" of the claims that were threatened – the day after Dish learned that the networks were planning to sue for copyright infringement and breach of contract, Dish filed a declaratory relief complaint generally alleging that it was not liable for copyright infringement or breach of contract.

*Revise Clothing, Inc. v. Levi Strauss & Co*., No. 10 Civ. 5843, 2010 WL 4964099 (S.D.N.Y. Dec. 6, 2010) is another example of a case where no specific deadlines for litigation were given, but the court nonetheless found the declaratory judgment action to be anticipatory and dismissed it based on the plaintiff's admissions that it expected to be sued.  The plaintiff in *Revise Clothing* filed its declaratory relief complaint after the defendant, Levi Strauss, sent a cease and desist letter warning of potential trademark infringement claims but not threatening

litigation by a specific date.  *Id*. at *1.  In connection with a motion to enjoin Levi Strauss's later filed infringement lawsuit, plaintiff Revise argued that its complaint was not anticipatory because it believed, based on subsequent communications, that Levi Strauss was merely "posturing" and "was not on the verge of filing a lawsuit[.]"  *Id*. at *3.  However, the evidence in the record showed that (1) Revise sent Levi Strauss a letter stating its belief that Levi Strauss aggressively pursues trademark litigation; (2) Revise alleged in its complaint that Levi Strauss pursues trademark infringement actions aggressively and that "Levi Strauss has a long record of such actions in the federal courts and upon information and belief has filed three such actions within the last two months alone"; and (3) Revise admitted in its briefing that it "reasonably feared legal proceedings" by Levi Strauss.  *Id*.  Based on these admissions, the court held that "Revise's July 30 letter, its Complaint, and its filings in connection with the instant motions flatly contradict its assertions now that Levi Strauss had no actual intention of filing suit."  *Id*. Because Revise's complaint was anticipatory, the court denied Revise's motion for an order staying Levi Strauss's later filed trademark infringement action and dismissed Revise's complaint.  *Id*. at *3-5.

Similarly, in *Utica Mutual Insurance Company v. Computer Sciences Corporation*, No. 5:03-CV-0400, 2004 WL 180252 (N.D.N.Y. Jan. 23, 2004), the plaintiff argued that its declaratory relief action was not anticipatory because the defendant's demand letter indicated only the "possibility of litigation" and not a direct threat.  *Id*. at *4.  The court found the filing to be anticipatory because the demand letter was "a clear indication that [defendant] had a firm intention to commence an action against [plaintiff] if it did not pay."  *Id*. at *3.  The court also explained that the plaintiff's response to the letter – "rac[ing] to the courthouse first, in

anticipation of [defendant's] threatened lawsuit" – also indicated that the plaintiff's lawsuit was anticipatory.  *Id*. at *3, *4.

Additional examples of complaints held to be anticipatory in the absence of a demand letter threatening litigation by a specific deadline are plentiful.  *See, e.g., Cooperative Centrale Raiffeisen-Boerenleen Bank B.A. v. Nw Nat'l Ins. Co. of Milwaukee,* 778 F. Supp. 1274, 1278-79 (S.D.N.Y. 1991) (where surety company sued bank the day after receiving notice of default that did not threaten litigation, court found complaint anticipatory because the default notice gave the bank notice of the substance of the dispute, and the timing of the complaint "support[ed] the inference that [the bank] filed its declaratory judgment action knowing it did not intend to pay the sums demanded in [the surety's] January 20 letter and anticipating that [the surety] would sue to collect."); *Scarola Ellis LLP v. Skyworks Ventures, Inc*., No. 09 Civ. 10003, 2010 WL 452381, at *4 (S.D.N.Y. Sept. 1, 2010) (finding complaint anticipatory where plaintiff admitted that after defendant threatened to sue, it filed a lawsuit "so as to be sure no preemptive action was filed against it in a different jurisdiction."); *Crosman Corp. v. Heckler & Koch, Inc*., No. 08-CV-6034, 2008 WL 4347528, at *5 (W.D.N.Y. Sept. 17, 2008) (plaintiff filed declaratory relief action after the defendant "provided it with a sample infringement complaint, and after Defendant issued thinly-veiled threats to commence litigation if Plaintiff did not comply with Defendant's settlement demands"; lawsuit was anticipatory because "Plaintiff obviously understood Defendant's threats of litigation as such, since it claims that it commenced this action 'to vindicate its rights in the face of [Defendant's] threats of injunctive relief, damages, and impoundment[;]" and plaintiff admitted that its lawsuit "'was filed in the face of [Defendant's] repeated threats of legal action.'").

