**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DISH NETWORK L.L.C.<br><br>     Plaintiff,<br><br>v.<br><br>AMERICAN BROADCASTING<br>COMPANIES, INC., *et al.*,<br><br>          Defendants. | 12 Civ. 4155 (LTS)(KNF) |

<u>**FOX'S MEMORANDUM OF LAW IN OPPOSITION TO DISH'S MOTION FOR AN
ANTI-SUIT INJUNCTION**</u>

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ..................................................................................1

II.  STATEMENT OF FACTS ......................................................................................3

    A.   Dish Copies Fox's Primetime Programming Without Authorization To
    Create A Bootleg Video-On-Demand Library Called Primetime Anytime ...........3

    B.   Dish Rolls Out Auto-Hop, A New Primetime Anytime Feature That Allows
    Subscribers To View The Unlawfully Copied Programs Commercial-Free ..........4

    C.   Dish Also Distributes Fox Programming Over The Internet Via Sling.................5

    D.   Fox's Lawsuit Against Dish........................................................................5

    E.   Dish's Admittedly Anticipatory Declaratory Relief Action ...................................7

III. DISH'S ADMITTEDLY ANTICIPATORY LAWSUIT MUST BE DISMISSED...........8

    A.   The "First Filed" Rule Does Not Apply When The First Action
    Was Filed In Response To A Direct Threat Of Litigation......................................8

    B.   Dish Admitted In Its Complaint That It Filed This Lawsuit In
    Response To A Direct Threat Of Litigation .........................................................10

    C.   The Allegations In Dish's Complaint Are Binding Judicial Admissions
    That The Court May Not Disregard ....................................................................11

    D.   As Numerous Courts In This District Have Recognized, The Threat
    Of Litigation Does Not Have To Be In The Form Of A Written Cease
    And Desist Letter For The Complaint To Be Anticipatory ...................................12

    E.   Dish's Admission Of Anticipatory Conduct Goes Far Beyond What Is
    Required To Establish Standing Under The Declaratory Judgment Act ...............16

IV.  THERE IS NO PRESUMPTION WHERE THE CASES WERE FILED ONLY
    MINUTES APART...................................................................................................18

V.   THE SECTION 1404(A) FACTORS FAVOR THE CENTRAL DISTRICT OF
    CALIFORNIA ........................................................................................................20

    A.   The Fox Parties, Witnesses, And Documents Are In Los Angeles, And
    The Retransmission Consent Agreement Between Fox And Dish Was
    Negotiated In Los Angeles...................................................................................21

    B.   Dish Is Located in Colorado, Not New York ........................................................ 23

    C.   The Use Of New York Law Does Not Require A New York Forum...................23

    D.   The Forum Selection Clauses In Dish's Contracts With ABC And CBS
    Do Not Mean That Other Defendants Must Litigate In New York ......................23

VI.     CONCLUSION................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*AmSouth Bank v. Dale*,
  386 F.3d 763 (6th Cir. 2004) ..................................................9

*APA Excelsior III L.P. v. Premier Tech., Inc.*,
  49 F. Supp. 2d 664 (S.D.N.Y 1999)..........................................25

*Armour v. Knowles*,
  512 F. 3d 147 (5th Cir. 2007) ..................................................11

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
  757 F.2d 523 (2d Cir. 1985)......................................................11

*BuddyUSA, Inc. v. Recording Indus. Ass'n of Am.*,
  21 Fed. App'x. 52 (2d Cir. 2001)..........................................9, 16

*Capital Venture Int'l v. Network Commerce, Inc.*,
  No.01 Civ. 4390, 2002 WL 417246 (S.D.N.Y. March 15, 2002)..........................................25

*Cartoon Network, LP v. CSC Holdings, Inc.*,
  536 F.3d 121 (2d Cir. 2008)......................................................8

*Chicago Ins. Co. v. Holzer*,
  No. 00 Civ. 1062, 2000 WL 777907 (S.D.N.Y. June 16, 2000)..............................11

*Citibank, N.A. v. Affinity Processing Corp.*,
  248 F. Supp. 2d 172 (E.D.N.Y. 2003) ..................................................19

*Cooperative Centrale Raiffeisen-Boerenleen Bank B.A. v. Nw Nat'l Ins. Co. of Milwaukee*,
  778 F. Supp. 1274 (S.D.N.Y. 1991) ..................................................15

*Crosman Corp. v. Heckler & Koch, Inc.*,
  No. 08-CV-6034, 2008 WL 4347528 (W.D.N.Y. Sept. 17, 2008)..........................................15

*Daimler-Chrysler Corp. v. Gen. Motors Corp.*,
  133 F. Supp.2d 1041 (S.D.N.Y. 2001)..................................................20

*Don King Prod., Inc. v. Douglas*,
  735 F. Supp. 522 (S.D.N.Y. 1990)..........................................9, 19

*Dow Jones & Co., Inc. v. Harrods, Ltd.*,
  237 F.Supp.2d 394 (S.D.N.Y. 2002)..................................................9

iii

*Empl'rs Ins. of Wausau v. Fox Entm't Group, Inc*.,
    522 F.3d 271 (2d Cir. 2008)...................................................................................9

*Everest Capital Ltd. v. Everest Funds Mgmt, L.L.C.*,
    178 F. Supp. 2d 459 (S.D.N.Y. 2002)...................................................................17

*Factors Etc. Inc. v. Pro Arts, Inc.*,
    579 F.2d 215 (2d Cir. 1978)............................................................................2, 8, 9

*Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc*.,
    806 F.2d 848 (8th Cir. 1987) .................................................................................25

*Frederick Goldman, Inc. v. West*,
    No. 06 Civ 3413, 2007 WL 1989291 (S.D.N.Y. July 6, 2007) .............................17

*Gianni Sport Ltd. v. Metallica*,
    No 00 Civ. 0937, 2000 WL 1773511(S.D.N.Y. Dec. 4, 2000) .............................18

*Great Am. Ins. Co*., *v. Houston Gen. Ins.Co.,*
    735 F. Supp at 581 ................................................................................................18

*Hoodho v. Holder*,
    558 F.3d 184 (2d Cir. 2009)...................................................................................11

*Horn & Hardart Co. v. Burger King Corp*.,
    476 F. Supp. 1058 (D.C.N.Y. 1979) ......................................................................20

*Hummingbird USA, Inc. v. Texas Guar. Student Loan Corp*,
    2007 WL 163111 (S.D.N.Y. Jan. 22, 2007) ..........................................................23

*Intuitive Surgical, Inc. v. California Inst. of Tech*.,
    No. 07 Civ 0063, 2007 WL 1150787 (N.D. Cal. Apr. 18, 2007) ..........................20

*James v. UMG Recordings*,
    Nos. C 11-1613, C 11-2431, 2011 WL 5192476 (N.D. Cal. Nov. 1, 2011) ..........25

*JewelAmerica v. Frontstep Solutions Group*,
    No. 02 CIV 1328, 2002 WL 1349754 (S.D.N.Y. June 20, 2002).........................19

*John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*,
    No. 11-CV-5453, 2011 WL 5245192 (S.D.N.Y. Nov. 2, 2011) .................... 14-15

*Lauro Lines s.r.l. v. Chasser*,
    109 S.Ct. 1976 (1989)............................................................................................25

*Laxman v. Shapiro*,
    No. 06 Civ. 11408, 2006 WL 3423807 (S.D.N.Y. Nov. 29, 2006) ........................10

iv

*Martignago v. Merrill Lynch & Co., Inc.*,
    2012 WL 112246 (S.D.N.Y., Jan. 12, 2012) ........................................................23

*Medimmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)........................................................................................16

*Ontel Products, Inc. v. Project Strategies Corp.*,
    899 F. Supp. 1144 (S.D.N.Y. 1995)........................................................................19

*Perez v. Ledesma*,
    401 U.S. 82 (1971)........................................................................................2, 9

*Phillips v. Audio Active Ltd*,
    494 F.3d 378 (2d Cir. 2007) ........................................................................24

*Pirone v. MacMillan, Inc.*
    894 F.2d 579 (1990)........................................................................................8

*Reliance Ins. Co. v. Six Star, Inc.*,
    155 F. Supp. 2d 49 (S.D.N.Y. 2001)........................................................2, 9, 10, 20

*Revise Clothing, Inc. v. Levi Strauss & Co.*,
    No. 10 Civ. 5843, 2010 WL 4964099 (S.D.N.Y. Dec. 6, 2010) ................................ 12-13, 18

*Savin v. CSX Corp.*,
    657 F. Supp. 1210 (S.D.N.Y. 1987)........................................................................25

*Scarola Ellis LLP v. Skyworks Ventures, Inc.*,
    No. 09 Civ. 10003, 2010 WL 452381 (S.D.N.Y. Sept. 1, 2010) ............................................15

*Snider v. Lone Star Art Trading Co.*,
    672 F. Supp. 977 (E.D. Mich. 1987) ........................................................................25

*Stroock & Stroock & Lavan v. Valley Sys., Inc.*,
    No 95 Civ. 6513, 1996 WL 11249 (S.D.N.Y. Jan. 11, 1996)................................................20

*Symbol Technologies, Inc. v. Data General Corporation*,
    No. 96 Civ. 2240, 1996 WL 339996 (S.D.N.Y. June 20, 1996) ........................................19

*U.S. v. Davis*,
    332 F. 3d 1163, 1168 (9th Cir. 2003) ........................................................................12

*U.S. v. Doherty*,
    786 F.2d 491 (2d Cir. 1986) ........................................................................17

*Utica Mutual Ins. Co. v. Computer Sci. Corp.*,
    No. 5:03-CV-0400, 2004 WL 180252 (N.D.N.Y. Jan. 23, 2004)....................................13, 20

**STATUTE**

28 U.S.C. § 1404(a) ..................................................................................................20


**TREATISES**

2 McCormick on Evidence §254 (6th ed. 2009)..........................................................11

29A George Blum et al, Am Jur. 2d Evidence §783 (2012)........................................12

30 B Michael H. Graham, *Fed. Practice and Procedure: Evidence* §7026 (2d ed. 2012)............12

I.  **Preliminary Statement**

Every night, Dish, through its recently launched Primetime Anytime service, copies all of the broadcast networks' primetime programming without authorization, to offer its subscribers an unlicensed on-demand library of over 100 hours of primetime network programming that they can view commercial free on their televisions or, if they purchase Dish's Sling adapter, on their computers or mobile devices via the Internet.  This is not a case about whether consumers should have the "choice" to skip commercials; it is about whether Dish is entitled to steal the networks' copyrighted programming to create a bootleg, commercial-free video-on-demand service that competes with legitimate, licensed services such as iTunes and Amazon, interferes with the secondary market for commercial-free, on-demand content, and undermines the advertiser-supported broadcast television model.

On May 23, 2012, *The Hollywood Reporter* published an on-line article in which anonymous sources revealed that the broadcast networks were going to file lawsuits against Dish for copyright infringement and breach of contract within a month.  The *very next day*, Dish raced to the courthouse in the Southern District of New York with a hastily-drafted complaint against all four networks seeking a declaratory judgment that it is not liable for copyright infringement and did not breach any contracts.  Dish's complaint – which names incorrect defendants, omits necessary parties, does not identify the contracts that were allegedly not breached, focuses only on the commercial-skipping feature and not the wholesale copying occurring through Primetime Anytime, and which consists primarily of public relations talking points about Dish products and services – beat Fox's lawsuit in the Central District of California to the filing window by just 29 minutes.  In addition to quoting *The Hollywood Reporter* article at length, Dish's complaint conceded: "DISH brings this Complaint seeking declaratory relief, because the Major Television Networks have threatened it with litigation…."  Dish Complaint ("Dish Cplt"), ECF No. 1, ¶ 1.

1

Accordingly, this is not the typical case where a court tasked with determining whether a lawsuit was filed in response to a threat of litigation must examine the pre-lawsuit communications between the parties.  This and other binding judicial admissions in Dish's complaint conclusively establish Dish's lawsuit is an improper anticipatory action filed because of a threat of litigation.

Dish's motion for an order barring Fox from prosecuting its action in California must be denied.  It is axiomatic that "'[t]he federal declaratory judgment is not a prize to the winner of a race to the courthouses.'"[1]   To prevent litigants from filing defensive declaratory relief complaints to secure their choice of forum when they know they are about to be sued, the Second Circuit has held that a plaintiff who files an anticipatory action – i.e., a lawsuit filed "in response to a direct threat of litigation"[2] – cannot take advantage of the "first filed" rule.  If the earlier-filed action is anticipatory, it should be dismissed and the second action should proceed.

Even if Dish had not filed an improper anticipatory action, the correct result would still be to permit Fox's lawsuit to proceed in Los Angeles.  Numerous courts in this circuit have recognized that the first filed rule does not apply if the difference in the filing date is *de minimis* – which 29 minutes clearly is.  Additionally, the first filed suit is not entitled to priority where the balance of conveniences favors the second-filed suit.  Here, all of the Fox parties, witnesses and documents are located in California and the relevant agreements between Fox and Dish were negotiated in California.  Dish itself is headquartered in, and has all its major operations in, Colorado – which is closer to Los Angeles than to New York.

Dish contends that because its contracts with ABC and CBS contain forum selection clauses requiring litigation in New York, all of the networks' claims must be litigated there to avoid duplicative litigation – but this argument is flawed.  First, CBS has not asserted a contract

---

[1] *Factors Etc. Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 219 (2d Cir. 1978) (quoting *Perez v. Ledesma*, 401 U.S. 82, 119 n. 12 (1971)).
[2] *Reliance Ins. Co. v. Six Star, Inc.,* 155 F. Supp. 2d 49, 55 (S.D.N.Y. 2001) (Swain, J.)

claim against Dish and under Second Circuit law, CBS's copyright claim is not covered by the forum selection clause.  ABC has not sued Dish on any theory.  Dish is not entitled to wrest the choice of forum from the copyright holders whose rights it has infringed by filing a declaratory relief action seeking to preemptively defend contract claims that nobody is asserting.  Moreover, just because parties to one dispute have contractually agreed to litigate in a specific forum does not mean that parties with similar disputes must also litigate in that forum to avoid duplication. To the contrary, when a forum selection clause creates a risk of duplicative litigation, courts typically resolve the problem by not enforcing the clause.  Thus, the forum selection clauses are no impediment to allowing the actions to proceed in the Central District of California.

## II.  Statement of Facts

### A.   Dish Copies Fox's Primetime Programming Without Authorization To Create A Bootleg Video-On-Demand Library Called Primetime Anytime

Services that permit cable and satellite television subscribers to select from a library of previously-aired programs for immediate viewing on television are known as video-on-demand. Video-on-demand programs are distributed after a short window following a program's original air date and time; however, the ability to fast-forward through commercials while watching video-on-demand is often restricted.  Consumers also have the option of viewing programs on demand, with no commercials, through authorized electronic rental and/or sell through merchants such as iTunes, Amazon, Netflix, and Vudu.

