**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DISH NETWORK L.L.C.,<br><br>         Plaintiff,<br><br>    v.<br><br>AMERICAN BROADCASTING COMPANIES, INC., CBS CORPORATION, the FOX ENTERTAINMENT GROUP, INC., FOX TELEVISION HOLDINGS, INC., FOX CABLE NETWORK SERVICES, L.L.C., and NBCUNIVERSAL MEDIA, L.L.C.,<br><br>         Defendants. | 12 Civ. 4155 (LTS) (KNF) |

**MEMORANDUM OF LAW OF PLAINTIFF DISH NETWORK L.L.C. IN OPPOSITION TO THE CROSS-MOTIONS OF DEFENDANTS FOX ENTERTAINMENT GROUP, INC., FOX TELEVISION HOLDINGS, INC., FOX CABLE NETWORK SERVICES, L.L.C., CBS CORPORATION AND NBCUNIVERSAL MEDIA, L.L.C. AND IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR AN ANTI-SUIT INJUNCTION**

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ................................................................................. 1

SUPPLEMENTAL STATEMENT OF FACTS ........................................................ 6

ARGUMENT ........................................................................................................... 11

I.     DISH'S DECLARATORY JUDGMENT ACTION SERVES THE PURPOSES
       OF THE DECLARATORY JUDGMENT ACT ............................................ 11

       A.     The Anticipatory Filing Exception Requires a *Direct* Threat of Imminent
              Litigation ........................................................................................... 12

       B.     The Networks, not DISH, are Forum Shopping .................................. 15

II.    DISH IS ENTITLED TO BENEFIT FROM THE FIRST-FILED
       PRESUMPTION ......................................................................................... 16

III.   THE BALANCE OF CONVENIENCE FAVORS DISH'S FIRST-FILED NEW
       YORK ACTION ........................................................................................... 21

       A.     The Interests of Justice and Judicial Economy Favor One Action ....... 21

       B.     The Locus of Operative Facts Favors New York ................................ 22

       C.     The Contracts Weigh in Favor of New York ...................................... 23

CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

CASES

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
    860 F. Supp. 128 (S.D.N.Y. 1995) ................................................................................. 12

*In re Aimster Copyright Litigation*,
    334 F.3d 643 (7th Cir. 2003) ......................................................................................... 10

*American Broadcasting Companies, Inc.et al. v. Flying J, Inc.*,
    2007 WL 583176 (S.D.N.Y., Feb. 22, 2007) ................................................................ 22

*Berisford Capital Corp. v. Central States, Southeast and Southwest Areas Pension Fund*,
    677 F.Supp. 220 (S.D.N.Y. 1988) ................................................................................ 17

*CBS, Inc. v. PrimeTime 24 Joint Venture*,
    76 F. Supp. 2d 1333 (S.D. Fla. 1998) ........................................................................ 5, 19

*Chicago Ins. Co. v. Holzer*,
    No. 00 Civ. 1062, 2000 WL 777907 (S.D.N.Y. June 16, 2000) .................................. 1, 13

*Citigroup Inc. v. City Holding Co.*,
    97 F. Supp. 2d 549 (S.D.N.Y. 2000) ............................................................................ 22

*Columbia Pictures Indus. Inc. v. Fung*,
    447 F. Supp. 2d 306 (S.D.N.Y. 2006) .......................................................................... 21

*Cont'l Cas. Co. v. Coastal Sav. Bank*,
    977 F.2d 734 (2d Cir. 1992) ......................................................................................... 11

*Cooperative Centrale Raiffeisen-Boerenleen Bank B.A. v. Northwestern Nat'l Ins. Co. of
Milwaukee, WI*,
    778 F.Supp. 1274 (S.D.N.Y. 1991) .............................................................................. 14

*Crosman Corp. v. Heckler & Koch, Inc.*,
    No. 08 Civ. 6034, 2008 WL 4347528 (W.D.N.Y. Sept. 17, 2008) .............................. 14

*In re Cuyahoga Equip. Corp.*,
    980 F.2d 110 (2d Cir. 1992) ......................................................................................... 19

*Don King Prod. Inc. v. Douglas*,
    735 F. Supp. 522 (S.D.N.Y. 1990) .......................................................................... 18, 24

*Dornoch Ltd. ex rel. Underwriting Members of Lloyd's Syndicate 1209 v.
PBM Holdings, Inc.*, 666 F. Supp. 2d 366 (S.D.N.Y. 2009) .................................... 15

*Employers Ins. of Wausau v. Duplan Corp.*,
 No. 94 Civ. 3143, 1994 WL 637710 (S.D.N.Y. Nov. 10, 1994) .......................................15, 16

*Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*,
 522 F.3d 271 (2d Cir. 2008) ...................................................................................................17

*Engel v. CBS, Inc.*,
 886 F.Supp. 728 (C.D. Cal. 1995) ..........................................................................................24

*Everest Capital Ltd. v. Everest Funds Management, L.L.C.*,
 178 F. Supp. 2d 459 (S.D.N.Y. 2002) ...............................................................................*passim*

*Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*,
 806 F.2d 848 (8th Cir. 1987) ..................................................................................................24

*First City Nat. Bank & Trust Co. v. Simmons*,
 878 F.2d 76 (2d Cir. 1989) .......................................................................................................1

*Gianni Sport Ltd. v. Metallica*,
 No. 00 Civ. 0937, 2000 WL 1773511 (S.D.N.Y. Dec. 4, 2000) .......................................11, 14

*GMT Corp. v. Quiksilver*,
 No. 02 Civ. 2229, 2002 WL 1788016 (S.D.N.Y. Aug. 1, 2002).............................................20

*Goggins v. Alliance Capital Mgmt., LP*,
 279 F. Supp. 2d 228 (S.D.N.Y. 2003) .....................................................................................21

*GPM Techs., LLC v. Zicam, LLC*,
 No. 08 C7077, 2009 WL 5064762 (N.D. Ill. Dec. 9, 2009) ....................................................19

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.*,
 735 F. Supp. 581 (S.D.N.Y. 1990) ..........................................................................................14

*Horn & Hardart Co. v. Burger King Corp.*,
 47 F. Supp. 1058 (S.D.N.Y. 1979) ..........................................................................................17

*Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*,
 119 F. Supp. 2d 433 (S.D.N.Y. 2000) .....................................................................................21

*Ivy-Mar Co., Inc. v. Weber-Stephen Products, Co.*,
 No. 93 Civ. 5973, 1993 WL 535166 (S.D.N.Y. Dec. 22, 1993) .............................................17

*J. Lyons & Co. Ltd. v. Republic of Tea, Inc.*,
 892 F.Supp. 486 (S.D.N.Y. 1995) ...........................................................................................13

*James v. UMG Recordings*,
 Nos. 11 Civ. 1613, 11 Civ. 2431 SI, 2011 WL 5192476 (N.D. Cal. Nov. 1, 2011)...............24

*JewelAmerica v. Frontstep Solutions Grp.*,
   No. 02 Civ. 1328, 2002 WL 1349754 (S.D.N.Y. Jun. 20, 2002) ........................... 17

*John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*,
   No. 11 Civ. 5453, 2011 WL 5245192 (S.D.N.Y. Nov. 2, 2011) ...................................11, 14

*Laxman v. Shapiro, P.C.*,
   No. 06 Civ. 11408, 2006 WL 3423807 (S.D.N.Y. Nov. 29, 2006) ........................ 14

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) .................................................................................................. 23

*Mfrs. Hanover Trust Co. v. Palmer Corp.*,
   798 F. Supp. 161 (S.D.N.Y. 1992) ........................................................................ 18

*MasterCard Int'l, Inc. v. Lexcel Solutions, Inc.*,
   No. 03 Civ. 7157, 2004 WL 1368299 (S.D.N.Y. June 16, 2004) ........................... 22

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*
   545 U.S. 913 (2005) ............................................................................................. 10

