UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DISH NETWORK L.L.C.,<br><br>                           Plaintiff,<br><br>     v.<br><br>AMERICAN BROADCASTING COMPANIES, INC., CBS CORPORATION, the FOX ENTERTAINMENT GROUP, INC., FOX TELEVISION HOLDINGS, INC., FOX CABLE NETWORK SERVICES, L.L.C., and NBCUNIVERSAL MEDIA, L.L.C.,<br><br>                           Defendants. | Civil Action No. 12 Civ. 4155 (LTS) (KNF) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF CBS CORPORATION AND NBCUNIVERSAL MEDIA, LLC TO DISMISS, STAY OR TRANSFER THIS ACTION**

Jane G. Stevens
Jeffrey M. Movit
Mitchell Silberberg & Knupp LLP
12 East 49th Street – 30th Floor
New York, NY 10017
(212) 509-3900 (Tel.)
(202) 509-7239 (Fax.)

Robert H. Rotstein (*pro hac vice* pending)
Patricia H. Benson (*pro hac vice* pending)
Jean Pierre Nogues (*pro hac vice* pending)
Mitchell Silberberg & Knupp LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064
(310) 312-2000 (Tel.)
(310) 312-3100 (Fax.)

J. Matthew Williams (*pro hac vice* pending)
Mitchell Silberberg & Knupp LLP
1818 N Street, N.W. – 8th Floor
Washington, D.C. 20036
(202) 355-7900 (Tel.)
(202) 355-7899 (Fax.)

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

    A.    DISH's Declaratory Relief Action Serves No Useful Purpose............................... 1

        1.    DISH Failed to Plead the Actual Dispute Between the Parties. ................. 2

        2.    DISH Did Not Sue the Proper Parties.......................................................... 5

        3.    DISH Failed to Identify the Relevant Copyrighted Works in Dispute. ....... 7

        4.    DISH Does Not Identify the Relevant Contracts or Contract Terms.......... 7

    B.    The California Plaintiffs Properly Filed Notices of Related Cases in California. ................................................................................................................ 8

CONCLUSION............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Automobile Club of New York, Inc. v. The Port Authority of New York and New Jersey*,
   No. 11 Civ. 6746 (RJH), 2011 U.S. Dist. LEXIS 135391 (S.D.N.Y. Nov. 23, 2011)...............6

*Big East Entm't, Inc. v. Zomba Enters., Inc.*,
   453 F. Supp. 2d 788 (S.D.N.Y. 2006)..................................................................................6

*CBS, Inc. v. PrimeTime 24 Joint Venture*,
   76 F. Supp. 2d 1333 (S.D. Fla. 1998) ..................................................................................5

*In re Aimster Copyright Litigation*,
   334 F.3d 643 (7th Cir. 2003) ...............................................................................................5

*John Wiley & Sons, Inc. v. Visuals Unlimited, Ltd.*,
   No. 11 Civ. 5453 (CM) , 2011 U.S. Dist. LEXIS 127635 (S.D.N.Y. Nov. 2, 2011) .................2

*McGee v. State Farm Mutual Automobile Insurance Co.*,
   No. 09 Civ. 3579 (ILG) (RLM), 2011 U.S. Dist. LEXIS 128913
   (E.D.N.Y. Nov. 8, 2011)........................................................................................................8

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005)..............................................................................................................5

*Organic Seed Growers and Trade Assoc. v. Monsanto Co.*,
   No. 11 Civ. 2163 (NRB), 2012 U.S. Dist. LEXIS 25822 (S.D.N.Y. Feb. 24, 2012) ...............8

*Paramount Pictures Corp. v. Video Broad. Servs., Inc.*,
   724 F. Supp. 808 (D. Kan. 1989)..........................................................................................4

*Revise Clothing, Inc. v. Levi Strauss & Co.*,
   No. 10 Civ. 5843 (DAB), 2010 U.S. Dist. LEXIS 130673 (S.D.N.Y. Dec. 6, 2010)................2

