## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DISH NETWORK, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN BROADCASTING COMPANIES, INC., CBS CORPORATION, FOX ENTERTAINMENT GROUP, INC., FOX TELEVISION HOLDINGS, INC., FOX CABLE NETWORK SERVICES, L.L.C., and NBC UNIVERSAL MEDIA, L.L.C., <br><br> Defendants. | Civil Action No.:12-cv-4155 (LTS)(KNF) <br><br><br> **ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT AMERICAN BROADCASTING COMPANIES, INC. AND COUNTERCLAIM OF COUNTERCLAIMANTS ABC, INC., AMERICAN BROADCASTING COMPANIES, INC., AND DISNEY ENTERPRISES, INC.** |
| ABC, INC., AMERICAN BROADCASTING COMPANIES, INC., AND DISNEY ENTERPRISES, INC., <br><br> Counterclaimants, <br> v. <br><br> DISH NETWORK CORPORATION, AND DISH NETWORK, L.L.C., <br><br> Counterclaim Defendants. | |

## <u>ANSWER</u>

Defendant American Broadcasting Companies, Inc., through its undersigned counsel, submits this Answer to Plaintiff DISH Network, L.L.C.'s Declaratory Judgment Complaint. In response to the numbered paragraphs of Plaintiff's Declaratory Judgment Complaint, American Broadcasting Companies, Inc. responds as follows:

1.     American Broadcasting Companies, Inc. denies the allegations in Paragraph 1 that are directed to it, except to admit that Plaintiff seeks declaratory relief and to aver that it is filing Counterclaims together with this Answer.  With regard to the allegations that are directed to other defendants, American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies them, except to admit that the other defendants commenced litigation on the same day that this litigation commenced.

2.     American Broadcasting Companies, Inc. either denies the allegations in Paragraph 2, or is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies them, except to admit that Plaintiff is a pay-television provider and delivers satellite television services to its subscribers.

3.     American Broadcasting Companies, Inc. denies the allegations in Paragraph 3 that are directed to it, except to admit that Plaintiff (originally through its predecessor, EchoStar Satellite, L.L.C.) is a party to a Retransmission Consent Agreement with ABC, Inc.  With regard to the allegations that are directed to other defendants, American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies them.

4.     American Broadcasting Companies, Inc. either denies the allegations in Paragraph 4, or is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies them, except to admit that the Hopper contains a two-terabyte hard drive, and that Plaintiff offers a service called "PrimeTime Anytime," which records in HD all of the HD primetime TV programming on ABC, CBS, FOX, and NBC, and

stores these shows for eight days after they have aired, storing approximately 100 hours of primetime TV shows on the DISH-controlled portion of each Hopper device.

5.     American Broadcasting Companies, Inc. either denies the allegations in Paragraph 5, or is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies them, except to admit that "Auto Hop" currently appears to operate only in connection with television programs recorded through PrimeTime Anytime, does not appear to work on live broadcasts, and eliminates commercials completely.

6.     The allegations in Paragraph 6 about the history of the use of VCRs and DVRs are too broad and general to be susceptible of a response.  To the extent a response is required, American Broadcasting Companies, Inc. either denies the allegations in Paragraph 6, or is without knowledge or information sufficient to form a belief as to the truth of those allegations, and on that basis, denies them, except to admit that the VCR was introduced before the DVR.

7.     American Broadcasting Companies, Inc. denies the allegations in Paragraph 7 that are directed to it except to aver that it is filing Counterclaims together with this Answer. With regard to the allegations that are directed to other defendants, American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies them except to admit that the other defendants commenced litigation on the same day that this litigation commenced.

8.     American Broadcasting Companies, Inc. denies the allegations in Paragraph 8, except to admit that Plaintiff seeks a declaratory judgment.

9.     American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of this allegation and, on that basis, denies it.

10.     Admitted.

3

11.     American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of this allegation and, on that basis, denies it.

12.     American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 and, on that basis, denies them.

13.     American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 and, on that basis, denies them.

14.     American Broadcasting Companies, Inc. denies the allegations in Paragraph 14, except to admit that Plaintiff seeks a declaratory judgment.

15.     American Broadcasting Companies, Inc. admits that this Court has jurisdiction over claims arising under the Copyright Act but denies that Plaintiff has stated a valid copyright claim.

16.     American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 and, on that basis, denies them, except to admit that the amount in controversy exceeds the jurisdictional threshold.

17.     American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 and, on that basis, denies them, except to admit that venue is proper in this district as to it.

18.     American Broadcasting Companies, Inc. either denies the allegations in Paragraph 18, or is without information sufficient to form a belief as to the truth of those

allegations and, on that basis, denies them, except to admit that a DVR is an electronic device that records video in digital format.

19.    American Broadcasting Companies, Inc. either denies the allegations in Paragraph 19, or is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies them.

20.    American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 and, on that basis, denies them.

21.    American Broadcasting Companies, Inc. denies the allegations in Paragraph 21, except to admit that the "PrimeTime Anytime" service records in HD all of the primetime HD TV programming on ABC, CBS, Fox and NBC, records three hours of primetime programming from each of ABC, CBS, Fox and NBC every night, and makes all of that primetime programming available for a full eight days.

22.    American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 and, on that basis, denies them.

23.    American Broadcasting Companies, Inc. either denies the allegations in Paragraph 23, or is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies them, except to admit that the "Auto Hop" service eliminates commercials during playback.

