UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

DISH NETWORK, L.L.C.,

        Plaintiffs,

-v-                                                  No. 12 Civ. 4155 (LTS)(KNF)

AMERICAN BROADCASTING COMPANIES,
INC. et al.,

        Defendants.

-----------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

On May 24, 2012, Dish Network, L.L.C. ("Plaintiff" or "Dish"), filed this action against American Broadcasting Companies, Inc. ("ABC"), CBS Corp. ("CBS"), NBCUniversal Media ("NBCU"),[1] Fox Entertainment Group, Inc., Fox Television Holdings, Inc., and Fox Cable Network Services, L.L.C. (collectively "Fox" and, together with CBS/NBCU, "Defendants" or the "Networks") seeking a declaratory judgment that its "Auto Hop" technology does not infringe the copyrights of the Networks and ABC or breach its license agreements with those entities. Dish now seeks to enjoin litigation, filed in the United States District Court for the Central District of California within three hours after Dish commenced its action in this Court, by the Networks in which Fox and CBS/NBCU and certain of their affiliated entities assert that Dish's PrimeTime Anytime ("PTAT") and "Auto Hop" television programming recording and playback services infringe the Networks' programming copyrights and in which

---

[1]     CBS Corporation and NBCUniversal Media are collectively referred to throughout as "CBS/NBCU."

Fox asserts that the services violate Dish's licensing agreement with that Network.[2] On May 30, 2012, this Court granted Dish's application for a temporary restraining order prohibiting Fox from prosecuting its California action pending the Court's determination of Dish's application for an anti-suit injunction staying prosecution of all of the California litigation in favor of this declaratory injunction action.

There are now three motions before the Court: (1) Dish's motion for an anti-suit injunction to enjoin the Networks from prosecuting their suits in the Central District of California; (2) Fox's motion to dismiss Dish's declaratory judgment action as an improper anticipatory suit; and (3) CBS/NBCU's motion under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss, transfer, or stay Dish's action. The Court heard oral argument on the motions on July 2, 2012, and has considered thoroughly all of the parties' submissions. For the following reasons, Dish's motion for an anti-suit injunction is denied, Fox's motion is granted in its entirety, and CBS/NBCU's motion is granted in part and denied in part.

BACKGROUND

This suit arises out of Dish's introduction of a new digital video recorder ("DVR") system called the "Hopper," which is outfitted with PTAT and Auto Hop features. In brief, PTAT permits viewers to record simultaneously, and in high-definition ("HD") format, all of the HD primetime TV programming on ABC, CBS, Fox and NBC. The recordings are stored for eight days after they originally aired. (Compl. ¶ 4.) Auto Hop enables viewers, with the

---

[2] ABC is the only network named in Dish's complaint that did not file suit in the Central District of California. While ABC has filed an Answer and Counterclaims to Dish's declaratory judgment complaint in this Court, ABC has stated that it does not object to litigating its claims in the Central District of California.

touch of a button, to skip the commercials in replaying the primetime recordings. (Id. ¶ 5.)

The addition of the Auto Hop feature on May 10, 2012, prompted what Dish has characterized as a "barrage of negative media attacks" by the Networks. (Memo. in Support of TRO, at 2.) At least one Network executive characterized the feature to reporters as "illegal." (See Ex. 2 to Declaration of Elyse D. Echtman, docket entry no. 12.) On May 23, 2012, the Hollywood Reporter published an article[3] containing unsourced statements that four major broadcast networks – Fox Broadcasting, NBCUniversal, ABC/Disney Television Group and CBS Corp. – "have begun consulting with major law firms with the expectation that litigation will be filed against Dish." (Compl. ¶ 34.) The article reported that the "networks are said to be examining their Dish license agreements, looking for breaches of contract that can be alleged along with claims for copyright infringement," and that "[one] top exec said a lawsuit should be expected within a month." (Id.) Dish filed this action the following day, stating in its complaint that "the Major Television Networks have threatened [Dish] with litigation." (Id. ¶ 1.) Dish's action seeks a declaratory judgment that its Auto Hop technology does not infringe the copyrights of the Networks and ABC or breach its license agreements with those entities. Dish's 13-page complaint does not identify which copyrights are at issue, nor does it specify the license agreement provisions as to which it seeks declaratory relief. The complaints filed in the California actions, whose plaintiffs include the alleged copyright holders, are far more detailed with respect to the copyrights and contract provisions allegedly infringed.

