# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE AUTOHOP LITIGATION

This Document Relates To:

Dish Network, L.L.C. v. American Broadcasting Companies, Inc., et al., Civil Action No. 12-cv-4155 (LTS)(KNF)

MASTER FILE
12 Civ. 4155 (LTS)(KNF)

**AMENDED ANSWER AND COUNTERCLAIMS OF ABC, INC., AMERICAN BROADCASTING COMPANIES, INC., AND DISNEY ENTERPRISES, INC.**

## ANSWER TO FIRST AMENDED COMPLAINT

Defendants ABC, Inc., American Broadcasting Companies, Inc., and Disney Enterprises, Inc. (collectively "ABC Parties"), through their undersigned counsel, submit this Answer to Plaintiff DISH Network, L.L.C.'s First Amended Declaratory Judgment Complaint. In response to the numbered paragraphs of Plaintiff's First Amended Declaratory Judgment Complaint, the ABC Parties respond as follows:

1.     The ABC Parties deny the allegations in Paragraph 1 that are directed to them, except to admit that Plaintiff seeks declaratory relief and that the ABC Parties filed Counterclaims.  With regard to the allegations that are directed to other present and former defendants, the ABC Parties are without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, deny them, except to admit that the other present and former defendants commenced litigation on the same day that this litigation commenced.

2.      The ABC Parties either deny the allegations in Paragraph 2, or are without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, deny them, except to admit that Plaintiff is a pay-television provider and delivers satellite television services to its subscribers.

3.      The ABC Parties deny the allegations in Paragraph 3 that are directed to them, except to admit that Plaintiff (originally through its predecessor, EchoStar Satellite, L.L.C.) is a party to a Retransmission Consent Agreement with ABC, Inc.  With regard to the allegations that are directed to other present and former defendants, the ABC Parties are without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, deny them.

4.      The ABC Parties either deny the allegations in Paragraph 4, or are without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, deny them, except to admit that the Hopper contains a two-terabyte hard drive, and that Plaintiff offers a service called "PrimeTime Anytime," which by default records in HD all of the HD primetime TV programming on ABC, CBS, FOX, and NBC and by default stores these shows for eight days after they have aired, storing approximately 100 hours of primetime TV shows.

5.      The ABC Parties either deny the allegations in Paragraph 5, or are without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, deny them, except to admit that "AutoHop" currently appears to operate only in connection with television programs recorded through PrimeTime Anytime, does not appear to work on live broadcasts, and eliminates commercials completely.

6.     The allegations in Paragraph 6 about the history of the use of VCRs and DVRs are too broad and general to be susceptible of a response.  To the extent a response is required, the ABC Parties either deny the allegations in Paragraph 6, or are without knowledge or information sufficient to form a belief as to the truth of those allegations, and on that basis, deny them, except to admit that the VCR was introduced before the DVR, and that "AutoHop" eliminates commercials completely.

7.     The ABC Parties deny the allegations in Paragraph 7 that are directed to them except to aver that the ABC Parties filed Counterclaims.  With regard to the allegations that are directed to other present and former defendants, the ABC Parties are without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, deny them except to admit that the other present and former defendants commenced litigation on the same day that this litigation commenced.

8.     The ABC Parties admit the allegations in Paragraph 8, except to aver that CBS, NBC, and Fox commenced litigation in the Central District of California against DISH on the same day that this litigation was commenced.

9.     The ABC Parties deny the allegations in Paragraph 9, except to admit that DISH moved for an antisuit injunction on May 29, 2012; Fox, CBS, and NBC cross-moved to dismiss DISH's declaratory judgment claims against them; and this Court issued a Memorandum Opinion and Order on July 9, 2012.

10.    The ABC Parties deny the allegations in Paragraph 10, except to admit that Plaintiff seeks a declaratory judgment.

11.    The ABC Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 and, on that basis, denies them.

3

12.    Admitted.

13.    Admitted.

14.    Admitted.

15.    The ABC Parties are without knowledge or information sufficient to form a belief as to the truth of this allegation and, on that basis, deny it.

16.    The ABC Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 and, on that basis, deny them.

17.    The ABC Parties deny the allegations in Paragraph 17, except to admit that Plaintiff seeks a declaratory judgment.

18.    The ABC Parties denies that this Court has jurisdiction over DISH's copyright claims.

19.    The ABC Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 and, on that basis, deny them, except to admit that the amount in controversy exceeds the jurisdictional threshold.

20.    The ABC Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 directed to other defendants and, on that basis, deny them.  The ABC Parties deny the allegations of Paragraph 20 that are directed to them, except to admit that venue is proper in this district as to the ABC Parties and to admit that the Retransmission Consent Agreement, to which Plaintiff (originally through its predecessor, EchoStar Satellite, L.L.C.) and ABC, Inc. are parties, contains a forum selection clause.

21.    The ABC Parties either deny the allegations in Paragraph 21, or are without information sufficient to form a belief as to the truth of those allegations and, on that basis,

4

deny them, except to admit that a DVR is an electronic device that records video in digital format.

22.    The ABC Parties deny the allegations of Paragraph 22 that are directed to them, except to admit that Plaintiff (originally through its predecessor, EchoStar Satellite, L.L.C.) is a party to a Retransmission Consent Agreement with ABC, Inc., the provisions of which speak for themselves, and to admit that Plaintiff seeks a declaratory judgment.  With regard to the allegations that are directed to other defendants, the ABC Parties are without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, deny them.

23.    The ABC Parties deny the allegations of Paragraph 23, except to admit that Plaintiff (originally through its predecessor, EchoStar Satellite, L.L.C.) is a party to a Retransmission Consent Agreement with ABC, Inc., effective as of September 15, 2005, as amended, the provisions of which speak for themselves.

24.    The ABC Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 and, on that basis, deny them.

25.    The ABC Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 and, on that basis, deny them.

26.    The ABC Parties deny the allegations of paragraph 26, except to admit that DISH retransmits to its subscribers certain primetime shows carried on the ABC television network, that Plaintiff seeks a declaratory judgment, that the ABC Parties either own the copyrights and copyright registrations for, or have licenses to exhibit, the primetime shows exhibited on the ABC television network, and that American Broadcasting Companies, Inc. and

Disney Enterprises, Inc. are the owners of the copyrights in certain primetime shows exhibited on the ABC television network.