Dish relies on *BuddyUSA*, 21 F. App'x 52 (2d Cir. 2001) to support its argument that a complaint cannot be anticipatory unless it is filed in response to a cease and desist letter containing specific warnings as to deadlines and subsequent legal action.  Dish Br., pp. 21-22. However, in *BuddyUSA* the Second Circuit <u>rejected</u> the notion that there are any bright line tests for determining whether a complaint is filed in response to a threat of litigation.  *Id.* at 55 ("In the case before us, the record is ambiguous as to whether the instant action was improperly anticipatory … **The District Court applied the correct rule of law, properly considering the totality of the events rather than employing any bright line rule**.") (emphasis added).  As the numerous cases cited above establish, courts have not read the Second Circuit case law as requiring a cease and desist letter with specific dates.  This is particularly true when judicial admissions in the complaint establish the action was brought in reaction to a threat of litigation.

### C.   Dish's Lawsuit Serves No Useful Purpose, Since The California Action Can Provide Complete Relief To The Parties

Dish's lawsuit should also be dismissed since it serves no useful purpose, as the coercive actions pending in the Central District of California will resolve the issues Dish seeks to litigate in its declaratory judgment action.   Because the purpose of the Declaratory Judgment Act is to provide a vehicle for a party to a ripe legal controversy to seek resolution before the opposing party chooses to exercise his right to sue, courts routinely dismiss declaratory relief actions which are filed shortly before a coercive action by the natural plaintiff.  The rationale is that the declaratory judgment action serves no purpose, since the coercive action will resolve the issues sought to be litigated in the declaratory judgment action.  *See, e.g.*, *Great Am. Ins. Co.*, 735 F. Supp at 586 ("[T]he court finds that it is not appropriate for the Court to entertain the instant declaratory judgment action.  There is a pending coercive action . . . that will provide plaintiff in the instant action with every opportunity to protect the rights that it sought to have adjudicated in

the instant action."); *Revise Clothing, Inc.*, 2010 WL 4964099 at *5 ("[O]ne of the Declaratory

Judgment Act's chief purposes is to help the party . . . 'avoid accrual of avoidable damages . . .

and to afford him an early adjudication without waiting until his adversary should see fit to begin

suit, after damage has accrued'. . . . **This action serves no such purpose, since the Defendant's**

**infringement action followed closely on the heels of the instant action**.") (internal citation

omitted; emphasis added); *Gianni Sport Ltd. v. Metallica*, No 00 Civ. 0937, 2000 WL 1773511,

at *5 (S.D.N.Y. Dec. 4, 2000) (where plaintiff filed declaratory relief action to preempt coercive

suit, court dismissed action and held that "this suit is not necessary to clarify and settle the legal

relations or afford relief from uncertainty, insecurity and controversy. **The pending coercive**

**action in California will provide Gianni the opportunity to resolve the issues raised in the**

**instant action**.") (emphasis added); *Laxman*, 2006 WL 3423807 at *2 (where plaintiff filed

declaratory relief action the day after receiving defendant's intent to sue letter and four days

before copyright infringement action was filed, court found plaintiff's contention that it was

merely seeking "resolution to a situation in which repeated frivolous cries of copyright

infringement were damaging [p]laintiff's business" to be "not credible"; court dismissed action

explaining that "It is undisputed that the E.D.N.Y. [copyright infringement] action will resolve

those issues."). Thus, the existence of a pending coercive action which encompasses the issues

presented by Dish's declaratory relief action provides an additional basis for this Court to

dismiss Dish's complaint.

IV. <u>Conclusion</u>

For the foregoing reasons, Fox respectfully requests that the Court grant the instant

motion to dismiss and dismiss Dish's Complaint in its entirety pursuant to the Declaratory

Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 12(b)(6).

DATED:  June 8, 2012                    _____/s/ Susan J. Kohlmann_____
                                        Susan J. Kohlmann
                                        Michael W. Ross
                                        JENNER & BLOCK LLP
                                        919 Third Avenue, 37th Floor
                                        New York, NY  10022
                                        Telephone: (212) 891-1690
                                        Facsimile:  (212) 909-0821

                                        Richard L. Stone (*pro hac* motion forthcoming)
                                        David R. Singer (*pro hac* motion forthcoming)
                                        Amy M. Gallegos (*pro hac* motion forthcoming)
                                        Andrew J. Thomas (*pro hac* motion forthcoming)
                                        JENNER & BLOCK LLP
                                        633 West 5th Street, Suite 3600
                                        Los Angeles, CA 90071-2054
                                        Telephone:  (213) 239-5100
                                        Facsimile:  (212) 239-5199

                                        *Counsel for Defendants Fox Entertainment Group,*
                                        *Inc., Fox Television Holdings, Inc., and Fox Cable*
                                        *Network Services, L.L.C.*