Most of Fox's primetime programming is available after broadcast on demand over the Internet on its website (fox.com), and on Hulu (Hulu.com), and Fox also licenses its programming to Amazon and iTunes, among others, which provide consumers with on-demand access to the programming.  Fox also makes video-on-demand content available to cable and satellite providers including Dish.  But Dish chose not to use and comply with its license from

Fox, which requires that fast-forwarding be disabled during the commercials on broadcast programming video-on-demand content. Instead, Dish engaged in self-help to further its goals of differentiating itself in the market as a premier provider of on-demand content and competing against Hulu and Netflix – but without paying for the licenses these other services paid for. In March 2012, Dish launched a broadcast video-on-demand service called Primetime Anytime that is available to top-tier Dish subscribers who lease the Hopper set top box from Dish. According to Dish, Primetime Anytime "creates an on-demand library of approximately 100 hours of primetime TV shows".[3] Dish's website touts Primetime Anytime as providing "On Demand access for 8 days to all HD programming that airs during primetime hours on ABC, CBS, FOX, and NBC without needing to schedule individual recordings."[4]

Dish creates Primetime Anytime's "on demand library of approximately 100 hours of primetime TV shows" by copying copyrighted content from Fox and the other broadcast networks. Specifically, Dish records, without authorization, all programming aired by the four national broadcast networks during primetime hours every night, and saves it on a 1-terabyte section of the Hopper's partitioned 2-terabyte hard drive that is controlled by Dish. During the eight days that copy of the recorded programming is available, the user can select individual programs to watch or to permanently save to the user-controlled section of the hard drive.

### B. Dish Rolls Out Auto-Hop, A New Primetime Anytime Feature That Allows Subscribers To View The Unlawfully Copied Programs Commercial-Free

In May 2012, Dish added the Auto Hop feature to Primetime Anytime. Auto Hop makes the programming Dish records through Primetime Anytime available for on-demand viewing

---

[3] *Hopper Whole-Home HD DVR System Now Available From Dish* (March 15, 2012), *available at* http://press.dishnetwork.com/press-releases/hopper-whole-home-hd-dvr-system-now-available-from-nasdaq-dish-0862975/

[4] Dish Network L.L.C, *Watch Commercial-Free TV* (2012), *available at* http://www.dish.com/technology/receivers-dvrs/; *see also* Dish Network L.L.C, *Watch Commercial-Free TV* (2012), *available at* http://www.dish.com/technology/hopper/ (touting the Hopper as providing "instant On-Demand access to your favorite primetime shows for 8 days.").

without commercials.  Auto Hop is <u>not</u> fast-forwarding.  Once Auto Hop is turned on, the entire program is delivered to the viewer in a commercial free format.[5]  Dish <u>only</u> offers Auto Hop on programs it unlawfully records through Primetime Anytime; viewers <u>cannot</u> use Auto Hop to skip commercials on any other shows.[6]  The express, advertised purpose of Auto Hop is to permit subscribers using Primetime Anytime to watch their on-demand copies of network primetime programming commercial free.  Auto Hop's launch was accompanied by a media blitz in which DISH announced that it was now offering "COMMERCIAL-FREE TV."[7]

## C.    Dish Also Distributes Fox Programming Over The Internet Via Sling

DISH also retransmits and distributes copyrighted programming over the Internet to subscribers' computers and mobile devices through its Sling Adapter without authorization and in violation of Dish's license from Fox.  The Sling Adapter is a device which, when connected to a DISH set-top box such as the Hopper, streams live television programming and DVR recordings over the Internet, where they can be remotely viewed on a computer or mobile device running DISH's Remote Access application.  DISH subscribers using the Sling Adapter can view Primetime Anytime programming without commercials using the Auto Hop feature.

## D.    Fox's Lawsuit Against Dish

On May 24, 2012, Fox filed a complaint for copyright infringement and breach of contract against Dish in the Central District of California.  *See* Complaint, *Fox Broadcasting Company, et. al. v. Dish Network L.L.C. and Dish Network Corp.*, C.D. Cal. No. 12-04529, Ex. 4 to the Declaration of Elyse Echtman, ECF. No. 12-4, ("Fox Cplt.") ¶ 24.  The plaintiffs are Fox

---

[5] Dish Network L.L.C, *AutoHop Quick Start Guide,* p.1, available at https://docs.google.com/viewer?a=v&q= cache:949GFCRBPr4J:press.dishnetwork.com/getattachment/6f7fb8c8-59cd-46ca-9d6d-e57f8433988c/DISH-Hopper-s-Auto-Hop?disposition%3Dattachment+&hl=en&gl=us&pid=bl&srcid=ADGEESiaPqiPSfoSSURu_6jn PWuXbVve2RGpfDGDV2MV8coLYFATTM3-D4NyS6nijvcPm7NgdSpx-0iemXLUVj_oIpXvIQOGPR1rFkwZ 4rowknTMU0Yr5qoB9CEHyBH-hVQTxb_GEU-T&sig=AHIEtbQ4EXEdnu_lE8NlZ5xhV9LxeBFypw&pli=1.
[6] *Id*., p. 2.
[7]*Watch Commercial-Free TV,* Dish.com, *available at* http://www.dish.com/redirects/promotion/offer2/?WTsrch=1& KBID=62283&WT.mc_id=GSBNAUTHOP_3194&gclid=CITpuP3GkrACFQ5rhwodOkMsp (last visited 6/5/12).

Broadcasting Company, which operates the FOX Network, Twentieth Century Fox Film Corporation ("Twentieth Century Fox"), which owns the copyrights on certain original primetime television programs broadcast on the FOX Network, and Fox Television Holdings, Inc., which is the parent company of the owned-and-operated local broadcast stations that carry the prime time programming licensed by the FOX Network.  Fox Broadcasting Company and Fox Television Holdings are signatories to the Retransmission Consent Agreement (and subsequent amendments) between Dish and Fox under which Fox grants Dish a license to distribute its broadcast programming to Dish subscribers.  Fox Broadcasting Company and Twentieth Century Fox are headquartered in California, have their major operations in California, and most or all of their executives are in California.  *See* Declaration of Michael Biard ("Biard Decl."), ¶ 11.

The Fox Complaint is not limited to Auto Hop.  To the contrary, the Fox Complaint asserts Copyright Act claims for Dish's unauthorized recording and distribution of Fox's copyrighted primetime programming through Dish's Primetime Anytime service, and its distribution of the Fox programs over the Internet via Sling.  *See generally*, Fox Cplt.  The Fox Complaint also asserts contract claims because Dish's provision of commercial-free Fox Programs on demand violates Fox's contractual protections against the distribution of commercial-free Fox programming on demand.  *Id*., ¶¶ 46-50, 77-85.  And Dish's distribution of Fox programming over the Internet via Sling violates the provisions in Fox's contract with Dish that bar Dish from distributing Fox programming over the Internet.  *Id*., ¶¶ 79-80.

Because Dish's ongoing infringement is causing irreparable harm to Fox, Fox filed with its complaint a motion for expedited discovery in aid of its anticipated motion for a preliminary injunction, as well as an application for an order allowing the expedited discovery motion to be

heard on shortened notice.  *See* Echtman Decl., Ex. 7.[8]  Shortly after Fox filed its complaint,

NBC and CBS filed their own lawsuits against Dish in the Central District of California, which

assert copyright infringement claims but not contract claims.