*Micron Tech., Inc. v. Mosaid Technologies, Inc.*,
   518 F.3d 897 (Fed. Cir. 2008) .............................................................................. 19

*Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc*,
   804 F.2d 16 (2d Cir. 1986) ................................................................................... 15

*Oleg Cassini, Inc. v. Serta, Inc.*,
   No. 11 Civ. 8751, 2012 WL 844284 (S.D.N.Y. Mar. 13, 2012) ...................................16, 18

*Ontel Prod., Inc. v. Project Strategies Corp.*,
   899 F. Supp. 1144 (S.D.N.Y. 1995) ...................................................................... 17

*Paramount Pictures v. Video Broadcasting Servs.*,
   724 F.Supp. 808 (D. Kan. 1989) .......................................................................... 10

*Rappaport v. Steven Spielberg, Inc.*,
   16 F. Supp. 2d 481 (D.N.J. 1998) ....................................................................5, 24

*Reliance Insurance v. Six Star*,
   155 F. Supp. 2d 49 (S.D.N.Y. 2001) ...............................................................17, 23

*Revise Clothing, Inc. v. Levi Strauss & Co.*,
   No. 10 Civ. 5843, 2010 WL 4964099 (S.D.N.Y. Dec. 6, 2010) ...........................13, 17

*Robinson v. Comm'r of Jurors*,
   419 F. Supp. 1189 (S.D.N.Y. 1976) ...................................................................... 19

*Scalora Ellis LLP v. Skyworks Ventures, Inc.*,
No. 09 Civ. 10003, 2010 WL 3452381 (S.D.N.Y. Sept. 1, 2010)........................................14

*Schnabel v. Ramsey Quantitative Sys., Inc.*,
322 F. Supp. 2d 505 (S.D.N.Y. 2004) ..................................................................12, 16

*Sony Corp. of America. v. Universal City Studios*,
464 U.S. 417 (1984) ............................................................................................10

*Spotless Enterprises Inc. v. The Accessory Corp.*,
415 F. Supp. 2d 203 (E.D.N.Y. 2006)........................................................................18

*Symbol Tech., Inc. v. Data Gen. Corp.*,
No. 96 Civ. 2240, 1996 WL 339996 (S.D.N.Y. Jun. 20, 1996) .........................................17

*Top Victory Electronics v. Hitachi Ltd.*,
No. C 10-01579, 2010 WL 4722482 (N.D. Cal. Nov. 15, 2010) .......................................19

*TradeComet.com LLC v. Google, Inc.*,
647 F.3d 472 (2d Cir. 2011) .................................................................................23

*Transatlantic Reinsurance Co. v. Cont'l Ins. Co.*,
No. 03 Civ. 3227, 2003 WL 22743829 (S.D.N.Y. Nov. 20, 2003).......................................17

*U.S. v Doherty*,
786 F.2d 491 (2d Cir. 1986) ...............................................................................2, 11

*UBS Sec. L.L.C. v. Finish Line, Inc.*,
No. 07 Civ. 10382, 2008 WL 536616 (S.D.N.Y. Feb. 22, 2008)........................................11

*Utica Mutual Ins. Co. v. Computer Sci. Corp. Utica Mutual Ins. Co.*,
No. 5:03–CV–0400, 2004 WL 180252 (N.D.N.Y. Jan. 23, 2004).......................................14

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) ............................................................................................25

*Weiss v. Columbia Pictures Television*,
801 F. Supp. 1276 (S.D.N.Y. 1992) .........................................................................23

*Wyndham Assocs. v. Bintliff*,
398 F.2d 614 (2d Cir. 1968) .................................................................................21

*Xilinx, Inc. v. Invention Inv. Fund I LP*,
No. C 11-0671, 2011 WL 3206686 (N.D. Cal. July 27, 2011) .........................................19

## STATUTES

17 U.S.C. § 501 ...............................................................................................5, 19

22 U.S.C. § 2201 ...............................................................................................11

22 U.S.C. § 2202 ...............................................................................................11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15................................................................................................2

AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (1981) .......................................3

DISH Network L.L.C. ("DISH") respectfully submits this memorandum of law in further support of its motion for an anti-suit injunction and in opposition to the cross-motions of defendants Fox Entertainment Group, Inc., Fox Television Holdings, Inc., Fox Cable Network Services, L.L.C. (together, "Fox"), CBS Corporation ("CBS"), and NBCUniversal Media, L.L.C. ("NBC") (collectively, the "networks") to dismiss, stay or transfer DISH's first-filed Complaint.[1] This suit belongs in the Southern District of New York, and defendants present no basis for this Court to find otherwise. As explained in more detail below, DISH's motion for an anti-suit injunction should be granted, and the cross-motions of Fox, CBS and NBC should be denied.

## PRELIMINARY STATEMENT

"[A] declaratory judgment action should be entertained when the judgment would serve a useful purpose in clarifying and settling the legal relations at issue." *Chicago Ins. Co. v. Holzer*, No. 00 Civ. 1062, 2000 WL 777907, at * 3 (S.D.N.Y. June 16, 2000) (internal quotations and citations omitted). As set forth in DISH's moving brief ("DISH Moving Brief"), DISH brought a declaratory judgment action in this Court for just such a useful purpose – to obtain clarification and settlement of its lawful right to offer its satellite television customers the Hopper DVR with the PrimeTime Anytime™ ("PTAT") and AutoHop™ features. PTAT allows DISH subscribers to choose to record primetime shows on ABC, CBS, Fox and NBC each night, and AutoHop allows them the freedom to elect to skip commercials when they play back recorded programming the next day. To settle DISH's right to offer these features, and in response to the networks' vague and indirect threats to DISH's lawful rights, DISH brought a single action in

---

[1]     CBS and NBC cross-move to dismiss, stay or transfer this action, while Fox cross-moves only to dismiss DISH's complaint. Fox inappropriately asks for a dismissal "with prejudice." The pending motions do not touch on the merits of DISH's declaratory judgment claims and no resolution of any cross-motion should be with prejudice to DISH's substantive rights. *See First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 77-78 (2d Cir. 1989).

this Court that names all four networks as defendants, and raises all potential copyright and contract claims relating to the Hopper's functionality in one comprehensive action.

Fox, CBS and NBC have made plain that they are not interested in letting DISH obtain comprehensive relief that avoids piecemeal litigation. Notwithstanding that a declaratory judgment action is designed to afford the plaintiff the opportunity to "remove [a] cloud by an authoritative determination of the plaintiff's legal right, privilege and immunity," *U.S. v. Doherty*, 786 F.2d 491, 498-99 (2d Cir. 1986), these networks insist that DISH has somehow misused the declaratory judgment statute by seeking such an authoritative determination, and should instead be forced to defend against their carefully orchestrated, deliberately piecemeal, litigation in California, which is pending before three different judges and which does not (and cannot) include all claims or all parties. By contrast, this forum is the only forum where all parties' rights can be resolved, and that is why DISH filed here in the first instance. While ABC has not yet answered the Complaint, it has advised DISH and the Court that it will litigate in this Court by filing an answer and counterclaim. Second Declaration of Elyse D. Echtman dated June 18, 2012 ("Second Echtman Dec.") Ex 1. Any of the California plaintiffs not named in this action may readily be joined here as additional defendants.[2] Litigating the same case on two coasts makes no practical sense.

No matter how hard they try, the networks cannot credibly assert that DISH did anything improper by being first to file a comprehensive declaratory judgment action in this Court. The networks seek to have this action dismissed in favor of their California actions by arguing that the first-filed rule does not apply when the first action was filed in response to a direct threat of litigation. But, that argument necessarily fails because there were no ***direct*** threats of litigation

---

[2]       In the event that this Court grants DISH's motion for an anti-suit injunction, DISH is prepared to amend its complaint to add those entities as defendants. *See* Fed. R. Civ. P. 15.

in this case.  David Shull, DISH's Vice President of Programming, submitted an unchallenged

declaration to that effect – that DISH received no direct threats of litigation from the networks.