*Sony Corp. of America v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984)..............................................................................................................4

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995)..............................................................................................................1

### **STATUTES**

17 U.S.C. § 106(1) ......................................................................................................................3

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

17 U.S.C. § 106(3) ................................................................................................................3

17 U.S.C. § 501(e) ................................................................................................................6

### OTHER AUTHORITIES

C.D. Cal. General Order 10 ..................................................................................................9

C.D. Local Civil Rule 83-1.3 ...........................................................................................9, 10

**PRELIMINARY STATEMENT**

In stark contrast to the actions filed in California, DISH's complaint for declaratory judgment is fundamentally flawed for several reasons: (i) more than a month into this case, DISH still misunderstands the nature and underlying theories of the relevant copyright infringement claims; (ii) the complaint omits nearly all of the relevant registered copyright owners and fails to identify the works as to which DISH seeks a declaration of noninfringement; and (iii) the complaint does not specify the contracts or contract terms that DISH allegedly did not breach. Because DISH's complaint fails to serve a useful purpose for these reasons and others, CBS Corporation ("CBS") and NBCUniversal Media, LLC ("NBCU") respectfully request that the Court exercise its discretion and dismiss, or alternatively transfer or stay, DISH's action.

**ARGUMENT**[1]

A.   **DISH's Declaratory Relief Action Serves No Useful Purpose.**

As noted in CBS/NBCU's moving papers, the Court has discretion over whether to hear a declaratory judgment action. CBS/NBCU motion ("Mot.") 7; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). In deciding whether to exercise jurisdiction, a court should consider whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved, and whether a judgment therein would finally resolve the controversy and offer relief from uncertainty, as well as other equitable and prudential considerations and policy arguments.

---

[1] CBS and NBCU join in those portions of the Fox Parties' reply memorandum that address the anticipatory nature of DISH's lawsuit and the inapplicability of the "first filed" rule, and incorporate those arguments by reference herein.

As discussed in the CBS/NBCU motion, DISH's action fails to serve such a purpose. Nothing in DISH's opposition/reply ("Opp.") leads to a contrary conclusion.[2]

### 1. DISH Failed to Plead the Actual Dispute Between the Parties.

Where a pending coercive suit more comprehensively presents the issues between the parties, there is little, if any, reason for a court to entertain a declaratory relief action. *See John Wiley & Sons, Inc. v. Visuals Unlimited, Ltd.*, No. 11 Civ. 5453 (CM), 2011 U.S. Dist. LEXIS 127635, at *15 (S.D.N.Y. Nov. 2, 2011) ("One of the most important considerations that may induce a court to deny declaratory relief is that the judgment sought would not settle the controversy between the parties.") (internal citation omitted); *Revise Clothing, Inc. v. Levi Strauss & Co.*, No. 10 Civ. 5843 (DAB), 2010 U.S. Dist. LEXIS 130673, at *14 (S.D.N.Y. Dec. 6, 2010) ("This action serves no such purpose, since the Defendant's infringement action followed closely on the heels of the instant action."). As discussed in both the CBS/NBCU motion (Mot. 8) and the Fox motion (Fox Mot. 7), DISH's complaint asks the Court to "enter a judgment declaring that DISH has not, willfully or otherwise, directly or indirectly infringed any copyright owned by the Major Television Networks by providing the Auto Hop technology to its customers for their use in playback of recorded PrimeTime Anytime shows." Compl. ¶ 45.