24.    The allegations in Paragraph 24 are too broad and general to be susceptible of a response.  To the extent a response is required, American Broadcasting Companies, Inc. either

denies the allegations in Paragraph 24, or is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies them.

25.    The allegations in Paragraph 25 about viewer behavior over the course of decades are too broad and general to be susceptible of a response.  To the extent a response is required, American Broadcasting Companies, Inc. either denies the allegations in Paragraph 25, or is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies them.

26.    The allegations in Paragraph 26 are too broad and general to be susceptible of a response.  To the extent a response is required, American Broadcasting Companies, Inc. either denies the allegations in Paragraph 26, or is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies them.

27.    American Broadcasting Companies, Inc. denies the allegations in the second sentence of Paragraph 27 that are directed to it.  With regard to the allegations that are directed to other defendants, American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies them. The remaining allegations in Paragraph 27 about DISH subscribers are too broad and general to be susceptible of a response.  To the extent a response is required, American Broadcasting Companies, Inc. either denies such allegations, or is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies them.

28.    American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 and, on that basis, denies them.

29.     American Broadcasting Companies, Inc. denies the allegations in Paragraph 29 or is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies them.

30.     American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 and, on that basis, denies them, except to admit that Auto Hop does not appear to work on live television broadcasts.

31.     American Broadcasting Companies, Inc. denies the allegations in Paragraph 31 as to it, except to admit that Plaintiff is a party to a Retransmission Consent Agreement with ABC, Inc. American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 31 and, on that basis, denies them.

32.     American Broadcasting Companies, Inc. denies the allegations in Paragraph 32 and avers that litigation has been commenced.

33.     American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33—which are not directed to American Broadcasting Companies, Inc.— and, on that basis, denies them.

34.     American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 and, on that basis, denies them.

35.     American Broadcasting Companies, Inc. is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35—which are not directed to American Broadcasting Companies, Inc.— and, on that basis, denies them.

36.     American Broadcasting Companies, Inc. denies the allegations in Paragraph 36 and avers that litigation has been commenced.

37.     American Broadcasting Companies, Inc. repeats and incorporates its responses to paragraphs 1-36.

38.     American Broadcasting Companies, Inc. denies the allegations in Paragraph 38 and avers that litigation has been commenced.

39.     American Broadcasting Companies, Inc. denies the allegations in Paragraph 39.

40.     American Broadcasting Companies, Inc. denies the allegations in Paragraph 40.

41.     American Broadcasting Companies, Inc. repeats and incorporates its responses to paragraphs 1-40.

42.     American Broadcasting Companies, Inc. denies the allegations in Paragraph 42 and avers that litigation has been commenced.

43.     American Broadcasting Companies, Inc. denies the allegations in Paragraph 43.

44.     American Broadcasting Companies, Inc. denies the allegations in Paragraph 44.

45.     All allegations not specifically admitted are denied, and it is further denied that Plaintiff is entitled to any of the relief requested.

## DEFENSES AND AFFIRMATIVE DEFENSES

Without any admission as to the burden of proof or as to any of the averments in the Declaratory Judgment Complaint, American Broadcasting Companies, Inc. sets forth the following defenses and affirmative defenses.

## FIRST DEFENSE

The Declaratory Judgment Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

The Declaratory Judgment Complaint names as a party to the contract claim an entity, American Broadcasting Companies, Inc., that is not a party to any contract with Plaintiff and fails to name as a party the entity, ABC, Inc., which is the party to the relevant agreement with Plaintiff (originally through its predecessor).

## THIRD DEFENSE

This Court lacks subject-matter jurisdiction over the copyright claims relating to American Broadcasting Companies, Inc. because the Declaratory Judgment Complaint fails to identify a registered copyright in dispute.

## FOURTH DEFENSE

The Declaratory Judgment Complaint's claims for equitable relief are barred by the doctrine of unclean hands.

## FIFTH DEFENSE

The Declaratory Judgment Complaint's claims for equitable relief are barred by the doctrines of equitable estoppel or waiver.

## SIXTH DEFENSE

The Declaratory Judgment Complaint is an improper anticipatory filing and fails to identify all of the issues and all of the parties that are necessary to resolve the existing controversy.  The direct claims stated by the Counterclaimants are more comprehensive and will fully resolve the controversy among all of the parties.  The Court, therefore, should exercise its discretion not to entertain the Declaratory Judgment Complaint.

## COUNTERCLAIMS

As and for their Counterclaims against DISH Network Corporation and DISH Network, L.L.C. (collectively, "DISH"), ABC, Inc., American Broadcasting Companies, Inc., and Disney Enterprises, Inc. (collectively, the "ABC Parties") allege as follows:

### INTRODUCTION

1.     ABC, Inc. and DISH Network, L.L.C. are parties to a 2005 Digital Retransmission Consent Agreement ("2005 Agreement") that grants DISH limited rights to retransmit to its subscribers the digital broadcast television signal of ten (now eight) stations owned by ABC, Inc. or its affiliated companies (the "Digital Signal").  The Digital Signal includes some of the most popular primetime television programming available in the United States and around the world, *e.g., Grey's Anatomy, Private Practice,* and *Once Upon a Time* (the "ABC Programming").  The 2005 Agreement was negotiated and agreed to pursuant to the parties' mutual understanding that a material benefit ABC, Inc. would receive for granting DISH these retransmission rights was advertising revenue from commercials that formed part of the Digital Signal DISH is authorized to distribute.  For this reason, ABC, Inc. granted DISH the right to retransmit the Digital Signal to its subscribers without payment of any fee for the Digital Signal.