Dish argues that (1) under the first-filed rule, this action is entitled to priority, and

---

[3] See "Dish vs. TV Networks: Attorneys Readying Showdown Over Auto Hop," Hollywood Reporter, May 23, 2012, available at: http://www.hollywoodreporter.com/thr-esq/dish-auto-hop-tv-networks-lawsuit-327958 (last visited July 8, 2012).

(2) due to the forum selection clauses in its contracts with ABC and CBS (which Dish has indicated it will not waive), this is the only forum in which all the issues identified by the parties may be resolved. In their motions to dismiss, transfer, and/or stay this action, the Networks argue principally that Dish's complaint is an improper anticipatory filing, and that this Court should not afford it the presumption of priority accorded by the first-filed rule and should decline to exercise jurisdiction of Dish's requests for relief under the Declaratory Judgment Act.

## DISCUSSION

I.  Legal Standards

  A.  The First-Filed Rule

The first-filed rule contemplates that "[w]here there are two competing lawsuits, the first should have priority." Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc., 522 F.3d 271, 274-75 (2d Cir. 2008). The rule does not require that the lawsuits present exactly the same issues, only that the cases be related, as they are here. See GT Plus, Ltd. v. Ja–Ru, Inc., 41 F. Supp. 2d 421, 427 n.2 (S.D.N.Y. 1998). The first-filed rule "embodies considerations of judicial administration and conservation of resources by avoiding duplicative litigation." First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 80 (2d Cir. 1989). Because parties "should be free from the vexation of concurrent litigation over the same subject matter," there is a strong presumption that a later lawsuit will be dismissed in favor of the first-filed lawsuit. Adam et al. v. Jacobs, 950 F.2d 89, 93 (2d Cir. 1991); see also City of New York v. Exxon Corp., 932 F.2d 1020, 1025 (2d Cir. 1991) ("[W]here an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action.").

The presumption in favor of the first-filed suit, however, "is not to be applied in a

'rigid' or 'mechanical' way." Dornoch Ltd. v. PBM Holdings, Inc., 666 F. Supp. 2d 366, 369 (S.D.N.Y. 2009) (quoting Columbia Pictures Indus., Inc. v. Schneider, 435 F. Supp. 742, 747 (S.D.N.Y. 1977)). Indeed, "[t]he complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion." Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2006). In particular, the Second Circuit has held that the presumption of priority accorded the first-filed suit will give way "(1) where the 'balance of convenience' favors the second-filed action, and (2) where 'special circumstances' warrant giving priority to the second suit." Employers Ins. of Wausau, 522 F.3d at 275. Such special circumstances include the situation in which "the first-filed lawsuit is an improper anticipatory declaratory judgment action." Id. at 275. "An improper anticipatory lawsuit is one made under the apparent threat of a presumed adversary filing the mirror image of that suit in another court." Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 55 (S.D.N.Y. 2001). Defendants contend that Dish's action is just such an improper anticipatory lawsuit and should be denied the presumption of priority.

B.   The Declaratory Judgment Act

Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), a court "may declare the rights and other legal relations of any interested party seeking such a declaration" in "a case of actual controversy." An "actual controversy" exists if there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 388 (2d Cir. 2005) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). The disagreement must "have taken on a fixed and final shape so that a court can see what legal issues it is deciding." Jenkins v. United States, 386 F.3d 415, 418 (2d Cir. 2004)

(quoting Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 244 (1952)).

It is left to the discretion of the district court to decide whether to hear declaratory relief claims. Wilton v. Seven Falls Co., 515 U.S. 277, 289-90 (1995). "The Second Circuit has provided two factors to help district courts properly exercise the broad discretion conferred by the Declaratory Judgment Act: '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Bentley v. The Wellpoint Companies, Inc., No. 11 Civ. 8963(CM), 2012 WL 546991, at *4 (S.D.N.Y. Feb. 17, 2012) (quoting Continental Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992)). In deciding whether to exercise its permissive jurisdiction, the district court may consider "equitable, prudential, and policy arguments." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136 (2007). One of the primary purposes of declaratory relief is to promote efficiency – i.e., to allow "one action to define the legal relationships and adjust the attendant rights and obligations at issue between the parties." Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394, 405 (S.D.N.Y. 2002); UBS Sec. LLC v. Finish Line, Inc., 07 Civ. 10382 (LAP), 2008 WL 536616, at *3 (S.D.N.Y. Feb. 22, 2008) (the Declaratory Judgment act is designed to "avoid multiplicity of actions").