27.     The ABC Parties either deny the allegations in Paragraph 27, or are without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, deny them.

28.     The ABC Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 and, on that basis, deny them.

29.     The ABC Parties deny the allegations in Paragraph 29, except to admit that the "PrimeTime Anytime" service by default records in HD all of the primetime HD TV programming on ABC, CBS, Fox and NBC, records at least three hours of primetime programming from each of ABC, CBS, Fox and NBC every night, and makes all of that primetime programming available for a full eight days.

30.     The ABC Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 and, on that basis, deny them.

31.     The ABC Parties either deny the allegations in Paragraph 31, or are without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, deny them, except to admit that the "AutoHop" service eliminates commercials during playback.

32.     The allegations in Paragraph 32 are too broad and general to be susceptible of a response.  To the extent a response is required, the ABC Parties either deny the allegations in Paragraph 32, or are without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, deny them.

33.     The allegations in Paragraph 33 about viewer behavior over the course of decades are too broad and general to be susceptible of a response.  To the extent a response is required, the ABC Parties either deny the allegations in Paragraph 33, or are without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, deny them.

34.     The allegations in Paragraph 34 are too broad and general to be susceptible of a response.  To the extent a response is required, the ABC Parties either deny the allegations in Paragraph 34, or are without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, deny them.

35.     The ABC Parties deny the allegations in the second sentence of Paragraph 35 that are directed to them.  With regard to the allegations that are directed to other present and former defendants, the ABC Parties are without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, deny them. The remaining allegations in Paragraph 35 about DISH subscribers are too broad and general to be susceptible of a response.  To the extent a response is required, the ABC Parties either deny such allegations, or are without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, deny them.

36.     The ABC Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 and, on that basis, deny them.

37.     The ABC Parties deny the allegations in Paragraph 37 or are without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, deny them.

38.    The ABC Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 and, on that basis, deny them, except to admit that AutoHop does not appear to work on live television broadcasts.

39.    The ABC Parties deny the allegations in Paragraph 39 as to them, except to admit that Plaintiff is a party to a Retransmission Consent Agreement with ABC, Inc., and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, on that basis, deny them.

40.    The ABC Parties deny the allegations in Paragraph 40, except to admit that § 1 of the Retransmission Consent Agreement with ABC, Inc. is titled "Retransmission Consent," that § 2 is titled "Carriage," and that § 12 is titled "Unauthorized Use."

41.    The ABC Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and, on that basis, deny them.

42.    The ABC Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 and, on that basis, deny them.

43.    The ABC Parties deny the allegations in Paragraph 43 that are directed to them and aver that litigation has been commenced.  With regard to the allegations that are directed to other defendants, the ABC Parties are without knowledge or sufficient information to form a belief as to the truth of those allegations and, on that basis, deny them.

44.    The ABC Parties admit the allegations in Paragraph 44, except to aver that CBS, NBC, and Fox commenced litigation in the Central District of California against DISH on the same day that this litigation was commenced.

45.     The ABC Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45—which are not directed to the ABC Parties—and, on that basis, deny them.

46.     The ABC Parties deny the allegations in Paragraph 46 or are without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, deny them, except to admit that DISH had reason to be apprehensive that it would be the target of litigation and aver that litigation has been commenced.

47.     The ABC Parties repeat and incorporate their responses to Paragraphs 1-46.

48.     The ABC Parties deny the allegations in Paragraph 48, except to admit that the ABC Parties filed Counterclaims that include claims of copyright infringement and that the ABC Parties either own the copyrights and copyright registrations for, or have licenses to exhibit, certain of the primetime shows exhibited on the ABC television network, and that American Broadcasting Companies, Inc. and Disney Enterprises, Inc. are the owners of the copyrights in certain primetime shows exhibited on the ABC television network.

49.     The ABC Parties deny the allegations in Paragraph 49, except to admit that the ABC Parties' counterclaims are of sufficient immediacy to warrant immediate adjudication.

50.     The ABC Parties deny the allegations in Paragraph 50.

51.     The ABC Parties deny the allegations in Paragraph 51.

52.     The ABC Parties repeat and incorporate their responses to Paragraphs 1-51.

53.     The ABC Parties deny the allegations of Paragraph 53, except to admit that the ABC Parties' counterclaims are actual, substantial, and of sufficient immediacy to warrant immediate adjudication and aver that litigation has been commenced.

54.     The ABC Parties deny the allegations of Paragraph 54.

9

55.     The ABC Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55—which are not directed to the ABC Parties—and, on that basis, deny them.

56.     The ABC Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56—which are not directed to the ABC Parties—and, on that basis, deny them.

57.     The ABC Parties deny the allegations in Paragraph 57.

58.     The ABC Parties deny the allegations in Paragraph 58.

59.     All allegations not specifically admitted are denied, and it is further denied that Plaintiff is entitled to any of the relief requested.

60.     All allegations not specifically admitted are denied, and it is further denied that Plaintiff is entitled to any of the relief requested.

61.     All allegations not specifically admitted are denied, and it is further denied that Plaintiff is entitled to any of the relief requested.

62.     All allegations not specifically admitted are denied, and it is further denied that Plaintiff is entitled to any of the relief requested.

## DEFENSES AND AFFIRMATIVE DEFENSES

Without any admission as to the burden of proof or as to any of the averments in the First Amended Declaratory Judgment Complaint, the ABC Parties set forth the following defenses and affirmative defenses.

## FIRST DEFENSE

The First Amended Declaratory Judgment Complaint fails to state a claim upon which relief can be granted.

**SECOND DEFENSE**

This Court lacks subject-matter jurisdiction over the First Amended Declaratory Judgment Complaint.

**THIRD DEFENSE**

The First Amended Declaratory Judgment Complaint's claims for equitable relief are barred by the doctrine of unclean hands.