### E.    Dish's Admittedly Anticipatory Declaratory Relief Action

On May 23, 2012 – one day before Fox filed its complaint – *The Hollywood Reporter*

published an online article revealing that the major television networks, including Fox, were

planning to sue DISH.  Dish Cplt., ¶ 34.  According to the article, inside sources disclosed "that

the parent companies of the four major broadcasting networks – Fox Broadcasting,

NBCUniversal, ABC/Disney Television Group and CBS Corp. – have begun consulting with

major law firms with the expectation that litigation will be filed against Dish."  *Id.*  (quoting

article). The article further stated that "'[t]he networks are said to be examining their DISH

license agreements, looking for breaches of contract that can be alleged along with claims for

copyright infringement.  One top exec said a lawsuit should be expected within a month.'" *Id.*

The next day, Dish raced to Court in the Southern District of New York and hastily filed

the instant declaratory relief action against Fox, NBC, CBS, and ABC.  Dish's complaint has all

the hallmarks of a rush to the courthouse.  Dish did not identify the proper defendants before

filing suit, did not name the copyright holders in its complaint, and did not identify any of the

contracts or provisions that it allegedly did not breach.[9]  Dish's complaint is narrowly directed at

the Auto Hop feature only, and does not seek declaratory relief in connection with the

---

[8] Because the expedited discovery motion was filed with the complaint, just 29 minutes after Dish's anticipatory filing, it was obviously not prepared and submitted for the purpose of preempting the action in this court, as Dish insinuates.  Moreover, in its motion, Dish accuses Fox of flouting the court's meet and confer rules because Fox did not accede to Dish's demands for a meet-and-confer over Memorial Day weekend.  This is a complete fabrication, as addressed in Fox's preliminary opposition to Dish's Order to Show Cause (ECF No. 13), and as further detailed in the correspondence from Fox's counsel attached as Exhibit 15 to the Declaration of Elyse Echtman (ECF No. 12, Ex. 15).

[9] As set forth in the brief of NBC and CBS, these deficiencies are further grounds to dismiss the complaint, and Fox joins CBS and NBC's arguments and request for dismissal on this basis.

unauthorized Primetime Anytime copying, or in connection with its distribution of Fox's signal over the Internet via Sling. Dish's race was obviously motivated by its desire to secure a forum it views as favorable to distributors as opposed to content providers.[10]

There is no question that Dish filed its lawsuit in response to *The Hollywood Reporter* article and for the purpose of preempting the networks' threatened lawsuits. <u>Dish expressly admitted this fact in its complaint</u>. The first sentence of the complaint states: "DISH brings this Complaint seeking declaratory relief, because the Major Television Networks have threatened it with litigation . . . ." Dish Cplt., ¶ 1. Dish's complaint then quotes *The Hollywood Reporter* article at length including, specifically, the statements from unnamed sources and an unidentified network "top exec" that the networks "have begun consulting with major law firms with the expectation that litigation will be filed against Dish" and that "a lawsuit should be expected within a month." *Id.*, ¶ 34. Dish then alleges: "Based on these statements and actions, DISH is reasonably apprehensive that it will soon be the target of litigation." *Id.*, ¶ 36.

## III.   <u>Dish's Admittedly Anticipatory Lawsuit Must Be Dismissed</u>

### A.   The "First Filed" Rule Does Not Apply When The First Action Was Filed In Response To A Direct Threat Of Litigation

The rule giving priority to the first-filed action does not apply when the first-filed action is an improper anticipatory lawsuit. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978), *abrog'd on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (1990); *see*

---

[10] As the media quickly recognized, Dish likely intends to argue that the Second Circuit's ruling in *Cartoon Network, LP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008) ("*Cablevision*"), a highly fact-specific and distinguishable case involving remote storage DVRs, should be interpreted to protect its infringing conduct. *See, e.g.*, Meg James, *Dish Network Wins First Ruling Against Networks In Ad Skipping Case*, **LATIMES.COM**, (May 30, 2012, 8:23 PM) (reporting that Dish "selected New York, in part, because of a ruling several years ago [*Cablevision*] that could buttress Dish's position that its AutoHop feature does not violate the networks' copyrights"); Eriq Gardner, *New York Judge Halts Fox Lawsuit Over Dish Ad-Skipper*, **THE HOLLYWOOD REPORTER**, (May 30, 2012 4:38 PM) (reporting that "Dish chose New York likely with an eye on the fact that in 2008, the 2nd Circuit handed TV distributors a huge victory over content holders in a case involving Cablevision's plan to introduce remote-storage DVRs ….").

*also Don King Prod., Inc. v. Douglas*, 735 F. Supp. 522, 532 (S.D.N.Y. 1990) ("Considerations that have been found to render the [first to file] rule inapplicable include those situations in which priority of filing was gained by winning a 'race to the courthouse,' as is frequently the case when the first-filed suit is a declaratory judgment action filed in anticipation of the later-filed action.").

The cases relied upon by Dish make clear that an improper anticipatory action is one that was "filed in response to a specific, direct threat of litigation." *Empl'rs Ins. of Wausau v. Fox Entm't Group, Inc*., 522 F.3d 271, 276 (2d Cir. 2008); *see also BuddyUSA, Inc. v. Recording Indus. Ass'n of Am.*, 21 Fed. App'x. 52, *55 (2d Cir. 2001) (departure from first filed rule warranted where "the first, declaratory action is filed in response to a direct threat of litigation"). This Court has likewise recognized that "[a]n improper anticipatory filing is 'one made under the apparent threat of a presumed adversary filing the mirror image of that suit' in another court." *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 55 (S.D.N.Y. 2001) (Swain, J.) (citations omitted); *see also id.* (holding declaratory relief action was not anticipatory because "[t]here is no suggestion … that Plaintiff filed suit in response to a direct threat of litigation.").

The rationale behind the rule giving priority to the second-filed case when the first case was anticipatory is that "'[t]he federal declaratory judgment is not a prize to the winner of a race to the courthouses.'" *Factors Etc., Inc.,* 579 F.2d at 219 (quoting *Perez v. Ledesma*, 401 U.S. at 119). "A rush to file first in anticipation of litigation in another tribunal, thereby enabling a potential defendant to choose the forum and governing law by which to adjudicate the dispute, and otherwise to interfere with or frustrate the other party's pursuit of claims elsewhere, is one of the equitable considerations a court may weigh in ruling on a request for declaratory relief." *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 440 (S.D.N.Y. 2002); *see AmSouth*

*Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004) ("Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.").

### B.   Dish Admitted In Its Complaint That It Filed This Lawsuit In Response To A Direct Threat Of Litigation

Dish admitted, in its complaint, that it filed its declaratory judgment action in response to a direct threat of litigation by the networks.  As noted above, the first sentence of the complaint expressly alleges:  "DISH brings this complaint seeking declaratory relief, **because the Major Television Networks have threatened it with litigation** . . . .") Dish Cplt., ¶ 1 (emphasis added).  Later in the complaint, Dish explains that it believed it was about to be sued because *The Hollywood Reporter* disclosed that the networks had been "consulting with major law firms with the expectation that litigation will be filed against Dish," and were "looking for breaches of contract that can be alleged along with claims for copyright infringement." *Id.*, ¶ 34.  According to the article as quoted by Dish in its complaint,  "[one] top exec said a lawsuit should be expected within a month." *Id.*  Dish then concedes that "[b]ased on these statements and actions, DISH is reasonably apprehensive that it will soon be the target of litigation." *Id.*, ¶ 36.  The allegations in Dish's complaint leave no doubt that when it filed this action seeking a declaration that it did not infringe the networks' copyrights or breach any contracts, it perceived itself to be "under the apparent threat of a presumed adversary filing the mirror image of that suit in another court." *Reliance Ins. Co.*, 155 F. Supp. 2d at 54.