Fox's counsel conceded at the May 30, 2012 hearing that there were no direct communications

from Fox to DISH concerning litigation.  Transcript of May 30, 2012 Hearing, Second Echtman

Dec. Ex. 2 ("Tr.") at 5:10-6:9.[3]  CBS and NBC, for their part, note that DISH filed its action

partially in response to an article in *The Hollywood Reporter* that "quoted anonymous sources as

stating that the broadcast networks were going to file lawsuits against DISH for copyright

infringement and breach of contract within a month."  Memorandum of Law of CBS and NBC

dated June 8, 2012 ("CBS/NBC Brief") at 2.[4]

   "Direct" means "[w]ithout intervening persons, conditions or agencies."  AMERICAN

HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 373 (1981).  There is nothing "direct" about

generalized press accounts from anonymous sources.  It is precisely the sort of vague and

looming threat of litigation contained in *The Hollywood Reporter* article that the declaratory

judgment action is designed to address.

   The networks attempt to argue that New York is an inconvenient forum, but cannot

credibly disclaim their substantial presence here and the strong connection that New York has to

this dispute.  With respect to CBS, not only did it bargain for New York as an appropriate forum

in its re-transmission contract with DISH, but also:

   •   Two of the three plaintiffs in CBS's California action, CBS Broadcasting and
       CBS Studios, have their principal places of business in the Southern District of
       New York.  First Echtman Dec. Ex. 6, ¶¶ 10-11.  Only the third plaintiff, Survivor

---

[3]   The Court: . . . Is that correct, that there was no specific deadline date, 'I'm going to sue
      you at a certain time'?
      Ms. Kohlmann:  There was no specific deadline date or written notice like a cease and
      desist letter.
Tr. at 6:2-5.
[4]   *The Hollywood Reporter* article states:  "[t]he networks are said to be examining their DISH license
agreements, looking for breaches of contract that can be alleged along with claims for copyright infringement."
First Echtman Dec. Ex. 3.

Productions LLC, is based in Los Angeles. *Id.* ¶ 9. And, Survivor Productions, which produces the *Survivor* primetime television show, is no stranger to New York. The *Survivor* season finale has been broadcast live from the Ed Sullivan Theater in New York City. Second Echtman Dec. Ex. 3.

- DISH's primary contact at CBS is Martin Franks, a high-ranking executive at CBS Corporation, who maintains an office in New York. Second Shull Dec. ¶ 5. Mr. Franks is a signatory to the re-transmission agreement between DISH and CBS. *Id.* He reports directly to Les Moonves, the Chief Executive Officer of CBS, who has been quoted in the press calling AutoHop "illegal." *Id.* ¶ 6; First Echtman Dec. ¶ 5. Mr. Moonves also maintains an office in New York. Second Shull Dec. ¶ 6.

- As recently as May 30, 2012, Mr. Franks appeared as a voluntary witness in the Southern District of New York at the 500 Pearl Street Courthouse. Second Echtman Dec. ¶ 5, Ex. 4. Mr. Franks presented testimony at a hearing in support of a preliminary injunction motion that CBS Broadcasting and CBS Studios made in a copyright infringement action they brought in this Court against Aereo, Inc. *Id.* Mr. Franks was the very first witness called at that hearing. *Id.*

With respect to NBC, not only did it bargain for New York choice of law in its contract with DISH, but also:

- NBCUniversal Media, L.L.C. (alternatively referred to as "NBCUniversal"), which is a party to both this action and NBC's California action, has its principal place of business in New York. First Echtman Dec. Ex. 5, ¶ 11. DISH's primary NBC contact is Matt Bond, an executive at NBCUniversal, who maintains an office in New York City at 30 Rockefeller Plaza. Second Shull Dec. ¶ 7. Mr. Bond reports directly to Steven Burke, the CEO of NBCUniversal, who also maintains an office at 30 Rockefeller Plaza in New York City. *Id.*

- The other parties to NBC's California action, NBC Studios LLC, Open 4 Business LLC and Universal Network Television LLC, are New York limited liability companies. First Echtman Dec. Ex. 7 ¶ 10.

With respect to Fox, not only is the most recent contractual amendment that it executed with DISH governed by New York law, but also:

- Fox executives have participated in meetings with DISH in New York City. Second Shull Dec. ¶¶ 9-10. As recently as May 17, 2012, DISH's Chief Executive Officer Joseph Clayton and Mr. Shull met with a senior Fox executive, Michael Hopkins, and a News Corp. executive at the News Corp. headquarters in New York City. *Id.* ¶ 10.

In addition, Fox, CBS and NBC entities have all brought actions as plaintiffs in the Southern District of New York. Second Echtman Dec. ¶ 18. CBS has even sought to transfer actions pending elsewhere to this Court as a more convenient forum. *Rappaport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 504 (D.N.J. 1998). The networks claim that DISH has no connection to New York, but DISH likewise has a New York presence and maintains executive offices at 185 Varick Street. Second Echtman Dec. Ex. 5; Second Shull Dec. ¶ 11.

The networks attempt to argue that DISH named the wrong parties in this action, which is supposedly why their California case should proceed. However, the law does not require a perfect match between parties or issues for duplicative litigation to be enjoined. In any event, DISH named appropriate defendants. Defendant CBS Corporation, which is a party to a re-transmission agreement with DISH, holds a beneficial interest in its wholly-owned subsidiaries' copyrights. A beneficial interest is sufficient for assertion of a copyright claim, *see* 17 U.S.C. § 501(b), as CBS has asserted in other cases in order to sue as a copyright plaintiff. *See CBS, Inc. v. PrimeTime 24 Joint Venture*, 76 F. Supp. 2d 1333, 1337 (S.D. Fla. 1998).

Defendant NBCUniversal, which is a party to re-transmission agreements with DISH and holds a beneficial interest in its wholly-owned subsidiaries' copyrights, also directly owns copyrights in NBC primetime programming, including Dateline NBC and Rock Center. Seabrook Dec. ¶ 5; Second Echtman Dec. Ex. 6. Moreover, an NBCUniversal employee, Carly Seabrook, submitted a declaration in this case stating that she oversees copyright registrations not only for NBCUniversal but also for the NBC subsidiaries that are plaintiffs in NBC's California action. Seabrook Dec. ¶ 2.

Defendant Fox Television Holdings, Inc., which is a party to re-transmission agreements with DISH, is also a plaintiff in Fox's California. Like CBS Corporation, Fox Television Holdings holds a beneficial interest in its subsidiaries' copyrights in primetime programming.

To evade a mandatory forum selection and New York choice of law clause, respectively, CBS and NBC assert that there is no actual controversy over DISH's compliance with its agreements with them. To test that assertion, DISH asked CBS and NBC to stipulate to entry of judgment in DISH's favor on DISH's contract claims in this case. Second Echtman Dec. Ex. 7. They did not agree. *Id.*, ¶ 8.

Finally, the networks argue that DISH's contract claims are defective because the dates and titles of the agreements are not disclosed in the Complaint. DISH's well-pleaded Complaint was careful to honor the confidentiality provisions in the parties' agreements. The networks do not dispute that those agreements are confidential, and DISH is negotiating with ABC over disclosures. More importantly, the networks cannot credibly claim not to know which contracts are referenced in the Complaint -- as those contracts collectively generate hundreds of millions of dollars for the networks each year. They were certainly familiar enough with the contracts to advance substantive arguments about choice of law and forum, the breadth of those contracts and the parties to those contracts. And Fox knew enough to bring a contract claim in California.