---

[2] DISH's opposition, moreover, is predicated on clearly inadmissible evidence, to which CBS and NBCU object. The second Echtman declaration consists of rank hearsay such as newspaper articles (¶¶ 4, 6, 17, Exs. 3, 5, 16); self-serving letters of DISH's counsel (¶¶ 8, 9, Exs. 7, 8); unattributed statements by unidentified persons (¶ 2); improper argument (¶ 5 (what a transcript and case caption "show"), ¶¶ 8, 9 (quoting counsel's own letters and asserting what Ms. Echtman "understands")); and irrelevancies (¶ 5, Ex. 4 (transcript and caption from unrelated action), ¶¶ 10-14, 17, Exs. 4, 9-13 (orders and stipulations extending time to respond in California action), ¶17, Ex. 16 (ten-year old interview of former CEO of entity that is not a party to any of the pending lawsuits)). And, apart from Mr. Shull's statements about who he personally has been in "contact" with, his second declaration is based on "information provided… by others" (¶ 1) or his "understanding" (¶¶ 6, 8, 9) and is thus hearsay, irrelevant, or without foundation as to personal knowledge.

2

Even assuming *arguendo* that DISH were entitled to such relief (and emphatically, it is not), the relief would not resolve the entire dispute between the parties.

Perhaps the most telling evidence that DISH's lawsuit fails to serve a useful purpose is its fundamental misunderstanding of the nature of the copyright owners' legal claims and its insistence that this case solely turns on the Auto Hop feature in isolation. In the first place, the California plaintiffs each allege that DISH, through its PrimeTime Anytime ("PTAT") service, engages in direct infringement by copying the California plaintiffs' copyrighted primetime programming seven-days-a-week and distributing copies of that programming to DISH subscribers, in violation of 17 U.S.C. §§ 106(1) and 106(3), respectively. DISH's complaint does not mention that dispute.[3]  Second, and even more to the point, it is now abundantly clear that DISH utterly fails to comprehend the copyright owners' claims relating to Auto Hop. DISH apparently believes that the dispute over Auto Hop turns on who owns the copyright in the *commercials* and on whether the commercials are actually deleted or modified rather than skipped. Opp. 8, n. 6, 10, n. 9. That is not what this dispute is about, as the complaints in the California actions make clear. Rather, the dispute over Auto Hop exists because, among other infringing conduct, DISH induces the recording of massive amounts of primetime programming *and* the viewing of that programming with the commercials automatically skipped in their entirety, thereby harming numerous markets for the copyrighted works. As a result, through the interrelationship of Auto Hop and PTAT and the massive recording capabilities of DISH's

---

[3] In an attempt to salvage its deficient pleading, DISH claims that its complaint puts the PTAT service "at issue." Opp. 8-9. DISH is incorrect.  While DISH's complaint *boasts* about the PTAT feature (Compl. ¶¶ 5, 19-22), it nowhere asks for a declaration of noninfringement regarding the PTAT service. Rather, DISH seeks relief only as to Auto Hop.  *See* Compl. ¶ 38 ("DISH's provision of the Auto Hop feature to its customers does not directly or indirectly infringe copyrights.").

3

Hopper, DISH is also secondarily liable for copyright infringement under theories of inducement, contributory infringement, and vicarious liability.

Contrary to DISH's assertion, *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 434-34, *reh'g. den.*, 465 U.S. 1112 (1984) ("*Sony-Betamax*"), does not excuse its infringing conduct.  In *Sony-Betamax*, the Supreme Court narrowly held in a 5-4 decision that the one type of time-shifting at issue – viewer copying of specific individual over-the-air television shows for later viewing and then erasure – was fair use because such conduct did not harm an existing or potential market for the copyrighted works.  *Sony-Betamax*, 464 U.S. at 421 (finding fair use because "the average member of the public uses a VTR principally to record a program he cannot view as it is being televised and then to watch it once at a later time … [which] enlarges the television viewing audience").   Significantly, in analyzing market harm, the Court noted that the technology of that era made commercial skipping impractical and that the vast majority of VCR users were actually exposed to commercials.  *Id*. at 453, n. 36.  Here, in contrast, the act of recording *all* of the primetime television content on all of the major networks and then automatically skipping commercials – thereby creating, through self-help, a premium commercial-free video-on-demand channel – constitutes a fundamentally different use of the copyrighted programming and manifestly harms numerous markets for those copyrighted works.  It therefore radically alters the fair use calculus conducted by the *Sony-Betamax* Court.[4]  Accordingly, unlike the conduct at issue in *Sony-Betamax*, the act of copying *all* primetime