2.     In breach of its obligations to ABC, Inc. under the 2005 Agreement, DISH recently launched its PrimeTime Anytime and Auto Hop services.  Through these services, DISH copies the entire primetime lineup of programs on all four major television networks for subsequent playback on an on-demand, commercial-free basis.  DISH characterizes its services as "innovative," but the only truly "innovative" thing about DISH's approach is that, unlike legitimate providers of on-demand and commercial-free services, DISH

has neither sought authorization from nor paid consideration to the ABC Parties.  DISH asserts that it is offering these services to benefit customers, but its actions are in fact designed to secure for itself an unfair advantage over competitors who play by the rules and honor their contractual obligations.  DISH claims that it is merely facilitating what consumers can already do, but its actions in fact threaten the financial structure that supports the over-the-air programming on which consumers rely.  The production, licensing and distribution of high-quality television programming—as DISH well knows—is enormously expensive, and the ability of the ABC Parties to sell commercial air-time to potential advertisers is critical to their ability to continue to produce high-quality programming in the future.

3.      DISH's actions will deprive the ABC Parties of the right to receive critical advertising benefits that were contemplated under the 2005 Agreement and upset the economic assumptions underlying that Agreement.  DISH well knows that ABC, Inc. would not have been willing to enter into the 2005 Agreement if ABC, Inc. had been aware that DISH would turn its limited access to the Digital Signal into a vehicle for offering the ABC Programming on a commercial-free, on-demand basis to DISH subscribers.  DISH also well knows that authorized providers of on-demand services disable fast-forwarding during commercials, and that authorized providers of commercial-free programming provide compensation to make up for the absence of advertising revenue.

4.      DISH's advertising makes clear that PrimeTime Anytime and Auto Hop are intended to provide "on demand access" to the ABC Programming on a commercial-free basis.  DISH's website announces its new services in large capital letters: "WATCH COMMERCIAL-FREE TV . . . you can automatically skip commercials in primetime TV - on ABC, CBS, FOX and NBC in HD."  Notably, DISH has not enabled Auto Hop on cable

channels (such as ABC Family) on which DISH is given the right to sell commercial time for its own benefit. Instead, DISH only targets commercial advertising that does not affect its own advertising revenue.

5. Unlike authorized providers of on-demand and commercial-free services, DISH has not negotiated with ABC, Inc. or its affiliated companies to obtain the right to offer such services or agreed to any of the financial and other terms on which DISH knows such rights would be conditioned. Indeed, DISH has made it no secret that the PrimeTime Anytime and Auto Hop services are intended to secure a competitive advantage—in fact, an unfair one—over services that provide legitimate on-demand and commercial-free versions of the ABC Programming.

6. The ABC Parties make their programming available to the public on a variety of media platforms—over the air, through cable and satellite providers, over the internet, and through packaged media—live and on-demand, with commercials and commercial-free. In so doing, the ABC Parties actively engage to meet consumers' demand for convenient and innovative alternatives to traditional ways of watching their favorite programs. As the owners of copyrighted content and the Digital Signal, the ABC Parties are legally entitled to control the manner of distribution and exhibition, as well as the economic and non-economic terms on which their programming is available on those platforms. DISH's actions interfere with the ABC Parties' control over the distribution and exhibition of the ABC Programming and the Digital Signal and threaten to destroy the economic model that underpins the 2005 Agreement and that allows the ABC Parties to continue to create quality programming in the future.

7.     In addition to breaching its contract with ABC, Inc., DISH's actions constitute massive and ongoing copyright infringement.   Copyright law (set forth in the Copyright Act, 17 U.S.C. § 101, *et seq.*) provides copyright owners with the exclusive right to reproduce, adapt, distribute, and publicly perform and display their copyrighted television programming, or to authorize others to exercise those rights.   Every night, DISH willfully infringes the copyrights on the ABC Programming, thereby causing the copyright owners of all of these programs irreparable harm and exposing DISH to liability for substantial damages.

## THE PARTIES

8.     Counterclaimant ABC, Inc. is a New York corporation with its principal place of business at 77 West 66th Street, New York, New York.   It is a party to the 2005 Agreement.

9.      Counterclaimant American Broadcasting Companies, Inc. is a Delaware corporation with its principal place of business at 77 West 66th Street, New York, New York.   American Broadcasting Companies, Inc. is actively engaged in the production and distribution of television programs and other copyrighted works (including its own copyrighted properties).

10.     Counterclaimant Disney Enterprises, Inc. is a Delaware corporation with its principal place of business at 500 South Buena Vista Street, Burbank, California.   Disney Enterprises, Inc. is actively engaged in the licensing of its copyrighted properties.

11.     On information and belief, Counterclaim-Defendant DISH Network, L.L.C. ("DISH Network") is a Colorado company.   DISH Network was previously known as EchoStar Satellite L.L.C.

12.     On information and belief, Counterclaim-Defendant DISH Network Corporation ("DISH Corp.") is a Nevada corporation with its principal place of business in Colorado.  On information and belief, DISH Network is wholly-owned by DISH Corp.