However, "[i]f a court finds that a declaratory judgment action was brought in anticipation of the coercive suit for the purpose of gaining 'home field advantage,' the coercive suit is given precedence." Reliance Ins. Co. v. Bend'N Stretch, Inc., 935 F. Supp. 476, 478 (S.D.N.Y. 1996); see also, Nat'l Union Fire Ins. Co. v. Int'l Wire Group, Inc., No. 02 Civ. 10338, 2003 WL 21277114, at *6 (S.D.N.Y. June 2, 2003) ("Courts in the Second Circuit have repeatedly refused to exercise jurisdiction over declaratory actions motivated by a desire to wrest

the choice of forum from the real plaintiff."); Great Am. Ins. Co. v. Houston Gen. Ins. Co., 735 F. Supp. 581, 586 (S.D.N.Y. 1990) ("[T]he misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action."); Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394, 440 (S.D.N.Y. 2002) ("A rush to file first in anticipation of litigation in another tribunal, thereby enabling a potential defendant to choose the forum and governing law by which to adjudicate the dispute, and otherwise to interfere with or frustrate the other party's pursuit of claims elsewhere, is one of the equitable considerations a court may weigh in ruling on a request for declaratory relief."); Perez v. Ledesma, 401 U.S. 82, 119 n. 12 (1971) (Brennan, J. dissenting) ("The federal declaratory judgment is not a prize to the winner of a race to the courthouses.").

Moreover, courts have found no "useful purpose" and declined to exercise jurisdiction over a declaratory judgment complaint where a coercive suit exists that will settle the legal issues for which declaratory judgment was sought. See, e.g., Amusement Indus. v. Stern, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010) (citing cases).

The Court thus considers whether dismissal of Dish's declaratory judgment claims is appropriate to the extent that mirror coercive claims have been raised by the "natural" plaintiffs (i.e., the Defendants who claim that their copyright and contractual rights are being violated) in California.

II.     Whether Dish's Complaint is an Improper Anticipatory Filing

The Second Circuit has stated that, for a declaratory judgment action to be properly treated as anticipatory and denied priority under the first-filed rule, the action must have been "filed in response to a direct threat of litigation that gives specific warnings as to deadlines

and subsequent legal action." Emp'rs Ins. of Wausau, 522 F.3d at 276. Whether a threat is sufficiently direct and specific is a delicate, highly fact-dependent inquiry that requires courts to examine the "totality of the events rather than employ[] any bright line rule." BuddyUSA v. Recording Indus. Ass'n of Am., Inc., 21 F. App'x 52, 55 (2d Cir. 2001); Schnabel v. Ramsey Quantitative Sys., 322 F. Supp. 2d 505, 512 (S.D.N.Y. 2004). This inquiry is complicated by the fact that actions for declaratory relief are always, to a degree, anticipatory: the main purpose of the Declaratory Judgment Act is to "avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Int'l Wire Grp., Inc., No. 02 Civ. 10338, 2003 WL 21277114, at *4 (S.D.N.Y. June 2, 2003) (quoting Luckenbach Steamship Co. v. United States, 312 F.2d 545, 548 (2d Cir. 1963)); see also Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394, 405 (S.D.N.Y. 2002) (the Declaratory Judgment Act is designed to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships") (quoting Beacon Const. Co. Inc. v. Matco Elec. Co., Inc., 521 F.2d 392, 397 (2d Cir. 1975)).