**FOURTH DEFENSE**

The First Amended Declaratory Judgment Complaint's claims for equitable relief are barred by the doctrines of equitable estoppel or waiver.

**FIFTH DEFENSE**

The original Declaratory Judgment Complaint was an improper anticipatory filing, and the First Amended Declaratory Judgment Complaint serves no useful purpose in light of the more comprehensive direct claims asserted by the Counterclaimants. The Court, therefore, should exercise its discretion not to entertain the First Amended Declaratory Judgment Complaint.

**<u>COUNTERCLAIMS</u>**

As and for their Counterclaims against Counterclaim-Defendants DISH Network Corporation, DISH Network, L.L.C. (collectively, "DISH"), and EchoStar Technologies, L.L.C. ("EchoStar"), ABC, Inc., American Broadcasting Companies, Inc., and Disney Enterprises, Inc. (collectively, the "ABC Parties") allege as follows:

**INTRODUCTION**

1.      ABC, Inc. and DISH Network, L.L.C. are parties to a 2005 Digital Retransmission Consent Agreement ("2005 Agreement") that grants DISH limited rights to

retransmit to its subscribers the digital broadcast television signal of ten (now eight) stations owned by ABC, Inc. or its affiliated companies (the "Digital Signal").  The Digital Signal includes some of the most popular primetime television programming available in the United States and around the world, *e.g., Grey's Anatomy, Private Practice,* and *Once Upon a Time* (the "ABC Programming").  The 2005 Agreement was negotiated and agreed to pursuant to the parties' mutual understanding that a material benefit ABC, Inc. would receive for granting DISH these retransmission rights was advertising revenue from commercials that formed part of the Digital Signal DISH is authorized to distribute.  For this reason, ABC, Inc. granted DISH the right to retransmit the Digital Signal to its subscribers without payment of any fee for the Digital Signal.

> 2.     In breach of its obligations to ABC, Inc. under the 2005 Agreement, DISH recently launched its PrimeTime Anytime and AutoHop services.  Through these services, DISH by default copies the entire primetime lineup of programs on all four major television networks for subsequent playback on an on-demand, commercial-free basis.  DISH characterizes its services as "innovative," but the only truly "innovative" thing about DISH's approach is that, unlike legitimate providers of on-demand and commercial-free services, DISH has neither sought authorization from nor paid consideration to the ABC Parties.  DISH asserts that it is offering these services to benefit customers, but its actions are in fact designed to secure for itself an unfair advantage over competitors who play by the rules and honor their contractual obligations.  DISH claims that it is merely facilitating what consumers can already do, but its actions in fact threaten the financial structure that supports the over-the-air programming on which consumers rely.  The production, licensing and distribution of high-quality television programming—as DISH well knows—is enormously expensive, and the

ability of the ABC Parties to sell commercial air-time to potential advertisers is critical to their ability to continue to produce high-quality programming in the future.

3.      DISH's actions will deprive the ABC Parties of the right to receive critical advertising benefits that were contemplated under the 2005 Agreement and upset the economic assumptions underlying that Agreement.  DISH well knows that ABC, Inc. would not have been willing to enter into the 2005 Agreement if ABC, Inc. had been aware that DISH would turn its limited access to the Digital Signal into a vehicle for offering the ABC Programming on a commercial-free, on-demand basis to DISH subscribers.  DISH also well knows that authorized providers of on-demand services disable fast-forwarding during commercials, and that authorized providers of commercial-free programming provide compensation to make up for the absence of advertising revenue.

4.      DISH's advertising makes clear that PrimeTime Anytime and AutoHop are intended to provide "on demand access" to the ABC Programming on a commercial-free basis.  Following the launch of PrimeTime Anytime and AutoHop, DISH's website announced its new services in large capital letters: "WATCH COMMERCIAL-FREE TV . . . you can automatically skip commercials in primetime TV - on ABC, CBS, FOX and NBC in HD." Notably, DISH has not enabled AutoHop on cable channels (such as ABC Family) on which DISH is given the right to sell commercial time for its own benefit.  Instead, DISH only targets commercial advertising that does not affect its own advertising revenue.

5.      Unlike authorized providers of on-demand and commercial-free services, DISH has not negotiated with ABC, Inc. or its affiliated companies to obtain the right to offer such services or agreed to any of the financial and other terms on which DISH knows such rights would be conditioned.  Indeed, DISH has made it no secret that the PrimeTime Anytime

and AutoHop services are intended to secure a competitive advantage—in fact, an unfair one—over services that provide legitimate on-demand and commercial-free versions of the ABC Programming.

6.      The ABC Parties make their programming available to the public on a variety of media platforms—over the air, through cable and satellite providers, over the internet, and through packaged media—live and on-demand, with commercials and commercial-free.  In so doing, the ABC Parties actively engage to meet consumers' demand for convenient and innovative alternatives to traditional ways of watching their favorite programs.  As the owners of copyrighted content and the Digital Signal, the ABC Parties are legally entitled to control the manner of distribution and exhibition, as well as the economic and non-economic terms on which their programming is available on those platforms.  DISH's actions interfere with the ABC Parties' control over the distribution and exhibition of the ABC Programming and the Digital Signal and threaten to destroy the economic model that underpins the 2005 Agreement and that allows the ABC Parties to continue to create quality programming in the future.

7.      In addition to DISH's breaching its contract with ABC, Inc., the Counterclaim-Defendants' actions constitute massive and ongoing copyright infringement.  Copyright law (set forth in the Copyright Act, 17 U.S.C. § 101, *et seq.*) provides copyright owners with the exclusive right to reproduce, adapt, distribute, and publicly perform and display their copyrighted television programming, or to authorize others to exercise those rights.  Every night, the Counterclaim-Defendants willfully infringe the copyrights on the ABC Programming, thereby causing the copyright owners of all of these programs irreparable harm and exposing the Counterclaim-Defendants to liability for substantial damages.

**THE PARTIES**

8.      Counterclaimant ABC, Inc. is a New York corporation with its principal place of business at 77 West 66th Street, New York, New York.  It is a party to the 2005 Agreement.