The fact that Dish prepared and filed its declaratory relief action the *very next day* after *The Hollywood Reporter* article was published further underscores the fact that Dish perceived itself as having been directly threatened with litigation, and filed its declaratory relief action for the purpose of preempting the networks' lawsuits. *See Laxman v. Shapiro*, No. 06 Civ. 11408,

2006 WL 3423807, *2 (S.D.N.Y. Nov. 29, 2006) (finding "overwhelming evidence" of anticipatory conduct and dismissing case where the complaint was filed one day after receiving intent-to-sue letter, and the complaint appeared to have been prepared in haste); *Chicago Ins. Co. v. Holzer*, No. 00 Civ. 1062, 2000 WL 777907, at *3 (S.D.N.Y. June 16, 2000) (dismissing case where plaintiff filed declaratory relief action less than 24 hours after receiving notice letter, and holding that the short time interval "demonstrate[ed] that [plaintiff] interpreted defendant's threat of legal action as a firm intention").

**C.    The Allegations In Dish's Complaint Are Binding Judicial Admissions That The Court May Not Disregard**

Because Dish admitted in its complaint that it filed its lawsuit in response to threatened litigation, this is now an established fact that Dish may not dispute.  It is hornbook law that the factual allegations in a complaint constitute judicial admissions which are binding throughout the entire litigation on both the parties and the court.  *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.").  "Judicial admissions are not evidence at all.  Rather, they are formal concessions in the pleadings in the case . . . that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.  Thus, a judicial admission, unless allowed by the court to be withdrawn, is conclusive in the case." 2 McCormick on Evidence §254 (6th ed. 2009).

District courts do not have discretion to disregard judicial admissions.  "Admissions by parties are not subject to judicial scrutiny to ensure that the admissions are fully supported by the underlying record."  *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009); *see also Armour v. Knowles*, 512 F. 3d 147, 153-54 (5th Cir. 2007) (holding that fact admitted in response to request for admissions was "a binding judicial admission that this court must deem conclusively

established[.]"); *U.S. v. Davis*, 332 F. 3d 1163, 1168 (9th Cir. 2003) ("Such [judicial] admissions, which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of this fact, are binding on both the parties and the court[.]").

Similarly, Dish may not submit evidence contradicting its judicial admissions. *See* 30B Michael H. Graham, *Fed. Practice and Procedure: Evidence* §7026 (2d ed. 2012) ("A judicial admission is binding upon the party making it; it may not be controverted at trial or on appeal of the same case."); 29A George Blum et al, Am. Jur. 2d *Evidence* §783 (2012). ("A judicial admission bars the admitting party from disputing it. The party who made a judicial admission may not controvert the admission on trial or on appeal, and may not create a question of fact for purposes of a summary judgment motion by trying to contradict a previous judicial admission.").

### D.  As Numerous Courts In This District Have Recognized, The Threat Of Litigation Does Not Have To Be In The Form Of A Written Cease And Desist Letter For The Complaint To Be Anticipatory

Dish contends that its lawsuit cannot possibly be anticipatory because Fox did not send a demand letter with specific warnings as to deadlines and subsequent legal action prior to filing suit.  Dish Br., p. 21.  However, numerous courts within this circuit have recognized that demand letters with specific dates and deadlines are not required – especially where, as here, the plaintiff's state of mind was undisputed because it admitted the declaratory judgment action was filed in response to threatened litigation.

*Revise Clothing, Inc. v. Levi Strauss & Co.*, No. 10 Civ. 5843, 2010 WL 4964099 (S.D.N.Y. Dec. 6, 2010) provides an example of a case where no specific deadlines for litigation were given, but the court nonetheless found the declaratory judgment action to be anticipatory based on the plaintiff's admissions that it expected to be sued.  The plaintiff in *Revise Clothing* filed its declaratory relief complaint after the defendant, Levi Strauss, sent a cease and desist letter warning of potential trademark infringement claims but not threatening litigation by a

specific date.  *Id*. at *1.  In connection with a motion to enjoin Levi Strauss's later filed infringement lawsuit, plaintiff Revise argued that its complaint was not anticipatory because it believed, based on subsequent communications, that there was no threat of litigation and Levi Strauss was merely "posturing" and "was not on the verge of filing a lawsuit[.]"  *Id*. at *3.  However, the evidence in the record showed that (1) Revise sent Levi Strauss a letter stating its belief that Levi Strauss aggressively pursues trademark litigation; (2) Revise alleged in its complaint that Levi Strauss pursues trademark infringement actions aggressively and that "Levi Strauss has a long record of such actions in the federal courts and upon information and belief has filed three such actions within the last two months alone"; and (3) Revise admitted in its briefing that it "reasonably feared legal proceedings" by Levi Strauss.  *Id*.  Based on these admissions, the court held that "Revise's July 30 letter, its Complaint, and its filings in connection with the instant motions flatly contradict its assertions now that Levi Strauss had no actual intention of filing suit."  *Id*.  Because Revise's complaint was anticipatory, the court denied Revise's motion for an order staying Levi Strauss's later filed trademark infringement action and dismissed Revise's complaint.  *Id*. at *3-5.

Similarly, in *Utica Mutual Insurance Company v. Computer Sciences Corporation*, No. 5:03-CV-0400, 2004 WL 180252 (N.D.N.Y. Jan. 23, 2004), the plaintiff argued that its declaratory relief action was not anticipatory because the defendant's demand letter indicated only the "possibility of litigation" and not a direct threat.  *Id*. at *4.  The court found the filing to be anticipatory because the demand letter was "a clear indication that [defendant] had a firm intention to commence an action against [plaintiff] if it did not pay."  *Id*. at *3.  The court also explained that the plaintiff's response to the letter – "rac[ing] to the courthouse first, in

anticipation of [defendant's] threatened lawsuit" – also indicated that the plaintiff's lawsuit was anticipatory.  *Id*. at *3, *4.

*John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 11-CV-5453, 2011 WL 5245192 (S.D.N.Y. Nov. 2, 2011) (McMahon, J.) is very similar to this case.  In *Wiley*, the plaintiff filed an action seeking a declaration of non-infringement after the copyright holder "made Wiley aware that it retained litigation counsel and threatened to file claims against Wiley for copyright infringement and fraud, but never set any deadlines or issued specific warnings with respect to the timing of actually doing so."  *Id.* at *1.  On the defendant's motion to dismiss, Wiley argued that there was no evidence that it filed suit to preempt the coercive action that was filed shortly thereafter by the copyright holder, because the copyright holder never set any deadlines or issued any specific warnings with respect to the timing of litigation.  *Id*. at *8.  Judge McMahon rejected this argument because Wiley – like Dish here – <u>pled in its complaint</u> that the suit was being filed in response to threats of litigation.  Specifically, the court held:

> Here, the evidence suggests that Wiley filed its complaint in an attempt to get its choice of forum by filing first.  **While VUI did not issue specific warnings as to when it would file suit, Wiley was clearly operating under the direct threat of litigation**.  (Compl., § 14 ("VUI has retained litigation counsel who is threatening to file claims against Wiley for copyright infringement and fraud.")).