## SUPPLEMENTAL STATEMENT OF FACTS

### Status of the California Actions

The networks assert that DISH rushed to court with a hastily-filed complaint, but the facts show that it was the networks that filed their actions in haste. The networks were in such a rush to file in California on May 24, 2012 that they did not wait to receive the assigned index number for one action before completing the civil cover sheet for the next one. Tr. at 25:20-

26:25.  As a result, the civil cover sheets failed to properly alert the clerk that related cases had

just been filed in the same courthouse.  Fox also rushed to attempt to serve DISH the same day

that it filed its summons and complaint (and put much emphasis on its supposed first-service at

the May 30, 2012 hearing.)  *Id*. at 8:9-14.  As a result, Fox served the wrong DISH entity, and

did not effect proper service on DISH Network Corporation.  Second Echtman Dec. Ex. 8.  Fox

no longer argues that it was first to serve.

      Because of this haste and the failure to advise the California court of related cases, the

status of the California actions remains in flux.  The cases were initially assigned to three

different judges.  On May 29, 2012, after the related-case issue was raised in DISH's moving

papers, the networks belatedly filed notices of related cases in California.  Counsel for CBS and

NBC represented at the May 30, 2012 hearing that the related case notices would ensure that the

three actions would all be reassigned to a single judge.  Tr. at 8:9-14.  That has not happened.

Judge King, who was assigned the Fox action with the lowest California index number, declined

to take the CBS and NBC actions based on a perceived conflict of interest.  Second Echtman

Dec. Ex. 9.  Judge Lew, who had been assigned NBC's case and was next in line based on case

number, declined the assignment.  *Id.*, Ex. 10.  The NBC case was reassigned and is now with

Judge Dolly Gee.  *Id.*  Now, weeks later, the three California cases remain with three different

judges.  *Id.*, Exs. 9, 10.  Fox's case is assigned to Judge King, NBC's case is assigned to Judge

Gee and CBS's case is assigned to Judge Percy Anderson.  *Id.*; First Echtman Dec. Ex 6.

      After DISH filed a pleading informing the court in Fox's California action of the TRO

entered here, Fox's motion for expedited discovery was denied.  Second Echtman Dec. ¶ 12, Ex.

11.  Fox stipulated to adjourn DISH's time to respond to its California complaint until twenty

days after a ruling is issued by this Court on DISH's motion for an anti-suit injunction.  *Id.*, Ex.

12.  CBS and NBC agreed to similar stipulations.[5]  *Id.*, Ex. 13.

<u>Status of Defendant ABC</u>

ABC was originally due to respond to the Complaint in this action on June 15, 2012.  On

June 14, 2012, ABC's counsel requested an extension of time.  Second Echtman Dec. ¶ 2.  The

stipulation and proposed order that DISH and ABC submitted to the Court states that the

extension is "sought to enable the parties to discuss whether additional entities related to ABC

should be joined to this action and the procedure for joining such entities, to evaluate

confidentiality considerations relating to the retransmission agreement between the parties, and

to enable ABC's counsel to complete the preparation of an Answer and Counterclaim."  *Id.*, Ex.

1.  ABC, at least, intends to have its dispute with DISH heard in this Court.

<u>PTAT and AutoHop</u>

The networks characterize their California complaints as broader in scope than DISH's

complaint in this action, and claim that their complaints primarily take issue with PTAT, not

AutoHop.  *See, e.g.*, Fox's Memorandum of Law in Opposition to DISH's Motion for an Anti-

Suit Injunction ("Fox Opp. Brief") at 6; Fox's Memorandum of Law in Support of its Motion to

Dismiss ("Fox MTD Brief") at 6 ("The Fox Complaint is not limited to Auto Hop").[6]  But,

PTAT is expressly put at issue in the allegations of DISH's complaint.  Compl., ¶¶ 4, 5, 21, 22,

---

[5]      DISH agreed with CBS and NBC that it would not use these stipulations (1) to argue that the actions should be heard in New York rather than California or (2) to argue in either forum against expedited discovery.  DISH mentions these stipulations for the sole purpose of providing the Court with a status update on the California actions.
[6]      The networks must focus on PTAT because of the legal hurdle posed by the fact that they do not have ownership interests in the copyrights for the commercials that AutoHop allows viewers to skip more easily than the normal remote control fast-forward or 30 second skip feature.

23, 38, 43.[7]  And, it was clearly the addition of the AutoHop commercial-skipping feature that triggered this suit.

PTAT was announced with the Hopper DVR on January 9, 2012 at the industry's highly attended annual convention, CES,[8] and was made available to DISH subscribers in mid-March. After the January announcement of PTAT, there was no outcry from the networks nor declarations of illegality and doom.  Second Shull Dec. ¶ 3.  It was not until DISH announced the AutoHop commercial-skipping feature on May 10, 2012 that network executives began making disparaging public remarks, rejecting advertising from DISH, and talking about litigation in the press.  The true dispute between the parties revolves around AutoHop.

In any event, there should be no dispute as to either PTAT or AutoHop.  By putting these features on the Hopper, DISH has done nothing more than improve upon existing, legally-accepted, and widely available technologies that allow individuals in their private homes to record television shows for viewing at a more convenient time and, at playback, to fast-forward or skip over the commercials.  Most DVRs can be set to record from eight p.m. to eleven p.m. on any given channel on any given night of the week.  PTAT makes it easy for Hopper users to record that block of time on all four networks every night, if they choose to do so, without going through the chore of setting a timer for each channel and each night.  These user-initiated copies persist for eight nights, with no more than two episodes of any particular weekly show stored at

---

[7]       For example, DISH alleges that "[t]he Hopper also has PrimeTime Anytime capability, an exclusive feature that allows viewers, with one click, to record in HD all of the HD primetime TV programming on ABC, CBS, FOX and NBC" (Compl., ¶ 4.) and that "[a]n actual controversy exists between DISH and the Major Television Networks, and DISH is reasonably apprehensive that, if it continues to provide the Auto Hop feature to its customers using the Hopper HD DVR with PrimeTime Anytime, the Major Television Networks will commence an action against it claiming copyright infringement."  *Id.*, ¶ 38.

[8]       DISH's public remarks announcing the Hopper and PTAT at the 2012 Consumer Electronics Show, on January 9, 2012, are available online.  *DISH Reveals New Multi-room DVR*, http://www.youtube.com/watch ?v=jynbQEu-nVM (posted Jan. 9, 2012).  DISH's accompanying press release was released that same day.  Second Echtman Dec. Ex. 14.  The Sling technology that Fox focuses upon has been on the market for years.  DISH Moving Brief at 13 n. 2.

any time (and only for a single day).  PTAT shows automatically expire and are deleted after eight days absent further user intervention.

It has been twenty-eight years since the Supreme Court's decision in *Sony Corp. of America. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ("*Betamax*"), which held that a viewer may, in the privacy of his or her own home, record a television show to watch later – in other words, to "time-shift."  The Supreme Court held that time-shifting constitutes a fair use of copyrighted television programming.  Those Betamax users could permissibly fast-forward through commercials on recorded shows, just as DVR users do today.  A person using PTAT and AutoHop is engaged in the same time-shifting sanctioned by the Supreme Court in *Betamax*.[9]

While the technology that viewers use to time-shift has evolved, network complaints that viewers must watch commercials have persisted.  One network executive has gone so far as to claim that any television viewer who skips a commercial is "stealing."[10]  But skipping commercials wasn't theft when viewers were getting shows broadcast to them for free and that proposition is even more untenable today, when DISH's viewers pay for television service, and the networks collect hefty re-transmission fees for those supposedly "free" shows.