---

[4] *Paramount Pictures Corp. v. Video Broad. Servs., Inc.*, 724 F. Supp. 808, 819-21 (D. Kan. 1989), which DISH cites, is inapposite.  In that case, the court held that *adding* a commercial to the beginning of a videotape did not create a *derivative* work.  Here, the issue is whether copying primetime television content for viewing with automatic commercial skipping harms the copyright owners' markets, thereby obviating a claim of fair use.

4

television programming and then using Auto Hop to skip entire commercials automatically is manifestly *not* fair use.  *See In re Aimster Copyright Litigation*, 334 F.3d 643, 647-48 (7th Cir. 2003) (copying with commercial skipping is "unquestionably infringing"), *cert. denied*, 540 U.S. 1107 (2004).[5]  Without question, DISH is at least secondarily liable for that wholesale infringing conduct.[6]  In any event, DISH's focus on the irrelevant issue of copyright ownership of the commercials underscores how its barebones complaint fails to identify the actual dispute between the parties and therefore serves no useful purpose.

### 2. DISH Did Not Sue the Proper Parties.

DISH states in its opposition that it is prepared to amend its complaint to add the California Plaintiffs as defendants.  Opp. 2, n. 2, 20.[7]  The reason for this offer is obvious – DISH failed to identify the proper defendants (*i.e.*, the registered copyright owners).  DISH nonetheless claims that CBS and NBCU can stand in for the other parties as "beneficial owners." Opp. 5.  The case on which DISH relies, *CBS, Inc. v. PrimeTime 24 Joint Venture*, 76 F. Supp. 2d 1333, 1336-1337 (S.D. Fla. 1998), does not support that tortuous argument.

In *PrimeTime 24*, owners of broadcast networks sued a satellite television provider for copyright infringement.  The defendant argued that plaintiff CBS, Inc., despite being the

---

[5] Citing Justice Breyer's concurrence in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 955 (2005), DISH misleadingly argues that *In re Aimster* is not good law.  But Justice Breyer's *Grokster* concurrence – which said nothing on the issue of whether copying programs for the purpose of commercial skipping constitutes fair use – is, of course, not the law.  In fact, the unanimous opinion of the Court in *Grokster*, authored by Justice Souter, cited *In re Aimster* with approval (*id.* at 929), as did Justice Ginsburg in her concurring *Grokster* opinion, which Justices Kennedy and Rehnquist joined (*id.* at 944).

[6] DISH submits and refers to a 2002 interview with the former CEO of Turner Broadcasting System. Opp. 10, n.10. That document, and the argument based on it, are patently irrelevant.

[7] DISH incorrectly claims that two of the plaintiffs in California, Open 4 Business Productions LLC and Universal Networks Television LLC, are New York limited liability companies.  Opp. 4.  In fact, both are Delaware limited liability companies (with principal places of business in California).  *See* First Echtman Decl., Ex. 5, ¶ 10.

5

copyright owner, lacked standing to sue because it had granted an exclusive license to its local affiliate to transmit programming via satellite.[8] The court rejected this argument and held that even if the plaintiff had granted such an exclusive license, it would remain a beneficial owner with standing to sue because it would retain a right to receive royalty payments from its licensee.[9]

Here, however, DISH does not make a similar claim. Instead, DISH argues that CBS and NBCU are the correct parties to sue merely because their upstream licensors – the registered copyright owners and California plaintiffs – are "wholly-owned subsidiaries." Opp. 5. This argument is meritless. *See Big East Entm't, Inc. v. Zomba Enters., Inc.*, 453 F. Supp. 2d 788, 797 (S.D.N.Y. 2006), *aff'd*, 2008 U.S. App. LEXIS 322 (2d Cir. Jan. 8, 2008).[10] Because DISH sued no registered copyright holders of programming that aired on the CBS Television Network and only one copyright owner of programming that aired on the NBC Network (Mot. 6), the more equitable and efficient course is to dismiss DISH's complaint and proceed in California, where the plaintiffs include the registered copyright owners.