## JURISDICTION

13.     This civil action seeks damages and injunctive relief for breach of contract and breach of the implied covenant of good faith and fair dealing.  It also seeks injunctive relief and actual or statutory damages for copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq.*

14.     This Court has jurisdiction over the breach of contract claims pursuant to 28 U.S.C. § 1332.  Counterclaimants and Counterclaim-Defendants are diverse in citizenship and the amount in controversy exceeds the statutory minimum.

15.     This Court has exclusive subject matter jurisdiction over the claims for copyright infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a), because these claims arise under the Copyright Act, 17 U.S.C. § 101, *et seq.*  In addition, the contract claims fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), because the contract claims form part of the same case and controversy as the copyright claims.

16.     This Court has personal jurisdiction over DISH because DISH does continuous, systematic, and routine business in New York.

## GENERAL ALLEGATIONS

17.     The ABC Parties and certain affiliated companies each play a role in licensing, scheduling and distributing television programming, primarily through a broadcast television network (the "ABC Television Network").  The ABC Television Network provides broadcast programming to eight broadcast stations owned by ABC, Inc. or its affiliates (the

"Owned Stations") and to more than 200 other broadcast stations across the United States (together with the Owned Stations, the "ABC Stations").  The ABC Stations are granted the right to broadcast the programming provided by the ABC Television Network within each station's community of license.

18.     The ABC Stations carry programming from a variety of sources, including programming produced by the stations themselves (e.g., local news programming); programming supplied to them by the ABC Parties; and programming licensed from other third parties (e.g., local sports and syndicated programming).  During primetime, the programming transmitted by the ABC Stations is primarily supplied by the ABC Parties.

19.     Considerable resources are expended every year by the ABC Parties and others to develop and produce high-quality, creative and popular television programs (including the ABC Programming) for exhibition on the ABC Stations and elsewhere, which are viewed by an audience of millions of people in the United States and around the world.  Developing and producing high-quality, creative programming requires a significant financial investment— anywhere from hundreds of thousands of dollars to multiple millions of dollars per hour of programming.

20.     The ABC Parties either hold the copyrights in, or have a license to distribute, the ABC Programming.  The copyrights in the ABC Programming protect the right of the ABC Parties to determine, among other things, the manner in which the ABC Programming is distributed.  This protection, in turn, encourages the investment in and creation of additional creative television programming.

21.     Disney Enterprises, Inc. and American Broadcasting Companies, Inc. (together, the "ABC Copyright Holders") are the legal and beneficial owners of the copyrights

in much of the ABC Programming, including such popular and critically-acclaimed programs as *Grey's Anatomy, Private Practice,* and *Once Upon a Time*.  A non-exhaustive list of the copyrights held by the ABC Copyright Holders is set forth in Schedule A to this Counterclaim.

22.     Each of the programs listed in Schedule A is an original audiovisual work that has been fixed in a tangible medium of expression and constitutes copyrightable subject matter within the meaning of section 102 of the Copyright Act, 17 U.S.C. § 102.  Each such program has been or will be registered with the United States Copyright Office.

23.     With respect to the programs listed in Schedule A, the ABC Copyright Holders have complied in all respects with 17 U.S.C. § 101, *et seq.*, and all other laws governing federal copyrights, including by obtaining or applying for copyright registration certificates for each such work.

**A.      The ABC Parties' Ability To Produce And Distribute The ABC Programming Depends On Their Receipt Of Commercial Advertising Revenues.**

24.     Consistent with the economic structure of free "over-the-air" network television, the ABC Parties recoup the costs of creating or licensing the ABC Programming primarily by generating advertising revenue and licensing the right to exhibit that programming by various means to a wide variety of parties.  Without this revenue, it would not be possible to produce and distribute the ABC Programming on over-the-air television.

25.     As any consumer of over-the-air network television knows, commercials are shown at periodic intervals during the broadcast or other transmission of the ABC Programming.  The ABC Parties sell commercial time or "spots" to advertisers that use that time to promote their own products or services.  As DISH is fully aware, the sale of advertising time has traditionally been the primary source of television revenue for over-the-air networks.

16

The higher the viewership for a particular program, the more advertisers will pay for spots in which to present commercials during that program. Primetime programming typically attracts the most viewers, and spots for commercials during primetime command the highest price. This revenue structure has directly benefited DISH, along with other satellite and cable providers, in the negotiation of retransmission consent agreements (like the 2005 Agreement) with ABC, Inc. or its affiliated companies.

26.     Although advertising continues to be the central source of revenue for commercial network television, the ABC Parties also generate revenues from license fees and other related forms of revenue when they offer ABC Programming, including their copyrighted programs, through different distribution channels, which may or may not include advertising. By introducing PrimeTime Anytime and Auto Hop, DISH seeks to compete directly with some of these other alternative distribution methods, but without obtaining authorization from, or providing compensation or any other forms of consideration to, the ABC Parties.

27.     For example, the ABC Parties enter into agreements with cable and satellite providers that make the ABC Programming available on-demand for viewing at designated times after the initial over-the-air broadcast. These licensed services, often referred to as "VOD" (Video-On-Demand) services, are generally ad-supported. DVR fast-forwarding functionality is disabled for commercials on these VOD services during viewing. In addition, the ABC Parties' VOD license agreements require cable and satellite operators to agree to limit on-demand viewing to the availability periods set by the ABC Parties.