    Here, several facts persuade the Court that Dish's filing was motivated by a fear of imminent legal action by the Networks and was, thus, improperly anticipatory within the meaning of the special circumstances exception to the first-filed rule. First, the Hollywood Reporter article conveyed the unmistakable impression that a legal showdown was inevitable; while it did not quote named sources, it identified each of the networks preparing for legal action, provided a time frame for filing suit ("within a month"), and identified the types of claims that were expected to be brought. See, e.g., CGI Solutions, LLC v. Sailtime Licensing Grp., LLC, No. 05 Civ. 4120(DAB), 2005 WL 3097533, at *3-4 (S.D.N.Y. Nov. 17, 2005)

(finding anticipatory filing where notice letter detailed claims that "may" be brought even though it "did not outright announce that it would be filing suit by a particular date"). Dish's complaint leaves no doubt as to how Dish understood the import of this article: Dish's opening paragraph states that "the Major Television Networks have threatened [Dish Network] with litigation," and a later subheading reads, "The Major Television Networks Threaten DISH with Imminent Litigation." (Compl. ¶ 1, pg. 9 (emphasis added)). Second, Dish filed its complaint less than 24 hours after the article was published, bolstering the inference that Dish took the article's claims of impending coercive litigation seriously. See Chicago Ins. Co. v. Holzer, No. 00 Civ. 1062, 2000 WL 777907(SAS), at *3 (S.D.N.Y. June 16, 2000) (fact that plaintiff filed for declaratory relief within 24 hours of receiving notice letter "demonstrate[ed] that [plaintiff] interpreted defendant's threat of legal action as a firm intention"). Third, the length and content of Dish's complaint are indicative of hasty preparation: it is a mere 13 pages long, fails to name the parties who hold the copyrights, lists neither the relevant copyrights nor the contractual provisions at issue, and contains only the most cursory description of the allegedly offending services. See Laxman v. Shapiro, 06 Civ. 11408(DLC), 2006 WL 3423807, at *2 (S.D.N.Y. Nov. 29, 2006) (finding that brevity of complaint and "numerous technical deficiencies and factual omissions" support inference of anticipatory filing); see also John Wiley & Sons, Inc. v. Visuals Unlimited, Inc., 11 Civ. 5453(CM), 2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011) (declining to exercise jurisdiction over declaratory judgment complaint that contained nothing more than "vague allegations"). These deficiencies support Defendants' contention that Dish's complaint was a "place-holder" suit, filed in anticipation of coercive litigation and designed principally to secure Dish's preferred forum over any other forum selected by the natural

plaintiffs.

      Plaintiff nonetheless argues that it is properly entitled to first-filed priority, asserting that the standard enunciated by the Second Circuit in <u>Emp'rs Ins. of Wausau</u> requires a threatening communication that is "direct" in the sense that it is specifically communicated by the party claiming injury to the alleged offender by means of a letter or some other party-to-party mode of communication. Plaintiff thus defines "direct" as "[w]ithout intervening persons, conditions or agencies." (Dish Opp. at 3, docket entry no. 51 (quoting <u>American Heritage Dictionary</u>).) In Plaintiff's view, only a formal party-to-party communication – as opposed to, say, a statement conveyed through a media outlet – can constitute a "direct threat." However, the <u>American Heritage Dictionary</u> also defines "direct" as "[s]traightforward and candid; not devious or ambiguous." This definition is more consistent with the policies animating the policy disfavoring anticipatory filings. If Plaintiff's interpretation governed the analysis, a party that learned of an imminent suit through subterfuge, an unauthorized leak, or even – to take Plaintiff's argument to its logical conclusion – a televised announcement by corporate counsel describing in detail the claims her company was set to file the following day, and then raced into court with a preemptive declaratory judgment action would be rewarded with presumptive priority for its choice of forum.

      While it is true that, in each of the opinions that Defendants cite, party-to-party communications (usually in the form of "notice-of-suit" letters) preceded the anticipatory filing, that fact only reflects the reality that parties often engage in dispute-specific communications before commencing litigation. Here, however, it appears that none of the Networks raised the prospect of litigation in their ongoing business-related communications with Dish.