9.       Counterclaimant American Broadcasting Companies, Inc. is a Delaware corporation with its principal place of business at 77 West 66th Street, New York, New York. American Broadcasting Companies, Inc. is actively engaged in the production and distribution of television programs and other copyrighted works (including its own copyrighted properties).

10.      Counterclaimant Disney Enterprises, Inc. is a Delaware corporation with its principal place of business at 500 South Buena Vista Street, Burbank, California.  Disney Enterprises, Inc. is actively engaged in the licensing of its copyrighted properties.

11.      On information and belief, Counterclaim-Defendant DISH Network, L.L.C. ("DISH Network") is a Colorado company.  DISH Network was previously known as EchoStar Satellite L.L.C.

12.      On information and belief, Counterclaim-Defendant DISH Network Corporation ("DISH Corp.") is a Nevada corporation with its principal place of business in Colorado.  On information and belief, DISH Network is wholly-owned by DISH Corp.

13.      On information and belief, Counterclaim-Defendant EchoStar Technologies, L.L.C. is a Texas limited liability company with its principal place of business in Colorado.

14.      On information and belief, DISH Network Corporation and EchoStar Corporation (which is EchoStar Technologies, L.L.C.'s sole member) are under common

ownership, management and control, and EchoStar Technologies, L.L.C. ("EchoStar") is dependent on DISH for a substantial portion of its business and revenues.

15.   On information and belief, each Counterclaim-Defendant is and has been the agent of the other Counterclaim-Defendants, and in doing the things herein alleged, each was acting within the course and scope of said agency with the advance knowledge, acquiescence, and subsequent ratification of the other Counterclaim-Defendants.

**JURISDICTION**

16.   This civil action seeks damages and injunctive relief for breach of contract and breach of the implied covenant of good faith and fair dealing.   It also seeks injunctive relief and actual or statutory damages for copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq.*

17.   This Court has jurisdiction over the breach of contract claims pursuant to 28 U.S.C. § 1332.   Counterclaimants and Counterclaim-Defendants are diverse in citizenship and the amount in controversy exceeds the statutory minimum.

18.   This Court has exclusive subject matter jurisdiction over the claims for copyright infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a), because these claims arise under the Copyright Act, 17 U.S.C. § 101, *et seq*.   In addition, the contract claims fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), because the contract claims form part of the same case and controversy as the copyright claims.

19.   This Court has personal jurisdiction over DISH because DISH does continuous, systematic, and routine business in New York.

## GENERAL ALLEGATIONS

20.     The ABC Parties and certain affiliated companies each play a role in licensing, scheduling and distributing television programming, primarily through a broadcast television network (the "ABC Television Network").  The ABC Television Network provides broadcast programming to eight broadcast stations owned by ABC, Inc. or its affiliates (the "Owned Stations") and to more than 200 other broadcast stations across the United States (together with the Owned Stations, the "ABC Stations").  The ABC Stations are granted the right to broadcast the programming provided by the ABC Television Network within each station's community of license.

21.     The ABC Stations carry programming from a variety of sources, including programming produced by the stations themselves (e.g., local news programming); programming supplied to them by the ABC Parties; and programming licensed from other third parties (e.g., local sports and syndicated programming).  During primetime, the programming transmitted by the ABC Stations is primarily supplied by the ABC Parties.

22.     Considerable resources are expended every year by the ABC Parties and others to develop and produce high-quality, creative and popular television programs (including the ABC Programming) for exhibition on the ABC Stations and elsewhere, which are viewed by an audience of millions of people in the United States and around the world.  Developing and producing high-quality, creative programming requires a significant financial investment— anywhere from hundreds of thousands of dollars to multiple millions of dollars per hour of programming.

23.     The ABC Parties either hold the copyrights in, or have a license to distribute, the ABC Programming.  The copyrights in the ABC Programming protect the right of

17

the ABC Parties to determine, among other things, the manner in which the ABC Programming is distributed.  This protection, in turn, encourages the investment in and creation of additional creative television programming.

24.     Disney Enterprises, Inc. and American Broadcasting Companies, Inc. (together, the "ABC Copyright Holders") are the legal and beneficial owners of the copyrights in much of the ABC Programming, including such popular and critically-acclaimed programs as *Grey's Anatomy, Private Practice,* and *Once Upon a Time*.  A non-exhaustive list of the copyrights held by the ABC Copyright Holders is set forth in Schedule A to this Counterclaim.

25.     Each of the programs listed in Schedule A is an original audiovisual work that has been fixed in a tangible medium of expression and constitutes copyrightable subject matter within the meaning of section 102 of the Copyright Act, 17 U.S.C. § 102.  Each such program has been or will be registered with the United States Copyright Office.

26.     With respect to the programs listed in Schedule A, the ABC Copyright Holders have complied in all respects with 17 U.S.C. § 101, *et seq.*, and all other laws governing federal copyrights, including by obtaining or applying for copyright registration certificates for each such work.

**A.     The ABC Parties' Ability To Produce And Distribute The ABC Programming Depends On Their Receipt Of Commercial Advertising Revenues.**

27.     Consistent with the economic structure of free "over-the-air" network television, the ABC Parties recoup the costs of creating or licensing the ABC Programming primarily by generating advertising revenue and licensing the right to exhibit that programming by various means to a wide variety of parties.  Without this revenue, it would not be possible to produce and distribute the ABC Programming on over-the-air television.

18

28.     As any consumer of over-the-air network television knows, commercials are shown at periodic intervals during the broadcast or other transmission of the ABC Programming.  The ABC Parties sell commercial time or "spots" to advertisers that use that time to promote their own products or services.  As DISH is fully aware, the sale of advertising time has traditionally been the primary source of television revenue for over-the-air networks. The higher the viewership for a particular program, the more advertisers will pay for spots in which to present commercials during that program.  Primetime programming typically attracts the most viewers, and spots for commercials during primetime command the highest price. This revenue structure has directly benefited DISH, along with other satellite and cable providers, in the negotiation of retransmission consent agreements (like the 2005 Agreement) with ABC, Inc. or its affiliated companies.

29.     Although advertising continues to be the central source of revenue for commercial network television, the ABC Parties also generate revenues from license fees and other related forms of revenue when they offer ABC Programming, including their copyrighted programs, through different distribution channels, which may or may not include advertising. By introducing PrimeTime Anytime and AutoHop, DISH seeks to compete directly with some of these other alternative distribution methods, but without obtaining authorization from, or providing compensation or any other forms of consideration to, the ABC Parties.

30.     For example, the ABC Parties enter into agreements with cable and satellite providers that make the ABC Programming available on-demand for viewing at designated times after the initial over-the-air broadcast.  These licensed services, often referred to as "VOD" (Video-On-Demand) services, are generally ad-supported.  DVR fast-forwarding functionality is disabled for commercials on these VOD services during viewing.  In addition,

the ABC Parties' VOD license agreements require cable and satellite operators to agree to limit on-demand viewing to the availability periods set by the ABC Parties.

31.     The ABC Programming also is viewable on-demand over the Internet at designated times after the initial over-the-air broadcast, including at www.abc.com, through the websites of licensed providers such as Comcast, and at other authorized websites, including www.hulu.com.  This is another ad-supported way of viewing the ABC Programming.  When the ABC Programming is streamed over the Internet through authorized services, it is not possible for viewers to skip or fast-forward through the commercials.

32.     The ABC Programming is also available in commercial-free formats. For a per-episode fee, consumers can obtain access to commercial-free versions of the ABC Programming from iTunes or Amazon.  For a subscription fee, consumers can obtain access to commercial-free versions of past seasons of ABC programming from Netflix.  Consumers can also purchase copies of ABC programming without commercials in various formats, including on DVD and Blu-ray Discs.

33.     In sum, the ABC Parties and their authorized licensees provide viewers with a host of options that allow them to view the ABC Programming on a variety of platforms, including platforms that allow for on-demand and commercial-free viewing.  Unlike legitimate licensees, DISH provides its on-demand and commercial-free services without authorization from the ABC Parties and without agreeing to terms that protect the ABC Parties' ability to derive ad revenue crucial to the creation and distribution of the ABC Programming.

**B.     The 2005 Agreement Grants DISH Limited Rights To Deliver The ABC Programming.**

34.     In 2005, DISH Network's predecessor, EchoStar Satellite L.L.C., negotiated and entered into the 2005 Agreement with ABC, Inc., acting on its own behalf and

on behalf of ten Owned Stations (currently eight) that collectively, as of 2005, reached 24% of the nation's television households.  DISH Network replaced EchoStar as the party to the 2005 Agreement under a 2009 Amendment.  The 2005 Agreement authorizes DISH Network to retransmit the Digital Signal to DISH's subscribers.

35.     The 2005 Agreement does not permit, and in fact prohibits, DISH's wholesale copying, or its authorization of wholesale copying by its subscribers, of the ABC Programming for later on-demand viewing.

36.     Section 12 of the 2005 Agreement provides as follows:

> Except as provided herein, [DISH] shall not, for pay or otherwise, record, copy, duplicate, retransmit, and/or authorize the recording, copying, duplication or retransmission of any portion of any Digital Signal without the prior written consent of Broadcaster.  The foregoing shall not preclude [DISH's] practice of connecting subscribers' home recording devices such as VCRs or DVRs . . . .

The intent of Section 12 was, among other things, to make clear that DISH would not be permitted to make a copy itself, or to grant permission (explicitly or implicitly) to anyone else to make a copy, of the ABC Programming, except by connecting home recording devices owned by DISH's subscribers that at the time permitted only the recording of single programs (or at most two programs at a time).

37.     Section 2(a)(1) of the 2005 Agreement requires DISH to transmit the Digital Signal (which consists of, among other things, the video and audio stream, including advertising, and the closed-captioning information) "in its original form and without interruption, editing, time delay, alteration . . . , insertion, deletion, commercial or other addition of any type."  The intent of this provision was, among other things, to ensure that

subscribers received on their television screens an unaltered depiction of the Digital Signal, complete with the commercial advertising included in the Digital Signal.

38.     The 2005 Agreement was negotiated and agreed to pursuant to the parties' mutual understanding that advertising revenue was a critical, material benefit ABC, Inc. would receive from the arrangement: commercial advertising would form part of the Digital Signal that was transmitted to—and viewed by—DISH subscribers and ABC, Inc. would derive revenue from that commercial advertising.  It was on the basis of this mutual understanding that ABC, Inc. granted DISH the right to retransmit the Digital Signal to its subscribers without DISH's payment of any per-subscriber fee to ABC, Inc.

### C.     DISH Has Used The Copyrighted ABC Programming To Create An Unauthorized, Commercial-Free, On-Demand Service.

39.     DISH recently began to offer what it calls a Hopper Whole-Home HD DVR System (the "Hopper") to its subscribers.  The Hopper is a set-top box that DISH leases to subscribers who purchase certain packages of services from DISH.  The Hopper contains a two-terabyte hard drive that until recently was partitioned into two sections, one section controlled by DISH and one controlled by the subscriber.  DISH explained to consumers, "PrimeTime   Anytime   doesn't   take   up   any   of   your   personal   DVR   space." http://www.dish.com/redirects/promotion/offer15/ (last accessed June 22, 2012).

40.     With the Hopper, DISH began offering its PrimeTime Anytime service, which by default automatically records all of the primetime programming of the four major networks—ABC, CBS, Fox, and NBC—to the DISH-controlled portion of the Hopper's hard drive.

41.    DISH also recently began to offer an AutoHop service, which makes copies of network primetime programming available to DISH subscribers in a commercial-free form.

42.    DISH provides the PrimeTime Anytime service to those DISH subscribers who pay for a certain level of service and lease the Hopper from DISH.  Other than deciding whether to subscribe to the PrimeTime Anytime service, a DISH subscriber need make no other decision about what programming is recorded by the PrimeTime Anytime service, since DISH by default records all of the programming aired each night by the four broadcast networks during primetime hours (8 to 11 pm Monday through Saturday, 7 to 11 pm Sunday) and, at DISH's discretion, DISH will also record certain television programs outside these hours if, for instance, the programs are scheduled to begin in primetime but extend to later hours.

43.    DISH by default copies the entire primetime schedule for all four broadcast networks wholesale, including programs that a particular DISH subscriber has no interest in and will never watch.    In fact, an individual subscriber cannot even stop the copying performed by the PrimeTime Anytime service while it is in progress, or fifteen minutes before it is scheduled to begin.

44.    After this and related lawsuits were filed, DISH provided an update to subscribers' Hopper set-top boxes making changes to some of the functionality of PrimeTime Anytime and AutoHop.  Although DISH subscribers may now deselect networks and days of the week from the PrimeTime Anytime service, and choose between two and eight days of scheduled storage time for PrimeTime Anytime recordings, the default settings continue to

enable DISH to record the entire primetime schedule for all four broadcast networks and for all days of the week, and to store those recordings for eight days.

45.    Not only has DISH engaged in wholesale and unauthorized copying, but through its AutoHop service DISH has made its unauthorized "on demand library of approximately 100 hours primetime of TV shows" available for viewing without commercials.

46.    AutoHop operates only on the primetime network programming recorded by DISH through PrimeTime Anytime, and not on non-primetime programming, cable programming or any other programming recorded with the DVR that resides on the user-controlled section of the Hopper's hard drive.

47.    According to DISH's Auto Hop Quick Start Guide, AutoHop works as follows:

> Here's where Auto Hop comes into play. When you are ready to watch your recorded PrimeTime Anytime content, simply open the PrimeTime Anytime or DVR menu screen. You will see a small Hopper (red kangaroo) icon beside each show that you may watch commercial free.
> When you select a show with the Hopper icon, a pop-up message will appear on screen that asks whether you want to enable Auto Hop. Choose 'yes,' and simply sit back and watch the show commercial free. Choose 'no,' and watch with the commercials intact.

http://press.dishnetwork.com/getattachment/6f7fb8c8-59cd-46ca-9d6d-e57f8433988c/DISH-Hopper-s-Auto-Hop?disposition=attachment (last accessed June 22, 2012).

48.    DISH's July 2012 software update changed the initial location of the Hopper's cursor from the "yes" button to the "no" button.  To enable the AutoHop service, the subscriber merely moves the cursor to the "yes" button and clicks.

49.     AutoHop is, as the Quick Start Guide explains, "not like fast-forwarding": "Once you have chosen AutoHop for your show, you can put the remote control down; you've enabled AutoHop's patented technology to skip the commercials during your show automatically."   When viewing the ABC Programming with the AutoHop service enabled, a DISH subscriber no longer views the commercials that form part of the Digital Signal provided to DISH under the 2005 Agreement.  Instead of viewing those commercials, a DISH subscriber briefly sees DISH's own kangaroo icon, which signifies that a commercial has been eliminated.

50.     On information and belief, EchoStar provides digital broadcast operations, including satellite uplinking/downlinking, transmission services, signal processing, conditional access management and other services, to DISH to facilitate DISH's delivery of television programming to consumers.  The services EchoStar provides to DISH in connection with providing PrimeTime Anytime and AutoHop include development, testing, quality assurance, and delivery to consumers of the Hopper software to implement PrimeTime Anytime and the software to implement AutoHop.  EchoStar has performed and continues to perform on a daily basis all tasks necessary to implement PrimeTime Anytime and AutoHop.

51.     In connection with the development and testing of PrimeTime Anytime and AutoHop, and as part of the AutoHop quality assurance process, DISH and EchoStar have directly engaged in additional unauthorized copying of ABC Programming.  This additional unauthorized copying has included recordings made in the course of testing the PrimeTime Anytime and AutoHop services on Hopper set-top boxes operated by DISH and EchoStar employees, and recordings made as part of the quality assurance process at EchoStar's

Cheyenne, Wyoming uplink facility, using specially tuned Hopper set-top boxes that receive and record out-of-area satellite programming.

**D.     The ABC Parties Will Suffer Irreparable Harm Unless the Counterclaim-Defendants Are Enjoined From Continuing Their Unlawful Conduct.**

52.     The Counterclaim-Defendants' actions have caused the ABC Parties and others to suffer irreparable harm.

53.     Unless enjoined, the Counterclaim-Defendants' illegal conduct will irreparably injure the ABC Parties in numerous ways that are incapable of calculation or redress through monetary damages.  The Counterclaim-Defendants'  actions, if not enjoined, will also cause harm to the public by reducing the incentive to create quality programming and undermining the economic foundation of free television.

## COUNT I

**(Breach of Contract - Section 12 of the 2005 Agreement)**
**(Against DISH Network, L.L.C.)**

54.     ABC, Inc. incorporates each and every allegation set forth in paragraphs 1-53 above as if fully set forth herein.

55.     ABC, Inc. and DISH Network, previously EchoStar Satellite L.L.C., are parties to the 2005 Agreement.

56.     ABC, Inc. has fully performed all obligations required of it under the 2005 Agreement, except to the extent prevented or excused by DISH Network's breaches or other wrongful conduct.

57.     DISH Network has breached Section 12 of the 2005 Agreement by recording, copying and duplicating—or by authorizing the recording, copying and duplicating of—the Digital Signal without the prior written consent of ABC, Inc.

26

58.    ABC, Inc. has been damaged as a direct and proximate result of DISH Network's breach.

59.    As a result of DISH Network's breach, ABC, Inc. has suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money.

## COUNT II

### (Breach of Contract - Implied Covenant of Good Faith and Fair Dealing) (Against DISH Network, L.L.C.)

60.    ABC, Inc. incorporates each and every allegation set forth in paragraphs 1-53 above as if fully set forth herein.

61.    By providing all of ABC's primetime programming to its subscribers on a commercial-free basis, DISH Network has deprived ABC, Inc. of a critical, material benefit of the 2005 Agreement—the advertising revenue associated with the ABC Programming—and thereby breached the implied covenant of good faith and fair dealing in the Agreement.

62.    ABC, Inc. has been damaged as a direct and proximate result of this breach.

63.    As a result of this breach, ABC, Inc. has suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money.

### COUNT III

### (Direct Copyright Infringement) (Against All Counterclaim-Defendants)

64.    The ABC Copyright Holders incorporate each and every allegation set forth in paragraphs 1-53 above as if fully set forth herein.

65.     Through and in connection with the operation of their PrimeTime Anytime and AutoHop services, the Counterclaim-Defendants have reproduced and distributed, and unless enjoined will continue to reproduce and distribute, the ABC Copyright Holders' copyrighted works, including but not limited to the programs listed in Schedule A (the "Works"), without the permission or consent of the ABC Copyright Holders.

66.     By engaging and imminently engaging in these acts, the Counterclaim-Defendants are violating and will imminently violate the ABC Copyright Holders' exclusive rights in violation of 17 U.S.C. § 106, including sections 106(1) and 106(3), and 17 U.S.C. § 501.

67.     Each infringement of the ABC Copyright Holders' rights in each of the Works constitutes a separate and distinct act of infringement.

68.     The Counterclaim-Defendants' acts of infringement are willful, intentional, purposeful, and in disregard of the ABC Copyright Holders' rights under the Copyright Act.   The Counterclaim-Defendants know that their acts are infringing and intentionally or recklessly disregards the law by their conduct.

69.     The ABC Copyright Holders have been damaged as a direct and proximate result of the infringing acts set forth above.

70.     As a result of the Counterclaim-Defendants willful copyright infringement, the ABC Copyright Holders have suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money.

## COUNT IV

### (Inducement of Copyright Infringement)
### (Against All Counterclaim-Defendants)

71.     The ABC Copyright Holders incorporate each and every allegation set forth in paragraphs 1-53 above as if fully set forth herein.

72.     The ABC Copyright Holders allege the following as an alternative to their direct infringement claim in the event that the Counterclaim-Defendants establish that the unlawful copying described herein is done solely by DISH subscribers:

73.     By providing and promoting PrimeTime Anytime and AutoHop to subscribers for the wholesale reproduction and on-demand, commercial-free viewing of every Work broadcast during primetime, the Counterclaim-Defendants have induced and are inducing direct infringement of the ABC Copyright Holders' exclusive rights under 17 U.S.C. § 106, including section 106(1).

74.     The unauthorized copying of the Works is a violation of the ABC Copyright Holders' exclusive rights under 17 U.S.C. § 106.  Among other things, and without limitation, this conduct amounts to the unauthorized reproduction of the ABC Copyright Holders' copyrighted works.  The ABC Copyright Holders have not authorized or consented to this infringement.

75.     The Counterclaim-Defendants have induced these infringing acts by creating and providing the Hopper product and the PrimeTime Anytime and AutoHop services with the intent that these services be used for the purpose of infringement, and by promoting the use of these services for infringement, as evidenced by the advertisements, press releases, interviews and product user manuals, all of which encourage subscribers in the unlawful use of

PrimeTime Anytime and AutoHop to create on-demand libraries of commercial-free, primetime network television programming.

76.     The Counterclaim-Defendants have purposefully promoted the use of the PrimeTime Anytime and AutoHop services for infringement, including by:

    a.  Marketing the Hopper and the PrimeTime Anytime and AutoHop services expressly for the purpose of copying and creating libraries that include the Works and viewing those libraries in an on-demand, commercial-free format; and

    b.  Expressly marketing the Hopper and the PrimeTime Anytime and AutoHop services as substitutes for licensed methods of accessing the Works, such as Hulu and iTunes.

77.     The Counterclaim-Defendants' acts of inducement are willful, intentional, purposeful, and in disregard of the ABC Copyright Holders' rights under the Copyright Act.  The Counterclaim-Defendants know that their acts are inducing infringing acts and intentionally or recklessly disregards the law by its conduct.  The ABC Copyright Holders have not authorized the Counterclaim-Defendants' acts.

78.     The ABC Copyright Holders have been damaged as a direct and proximate result of the infringing acts set forth above.  As a result of the Counterclaim-Defendants' willful inducement of copyright infringement, the ABC Copyright Holders have suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money.

## COUNT V

### (Vicarious Copyright Infringement)
### (Against All Counterclaim-Defendants)

79.     The ABC Copyright Holders incorporate each and every allegation set forth in paragraphs 1-53 above as if fully set forth herein.

80.     As an additional alternative theory to their direct infringement claim, in the event that the Counterclaim-Defendants establish that the unlawful copying described herein is solely done by DISH subscribers, the ABC Copyright Holders allege the following:

81.     By providing PrimeTime Anytime and AutoHop to subscribers for the wholesale reproduction and on-demand, commercial-free viewing of every Work broadcast during primetime, the Counterclaim-Defendants have and are engaged in vicarious infringement of the ABC Copyright Holders' exclusive rights under 17 U.S.C. § 106, including section 106(1).

82.     The unauthorized copying of the Works is a violation of the ABC Copyright Holders' exclusive rights under 17 U.S.C. § 106.  Among other things, and without limitation, this conduct amounts to the unauthorized reproduction of the ABC Copyright Holders' copyrighted works.  The ABC Copyright Holders have not authorized or consented to this infringement.

83.     The Counterclaim-Defendants have the right and ability to supervise and control the infringing conduct of its subscribers and have failed to exercise that right and ability.

84.     The Counterclaim-Defendants' right and ability to control the instrumentalities of infringement is apparent from, among other things, the Counterclaim-Defendants' control over and ability to dictate which programs are recorded as part of the

31

PrimeTime Anytime service, its control over the operation of portions of the Hopper device itself, and its ability, at any time, to withdraw the PrimeTime Anytime and AutoHop services.

85.     In addition, the Counterclaim-Defendants' regular involvement is an indispensable link in its subscribers' infringing conduct.  Without the daily transmissions by the Counterclaim-Defendants to the Hopper device, and the technical support provided by the Counterclaim-Defendants' staff, DISH subscribers would not be able to engage in the infringing conduct.

86.     The Counterclaim-Defendants have a direct financial interest in the infringement by DISH subscribers of the ABC Copyright Holders' exclusive rights in the Works.  DISH leases the Hopper box to customers for a monthly fee; it also charges an enhanced subscription fee for the package that includes the PrimeTime Anytime and AutoHop services.  DISH has attracted, obtained and retained subscribers as a result of the infringing capabilities of the PrimeTime Anytime and AutoHop services.  Indeed, DISH's economic success is directly tied to the popularity of the infringing conduct that it seeks to encourage. PrimeTime Anytime and AutoHop were expressly designed to create unauthorized copies of primetime network programming for on-demand, commercial-free viewing and are the Hopper's principal selling points.  DISH considers the infringing capabilities provided by PrimeTime Anytime and AutoHop to be important to DISH's ability to secure an unfair competitive advantage over alternative providers, such as iTunes and Hulu, which lawfully license the right to offer the Works, including (in the case of iTunes) in a commercial-free format.  On information and belief, EchoStar earns revenue from the sale of Hopper set-top boxes promoted by provision of the PrimeTime Anytime and AutoHop services, and from services provided to DISH in connection with PrimeTime Anytime and AutoHop.

87. The Counterclaim-Defendants' acts of vicarious infringement are willful, intentional, purposeful, and in disregard of the ABC Copyright Holders' rights under the Copyright Act. The Counterclaim-Defendants know that their acts are vicariously infringing and intentionally or recklessly disregards the law by its conduct. The ABC Copyright Holders have not authorized the Counterclaim-Defendants' acts.

88. The ABC Copyright Holders have been damaged as a direct and proximate result of the infringing acts set forth above.

89. As a result of the Counterclaim-Defendants' willful vicarious copyright infringement, the ABC Copyright Holders have suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money.

**COUNT VI**

**(Contributory Copyright Infringement)**
**(Against All Counterclaim-Defendants)**

90. The ABC Copyright Holders incorporate each and every allegation set forth in paragraphs 1-53 above as if fully set forth herein.

91. As an additional alternative theory to their direct infringement claim, in the event that the Counterclaim-Defendants establish that the unlawful copying described herein is solely done by DISH subscribers, the ABC Copyright Holders allege the following:

92. By providing PrimeTime Anytime and AutoHop to subscribers for the wholesale reproduction and on-demand, commercial-free viewing of every Work broadcast during primetime, the Counterclaim-Defendants have contributed and are contributing to the direct infringement of the ABC Copyright Holders' exclusive rights under 17 U.S.C. § 106, including section 106(1).

93.     The unauthorized copying of the Works is a violation of the ABC Copyright Holders' exclusive rights under 17 U.S.C. § 106. Among other things, and without limitation, this conduct amounts to the unauthorized reproduction of the ABC Copyright Holders' copyrighted works.  The ABC Copyright Holders have not authorized or consented to this infringement.

94.     The Counterclaim-Defendants are liable under the Copyright Act for the infringing acts of DISH subscribers as contributory copyright infringers.

95.     The Counterclaim-Defendants know or have reason to know of the actual or imminent infringing acts of DISH  subscribers.

96.     The Counterclaim-Defendants, through their own conduct, have participated in, facilitated, assisted, enabled, materially contributed to, encouraged, induced, and/or caused the infringing activity of DISH subscribers.   Indeed, the Counterclaim-Defendants actively promote the infringements as a reason to purchase their products and services, and create, market, and distribute tools and offers services that are indispensable to these infringements, including the Hopper and the PrimeTime Anytime and AutoHop services. The Counterclaim-Defendants continuously facilitate the infringing acts of DISH subscribers by, among other things, encouraging and enabling them to use PrimeTime Anytime to copy the Works, storing the unauthorized copies on the Hopper's hard drive for pre-scheduled periods of time, and enabling activation of the AutoHop service.

97.     The Counterclaim-Defendants' acts of contributory infringement are willful, intentional, purposeful, and in disregard of the ABC Copyright Holders' rights under the Copyright Act.   The Counterclaim-Defendants know that their acts are contributorily

infringing and intentionally or recklessly disregard the law by their conduct. The ABC Copyright Holders have not authorized the Counterclaim-Defendants' acts.

98. The ABC Copyright Holders have been damaged as a direct and proximate result of the infringing acts set forth above.

99. As a result of the Counterclaim-Defendants' willful contributory copyright infringement, the ABC Copyright Holders have suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money.

## PRAYER FOR RELIEF

WHEREFORE, the ABC Parties pray for judgment as follows:

A. On Count I, for damages for breach of contract (Section 12) in an amount to be determined at trial and for an order preliminarily and permanently enjoining and restraining DISH Network and its officers, agents, servants, and employees and all those in active concert or participation with them, from making the PrimeTime Anytime service available to its subscribers;

B. On Count II, for damages for breach of contract (the implied covenant of good faith and fair dealing) in an amount to be determined at trial and for an order preliminarily and permanently enjoining and restraining DISH Network and its officers, agents, servants, and employees and all those in active concert or participation with them, from making the AutoHop service available to its subscribers;

C. On Counts III-VI, for an order pursuant to 17 U.S.C. § 502 preliminarily and permanently enjoining and restraining the Counterclaim-Defendants and their officers, agents, servants, and employees and all those in active concert or participation with

them, from directly committing, aiding, encouraging, enabling, inducing, causing, materially contributing to, vicariously infringing, or otherwise facilitating the infringement of the ABC Copyright Holders' exclusive rights under the Copyright Act, including but not limited to the infringements alleged with respect to the PrimeTime Anytime and AutoHop services, or from authorizing any other person to do the same;

D.  On Counts III-VI, for an award of compensatory and statutory damages, costs, and reasonable attorneys' fees in accordance with 17 U.S.C. §§ 504 and 505 and other applicable law;

E.  Such further and additional relief as the Court may deem just and appropriate.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By _____/s/_____

Kevin T. Baine
Thomas G. Hentoff (admitted *pro hac vice*)
Hannah M. Stott-Bumsted
Stephen J. Fuzesi
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Attorneys for ABC, Inc., American Broadcasting
Companies, Inc. and Disney Enterprises, Inc.*

October 9, 2012