*Id*. (emphasis added.)

The court in *Wiley* identified several other facts that supported its finding that Wiley filed its complaint first in order to get its choice of forum, all of which are also present here.  For example, Wiley filed its complaint just two and a half weeks after its last correspondence with the copyright holder, which led the court to conclude "Wiley was trying to get the jump on VUI[.]"  *Wiley*, 2011 WL 5245192 at *8.  Here, Dish raced to court just <u>one day</u> after it learned that the networks were planning to file suit, beating Fox to the filing window by just 29 minutes.  By bringing its suit in New York, Dish could take advantage of favorable Second Circuit law;

14

Dish likely believes, incorrectly, that Second Circuit law favors its position. *Id*. Wiley's complaint "appear[ed] to the court to have been quickly assembled," "sought to bring the exact mirror image of the claims VUI threatened," and "only request[ed] judgment on Wiley's defenses." *Id*. Here, Dish's complaint also appears to have been quickly assembled: Dish asserts claims against the wrong parties, and apparently did not even have time to identify the copyright holders (a matter of public record), or the relevant contracts. And Dish's complaint plainly seeks to bring the "mirror image" of the claims that were threatened – the day after Dish learned the networks were planning to sue for copyright infringement and breach of contract, Dish filed a declaratory relief complaint alleging that it was not liable for copyright infringement or breach of contract.

Additional examples of complaints held to be anticipatory in the absence of a demand letter threatening litigation by a specific deadline are plentiful. *See, e.g., Cooperative Centrale Raiffeisen-Boerenleen Bank B.A. v. Nw Nat'l Ins. Co. of Milwaukee,* 778 F. Supp. 1274, 1278-79 (S.D.N.Y. 1991) (where surety company sued bank the day after receiving notice of default that did not threaten litigation, court found complaint anticipatory because the default notice gave the bank notice of the substance of the dispute, and the timing of the complaint "support[ed] the inference that [the bank] filed its declaratory judgment action knowing it did not intend to pay the sums demanded in [the surety's] January 20 letter and anticipating that [the surety] would sue to collect."); *Scarola Ellis LLP v. Skyworks Ventures, Inc*., No. 09 Civ. 10003, 2010 WL 452381, at *4 (S.D.N.Y. Sept. 1, 2010) (finding complaint anticipatory where plaintiff admitted that after defendant threatened to sue, it filed a lawsuit "so as to be sure no preemptive action was filed against it in a different jurisdiction."); *Crosman Corp. v. Heckler & Koch, Inc*., No. 08-CV-6034, 2008 WL 4347528, at *5 (W.D.N.Y. Sept. 17, 2008) (plaintiff filed declaratory relief action after

the defendant "provided it with a sample infringement complaint, and after Defendant issued thinly-veiled threats to commence litigation if Plaintiff did not comply with Defendant's settlement demands"; lawsuit was anticipatory because "Plaintiff obviously understood Defendant's threats of litigation as such, since it claims that it commenced this action 'to vindicate its rights in the face of [Defendant's] threats of injunctive relief, damages, and impoundment[;]" and plaintiff admitted that its lawsuit "'was filed in the face of [Defendant's] repeated threats of legal action.'").

Dish relies on *BuddyUSA*, 21 F. App'x 52 (2d Cir. 2001) to support its argument that a complaint cannot be anticipatory unless it is filed in response to a cease and desist letter containing specific warnings as to deadlines and subsequent legal action. Dish Br., pp. 21-22. However, in *BuddyUSA* the Second Circuit rejected the notion that there are any bright line tests for determining whether a complaint is filed in response to a threat of litigation. *Id.* at 55 ("In the case before us, the record is ambiguous as to whether the instant action was improperly anticipatory … **The District Court applied the correct rule of law, properly considering the totality of the events rather than employing any bright line rule**.") (emphasis added). As the numerous cases cited above establish, courts have not read the Second Circuit case law as requiring a cease and desist letter with specific dates. This is particularly true when judicial admissions in the complaint establish the action was brought in reaction to a threat of litigation.

## E.   Dish's Admission Of Anticipatory Conduct Goes Far Beyond What Is Required To Establish Standing Under The Declaratory Judgment Act

Dish has suggested that by alleging it filed suit in response to a threat of litigation, it was merely pleading the existence of an actual controversy under the Declaratory Judgment Act. The Declaratory Judgment Act does <u>not</u> require a plaintiff to plead that it is filing suit in response to threatened litigation. In determining whether a court has subject-matter jurisdiction under the

Declaratory Judgment Act, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (overruling Federal Circuit requirement that the plaintiff show a "reasonable apprehension" that it will be sued for infringement); *see also Frederick Goldman, Inc. v. West*, No. 06 Civ. 3413, 2007 WL 1989291, at *3 (S.D.N.Y. July 6, 2007) (Swain, J.) (recognizing that *Medimmune* "lower[ed] the bar" for declaratory judgment and that an explicit threat of litigation is not required).

Dish also argues that the allegations in its complaint establish that declaratory relief is proper because the Declaratory Judgment Act was created to "enable a party who is challenged, threatened, or endangered in the enjoyment of what he claims to be his rights, to initiate the proceedings against his tormentor and remove the cloud by an authoritative determination of plaintiff's legal right, privilege and immunity and the defendant's absence of right, and disability." Dish Br., p. 20 (quoting *Everest Capital Ltd. v. Everest Funds Mgmt, L.L.C.*, 178 F. Supp. 2d 459, 469 (S.D.N.Y. 2002)). However, the great weight of authority in this Circuit is that the purpose of the Declaratory Judgment Act is <u>not</u> served when the declaratory relief plaintiff files an action immediately before the defendant files a coercive action.

"'Essentially, a declaratory relief action brings an issue before the court that otherwise might need to await a coercive action brought by the declaratory relief defendant,' . . the fundamental purpose of the DJA is to 'avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued[.]'" *U.S. v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986) (internal citations omitted). Because the purpose of the Declaratory Judgment Act is to provide a

vehicle for a party to a ripe legal controversy to seek resolution before the opposing party chooses to exercise his right to sue, courts routinely dismiss declaratory relief actions which are filed shortly before a coercive action by the natural plaintiff.  *See, e.g.*, *Great Am. Ins. Co.*, *v. Houston Gen. Ins. Co.,* 735 F. Supp at 581, 586 (("[T]he court finds that it is not appropriate for the Court to entertain the instant declaratory judgment action.  There is a pending coercive action . . . that will provide plaintiff in the instant action with every opportunity to protect the rights that it sought to have adjudicated in the instant action."); *Revise Clothing, Inc*., 2010 WL 4964099, at *5 ("[O]ne of the Declaratory Judgment Act's purposes is to help the party . . . avoid accrual of avoidable damages . . . and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued. . . . **This action serves no such purpose, since the Defendant's infringement action followed closely on the heels of the instant action**.") (internal citation omitted; emphasis added); *Gianni Sport Ltd. v. Metallica*, No 00 Civ. 0937, 2000 WL 1773511, *5 (S.D.N.Y. Dec. 4, 2000) (where plaintiff filed declaratory relief action to preempt coercive suit, court dismissed action and held that "this suit is not necessary to clarify and settle the legal relations or afford relief from uncertainty, insecurity and controversy.  **The pending coercive action in California will provide Gianni the opportunity to resolve the issues raised in the instant action**.") (emphasis added).

## IV.   <u>There Is No Presumption Where The Cases Were Filed Only Minutes Apart</u>

Even if Dish's complaint were not anticipatory, Dish would still not be entitled to the presumption in favor of the first filed case because Dish's declaratory relief complaint was file-stamped a mere 29 minutes before Fox's copyright infringement complaint.   When two complaints are filed less than a few days apart, the first filed rule does not apply.  *Revise Clothing,* 2010 WL 4964099, at *2 ("A court is not required to hear the first-filed action where

the difference in filing date is '*de minimis*'") (citing cases); *JewelAmerica v. Frontstep Solutions Group*, No. 02 CIV 1328, 2002 WL 1349754, at *1 (S.D.N.Y. June 20, 2002) (explaining that "[t]he bulk of precedent in this circuit is that the first filed rule is usually disregarded where the competing suits were filed only days apart"); *see also Don King Prod., Inc.* 735 F. Supp. at 532-33 ("In considering the proper forum for this dispute, no weight shall be assigned to the fact that [defendants] managed to institute suit court [sic] minutes prior to [plaintiff]."); *Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1153 (S.D.N.Y. 1995) (the first-filed rule "is usually disregarded where the competing suits were filed merely days apart[,]" and holding that "[h]ere, because the lawsuits were both filed on the same day, the first-filed rule is inapplicable."); *Symbol Technologies, Inc. v. Data General Corporation*, No. 96 Civ. 2240, 1996 WL 339996, at *1 (S.D.N.Y. June 20, 1996) ("where the cases are filed merely days apart, the first-filed rule is usually disregarded."); *Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 175 (E.D.N.Y. 2003) (noting that "most of the cases in this Circuit have disregarded the first filed rule where the competing suits were filed only days apart[,]" and holding that "given that Affinity filed only five hours before Citibank commenced this action, the Court disregards the first filed rule").

Although Dish insinuates that the presumption in favor of the first-filed case applies even when the infringer beats the true plaintiff to court by mere minutes, none of the cases it cites support that proposition.  The cases cited by Dish merely stand for the proposition that regardless of how close in time the filings were, the judge in the case where the complaint has the earlier

time-stamp decides whether the presumption in favor of the first-filed case applies.[11]  Here, there is no issue as to which court will decide whether the presumption applies, since this Court has already decided that it will make that decision.  The issue is whether Dish is entitled to priority based on its 29 minute earlier filing, a proposition the law does not support.

## V.   The Section 1404(a) Factors Favor The Central District of California

If the first-filed lawsuit is not anticipatory, the court applies the convenience factors under 28 U.S.C. § 1404(a) to determine where the action should proceed.  *Reliance Ins. Co.*, 155 F. Supp. 2d at 56.  Because Dish's lawsuit is anticipatory on its face, the proper remedy is to dismiss the case irrespective of whether California or New York is a more convenient forum.  *Utica Mutual Ins. Co.*, 2004 WL 180252, at *5 ("The proper remedy in a case of an improper anticipatory filing is either a stay of the one action pending the outcome of the similar action brought in another forum, or a dismissal of the first-filed action altogether in favor of the second-filed action.") (citations omitted).

However, even if a Section 1404(a) analysis were appropriate, the factors would weigh in favor of litigation in California.  The factors the court must consider in this analysis are:  (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiffs'

---

[11]  *See, e.g.*, *Stroock & Stroock & Lavan v. Valley Sys., Inc.*, No 95 Civ. 6513, 1996 WL 11249, at *4 (S.D.N.Y. Jan. 11, 1996) (where cases were filed 12 minutes apart, second court held that first court would determine whether first filed rule would apply, and expressly did not rule on whether the first case was entitled to priority); *Horn & Hardart Co. v. Burger King Corp.*, 476 F. Supp. 1058, 1059 (D.C.N.Y. 1979) (where two and a half hours separated the first and second suits, court in the first filed action had the burden of deciding which case proceeds); *Daimler-Chrysler Corp. v. Gen. Motors Corp.*, 133 F. Supp.2d 1041, 1043-44 (S.D.N.Y. 2001)(court where first filed case was pending would determine whether first-to-file rule applied); *Intuitive Surgical, Inc. v. California Inst. of Tech.*, No. 07 Civ. 0063, 2007 WL 1150787, at *2-3 (N.D. Cal. Apr. 18, 2007) (same).

choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances. *Reliance Ins. Co.*, 155 F. Supp. 2d at 56-57.

> **A.   The Fox Parties, Witnesses, And Documents Are In Los Angeles, And The Retransmission Consent Agreement Between Fox And Dish Was Negotiated In Los Angeles**

Fox Broadcasting Company owns the Fox Network, one of the four major commercial television broadcast networks in the United States.   Biard Decl., ¶ 5.   Fox Broadcasting Company is a signatory to the Retransmission Agreement with Dish.   *Id.*, ¶ 11.   Twentieth Century Fox is the copyright owner of many primetime programs broadcast by the Fox Network that Dish is copying without authorization through Primetime Anytime.   *Id.*, ¶ 7, 11.   Both Twentieth Century Fox and Fox Broadcasting Company are headquartered in Los Angeles;  all of their major operations occur in Los Angeles; nearly all of their senior executives are in Los Angeles; and their entire legal departments are in Los Angeles.   *Id.*, ¶ 11.   Fox Television Holdings, Inc. is a holding company that owns and operates 27 local Fox stations.   *Id.*, ¶¶ 5, 12. None of the individual television stations are parties to this lawsuit.   *Id.*, ¶ 12.   Fox Television Holdings, Inc's only role in this case is as a signatory to the Retransmission Consent Agreement with Dish.   *Id.*

Fox's legal documents (such as contracts) are all located in Los Angeles and maintained by personnel based in Los Angeles.   Biard Decl., ¶ 19. Additionally, the vast majority of documents concerning Fox's dealings with Dish, the Retransmission Consent Agreement, and the copyright ownership of Fox's programs, are all located in Los Angeles.   *Id.*, ¶ 20.

In its declaratory relief action, Dish also named Fox Entertainment Group and Fox Cable Network Services, LLC.   Fox Entertainment Group is essentially an overhead company with very limited operations unrelated to these lawsuits.   Biard Decl., ¶ 13.   Regardless, all of its operations and employees are located in Los Angeles.   *Id.*   Similarly, Fox Cable Network

Services, LLC is also an overhead company that serves various employment functions for a number of Fox-affiliated cable and broadcast television networks.  *Id*.  It is based in Los Angeles, and the vast majority of its employees are in Los Angeles.  *Id*.

News Corp. and Fox News are located in New York, but they have no connection to this lawsuit and therefore are irrelevant to the convenience analysis.  Fox News is a cable channel and does not broadcast over the air like the Fox Network.  Biard Decl., ¶ 23.  Fox News is a separate company from Fox Broadcasting Company, Twentieth Century Fox, and Fox Television Holdings, Inc.  *Id*.  Aside from having the same ultimate parent company, these companies are operated separately from Fox News.  *Id*.  Fox News and the Fox Network have completely different executives, different employees, different offices, and different legal departments.  *Id*.  Fox News is not a party to the Retransmission Consent Agreement with Dish.  *Id*., ¶ 24.  No Fox News employees had any involvement with the negotiation of the Retransmission Consent Agreement with Dish.  *Id*.  Fox News's programming is not the subject of Fox's lawsuit or of Dish's declaratory relief lawsuit.  *Id*., ¶ 25.  Fox News has nothing to do with either lawsuit.  *Id*.  Although News Corp. is the ultimate parent company of Fox, News Corp. does not own the programming at issue, News Corp. is not a party to this lawsuit or Fox's lawsuit, News Corp. is not a party to the Retransmission Consent Agreement, and its involvement in the Retransmission Consent Agreement was limited.  *Id.*, ¶¶ 26-27.

Fox's contract claims arise out of agreements that were negotiated in California, and which have no connection to New York.  Michael Biard was one of the lead negotiators on behalf of Fox for the Retransmission Consent Agreement, including all amendments and extensions for the past 10 years.  Biard Decl., ¶ 14.  Mr. Biard lives and works in Los Angeles where most of his in-person negotiations with Dish took place.  *Id*., ¶¶ 14-15.  At crucial times,

his counterparts at Dish would travel from Colorado (where Dish is located) to Los Angeles for meetings that would take place at or near Fox's headquarters in Los Angeles.  *Id.*, ¶ 15.  Many negotiations took place over the phone, while Mr. Biard was in Los Angeles, and sometimes Mr. Biard would travel to Colorado to meet with Dish.  *Id.*  No substantive negotiations with Dish took place in New York.  *Id.*  The other lead negotiator was Joe Di Scipio in Washington D.C.  *Id.*, ¶ 12.  All of the employees Mr. Biard oversees are in Los Angeles, as are the members of the Affiliate Business Affairs Group he consulted with regarding Dish.  *Id.*, ¶¶ 16-18.

**B.**     **Dish Is Located in Colorado, Not New York**

Dish is not located in New York; it is headquartered in Colorado.  Biard Decl., ¶¶ 21-22. Its major business operations and key executives are all in Colorado.  *Id.*  Dish has not identified any Dish-affiliated witnesses or documents in New York, so presumably there are none.

**C.**     **The Use Of New York Law Does Not Require A New York Forum**

Dish contends that because its agreements with the networks are governed by New York law, this weighs in favor of litigating in the Southern District of New York.  However, "the 'governing law' factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states." *Hummingbird USA, Inc. v. Texas Guar. Student Loan Corp*, 2007 WL 163111, at *3 (S.D.N.Y. Jan. 22, 2007); *see also Martignago v. Merrill Lynch & Co., Inc.*, 2012 WL 112246, at *9 (S.D.N.Y. Jan. 12, 2012) (same).  Additionally, most of Dish's agreement with Fox is governed by Colorado law.  Only the 2010 amendments are governed by New York law.

**D.**     **The Forum Selection Clauses In Dish's Contracts With ABC And CBS Do Not Mean That Other Defendants Must Litigate In New York**

Dish argues that forcing Fox to litigate its claims in New York will promote efficiency. Specifically, Dish contends that New York is the only district where all of the claims can be

litigated together because Dish's contract with ABC requires a New York forum, and Dish's contract with CBS requires either a New York or Colorado forum.  As a preliminary matter, it is undisputed that Fox's agreement with Dish does <u>not</u> contain a forum selection clause.  Nor does NBC's.  Fox and NBC are not parties to Dish's agreements with ABC and CBS and Dish has not argued – nor can it – that they are somehow bound by them.  Accordingly, the law Dish cites for the proposition that a forum selection clause is significant in deciding whether to apply the first filed rule is inapplicable here where the actions sought to be enjoined involve parties to whom no forum selection clause applies.

Second, under controlling Second Circuit law, Dish's forum selection clause with CBS – which is limited to disputes that "arise under or out of" the Retransmission Consent Agreement – does not cover the copyright claims asserted by CBS in California (or the "placeholder" defense of those claims that Dish asserted in New York).  *Phillips v. Audio Active Ltd*, 494 F.3d 378, 391 (2d Cir. 2007) (where musician asserted copyright infringement claim after record company released a second album that was not contemplated by his recording contract, copyright claim did not arise out of the recording contract and therefore was not subject to the contract's forum selection clause).  Dish suggests that the copyright claims are covered because they "implicate[] the contract between DISH and CBS."  Dish Br., p. 18.  Presumably Dish intends to raise some sort of defense to CBS's claims based on the Retransmission Consent Agreement.  However, asserting a defense to CBS's copyright claim based on the Retransmission Consent Agreement does not make the copyright claim "arise out of" the agreement.  *Phillips*, 494 F.3d at 391 ("Because the recording contract is only relevant as a defense in this suit, we cannot say that Phillips' copyright claims originate from, and therefore 'arise out of,' the contract.").[12]

---

[12] The forum selection clause is addressed in more detail in the brief filed by NBC and CBS; Fox adopts and incorporates by reference the arguments set forth in that brief.

Third, it is no more efficient for a consolidated lawsuit to proceed in New York than Los Angeles.  When necessary to avoid duplicative litigation, courts typically transfer lawsuits without regard to forum selection clauses.  *See, e.g.*, *Savin v. CSX Corp.*, 657 F. Supp. 1210, 1213 (S.D.N.Y. 1987); *Capital Venture Int'l v. Network Commerce, Inc.*, No.01 Civ. 4390, 2002 WL 417246, at *2 (S.D.N.Y. March 15, 2002); *APA Excelsior III L.P. v. Premier Tech., Inc.*, 49 F. Supp. 2d 664, 671-72 (S.D.N.Y 1999).  Thus, ABC's agreement to litigate in New York does not mean that claims involving them cannot be heard in Los Angeles to avoid duplication.

Fourth, when a plaintiff, like Dish, files a case in which only some defendants are bound by forum selection clauses, the forum selection clauses do not control the venue of the litigation. *Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848, 851-52 (8th Cir. 1987), *abrog'd on other grounds by Lauro Lines s.r.l. v. Chasser*, 109 S. Ct. 1976 (1989); *see also Snider v. Lone Star Art Trading Co.*, 672 F. Supp. 977, 979 (E.D. Mich. 1987) (declining to enforce forum selection clause with one defendant in RICO action against multiple defendants; clause "clearly did not encompass a RICO claim against multiple defendants"); *cf. James v. UMG Recordings*, Nos. C 11-1613, C 11-2431, 2011 WL 5192476, at *2 (N.D. Cal. Nov. 1, 2011) (declining to enforce forum selection clause in action where clause was only present in one of two contracts sued upon, and explaining that "courts have found it unreasonable to enforce a forum selection clause that applied to some but not all of the plaintiff's claims.").

## VI.   <u>Conclusion</u>

For the foregoing reasons, Fox respectfully requests that the Court deny Dish's motion for an anti-suit injunction.

DATED:  June 8, 2012                                    _____/s/ Susan J. Kohlmann_____
                                                                          Susan J. Kohlmann
                                                                          Michael W. Ross
                                                                          JENNER & BLOCK LLP

919 Third Avenue, 37th Floor
New York, NY  10022
Telephone: (212) 891-1690
Facsimile:  (212) 909-0821

Richard L. Stone (*pro hac* motion forthcoming)
David R. Singer (*pro hac* motion forthcoming)
Amy M. Gallegos (*pro hac* motion forthcoming)
Andrew J. Thomas (*pro hac* motion forthcoming)
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, CA 90071-2054
Telephone:  (213) 239-5100
Facsimile:  (212) 239-5199

*Counsel for Defendants Fox Entertainment Group, Inc., Fox Television Holdings, Inc., and Fox Cable Network Services, L.L.C.*

26