---

[9]     CBS and NBC submitted a letter to the Court on June 14, 2012 that makes much of dicta on commercial-skipping in the opinion *In re Aimster Copyright Litig.*, 334 F.3d 643, 647-48 (7th Cir. 2003).  That dicta is not the law.  Justice Breyer's concurrence, joined by Justices Stevens and O'Connor, in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 955 (2005), explicitly rejects *Aimster*, stating that "of the Courts of Appeals that have considered the matter, only one has proposed interpreting *Sony* more strictly than I would do-in a case where the product might have failed under *any* standard."  In contrast, a district court opinion directly held that the unauthorized addition of a commercial to the beginning of a videotape violated no copyright interests of the motion picture copyright owner.  *Paramount Pictures v. Video Broad. Servs.*, 724 F.Supp. 808, 820-21 (D. Kan. 1989).  The unauthorized skipping of such content likewise implicates no copyright interest of the show owner.  What the networks seek to do here is overturn three decades of settled law by undoing the *Betamax* decision and preventing consumers from time-shifting their content.

[10]     Jamie Kellner, at the time the CEO of Turner Broadcasting Systems, stated in 2002, "[y]our contract with the network when you get the show is you're going to watch the spots.  Otherwise you couldn't get the show on an ad-supported basis.  Any time you skip a commercial . . . you're actually stealing the programming."  Staci D. Kramer, *Content's King: Interview of Jamie Kellner*, CABLE WORLD 32 (Apr 29, 2002), attached to the Second Echtman Dec. as Ex. 16.  He added, "I guess there's a certain amount of tolerance for going to the bathroom."  *Id.*

## ARGUMENT

### I.  DISH'S DECLARATORY JUDGMENT ACTION SERVES THE PURPOSES OF THE DECLARATORY JUDGMENT ACT

DISH brought its first-filed action in the Southern District of New York to obtain a comprehensive resolution of its copyright and contract disputes with ABC, CBS, Fox and NBC, and to avoid the type of piecemeal, duplicative, litigation that was subsequently commenced in California.  In so doing, DISH has brought an action that precisely comports with the purposes of the Declaratory Judgment Act.  22 U.S.C. §§ 2201 and 2202; *see* DISH Moving Brief at 20 (citing *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp. 2d 459, 469 (S.D.N.Y. 2002) (Swain, J.)).  Significantly, no matter the outcome on these motions, DISH's claims against ABC, and its contracts claims against CBS, will be heard in this Court.

The Declaratory Judgment Act serves a number of purposes, including: (1) "avoid[ing] a multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligations of litigants;"[11] (2) "enabl[ing] a party who is challenged, threatened or endangered in the enjoyment of what he claims to be his rights, to initiate the proceedings against his tormentor and remove the cloud by an authoritative determination of the plaintiff's legal right, privilege and immunity and the defendant's absence of right, and disability;"[12] and (3) preventing the "accrual of avoidable damages to one not certain of his rights."[13]  DISH's action serves all of these purposes, and also seeks prospective relief with respect to continuing conduct.  *John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 11 Civ. 5453, 2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011); *Cf. Gianni Sport Ltd. v. Metallica*, No. 00 Civ. 0937, 2000 WL 1773511, at *4 (S.D.N.Y. Dec. 4, 2010).

---

[11]     *UBS Sec. L.L.C. v. Finish Line, Inc.*, No. 07 Civ. 10382, 2008 WL 536616, at *4 (S.D.N.Y. Feb. 22, 2008).
[12]     *U.S. v. Doherty*, 786 F.2d at 498-99 (citations omitted).
[13]     *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 738 (2d Cir. 1992) (citations omitted).

The networks seem to think that any declaratory judgment action is improperly anticipatory by nature, and does not receive any first-filing deference. That is not the law. "The fact that an action is one seeking a declaratory judgment does not, however, necessarily mean that it is an improper anticipatory filing." *Everest Capital Ltd.*, 178 F. Supp. 2d at 469.  In *Schnabel v. Ramsey Quantitative Sys., Inc.*, the court aptly stated:

> A party's reasonable apprehension of a legal controversy may be sufficient to satisfy the requirements of a justiciable controversy without rising to the level of a ***direct*** threat of imminent litigation. Were this not the case, each time a party sought declaratory judgment in one forum, a defendant filing a second suit in a forum more favorable to defendant could always prevail under the anticipatory filing exception.

322 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 132 (S.D.N.Y. 1995)) (emphasis added).

### A.     The Anticipatory Filing Exception Requires a *Direct* Threat of Imminent Litigation

The networks gloss over the requirement of a "direct" threat of litigation for a declaratory judgment action to be treated as improperly anticipatory.  Because the networks made no direct threats to DISH, and DISH's Complaint does not say that there were any direct threats, this exception to the first-filed rule cannot apply.

Judge Leisure's opinion in *800-Flowers*, 860 F.Supp. 128, is instructive.  The court applied the first-filed rule and granted a motion to dismiss a second action. *Id.* at 136.  Plaintiff argued that the second-filed New York suit should take priority because defendant's action was filed under a direct threat of imminent litigation. *Id.* at 132.  The court rejected the argument because the "only statements which were made pertaining to litigation were made ***indirectly***, by way of disparaging remarks to potential customers." *Id.* at 133 (emphasis added).

In *Chicago Insurance Co.*, Judge Scheindlin enunciated three factors to gauge whether there is a direct threat of imminent litigation and a filing is improperly anticipatory. According to Judge Scheindlin, "[w]hen a notice letter informs a defendant of [i] the intention to file suit, [ii] a filing date, and/or [iii] a specific forum for the filing of the suit, the courts have found, in the exercise of discretion, in favor of the second-filed action." 2000 WL 777907, at *2 (relying on and quoting *J. Lyons & Co. Ltd. v. Republic of Tea, Inc.*, 892 F.Supp. 486, 491 (S.D.N.Y. 1995)). The networks satisfy none of these factors. The networks did not directly (i) inform DISH of their intention to file suit; (ii) convey a filing date; or (iii) disclose a particular forum for filing. First Shull Dec. ¶ 3. In *Chicago Insurance*, the defendant gave "explicit notice of his intention to sue" within forty-eight hours. The plaintiff sued "before the expiration of the forty-eight hour period," and the first-filed complaint was found to be an effort to preempt the defendant's action. *Id.* Here, by contrast, the indirect statements from anonymous sources at the networks (via *The Hollywood Reporter*) were vague.

The cases relied on by the networks are wholly inapplicable to this case, because they all involve direct litigation-related communications between the parties. In *Revise Clothing, Inc. v. Levi Strauss & Co.*, the defendant's attorney sent the plaintiff a cease and desist letter claiming trademark infringement, and threatening litigation. No. 10 Civ. 5843, 2010 WL 4964099, at *1 (S.D.N.Y. Dec. 6, 2010). After receiving the letter, the plaintiff's counsel sent emails to the defendant asking for time to "consider the situation and respond accordingly." *Id.* The plaintiff's attorney wrote another letter stating that he and his clients had vacation plans and needed more time. *Id.* at 2. The ***very next day***, plaintiff filed its declaratory judgment action. *Id.* The networks rely on *Revise Clothing* as a case where "no specific deadlines for litigation were given, but a court nevertheless found the action to be anticipatory based on the plaintiff's

admissions that it expected to be sued." Fox Opp. Brief at 13; Fox MTD Brief at 13  The

networks neglect to mention that in *Revise Clothing* the plaintiff misleadingly induced the

defendant to wait to file suit, and then rushed into court with a declaratory judgment action.

In *Utica Mutual Ins. Co. v. Computer Sciences Corp.*, the defendant sent two letters to the

plaintiff, one demanding payment of unpaid fees and "threaten[ing] to pursue legal action" and

the other extending a settlement offer remaining open until March 14, 2003.  No. 5:03 Civ. 0400,

2004 WL 180252, at *2 (N.D.N.Y. 2004).  The plaintiff filed suit on March 4, 2003, ten days

before expiration of the settlement offer.  *Id.*  The court repeatedly stated that the defendant's

letter, a direct communication, clearly threatened impending litigation.  *Id.* at *3, 4, 5.

In *John Wiley & Sons, Inc.*, the court held that the plaintiff "was clearly operating under

the direct threat of litigation."  2011 WL 5245192, at *8.  The declaratory judgment complaint in

that case included an allegation that the defendant had "retained litigation counsel" who

"threatened to file claims against [the plaintiff]."  *Id.*; *see* Fox Opp. Brief at 14; Fox MTD Brief

at 12.  The networks accurately point out that in *John Wiley & Sons, Inc.*, the plaintiff "filed its

complaint just two and a half weeks ***after its last correspondence with the copyright holder***,"

which aided the court in its finding of an improper anticipatory filing.  Fox Opp. Brief at 14; Fox

MTD Brief at 13 (citing *John Wiley & Sons, Inc.*, 2011 WL 5245192, at *8) (emphasis added).[14]

---

[14]     The other cases cited by the networks similarly involve direct communications.  *See, e.g., Cooperative Centrale Raiffeisen-Boerenleen Bank B.A. v. Nw. Nat'l Ins. Co. of Milwaukee, WI*, 778 F.Supp. 1274, 1278-79 (S.D.N.Y. 1991) (action filed shortly after receiving a notice of default); *Scalora Ellis LLP v. Skyworks Ventures, Inc.*, No. 09 Civ. 10003, 2010 WL 3452381, at *4 (S.D.N.Y. Sept. 1, 2010) (the plaintiff conceded that its action was precipitated by a direct threat from defendants that they would file an immediate action); *Crosman Corp. v. Heckler & Koch, Inc.*, No. 08 Civ. 6034, 2008 WL 4347528, at *5 (W.D.N.Y. Sept. 17, 2008) (the plaintiff filed its action after the defendant provided a draft infringement complaint in settlement negotiations); *Laxman v. Shapiro, P.C.*, No. 06 Civ. 11408, 2006 WL 3423807, at *1, 2 (S.D.N.Y. Nov. 29, 2006) (the plaintiff filed one day after receiving a letter from defendants stating that they would be filing an action in the Eastern District of New York in two days); *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 586 (S.D.N.Y. 1990) (the plaintiff knew that the defendant intended to file an action in Texas); *Gianni Sport Ltd. v. Metallica*, 2000 WL 1773511, at *5 (the plaintiff filed immediately following a settlement offer).

B.     **The Networks, not DISH, are Forum Shopping**

The networks accuse DISH of forum shopping, but it is the networks who have engaged in procedural gamesmanship in the timing and nature of their filings.  The networks should not be rewarded for their coordinated efforts to bring piecemeal duplicative litigation before multiple judges, and for artfully crafting their complaints to avoid New York as a mandatory jurisdiction.

The Second Circuit has held that forum shopping by a second-filing party "does not favor our ignoring the well-settled first filed rule."  *Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986); *see also Employers Ins. of Wausau v. Duplan Corp.*, 1994 WL 637710, at *8 (when the later-filing party forum shops, this counsels against departure from the "first filed" rule.); *cf. Everest Capital Ltd.*, 178 F. Supp. 2d at 469 (weighing interest of justice factor in favor of first-filing party where second-filing party engaged in procedural gamesmanship).

A deliberate filing in a forum different from the one contained in a contractual forum-selection clause is considered forum shopping.  *See Dornoch Ltd. ex rel. Underwriting Members of Lloyd's Syndicate 1209 v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 371 (S.D.N.Y. 2009) (declining to give priority to first-filing party who filed in Virginia "notwithstanding the clear and mandatory agreement between the parties to litigate in New York.")  This is precisely what the CBS entities have done.  CBS strategically chose to have other related entities sue in California and to forego bringing contract claims in an attempt to avoid the forum selection clause in the CBS contract.  CBS asserts that it has no contract claims against DISH, but has not agreed to bind itself to that representation.  Second Echtman Dec. ¶ 8, Ex. 7.  The centrality of the contract claims to this dispute is confirmed by ABC, which has advised that it will be filing an answer and counterclaim in this Court relying on the re-transmission agreement – exactly what DISH assumed was a likely scenario given the vague threats that the network executives

were huddled together poring over agreements.  Fox also confirms that the copyright and contract issues are intertwined, by asserting both contract and copyright claims in California.

To the extent any parties in this action have engaged in a rush to the courthouse, they are Fox, CBS and NBC, as discussed *supra* in "Status of the California Actions."  The networks clearly coordinated in filing their three separate California actions at one-hour intervals on May 24, 2012, and did not take the time to properly and accurately fill out the cover sheets.

DISH brought this action in the only forum with the power to fully and completely resolve its dispute with all four networks.  A declaratory judgment plaintiff "cannot be said to have engaged in forum shopping by selecting a state to which all parties have connections of substance."  *Employers Ins. of Wausau*, 1994 WL 637710, at *9.  In the context of a first-filed dispute, "[f]orum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice." *Oleg Cassini, Inc. v. Serta, Inc.*, No. 11 Civ. 8751, 2012 WL 844284, at *7 (S.D.N.Y. Mar. 13, 2012) (quoting *Everest Capital Ltd.*, 178 F. Supp. 2d at 470).  In *Cassini*, the court made clear that "[a] party who appropriately files a declaratory judgment action in the forum most convenient to him to resolve a ripe legal dispute is not engaged in forum shopping."  2012 WL 844284, at *7 (quoting *Schnabel*, 322 F. Supp. 2d at 513-14).  This is precisely what DISH did.

## II.   DISH IS ENTITLED TO BENEFIT FROM THE FIRST-FILED PRESUMPTION

There is no dispute that DISH filed its action first.  *See, e.g.,* Fox Opp. Brief at 18; CBS/NBC MTD Brief at 2.  That first filing has two legal consequences.  First, the Court sitting in the first-filed jurisdiction decides the threshold venue issue, as the networks concede.  Fox Opp. Brief at 20.  Second, the first-filed plaintiff is entitled to a presumption that its first-filed

action will proceed in the forum it selected.  *Reliance Ins. v. Six Star*, 155 F. Supp. 2d 49, 54

(S.D.N.Y. 2001) (applying first-filed presumption to actions filed one day apart).

 The networks argue that there is no presumption in favor of the first-to-file plaintiff when

the actions are commenced close in time.  There is ample authority, however, that the

presumption applies no matter the time-interval, because it is a bright line rule that avoids

duplication of judicial effort and the danger of inconsistent results.  *Horn & Hardart Co. v.*

*Burger King Corp.*, 476 F. Supp. 1058, 1060-61 (S.D.N.Y. 1979) (two and one-half hour interval

between filings); *see also Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275

(2d Cir. 2008); *Berisford Capital Corp. v. Cent. States, Se. and Sw. Areas Pension Fund*, 677

F.Supp. 220, 225 (S.D.N.Y. 1988).  A short interval alone does not negate the presumption.  *See*

*Transatlantic Reinsurance Co. v. Cont'l Ins. Co.*, No. 03 Civ. 3227, 2003 WL 22743829, at *1

(S.D.N.Y. Nov. 20, 2003) ("the shortness of the interval alone does not provide sufficient

justification for ignoring the order of filing."); *Ivy-Mar Co., Inc. v. Weber-Stephen Products,*

*Co.*, No. 93 Civ. 5973, 1993 WL 535166, at *2 (S.D.N.Y. Dec. 22, 1993).

 The "short interval" authority the networks rely upon is inapposite.  Cases in which the

order of filing is discounted generally find improper anticipatory action.  *See Revise Clothing,*

*Inc.*, 2010 WL 4964099, at *2, *4 (improper anticipatory filing during settlement discussions);

*Don King Prod. Inc. v. Douglas*, 735 F. Supp. 522, 533 (S.D.N.Y. 1990) (improper anticipatory

filing immediately following settlement discussions).  Alternatively, courts have weighed the

duration of the interval against factors of convenience.  *JewelAmerica v. Frontstep Solutions*

*Grp.*, No. 02 Civ. 1328, 2002 WL 1349754, at *1 (S.D.N.Y. June 20, 2002); *Ontel Prods., Inc. v.*

*Project Strategies Corp.*, 899 F. Supp. 1144, 1153 (S.D.N.Y. 1995); *Symbol Tech., Inc. v. Data*

*Gen. Corp.*, No. 96 Civ. 2240, 1996 WL 339996, at *1 (S.D.N.Y. Jun. 20, 1996).  Neither

situation presents itself here, because there was no improper anticipatory filing and, as set forth in DISH's Moving Brief and Section III below, the balance of convenience favors New York.

The networks also attempt to avoid the first-filed presumption by arguing that their California actions differ from DISH's New York action. Fox Opp. Brief at 5-7; Fox MTD Brief at 5-7; CBS/NBC Opp. Brief at 7-10.[15] However, the Second Circuit standard is whether the actions *embrace* the same issues. DISH Moving Brief at 16. DISH easily meets that standard. Both DISH's action and the California actions address the same basic issues – whether DISH's Hopper DVR with PTAT and AutoHop infringe network copyrights or breach the agreements in force between DISH and the networks. The parties need not be the same. *Cassini*, 2012 WL 844284, at *3 ("the named parties need not be entirely the same provided that they represent the same interests"). Likewise, the allegations need not mirror each other. *Mfrs. Hanover Trust Co. v. Palmer Corp.*, 798 F. Supp. 161, 167 (S.D.N.Y. 1992) ("Courts should avoid duplicative litigation whenever possible, and obsessing over slight differences between actions does not promote judicial economy.") The absence of complete overlap only shows that DISH did not know how the networks planned to proceed or exactly what they intended to claim.[16] For example, Fox's inclusion of the Sling technology does not change the fact that its California action focuses upon PTAT and AutoHop, and that the entirety of its claims should be heard here.

The networks criticize DISH for bringing suit against the parent corporations of some of the entities that sued in California, but that is not a sufficient basis to avoid the first-filed rule. In *Spotless Enters. Inc. v. The Accessory Corp.*, 415 F. Supp. 2d 203, 206 (E.D.N.Y. 2006), the court found that, where the first-filed action did not name the plaintiff in the second-filed action,

---

[15]     Fox inconsistently claims that DISH's Complaint is a "mirror image." Fox Opp. Brief at 15.
[16]     The networks argue that DISH did not identify specific copyrights, but if DISH had singled out copyrights in its Complaint, the networks would have argued that they seek relief with respect to others that were not identified. Moreover, copyright filings lag behind the airing of shows, and recent copyrights are not necessarily available.

but instead named its "grandparent company," there was "more than substantial overlap between the cases" and the first-filed rule would apply. In this case, regardless of which affiliated entities are named, the same underlying technology and copyright issues are at the heart of all cases.

The networks further claim that their later-filed actions are broader than DISH's Complaint. The Federal Circuit rejected a similar argument in *Micron Tech., Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 903 (Fed. Cir. 2008). In that case, the Federal Circuit reversed a lower court's dismissal of a first-filed declaratory judgment action on a patent. The Federal Circuit held that a patent holder's commencement of a broader action "carries little weight because a patent holder may often easily file an artificially broader infringement suit to avoid declaratory judgment jurisdiction." *Id.*

The cases upon which the networks rely to avoid the first-filed rule are inapposite. *In re Cuyahoga Equip. Corp.* involved two actions with "separate and distinct parties," not the type of related entities at issue here. 980 F.2d 110, 117 (2d Cir. 1992).[17] The networks also rely upon cases that turn upon standing rules specific to patent actions. *See Xilinx, Inc. v. Invention Inv. Fund I LP*, No. C 11-0671, 2011 WL 3206686 (N.D. Cal. July 27, 2011); *GPM Techs., LLC v. Zicam, LLC*, No. 08 Civ. 7077, 2009 WL 5064762 (N.D. Ill. Dec. 9, 2009); *Top Victory Elec. v. Hitachi Ltd.*, No. C 10-01579, 2010 WL 4722482, at *1 (N.D. Cal. Nov. 15, 2010) ("[S]tanding is not proper for legal claims arising **under the Patent Act**. . . .") (emphasis added). There are different standing requirements for copyright, where "beneficial owners" have standing. 17 U.S.C. § 501(b); *see CBS, Inc. v. PrimeTime 24 Joint Venture*, 76 F. Supp. 2d 1333, 1337 (S.D.

---

[17]     In another case relied upon by CBS and NBC, *Robinson v. Comm'r of Jurors*, the court granted the defendant's motion for judgment on the pleadings because the plaintiff named as defendant the commissioner of a non-existent county, and "failed to name any defendants who might be liable in damages if [the] Court were to find that plaintiff's right [had] been violated." 419 F. Supp. 1189, 1190-91 (S.D.N.Y. 1976).

Fla. 1998) (accepting the argument of CBS, Inc., now known as CBS Broadcasting, Inc., that its

beneficial interests in copyrights were sufficient for standing purposes).

Furthermore, because the CBS and NBC entities named as defendants in this action are

parties to re-transmission agreements with DISH that permit DISH to broadcast their

programming, they plainly have rights to the primetime content at issue in this action.  To the

extent these copyrights are owned by subsidiaries or affiliates, CBS and NBC are sufficiently

related to these subsidiaries to protect their interests.  *See CBS, Inc.*, 76 F. Supp. 2d at 1337.

Indeed, CBS Corporation asserted in an *amicus* filing in this Circuit that it has a strong

interest in copyrights held by its affiliates:

> Through its various subsidiaries and affiliated companies, CBS is
> engaged in the creation and production of original television and
> radio programming and content, gathering news and information,
> and broadcasting, publicly performing, publicly displaying,
> licensing and otherwise distributing its copyrighted programming
> and content. ***As creator and distributor of many of the nation's***
> ***most popular television programs and other content, effective***
> ***copyright protection is crucial to CBS.  As a result, CBS has a***
> ***significant interest in the important issues before this Court***
> ***concerning the interpretation of the Copyright Act***, 17 U.S.C. §§
> 101 *et seq.*, and in particular the Digital Millennium Copyright Act
> provisions codified at § 512 (the DMCA.).  CBS is filing this brief
> because of its significant concerns with the district court's
> decision.  CBS believes that, if not reversed by this Court, that
> decision threatens to impose substantial negative consequences for
> all copyright owners who are subject to mass Internet piracy of
> their works.

*Viacom Int'l Inc. v. Youtube, Inc.*, No. 10-3270, 2010 U.S. 2nd Cir. Briefs LEXIS 186 (2d. Cir.

Dec. 10, 2010) (emphasis added), attached to the Second Echtman Dec. as Ex. 15.

The additional entities related to the defendants in this case that sued DISH in California

may readily be joined in this action, and DISH is prepared to amend its complaint to add them as

defendants, should its motion for an anti-suit injunction be granted.  *GMT Corp. v. Quiksilver*,

No. 02 Civ. 2229, 2002 WL 1788016, at *2 (S.D.N.Y. Aug. 1, 2002) ("This circuit applies the

first-filed rule in favor of a plaintiff who amends his complaint to include issues that his

adversary has raised in a second-filed suit in another district.")

**III.   THE BALANCE OF CONVENIENCE FAVORS DISH'S FIRST-FILED NEW YORK ACTION**

As set forth in DISH's Moving Brief, the balance of convenience favors DISH's first-

filed action in this Court.  The following discussion reinforces that argument.

**A.   The Interests of Justice and Judicial Economy Favor One Action**

The interest in conserving judicial resources and avoiding duplicative litigation is often

determinative in weighing the balance of convenience.  *See Goggins v. Alliance Capital Mgmt.,*

*LP*, 279 F. Supp. 2d 228, 235 (S.D.N.Y. 2003) ("Concerns over judicial efficiency outweigh all

other factors . . . and are dispositive of the issue.").  DISH's action serves that interest by seeking

to resolve its dispute with the networks in one overarching action.  This Circuit has a well-

established "policy favoring the litigation of related claims in the same tribunal in order that

pretrial discovery can be conducted more efficiently, duplic[ative] litigation can be avoided,

thereby saving time and expense for both parties and witnesses, and inconsistent results can be

avoided."  *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968).  Parallel litigation is

"a waste of judicial resources."  *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119

F. Supp. 2d 433, 440 (S.D.N.Y. 2000).

Judicial economy is also best served by consolidating claims that arise out of the same

technology.  Where two actions proceed in parallel, "[a]ny court that hears either case will have

to understand and make decisions about the legal effects of the defendant's [allegedly infringing]

technology and the scope of non-party discovery."  *Columbia Pictures Indus. Inc. v. Fung*, 447

F. Supp. 2d 306, 310 (S.D.N.Y. 2006) (movie studios brought copyright infringement action

against operator of two BitTorrent websites, which contain files enabling users to download

copyrighted movies and television programs); *MasterCard Int'l, Inc. v. Lexcel Solutions, Inc.*,

No. 03 Civ. 7157, 2004 WL 1368299, at *6 (S.D.N.Y. June 16, 2004) ("It would be inefficient

and a waste of judicial resources to subject the same parties to suit over interconnected claims

concerning identical technology and underlying disputes in two separate *fora*.")

**B.     The Locus of Operative Facts Favors New York**

All defendants conduct significant business in New York:  CBS, NBC, and ABC all have

their headquarters here, Fox conducts business within this district, and Fox's parent entity, News

Corporation, is located in this district.  Compl., ¶¶ 10-11, 13; DISH Moving Brief at 5.

Furthermore, the additional parties to the California actions, many of which are New York

corporations or have New York headquarters, are willing to litigate copyright claims in this

district as plaintiffs, as shown by the case of *Am. Broadcasting Cos. Inc., et al. v. Aereo, Inc.*, 12

Civ. 1540, pending before Judge Nathan.  Second Echtman Dec. ¶ 5, Ex. 4 (plaintiffs include:

American Broadcasting Companies, Inc., CBS Broadcasting Inc., CBS Studios Inc.,

NBCUniversal Media, L.L.C., NBC Studios, L.L.C., and Universal Network Television, L.L.C.);

*see also Am. Broadcasting Cos., Inc.et al. v. Flying J, Inc.*, No. 06 Civ. 2967, 2007 WL 583176

(S.D.N.Y., Feb. 22, 2007) (plaintiffs include CBS Broadcasting Company, Fox Broadcasting

Company and Universal Network Television L.L.C.).  These entities have brought numerous

actions in the Southern District.  Second Echtman Dec. ¶ 18.

Although the networks have identified some potential witnesses located outside of New

York, they do not suggest that "witnesses [they] identified would be unwilling to testify in a New

York court without the prodding of a subpoena." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp.

2d 549, 562 (S.D.N.Y. 2000).  In any event, as this court has stated, the location of witnesses

carries little weight when "the practical alternative of offering videotaped or deposition

testimony of a given witness exists." *Reliance Ins.*, 155 F. Supp. 2d at 58 (citations omitted).

Moreover, several of DISH's primary network contacts are located in New York, including high-ranking network executives Martin Franks of CBS and Matt Bond of NBC. Second Shull Dec. ¶¶ 5, 7. DISH has participated in significant meetings in New York with representatives of Fox, CBS and NBC. *Id.*, ¶ 2. DISH also maintains a New York presence, with an office at 185 Varick Street. *Id.*, ¶ 11; Second Echtman Dec. Ex. 5.

In other litigation, CBS has argued for transfer to New York as the most convenient forum. In *Rappaport v. Steven Spielberg, Inc.*, CBS claimed prejudice unless the claims against it were transferred to the Southern District of New York because "'all relevant documents and discovery objects . . . can be expediently gathered' in the Southern District of New York" and, because CBS "is headquartered in New York, the Southern District of New York would be a more convenient forum for its witnesses." 16 F. Supp. 2d 481, 504 (D.N.J. 1998).

With respect to documents, the location of specific documents is not a significant factor in light of modern electronic discovery technology. *Reliance Ins.*, 155 F. Supp. 2d at 57.

**C.      The Contracts Weigh in Favor of New York**

The forum selection provisions in DISH's agreements with CBS and ABC weigh heavily in favor of keeping this dispute in the Southern District of New York. Forum selection clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)); *Weiss v. Columbia Pictures Television*, 801 F. Supp. 1276, 1278 (S.D.N.Y. 1992) ("[O]nce a mandatory choice of forum clause is deemed valid, the burden shifts to the [movant] to demonstrate exceptional facts explaining why he should be relieved from his contractual duty.")

The networks seem to argue that forum selection clauses may easily be disregarded, but they do not cite any New York law to support that proposition. They rely on cases from

Missouri and California. *See, e.g., Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848, 851-52 (8th Cir. 1987) (entire contract was tainted by fraud in the context of a fiduciary relationship, and Missouri public policy disfavored enforcement of forum selection clauses); *James v. UMG Recordings*, Nos. 11 Civ. 1613 SI, 11 Civ. 2431 SI, 2011 WL 5192476 (N.D. Cal. Nov. 1, 2011) (affording forum selection clause little weight where plaintiff's complaint alleged claims under two agreements with the same defendant, and only the earlier-executed agreement contained the forum selection clause). Fox argues that it is not 'bound' by the venue provisions in DISH's contracts with CBS and ABC. Fox Opp. Br. at 25. Fox misses the point. While Fox may not be bound by these provisions, their existence nevertheless leads to the conclusion that the Southern District of New York is best-situated to resolve this dispute.[18]

The fact that DISH's contracts with Fox and NBC are governed by New York law similarly weighs in favor of keeping this action in New York. First Echtman Dec. ¶ 12.[19] Choice-of-law provisions are "of consequence and assistance" in weighing the balance of convenience. *Don King Prods., Inc. v. Douglas*, 735 F. Supp. 522, 535 (S.D.N.Y. 1990). It has long been recognized that "[t]here is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems [in conflict of laws, and] in law foreign to itself." *Engel v. CBS, Inc.*, 886 F.Supp. 728, 733 (C.D. Cal.) (venue transfer to the Southern District of New York as a matter of convenience.) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964)).

---

[18]    Similarly, CBS's argument regarding the scope of its forum selection clause ignores the comprehensive nature of DISH's action and the interplay between the copyright claims and the agreements. *See* CBS/NBC MTD Brief at 11-14; DISH Moving Brief at 18-19. In any event, it certainly covers DISH's contract claim against CBS.
[19]    Fox argues that only the 2010 Amendment of its agreement with DISH includes a New York choice-of-law clause, the rest being governed by Colorado law. Fox Opp. Br. at 23. However, as Fox points out in its own complaint, the 2010 Amendment, which is governed by New York law, represents the most recent iteration of the contractual relationship between DISH and Fox. *See* Fox Complaint; First Echtman Dec. Ex. 4, ¶ 11.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in DISH's Moving Brief, DISH's motion for an anti-suit injunction should be granted, and Fox, CBS and NBC's cross-motions should be denied.

Dated: June 18, 2012

Respectfully submitted,

ORRICK HERRINGTON & SUTCLIFFE LLP

s/Peter A. Bicks

Peter A. Bicks
pbicks@orrick.com
E. Joshua Rosenkranz
jrosenkranz@orrick.com
Elyse D. Echtman
eechtman@orrick.com
51 West 52nd Street
New York, New York 10019-6142
(212) 506-5000

Annette L. Hurst
ahurst@orrick.com
The Orrick Building
405 Howard Street
San Francisco, California  94105-2669
(415) 773-5700

Mark A. Lemley
mlemley@durietangri
Michael Page
MPage@durietangri
Durie Tangri LLP
217 Leidesdorff Street
San Francisco, California  94111
(415) 362-6666

*Attorneys for DISH Network L.L.C.*