---

[8] CBS Corporation, the entity that DISH has sued here, neither operates the broadcast television network nor owns the registered copyrights. *See* Burton Declaration, ¶¶ 2-3.

[9] The defendant also claimed that CBS lacked standing under a specific provision of the Copyright Act (17 U.S.C. § 501(e)) related to certain satellite transmissions, which are not at issue here.

[10] Neither does CBS' participation as an *amicus curiae* in a separate lawsuit support DISH's contention that CBS is the proper party. Opp. 20. Of course, "effective copyright protection is crucial to CBS," (*id.*) but that is irrelevant. The standards for filing an *amicus* brief and establishing standing are distinct. *See Automobile Club of New York, Inc. v. The Port Authority of New York and New Jersey*, No. 11 Civ. 6746 (RJH), 2011 U.S. Dist. LEXIS 135391, at * 6 (S.D.N.Y. Nov. 23, 2011).

### 3. DISH Failed to Identify the Relevant Copyrighted Works in Dispute.

As discussed in detail in the CBS/NBCU motion (Mot. 7-8), DISH's complaint also fails to identify the specific copyrighted works at issue. In a footnote (Opp. 18, n. 16), DISH claims that this should not matter because (1) "if DISH had singled out copyrights in its Complaint, the networks would have argued that they seek relief with respect to others that were not identified" and (2) "copyright filings lag behind the airing of shows, and recent copyrights are not necessarily available." Neither of these arguments has merit. DISH's infringement is so massive that it might, theoretically, have been unable to identify every infringed work, but it certainly could have identified some of the works at issue at issue. Indeed, DISH need only have checked the primetime schedule and searched the records of the Copyright Office to have avoided this deficiency.

DISH also misses another crucial point: because its lawsuit cannot adjudicate the rights in unidentified copyrighted works that the unnamed parties own, to make its lawsuit complete, DISH would have to amend to bring those works and those parties within the scope of the complaint. That will be unnecessary if the California actions are allowed to proceed. For this reason, too, equity and efficiency require dismissal, transfer, or stay of this action.

### 4. DISH Does Not Identify the Relevant Contracts or Contract Terms.

As discussed in the CBS/NBCU motion, DISH's complaint also fails to serve a useful purpose because it does not identify the contracts as to which DISH seeks declaratory relief.[11]

---

[11] Although DISH claims that it declined to identify (even by title or date) any specific contracts because the contracts have confidentiality provisions (Opp. 6), that certainly did not stop DISH from purporting to quote contract provisions in its motion for a temporary restraining order or its other papers. DISH could have identified the contracts and provisions at issue by name, date, and paragraph number.

7

*See McGee v. State Farm Mutual Automobile Insurance Co.*, No. 09 Civ. 3579 (ILG) (RLM), 2011 U.S. Dist. LEXIS 128913, at * 25 (E.D.N.Y. Nov. 8, 2011) (collecting cases holding that claim for breach of contract must identify specific contract and terms at issue). DISH argues that its failure to identify the contracts should not matter because the defendants should know the contracts to which DISH refers. Opp. 6. DISH is incorrect: there is simply no way for CBS/NBCU to determine what contractual provisions DISH believes are in dispute, particularly because the California plaintiffs did not assert contract claims.

DISH argues that the contract claims remain in dispute because CBS and NBCU have declined to covenant not to sue DISH for breach of contract. *Id.* That is not the law. A party does not have to covenant not to sue for a court to conclude that there is no threatened contract claim supporting a request for declaratory relief. *See Organic Seed Growers and Trade Assoc. v. Monsanto Co.*, No. 11 Civ. 2163 (NRB), 2012 U.S. Dist. LEXIS 25822, at **24-25 (S.D.N.Y. Feb. 24, 2012) ("the failure to sign a covenant not to sue borders on the wholly irrelevant").[12]

### B. The California Plaintiffs Properly Filed Notices of Related Cases in California.

In its repeated attempt to obfuscate the issues, DISH asserts that the California plaintiffs failed to alert the courts in the Central District of California that their cases and the Fox case were related. DISH's assertion bespeaks either a complete misunderstanding of Central District

---

[12] DISH further claims that the forum selection clause in its contract with CBS Corporation requires any case between DISH and CBS to proceed in New York. Opp. 24, n. 18. However, as discussed in the CBS/NBCU motion (Mot. 12), as a matter of Second Circuit law, the copyright infringement claims do not arise out of or under contracts between DISH and CBS. Unable to dispute this controlling authority, DISH's opposition simply ignores it.

8

procedure or an intentional attempt to mislead and distract this Court. In fact, the California plaintiffs filed the required notices of related case at the earliest possible time.

The facts are these: the civil cover sheet that accompanies a complaint for filing does have a line item to identify related cases. Declaration of Jean P. Nogues ("Nogues Declaration"), ¶ 2. However, that line item requires a case number, and is obviously intended to include cases whose numbers are known to the filing party at the time that the complaint is sent out for filing. More significantly, the box on the civil cover sheet is *not* what triggers the mechanism by which cases are related. Rather, it is the formal notice of related case (discussed below) that triggers the inquiry whether a case will be related. *Id.* ¶ 3.

On the day the California actions were commenced, the Fox complaint was filed by the law firm of Jenner & Block. Counsel for the California CBS/NBCU plaintiffs had no control over that filing. The NBCU and CBS complaints were filed by the law firm of Mitchell Silberberg & Knupp ("MSK"). *Id.* ¶¶ 1-2. When those complaints were sent to court for filing, MSK did not know the case number in the Fox action, nor the case numbers that would be assigned, respectively, to the NBCU and CBS actions. Thus, there was no way for MSK to have filled in the information in the civil cover sheet. *Id.* ¶ 2.

In any event, as noted above, the civil cover sheet is not what causes separate actions to be related. Central District Local Civil Rule 83-1.3 provides that counsel shall file a notice of related case as soon as the related case is known. This document is a separate filing and is what triggers judicial inquiry into whether cases should be related. *Id.* ¶ 3. The Local Rules of the Central District require that the notice be filed by ECF. *See* C.D. Cal. General Order 10.

9

Manual filing is not allowed. The notices of related case were filed within *minutes* of the cases being available for ECF filing. *Id.* ¶ 4. For DISH to suggest that counsel for CBS/NBCU would flout their obligations under Local Rule 83-1.3 is both disingenuous and nothing short of insulting.[13]

## CONCLUSION

For the foregoing reasons and those set forth in their moving papers, CBS and NBCU respectfully ask the Court to exercise its discretion and grant their motion to dismiss, transfer, or stay DISH's action.

DATED:   June 21, 2012
         New York, New York

                                    Respectfully submitted,

                                    MITCHELL SILBERBERG & KNUPP LLP

                                    By:   /s/ Jane G. Stevens
                                          Jane G. Stevens
                                          12 East 49th Street – 30th Floor
                                          New York, NY 10017
                                          jgs@msk.com (Email)
                                          (212) 509-3900 (Tel.)
                                          (202) 509-7239 (Fax.)

---

[13] Neither is there merit to DISH's assertion that if the case does not go forward in New York there will be three separate California actions. Opp. 2, 21-22. On the contrary, the three California cases will undoubtedly be consolidated if this Court dismisses DISH's complaint. Given the Court's order enjoining the Fox defendants from pursuing the action, CBS and NBCU, in accordance with the Court's direction, have taken no action to prosecute the California actions and thus have refrained from bring a motion to consolidate. DISH says that ABC will not contest jurisdiction in New York. What DISH does not say (and cannot say) is that ABC would object to litigating in California – and ABC does not.