28.     The ABC Programming also is viewable on-demand over the Internet at designated times after the initial over-the-air broadcast, including at www.abc.com, through the websites of licensed providers such as Comcast, and at other authorized websites, including

www.hulu.com.  This is another ad-supported way of viewing the ABC Programming.  When the ABC Programming is streamed over the Internet through authorized services, it is not possible for viewers to skip or fast-forward through the commercials.

29.     The ABC Programming is also available in commercial-free formats. For a per-episode fee, consumers can obtain access to commercial-free versions of the ABC Programming from iTunes or Amazon.  For a subscription fee, consumers can obtain access to commercial-free versions of past seasons of ABC programming from Netflix.  Consumers can also purchase copies of ABC programming without commercials in various formats, including on DVD and Blu-ray Discs.

30.     In sum, the ABC Parties and their authorized licensees provide viewers with a host of options that allow them to view the ABC Programming on a variety of platforms, including platforms that allow for on-demand and commercial-free viewing.  Unlike legitimate licensees, DISH provides its on-demand and commercial-free services without authorization from the ABC Parties and without agreeing to terms that protect the ABC Parties' ability to derive ad revenue crucial to the creation and distribution of the ABC Programming.

**B.     The 2005 Agreement Grants DISH Limited Rights To Deliver The ABC Programming.**

31.     In 2005, DISH Network's predecessor, EchoStar Satellite L.L.C., negotiated and entered into the 2005 Agreement with ABC, Inc., acting on its own behalf and on behalf of ten Owned Stations (currently eight) that collectively, as of 2005, reached 24% of the nation's television households.  Dish Network replaced EchoStar as the party to the 2005 Agreement under a 2009 Amendment.  The 2005 Agreement authorizes DISH Network to retransmit the Digital Signal to DISH's subscribers.

18

32.     The 2005 Agreement does not permit, and in fact prohibits, DISH's wholesale copying, or its authorization of wholesale copying by its subscribers, of the ABC Programming for later on-demand viewing.

33.     Section 12 of the 2005 Agreement provides as follows:

> Except as provided herein, [DISH] shall not, for pay or otherwise, record, copy, duplicate, retransmit, and/or authorize the recording, copying, duplication or retransmission of any portion of any Digital Signal without the prior written consent of Broadcaster.  The foregoing shall not preclude [DISH's] practice of connecting subscribers' home recording devices such as VCRs or DVRs . . . .

The intent of Section 12 was, among other things, to make clear that DISH would not be permitted to make a copy itself, or to grant permission (explicitly or implicitly) to anyone else to make a copy, of the ABC Programming, except by connecting home recording devices owned by DISH's subscribers that at the time permitted only the recording of single programs (or at most two programs at a time).

34.     Section 2(a)(1) of the 2005 Agreement requires DISH to transmit the Digital Signal (which consists of, among other things, the video and audio stream, including advertising, and the closed-captioning information) "in its original form and without interruption, editing, time delay, alteration . . . , insertion, deletion, commercial or other addition of any type."  The intent of this provision was, among other things, to ensure that subscribers received on their television screens an unaltered depiction of the Digital Signal, complete with the commercial advertising included in the Digital Signal.

35.     The 2005 Agreement was negotiated and agreed to pursuant to the parties' mutual understanding that advertising revenue was a critical, material benefit ABC,

Inc. would receive from the arrangement: commercial advertising would form part of the Digital Signal that was transmitted to—and viewed by—DISH subscribers and ABC, Inc. would derive revenue from that commercial advertising.  It was on the basis of this mutual understanding that ABC, Inc. granted DISH the right to retransmit the Digital Signal to its subscribers without DISH's payment of any per-subscriber fee to ABC, Inc.

###### C.    DISH Has Used The Copyrighted ABC Programming To Create An Unauthorized, Commercial-Free, On-Demand Service.

36.    DISH recently began to offer what it calls a Hopper Whole-Home HD DVR System (the "Hopper") to its subscribers.  The Hopper is a set-top box that DISH leases to subscribers who purchase certain packages of services from DISH.  The Hopper contains a two-terabyte hard drive that has been partitioned into two sections, one of which is controlled by DISH and one of which is controlled by the subscriber.

37.    With the Hopper, DISH began offering its PrimeTime Anytime service, which automatically records all of the primetime programming of the four major networks— ABC, CBS, Fox, and NBC—to the DISH-controlled portion of the Hopper's hard drive.

38.    DISH also recently began to offer an Auto Hop service, which makes copies of network primetime programming available to DISH subscribers in a commercial-free form.

39.    DISH provides the PrimeTime Anytime service to those DISH subscribers who pay for a certain level of service and lease the Hopper from DISH.  Other than deciding whether to subscribe to the PrimeTime Anytime service, a DISH subscriber makes no decisions whatsoever about what programming is recorded by the PrimeTime Anytime service. Instead, DISH records all of the programming aired each night by the four broadcast networks during primetime hours (8 to 11 pm Monday through Saturday, 7 to 11 pm Sunday).  It stores

that recorded programming to a section of the Hopper's partitioned 2-terabyte hard drive that is controlled by DISH.  As DISH explains to consumers, "PrimeTime Anytime doesn't take up any of your personal DVR space."   http://www.dish.com/redirects/promotion/offer15/ (last accessed June 22, 2012).

40.     Indeed, DISH has provided its subscribers no choices once they subscribe to the Primetime Anytime service.  DISH will only copy the entire primetime schedule for all four broadcast networks wholesale, including programs that a particular DISH subscriber has no interest in and will never watch.  In fact, an individual subscriber cannot even stop the copying performed by the PrimeTime Anytime service while it is in progress, prevent a scheduled recording, or delete a recorded program from the DISH-controlled portion of the hard drive.

41.     Not only has DISH engaged in wholesale and unauthorized copying, but through its Auto Hop service DISH has made its unauthorized "on demand library of approximately 100 hours primetime of TV shows" available for viewing without commercials.

42.     Auto Hop operates only on the primetime network programming recorded by DISH through PrimeTime Anytime, and not on non-primetime programming, cable programming or any other programming recorded with the DVR that resides on the user-controlled section of the Hopper's hard drive.

43.     According to DISH's Auto Hop Quick Start Guide, Auto Hop works as follows:

> Here's where Auto Hop comes into play. When you are ready to watch your recorded PrimeTime Anytime content, simply open the PrimeTime Anytime or DVR menu screen. You will see a small Hopper (red kangaroo) icon beside each show that you may watch commercial free.

21

> When you select a show with the Hopper icon, a
> pop-up message will appear on screen that asks
> whether you want to enable Auto Hop. Choose
> 'yes,' and simply sit back and watch the show
> commercial free. Choose 'no,' and watch with the
> commercials intact.

http://press.dishnetwork.com/getattachment/6f7fb8c8-59cd-46ca-9d6d-e57f8433988c/DISH-

Hopper-s-Auto-Hop?disposition=attachment (last accessed June 22, 2012).

44.      The Quick Start Guide fails to explain that when a DISH subscriber

selects a program for playback that DISH has enabled for AutoHop, if the subscriber just hits

"enter" or clicks through the pop-up screen that appears, the Auto Hop service will provide a

commercial-free version of that program.  Only if the DISH subscriber specifically moves the

cursor to click "No" is Auto Hop disabled.  Auto Hop is thus enabled by default, and the DISH

subscriber must affirmatively choose *to disable* Auto Hop.

45.      Auto Hop is, as the Quick Start Guide explains, "not like fast-

forwarding":  "Once you have chosen Auto Hop for your show, you can put the remote control

down; you've enabled Auto Hop's patented technology to skip the commercials during your

show automatically."   When viewing the ABC Programming with the Auto Hop service

enabled, a DISH subscriber no longer views the commercials that form part of the Digital

Signal provided to DISH under the 2005 Agreement.  Instead of viewing those commercials, a

DISH subscriber briefly sees DISH's own kangaroo icon, which signifies that a commercial has

been eliminated.

**D.      The ABC Parties Will Suffer Irreparable Harm Unless DISH Is Enjoined
         From Continuing Its Unlawful Conduct.**

46.      DISH's actions have caused the ABC Parties and others to suffer

irreparable harm.

22

47.     Unless enjoined, DISH's illegal conduct will irreparably injure the ABC Parties in numerous ways that are incapable of calculation or redress through monetary damages.  DISH's actions, if not enjoined, will also cause harm to the public by reducing the incentive to create quality programming and undermining the economic foundation of free television.

### COUNT I

**(Breach of Contract - Section 12 of the 2005 Agreement)**

48.     ABC, Inc. incorporates each and every allegation set forth in paragraphs 1-47 above as if fully set forth herein.

49.     ABC, Inc. and DISH Network, previously EchoStar Satellite L.L.C., are parties to the 2005 Agreement.

50.     ABC, Inc. has fully performed all obligations required of it under the 2005 Agreement, except to the extent prevented or excused by DISH Network's breaches or other wrongful conduct.

51.     DISH Network has breached Section 12 of the 2005 Agreement by recording, copying and duplicating—or by authorizing the recording, copying and duplicating of—the Digital Signal without the prior written consent of ABC, Inc.

52.     ABC, Inc. has been damaged as a direct and proximate result of DISH Network's breach.

53.     As a result of DISH Network's breach, ABC, Inc. has suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money.

## COUNT II

### (Breach of Contract - Implied Covenant of Good Faith and Fair Dealing)

54.     ABC, Inc. incorporates each and every allegation set forth in paragraphs 1-47 above as if fully set forth herein.

55.     By providing all of ABC's primetime programming to its subscribers on a commercial-free basis, DISH Network has deprived ABC, Inc. of a critical, material benefit of the 2005 Agreement—the advertising revenue associated with the ABC Programming—and thereby breached the implied covenant of good faith and fair dealing in the Agreement.

56.     ABC, Inc. has been damaged as a direct and proximate result of this breach.

57.     As a result of this breach, ABC, Inc. has suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money.

## COUNT III

### (Direct Copyright Infringement)

58.     The ABC Copyright Holders incorporate each and every allegation set forth in paragraphs 1-47 above as if fully set forth herein.

59.     Through the operation of its PrimeTime Anytime service, DISH has reproduced and distributed, and unless enjoined will continue to reproduce and distribute, the ABC Copyright Holders' copyrighted works, including but not limited to the programs listed in Schedule A (the "Works"), without the permission or consent of the ABC Copyright Holders.

60.     By engaging and imminently engaging in these acts, DISH is violating and will imminently violate the ABC Copyright Holders' exclusive rights in violation of 17 U.S.C. § 106, including sections 106(1) and 106(3), and 17 U.S.C. § 501.

24

61.     Each infringement of the ABC Copyright Holders' rights in each of the Works constitutes a separate and distinct act of infringement.

62.     DISH's acts of infringement are willful, intentional, purposeful, and in disregard of the ABC Copyright Holders' rights under the Copyright Act.  DISH knows that its acts are infringing and intentionally or recklessly disregards the law by its conduct.

63.     The ABC Copyright Holders have been damaged as a direct and proximate result of the infringing acts set forth above.

64.     As a result of DISH's willful copyright infringement, the ABC Copyright Holders have suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money.

## COUNT IV

### (Inducement of Copyright Infringement)

65.     The ABC Copyright Holders incorporate each and every allegation set forth in paragraphs 1-47 above as if fully set forth herein.

66.     The ABC Copyright Holders allege the following as an alternative to their direct infringement claim in the event that DISH establishes that the unlawful copying described herein is done solely by its subscribers:

67.     By providing and promoting PrimeTime Anytime and Auto Hop to subscribers for the wholesale reproduction and on-demand, commercial-free viewing of every Work broadcast during primetime, DISH has induced and is inducing direct infringement of the ABC Copyright Holders' exclusive rights under 17 U.S.C. § 106, including section 106(1).

68.     The unauthorized copying of the Works is a violation of the ABC Copyright Holders' exclusive rights under 17 U.S.C. § 106.  Among other things, and without

limitation, this conduct amounts to the unauthorized reproduction of the ABC Copyright Holders' copyrighted works.  The ABC Copyright Holders have not authorized or consented to this infringement.

69.     DISH has induced these infringing acts by creating and providing the Hopper product and the PrimeTime Anytime and Auto Hop services with the intent that these services be used for the purpose of infringement, and by promoting the use of these services for infringement, as evidenced by the advertisements, press releases, interviews and product user manuals, all of which encourage subscribers in the unlawful use of PrimeTime Anytime and Auto Hop to create on-demand libraries of commercial-free, primetime network television programming.

70.     DISH has purposefully promoted the use of the PrimeTime Anytime and Auto Hop services for infringement, including by:

a.   Marketing the Hopper and the PrimeTime Anytime and Auto Hop services expressly for the purpose of copying and creating libraries that include the Works and viewing those libraries in an on-demand, commercial-free format; and

b.   Expressly marketing the Hopper and the PrimeTime Anytime and Auto Hop services as substitutes for licensed methods of accessing the Works, such as Hulu and iTunes.

71.     DISH's acts of inducement are willful, intentional, purposeful, and in disregard of the ABC Copyright Holders' rights under the Copyright Act.  DISH knows that its acts are inducing infringing acts and intentionally or recklessly disregards the law by its conduct.  The ABC Copyright Holders have not authorized DISH's acts.

26

72.     The ABC Copyright Holders have been damaged as a direct and proximate result of the infringing acts set forth above.  As a result of DISH's willful inducement of copyright infringement, the ABC Copyright Holders have suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money.

### COUNT V

### (Vicarious Copyright Infringement)

73.     The ABC Copyright Holders incorporate each and every allegation set forth in paragraphs 1-47 above as if fully set forth herein.

74.     As an additional alternative theory to their direct infringement claim, in the event that DISH establishes that the unlawful copying described herein is solely done by its subscribers, the ABC Copyright Holders allege the following:

75.     By providing PrimeTime Anytime and Auto Hop to subscribers for the wholesale reproduction and on-demand, commercial-free viewing of every Work broadcast during primetime, DISH has and is engaged in vicarious infringement of the ABC Copyright Holders' exclusive rights under 17 U.S.C. § 106, including section 106(1).

76.     The unauthorized copying of the Works is a violation of the ABC Copyright Holders' exclusive rights under 17 U.S.C. § 106.  Among other things, and without limitation, this conduct amounts to the unauthorized reproduction of the ABC Copyright Holders' copyrighted works.  The ABC Copyright Holders have not authorized or consented to this infringement.

77.     DISH has the right and ability to supervise and control the infringing conduct of its subscribers and has failed to exercise that right and ability.

27

78.    DISH's right and ability to control the instrumentalities of infringement is apparent from, among other things, DISH's control over and ability to dictate which programs are recorded as part of the PrimeTime Anytime service, its control over the operation of portions of the Hopper device itself, and its ability, at any time, to withdraw the PrimeTime Anytime and Auto Hop services.

79.    In addition, DISH's regular involvement is an indispensable link in its subscribers' infringing conduct.  Without the daily transmissions by DISH to the Hopper device, and the technical support provided by DISH staff, DISH subscribers would not be able to engage in the infringing conduct.

80.    DISH has a direct financial interest in the infringement by DISH subscribers of the ABC Copyright Holders' exclusive rights in the Works.  DISH leases the Hopper box to customers for a monthly fee; it also charges an enhanced subscription fee for the package that includes the PrimeTime Anytime and Auto Hop services.  DISH has attracted, obtained and retained subscribers as a result of the infringing capabilities of the PrimeTime Anytime and Auto Hop services.  Indeed, DISH's economic success is directly tied to the popularity of the infringing conduct that it seeks to encourage.  PrimeTime Anytime and Auto Hop were expressly designed to create unauthorized copies of primetime network programming for on-demand, commercial-free viewing and are the Hopper's principal selling points.  DISH considers the infringing capabilities provided by PrimeTime Anytime and Auto Hop to be important to DISH's ability to secure an unfair competitive advantage over alternative providers, such as iTunes and Hulu, which lawfully license the right to offer the Works, including (in the case of iTunes) in a commercial-free format.

81.   DISH's acts of vicarious infringement are willful, intentional, purposeful, and in disregard of the ABC Copyright Holders' rights under the Copyright Act. DISH knows that its acts are vicariously infringing and intentionally or recklessly disregards the law by its conduct. The ABC Copyright Holders have not authorized DISH's acts.

82.   The ABC Copyright Holders have been damaged as a direct and proximate result of the infringing acts set forth above.

83.   As a result of DISH's willful vicarious copyright infringement, the ABC Copyright Holders have suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money.

## COUNT VI

## (Contributory Copyright Infringement)

84.   The ABC Copyright Holders incorporate each and every allegation set forth in paragraphs 1-47 above as if fully set forth herein.

85.   As an additional alternative theory to their direct infringement claim, in the event that DISH establishes that the unlawful copying described herein is solely done by its subscribers, the ABC Copyright Holders allege the following:

86.   By providing PrimeTime Anytime and Auto Hop to subscribers for the wholesale reproduction and on-demand, commercial-free viewing of every Work broadcast during primetime, DISH has contributed and is contributing to the direct infringement of the ABC Copyright Holders' exclusive rights under 17 U.S.C. § 106, including section 106(1).

87.   The unauthorized copying of the Works is a violation of the ABC Copyright Holders' exclusive rights under 17 U.S.C. § 106. Among other things, and without limitation, this conduct amounts to the unauthorized reproduction of the ABC Copyright

Holders' copyrighted works.  The ABC Copyright Holders have not authorized or consented to this infringement.

88.     DISH is liable under the Copyright Act for the infringing acts of DISH subscribers as a contributory copyright infringer.

89.     DISH knows or has reason to know of the actual or imminent infringing acts of its subscribers.

90.     DISH, through its own conduct, has participated in, facilitated, assisted, enabled, materially contributed to, encouraged, induced, and/or caused the infringing activity of its subscribers.  Indeed, DISH actively promotes the infringements as a reason to purchase its products and services, and creates, markets and distributes tools and offers services that are indispensable to these infringements, including the Hopper and the PrimeTime Anytime and Auto Hop services.  DISH continuously facilitates the infringing acts of its subscribers by, among other things, encouraging and enabling them to use PrimeTime Anytime to copy the Works, storing the unauthorized copies on the DISH-controlled section of the Hopper's hard drive, and making activation of the Auto Hop service the default setting.

91.     DISH's acts of contributory infringement are willful, intentional, purposeful, and in disregard of the ABC Copyright Holders' rights under the Copyright Act. DISH knows that its acts are contributorily infringing and intentionally or recklessly disregards the law by its conduct.  The ABC Copyright Holders have not authorized DISH's acts.

92.     The ABC Copyright Holders have been damaged as a direct and proximate result of the infringing acts set forth above.

93.     As a result of DISH's willful contributory copyright infringement, the ABC Copyright Holders have suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money.

## PRAYER FOR RELIEF

WHEREFORE, the ABC Parties pray for judgment as follows:

A. On Count I, for damages for breach of contract (Section 12) in an amount to be determined at trial and for an order preliminarily and permanently enjoining and restraining DISH and its officers, agents, servants, and employees and all those in active concert or participation with them, from making the PrimeTime Anytime service available to its subscribers;

B. On Count II, for damages for breach of contract (the implied covenant of good faith and fair dealing) in an amount to be determined at trial and for an order preliminarily and permanently enjoining and restraining DISH and its officers, agents, servants, and employees and all those in active concert or participation with them, from making the Auto Hop service available to its subscribers;

C. On Counts III-VI, for an order pursuant to 17 U.S.C. § 502 preliminarily and permanently enjoining and restraining DISH and its officers, agents, servants, and employees and all those in active concert or participation with them, from directly committing, aiding, encouraging, enabling, inducing, causing, materially contributing to, vicariously infringing, or otherwise facilitating the infringement of the ABC Copyright Holders' exclusive rights under the Copyright Act, including but not limited to the infringements alleged with respect to the PrimeTime Anytime and Auto Hop

services, or from authorizing any other person to do the same;

D.  On Counts III-VI, for an award of compensatory and statutory damages, costs, and reasonable attorneys' fees in accordance with 17 U.S.C. §§ 504 and 505 and other applicable law;

E.  Such further and additional relief as the Court may deem just and appropriate.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP


By: _____/s/_____

    Kevin T. Baine
    Thomas G. Hentoff (subject to admission *pro hac vice*)
    Hannah M. Stott-Bumsted (admission pending)
    Stephen J. Fuzesi
    James M. McDonald (subject to admission *pro hac vice*)
    725 Twelfth Street, N.W.
    Washington, DC 20005
    Telephone: (202) 434-5000
    Facsimile: (202) 434-5029
    E-Mail: kbaine@wc.com

    Attorneys for ABC, Inc., American Broadcasting
    Companies, Inc. and Disney Enterprises, Inc.


June 22, 2012