The Court is not aware of any judicial decisions that specifically require that the coercive litigation threat be expressed in a party-to-party communication. Dish offers 800 Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128 (S.D.N.Y. 1994) as support for such a proposition. But, in 800 Flowers, the only evidence supporting the plaintiff's argument that the earlier-filed action was anticipatory was a proffer that the plaintiff had told the defendant's customers that the defendant's employees were "thieves and crooks" and had falsely told them that the parties were in litigation. Id. at 131-32. The 800 Flowers court's rejection of the anticipatory filing argument was not based on the absence of a direct party-to-party communication but, rather, on the absence of any unambiguous threat of litigation; it found that the cited comments were only "disparaging remarks to potential customers, presumably in order to divert competition away from [plaintiff]." Id. at 133.

Dish also argues that this Court should entertain its suit because this is the only forum in which it can resolve all of its PTAT and Auto Hop-related disputes with the Networks and ABC in a single lawsuit: neither CBS nor NBCU has brought contract claims in California, and the ABC and CBS contracts include forum selection clauses that provide for adjudication of contract disputes in New York. The Court notes that, although ABC has indicated that it would waive the New York forum selection clause were the remainder of the litigation transferred to California, Dish stated at oral argument that it will not waive its rights under the forum selection clauses.[4]

---

[4] Dish also argues that this is the appropriate venue because the Networks have ties to the Southern District of New York. Dish's arguments show only that the Networks have ties to the Southern District in addition to their ties to the Central District of California; they do not persuade the Court that the Southern District is a plainly superior venue.

However, entertaining the declaratory judgment complaint for the purpose of consolidating all of the litigation against the four networks and their affiliates in New York would be particularly inappropriate in this case, precisely because three of the sets of parties claiming injury have chosen another forum for their claims, and none of those natural plaintiffs has asserted an affirmative claim under a contract requiring litigation in New York. Fox (which is not a party to a forum selection clause) has filed coercive contract and copyright claims in California, CBS and NBCU have also filed copyright claims there, and CBS takes the position that the contract on which Dish appears to premise its New York forum selection argument is inapplicable to its copyright claims.

In light of the Court's determination that Dish's complaint constitutes an improper anticipatory filing, and the existence of coercive litigation as to most of the issues in California, the Court finds that there is no useful or appropriate purpose in entertaining Dish's declaratory judgment action to the extent that it overlaps with the litigation pending in the Central District of California. Accordingly, insofar as Dish's complaint pertains to Fox's copyright and contract claims and CBS/NBCU's copyright claims, this action will be dismissed without prejudice to litigation of Dish's assertions in the pending Central District of California actions. Because CBS and NBCU have not asserted contract claims in California, and because ABC has not filed suit against Dish, this action will continue as to Dish's contract claims against CBS/NBCU, and as to all of the claims and counterclaims asserted with respect to ABC.

There are numerous ways to mitigate whatever inefficiencies might result from allowing these claims to proceed in separate venues. CBS and NBCU are represented by the same national law firm (indeed, with the exception of ABC, each of the parties is represented by

at least one firm that has offices on both coasts of the United States), which will facilitate coordination; the California actions may be consolidated; and, if the parties are unable to reach an agreement to consolidate the claims that remain in this district with those in California, the courts can, with the cooperation of the parties, coordinate the proceedings so as to minimize any inefficiencies.

## CONCLUSION

For the foregoing reasons, Dish's request for an anti-suit injunction is denied. The Court declines to exercise jurisdiction of Dish's declaratory judgment claims against Fox. Fox's motion to dismiss the complaint is therefore granted without prejudice to litigation of Dish's assertions in the pending Central District of California action. The Court also declines to exercise jurisdiction of Dish's copyright declaratory judgment claims against CBS/NBCU. CBS/NBCU's motion to dismiss the complaint is granted without prejudice with respect to the copyright claims, and is denied in all other respects. The aspect of the CBS/NBCU motion that seeks dismissal of Dish's contract claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is denied without prejudice to renewal upon briefing that addresses the relevant pleading standards. Because ABC has not brought claims in California and has counterclaimed here, the ABC-related aspect of this action will proceed as well.

The expedited discovery orders made orally on the record at the June 22, 2012, conference remain in place except to the extent they are superseded by orders of the California court. The parties are directed to use their best efforts to coordinate the taking and use of discovery in the remaining aspects of this action and the California litigation so as to avoid duplication and inefficiency.

This Memorandum Opinion and Order resolves docket entries 26 and 28.

SO ORDERED.

Dated: New York, New York
July 9, 2012

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge