UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AUTOHOP LITIGATION<br><br>This Document Relates To:<br><br>DISH NETWORK, L.L.C., Plaintiff<br>12 Civ. 4155 (LTS)(KNF) | MASTER FILE<br>12 Civ. 4155 (LTS)(KNF)<br><br>CBS CORPORATION<br>COUNTERCLAIMS |

## AMENDED COUNTERCLAIMS

As and for their Counterclaims against DISH Network, L.L.C. ("DISH") and EchoStar Technologies LLC ("EchoStar") (collectively, the "DISH Parties" or "Counterclaim-Defendants"), CBS Corporation ("CBS"), CBS Broadcasting Inc. ("CBS Broadcasting"), CBS Studios Inc. ("CBS Studios"), and Survivor Productions, LLC ("Survivor Productions") (collectively, the "CBS Parties" or "Counterclaimants"), allege as follows:

## INTRODUCTION

1.     This is an action for injunctive relief, damages, and other appropriate relief against the DISH Parties for violating the copyrights of CBS Broadcasting, CBS Studios, and Survivor Productions (collectively, the "CBS Copyright Holders") in primetime network television programming; against DISH for breaching the retransmission consent agreement between it and CBS, dated January 5, 2012 (the "Retransmission Agreement"); and against DISH for fraudulently concealing material information in its negotiation of the Retransmission Agreement with CBS, thereby fraudulently inducing CBS to enter into that agreement.

2.     The DISH Parties, like all cable and satellite providers, are required to operate within and abide by the copyright laws that protect and encourage the development, production, and distribution of high quality broadcast programming that millions of viewers enjoy each day,

1

including such popular and critically-acclaimed CBS television shows as *60 Minutes*, *Blue Bloods*, *NCIS*, *Survivor,* and *The Good Wife*.

3.       In addition, the DISH Parties may not retransmit network programming without a license from the broadcaster. The Retransmission Agreement between DISH and CBS provides DISH with limited rights to retransmit to its subscribers the digital broadcast television signal of the stations owned by CBS Broadcasting or its affiliated companies (the "CBS Broadcast Signal"), but otherwise prohibits DISH from recording, copying, duplicating, or retransmitting any portion of the CBS Broadcast Signal (including any of the programming contained within it) without CBS's prior written consent.

4.       The Retransmission Agreement was negotiated and agreed to pursuant to the parties' mutual understanding that a material benefit CBS would receive for granting DISH the limited retransmission rights provided under the agreement was the advertising revenue from commercials included within the CBS Broadcast Signal. By providing DISH with limited retransmission rights, CBS ensures that DISH subscribers are able to view the CBS Broadcast Signal, and the existence of those DISH viewers contributes to CBS's ability to generate advertising revenue from commercials. If DISH had requested from CBS the right to offer its subscribers the programming carried through the CBS Broadcast Signal with all commercials automatically removed from what DISH subscribers would see, that would have fundamentally altered the basic economics and nature of the Retransmission Agreement.  Indeed, at the time the Retransmission Agreement was negotiated, DISH knew that CBS would not have been willing to enter into the Retransmission Agreement if CBS had been aware that DISH would attempt to use its limited access to the CBS Broadcast Signal as a vehicle for offering CBS's primetime programming to DISH subscribers on an on-demand, commercial-free basis.

5.      After DISH and CBS executed the Retransmission Agreement, the DISH Parties launched their PrimeTime Anytime and AutoHop services, which are offered with their Hopper Whole-Home DVR system (the "Hopper"). Through these interrelated services, the DISH Parties copy the entire primetime lineup of programs on all four major television networks for subsequent playback on-demand and on an entirely commercial-free basis.

6.      By offering its subscribers a service that provides for the recording and playback of all four networks' primetime programming on an on-demand, *commercial-free* basis, DISH threatens to undermine the economic foundation on which free, over-the-air broadcast television has been built. Commercial advertising is the lifeblood of broadcast television. The CBS Parties have invested billions of dollars to develop, produce, and distribute their copyrighted primetime shows. These shows are available to the public over-the-air for free. Commercial advertising generates the revenue necessary to support the enormously expensive investment required to create this television programming. The ability of the CBS Parties to sell commercial air time to potential advertisers is critical to their ability to continue to produce high quality programming in the future that viewers can watch over-the-air for free.

7.      Unlike legitimate providers of on-demand and commercial-free services, the DISH Parties have neither obtained permission to offer the CBS Parties' copyrighted content without commercials, nor compensated them for such an offering. The DISH Parties' PrimeTime Anytime and AutoHop services are intended to secure an unfair competitive advantage over services that provide legitimate on-demand and commercial-free versions of CBS programming. They also threaten the CBS Parties' ability to exploit their copyrighted works in these and other legitimate markets. This conduct plainly violates both copyright law and the Retransmission Agreement.  It also causes irreparable harm to the CBS Parties by undermining the central source

of revenue—advertising—on which they traditionally have relied to generate new programming content and to operate their broadcast business. Since the DISH Parties have publicly stated that they will continue to offer their unlawful services unless enjoined, injunctive relief is necessary.

8.     The CBS Parties are among the largest and most successful producers and distributors of television programming in the United States and the world. The CBS Copyright Holders are the legal or beneficial owners of copyrights in numerous programs that have been or will be broadcast on the CBS Television Network. These copyrights are protected by the Copyright Act, 17 U.S.C. § 101, *et seq.*, and are registered or will be registered with the United States Copyright Office. The Copyright Act provides the CBS Copyright Holders with the exclusive rights to reproduce, adapt, distribute, and publicly perform and display their copyrighted works. The CBS Copyright Holders exercise these rights in an ever-expanding variety of ways, including commercially-supported broadcast television, syndicated television, Internet-based streaming and download services, video-on-demand access via multichannel video programming distributors ("MVPDs"), DVDs, and Blu-Ray discs. The DISH Parties interfere with these rights and willfully infringe the copyrights of the CBS Copyright Holders through their PrimeTime Anytime and AutoHop offerings, which effectively provide DISH subscribers with a premium commercial-free channel consisting, at any given point in time, of all of the copyrighted programming that aired in primetime on all four national broadcast networks over a certain period, along with the ability to create huge commercial-free libraries of those works.

9.     The DISH Parties' unauthorized and illegal conduct will substantially impair the CBS Parties' ability to obtain the means of payment for their works, and will erode the value of their copyrighted programming. Television advertisers generally pay more money to have their

advertisements featured on television programs with high viewership. "Primetime" is the block of the television programming schedule that attracts the most viewers, and thus advertisers are willing to pay the highest prices to have their commercials shown during this time. Television networks and local broadcast stations derive significant percentages of their advertising revenues from selling the right to advertise before, during, or immediately after primetime television programming. It is self-evident that advertisers will not pay, or will pay substantially less, to place their advertisements within and around CBS programming if the advertisements will be invisible to a significant number of viewers.

10.     Further, the CBS Parties recoup part of their substantial investments in creative programming by making their primetime programming available in commercial-free formats for a fee, either for purchase electronically through sites such as iTunes the day following the broadcast or, later, for purchase on DVDs and Blu-Ray discs. The PrimeTime Anytime and AutoHop services directly undercut these established and legitimate markets for paid access to the CBS Parties' programming.  Moreover, they interfere with the CBS Parties' efforts to make their primetime programming available to consumers on-demand and at no cost through advertising-supported services, such as Internet streaming websites. Viewership of such websites will decline if DISH subscribers have permanent access to commercial-free copies of all of the CBS Parties' primetime shows. As a result, the DISH Parties' unlawful conduct not only impairs the value of the CBS Parties' works, but also reduces the incentives for their creation and dissemination. In this way, the DISH Parties cause harm not only to the CBS Parties, but also to consumers.

## **THE PARTIES**

11.     Counterclaimant CBS Corporation ("CBS") is a Delaware corporation with its

principal place of business at 51 West 52nd Street, New York, New York 10019. CBS is a party to the Retransmission Agreement.

12.     Counterclaimant CBS Broadcasting Inc. ("CBS Broadcasting") is a New York corporation with its principal place of business at 51 West 52nd Street, New York, New York 10019. CBS Broadcasting is actively engaged in the production and distribution of copyrighted television programs and other works.

13.     Counterclaimant CBS Studios Inc. ("CBS Studios") is a Delaware corporation with its principal place of business at 51 West 52nd Street, New York, New York 10019. CBS Studios is actively engaged in the worldwide production and distribution of copyrighted entertainment products.

14.     Counterclaimant Survivor Productions, LLC ("Survivor Productions") is a Delaware limited liability company with its principal place of business at 7800 Beverly Boulevard, Los Angeles, California 90036. Survivor Productions is actively engaged in the production and distribution of copyrighted television programs.

15.     On information and belief, Counterclaim-Defendant DISH Network, L.L.C. ("DISH") is a Colorado limited liability company with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112. DISH was previously known as EchoStar Satellite L.L.C.

16.     On information and belief, Counterclaim-Defendant EchoStar Technologies LLC ("EchoStar") is a Texas limited liability company with its principal place of business at 90 Inverness Circle East, Englewood, Colorado 80112.

17.     On information and belief, each Counterclaim-Defendant is and has been the agent of the other Counterclaim-Defendant, and in doing the things herein alleged, each was

6

acting within the course and scope of said agency with the advance knowledge, acquiescence, and subsequent ratification of the other Counterclaim-Defendant.

## JURISDICTION

18.    This civil action seeks injunctive relief and actual or statutory damages for copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq.* It also seeks damages, rescission, and injunctive relief for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraudulent concealment and inducement.

19.    This Court has subject matter jurisdiction over the claims for copyright infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a), because these claims arise under the Copyright Act, 17 U.S.C. § 101, *et seq.*

20.    This Court has jurisdiction over the breach of contract, breach of the implied covenant of good faith and fair dealing, and fraudulent concealment and inducement claims pursuant to 28 U.S.C. § 1332. Counterclaimants and Counterclaim-Defendants are diverse in citizenship and the amount in controversy exceeds the statutory minimum. In addition, the contract and fraud claims fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), because the contract and fraud claims form part of the same case and controversy as the copyright claims.

21.    This Court has personal jurisdiction over DISH because it does continuous, systematic, and routine business in New York.

22.    This Court has personal jurisdiction over EchoStar because it does continuous, systematic, and routine business in New York.

## GENERAL ALLEGATIONS

### Free Over-The-Air, Commercial Supported Broadcasting

23.     CBS is one of the four major over-the-air television networks that transmit programming to the American public via hundreds of free, local, terrestrial broadcast stations that carry the networks' content. The networks' content also is transmitted to a large number of television homes by subscription-based cable and satellite companies, including DISH, which retransmit the content carried on local broadcast stations. CBS, like the other major networks, provides copyrighted programming content (largely entertainment, news, and sports programming) on which the public has come to rely for information and entertainment.  The four major networks and their owned and operated and affiliated local stations continue to account for a large percentage of all television viewing in the United States.

24.     Maintaining a nationwide system of free over-the-air local television stations, which makes news, information, and entertainment programming available to virtually all Americans, has been a key public policy goal in the United States since the advent of television. The creation and acquisition of the content that has come to define free over-the-air television is made possible through commercial advertisements that are shown in each program. Whether viewers watch programming for free over-the-air or through paid services that retransmit broadcast signals (such as those offered by the DISH Parties), advertisements provide the primary means of payment for the copyrighted programming the public views. By creating a system that completely blocks the delivery of advertising to viewers, the DISH Parties deprive copyright owners of the principal means by which they are paid for their works. The DISH Parties' conduct diminishes both the value of the works and the incentive to create and distribute original content over the medium. By undermining the economic engine supporting the

production of content, the DISH Parties' system threatens to diminish the quantity and quality of the programming Americans have come to expect and demand.

### The CBS Parties' Dissemination Of Primetime Television Content

25.     The majority of the CBS Parties' most valuable programming airs during primetime, which in most of the largest markets falls between the hours of 8:00 p.m. and 11:00 p.m. Monday through Saturday, and between 7:00 p.m. to 11:00 p.m. on Sunday.  The CBS Copyright Holders own the United States copyrights in a substantial number of primetime programs, including successful series currently airing on CBS, such as those listed in Paragraph 2, above. These CBS Copyright Holders have registered or filed applications to register with the United States Copyright Office their copyrights in each of the representative works identified in the schedule attached hereto as Exhibit A and incorporated herein by this reference.

26.     After a program airs on primetime television, it is, in many cases, made available for viewing on other platforms, including through on-demand access on MVPD services; online purchase or rental by download (e.g., iTunes and Amazon); mobile phone services; pay-per-view and location-based (e.g., airline) services; and portable media (e.g., DVDs and Blu-Ray Discs), as well as subscription streaming services over the Internet (e.g., Netflix).

27.     The CBS Parties have invested (and continue to invest) substantial sums of money and effort each year to create and distribute television programs.  The public benefits from these creative activities, as intended by the United States Constitution and the Copyright Act. The CBS Parties recoup their substantial investments in creative high quality programming in a number of ways, including the following:

- **Advertiser Supported Broadcasts**.  National networks, including CBS, and the television stations owned by those networks, as well as independently-owned

local affiliates, derive substantial value by selling advertising time during their broadcast programming.  In addition, advertisements inserted in or adjacent to their programming (including network programming) are the principal source  of revenue from which broadcast stations pay licensing fees to content providers such as the CBS Parties. The viewership ratings generated by Nielsen Media Research ("Nielsen") for network commercials include viewing on a DVR during the first 3 days from the live airing of a program—the so-called "C3" rating.  But critically, *only* the viewing of commercials is credited, and Nielson technology is designed not to record viewing when a commercial is skipped. Thus, if a commercial is automatically skipped in its entirety, it generates no ratings and produces no revenue to support the creation and dissemination of the programming in which it was aired.

- **Video On-Demand ("VOD") Television Access**.  The CBS Parties also license MVPDs to make copyrighted works available for viewing on demand by their subscribers as an added benefit of their subscriptions. In addition to license fees from the operators, these arrangements allow for the sale of unique advertising in the VOD versions of the programs owned by the CBS Parties.

- **On-Demand Online Access**.  The CBS Parties earn revenue by providing access to their copyrighted works via their websites, the websites of their affiliates, and the websites and services of licensees. Some of these models involve showing advertisements to consumers before, after, or during viewing. These arrangements may specify that advertisements cannot be skipped or fast forwarded.  Other models involve payments to the CBS Parties from services

such as iTunes that license the CBS Parties' content to offer to customers for purchase or rental on a commercial-free basis.

- **Domestic Syndication.**   The CBS Parties generate revenue by licensing their copyrighted works for "syndicated" exhibition on both broadcast and non-broadcast television channels. For the CBS Parties, most syndication activity involves delivery of programming that already has aired on the CBS Television Network at an earlier date. In addition to fees paid to the CBS Parties by broadcast and non-broadcast television channels, an additional significant means by which the CBS Parties generate revenue from syndication is through sharing in the advertising revenue resulting from ads within the syndicated programs.

- **Fixed Media.**   The CBS Parties generate substantial revenue from the sale of authorized copies of their copyrighted works in various formats, including DVD and Blu-Ray Discs.  These formats typically do not include advertisements, other than occasional "trailers" at the beginning of a disc.

### The DISH Parties' Infringing Service

28.     On or about March 15, 2012, the DISH Parties made the Hopper available to DISH's subscribers. The Hopper's PrimeTime Anytime service automatically records primetime programming on CBS, ABC, NBC, and FOX, every day, on the Hopper DVR leased by DISH to subscribers.  The Hopper contains 2 terabytes of storage that makes it capable of storing up to 2,000 hours of content.  Until recently, of these 2 terabytes, only 1 terabyte was available to the consumer; the other was reserved for use solely by the DISH Parties, so they could operate their PrimeTime Anytime and AutoHop services.

29.     Prior to the initiation of this action and related lawsuits, the DISH Parties

11

programmed the Hopper so that its default operation was to record every single primetime broadcast of all four networks, every day, and to store those recordings for 8 days.  In an attempt to improve the DISH Parties' litigation position, the DISH Parties made minor alterations to the PrimeTime Anytime feature to allow subscribers to deselect networks and days of the week from the PrimeTime Anytime feature and to choose between 2 and 8 days of scheduled storage time for PrimeTime Anytime recordings.  These minor alterations are not transformative, and the DISH Parties continue to violate the CBS Parties' rights by providing the PrimeTime Anytime and AutoHop services, which enable the entire primetime schedule for all four broadcast networks to be recorded, and for those recordings to be stored and played back on a commercial-free basis for eight days.

30.     On or about May 10, 2012, the DISH Parties began offering a companion service to PrimeTime Anytime, called AutoHop, which automatically skips commercials during viewing of PrimeTime Anytime recorded programming.  Prior to the initiation of this action and related lawsuits, the DISH Parties programmed the Hopper so that its default setting was to operate with AutoHop enabled, such that any playback of primetime programming on the Hopper would automatically skip all commercials.  In an attempt to improve the DISH Parties' litigation position, the DISH Parties changed the Hopper's default setting for AutoHop so that AutoHop is enabled upon the simple click of a single button.  This minor change to the Hopper's default settings does not change the fact that the DISH Parties are continuing to violate the rights of the CBS Parties.

31.     The Hopper is specifically designed to function as a commercial-free, on-demand video delivery and library service.  The DISH Parties boast that the Hopper is unlike any other DVR offered by a television service provider.  On their website, an image from which is attached

12

hereto as Exhibit B and incorporated by reference, the DISH Parties have referred to the Hopper as an "on-demand" service that permits the creation of video "libraries" of commercial-free copyrighted primetime content.  For example, the DISH Parties have marketed the Hopper on DISH's website as follows:

> "With the Hopper's exclusive feature, PrimeTime Anytime, three hours of HD primetime programming are available to you On Demand for up to 8 days from initial air date.  Plus you can save your favorite primetime content forever. You can also automatically skip commercials in primetime TV — CBS, NBC, ABC and FOX in HD."

32.     During an interview while demonstrating the Hopper, a DISH representative stated:  "I don't think you'd need Hulu or Hulu Plus after this."  In other words, the DISH Parties tell their subscribers that the Hopper can be used as a substitute for Internet-based on-demand services. The CBS Parties make their programming available in advertising-supported, rental, purchase, and subscription models, as well as on web sites comparable to Hulu, such as cbs.com and TV.com.

33.     The DISH Parties also tout the Hopper's ability to provide commercial-free, on-demand program libraries to their subscribers:

> "Hate commercials? DISH created commercial-free TV so you can save an hour each night! Now you can automatically skip commercials in primetime TV- on ABC, CBS, FOX and NBC in HD.  Only on the Hopper.  Only from DISH."

34.     Vivek Khemka, vice president of DISH Product Management, described the infringing service as follows:

> "With the AutoHop capability of the Hopper, watching your favorite shows commercial-free is easier than ever before. It's a revolutionary development that no other company offers and it's something that sets Hopper above the competition. ... With Hopper, you have access to all primetime HD programs broadcast by the four major networks. Now you can watch many of those shows commercial-free, with AutoHop."

DISH Press Release, DISH Introduces Commercial-Free TV With "AutoHop," May 10, 2012.

35.     On information and belief, EchoStar provides digital broadcast operations, including satellite uplinking/downlinking, transmission services, signal processing, conditional access management and other services to DISH to facilitate DISH's delivery of television programming to consumers.

36.     On information and belief, the services EchoStar provides to DISH include development, testing, and delivery to consumers of the Hopper, the software to implement PrimeTime Anytime and the software to implement AutoHop. EchoStar has performed and continues to perform on a daily basis all tasks necessary to implement PrimeTime Anytime and AutoHop, including managing signals and encryption keys to enable PrimeTime Anytime and AutoHop, marking which primetime shows are to be included in PrimeTime Anytime recordings, and preparing and transmitting information to Hopper set top boxes held by consumers that enable AutoHop to function.

37.     On information and belief, DISH requested and contracted with EchoStar for the development, testing, and delivery of the software to implement PrimeTime Anytime and AutoHop and to perform all the tasks necessary for the operation of PrimeTime Anytime and AutoHop.

38.     On information and belief, during development and testing of PrimeTime Anytime and AutoHop, EchoStar and DISH made and/or caused to be made each night for many months hundreds of unauthorized copies of all primetime programs of the CBS Parties and the other networks whose programming is copied via PrimeTime Anytime. On information and belief, most of the devices used to make such unauthorized recordings were owned and in the possession of the DISH Parties at the time the unauthorized recordings were made.

39.     On information and belief, beginning not later than May 10, 2012 and continuing

14

until approximately July 20, 2012, EchoStar, at the request of and pursuant to its contracts with DISH, each and every night made unauthorized copies of the CBS Parties' primetime programming.

40.     On information and belief, beginning not later than May 10, 2012, EchoStar, at the request of and pursuant to its contracts with DISH, each and every night has made unauthorized copies of portions of the data transmitted as part of CBS's primetime broadcast, and has used and transmitted that data to Hopper set top boxes to enable AutoHop functionality with respect to that night's PrimeTime Anytime recordings.

41.     On information and belief, the DISH Parties are capable of expanding (and plan to expand) PrimeTime Anytime automatic recording to cover additional programming of the CBS Parties, and are capable of expanding (and plan to expand) the availability of PrimeTime Anytime and AutoHop to television set top boxes that use systems other than the Hopper.

### DISH Concealed AutoHop During Negotiations
### Of The 2012 Retransmission Agreement

42.     On January 5, 2012, CBS and DISH executed a Retransmission Agreement that grants DISH limited rights to retransmit to its subscribers the CBS Broadcast Signal.

43.     The parties negotiated the terms of the Retransmission Agreement during several months of 2011, including, in particular, active negotiations in December 2011.  It is now apparent that during the time period in which the parties negotiated the Retransmission Agreement, DISH had developed a system that would record and playback all CBS primetime television programming on-demand *without commercials*, and had definite plans to offer that feature to subscribers.  Yet, during the negotiations, DISH intentionally concealed this fact from CBS.

44.     During the negotiations, the parties discussed DISH's existing and future systems,

services, features, and platforms, including features in development. DISH executives described to CBS specific systems DISH was developing for introduction to subscribers, including the Hopper. At the same time, however, DISH did not disclose anything regarding AutoHop, but instead concealed the fact that DISH had developed a system to allow the Hopper to record and playback the CBS Parties' copyrighted programming with all the commercials made invisible to DISH subscribers.

45.     In a December 16, 2011 email to DISH executive David Shull regarding upcoming negotiations in Denver, Colorado, CBS Executive Vice President Martin Franks made it clear that CBS was not "looking to have this arrangement include new businesses that DISH may choose to enter into in the future, whether they be Netflix-like businesses, new mobile services, or other new platforms." Thus, DISH was on notice that CBS's intent was not to address new product features or services or to broaden the scope of DISH's rights in the Retransmission Agreement.

46.     On or around December 18, 2011, DISH executives met with CBS executives in Denver, Colorado, to discuss and negotiate the final terms of the Retransmission Agreement.  At no time during the meetings that occurred that day or during the ensuing days did anyone from DISH disclose to anyone at CBS that DISH had developed AutoHop, nor was any reference made to the existence or possible use of any service that would allow DISH or its subscribers to record and playback the CBS Parties' primetime programming on a commercial-free basis.

47.     During these negotiations, on or around December 21, 2011, DISH Chairman Charles Ergen, together with DISH executives Joe Clayton and David Shull, met separately with Mr. Franks of CBS in DISH's offices.   During this meeting, Messrs. Ergen and Clayton discussed the Hopper and showed Mr. Franks the Hopper's logo, a stuffed animal in the form of

a kangaroo.  However, during this meeting, neither Mr. Ergen nor anyone else at DISH made any reference to AutoHop or any other system that had been developed to enable the Hopper to record and playback primetime broadcast programming on a commercial-free basis. By contrast, after the Retransmission Agreement was executed, images of DISH's kangaroo logo (the symbol for the Hopper) have appeared on DISH advertisements that say "Watch COMMERCIAL-FREE TV."

48.      Four days after the parties executed the Retransmission Agreement, DISH issued a press release regarding the Hopper.  The press release made reference to PrimeTime Anytime, but did not reveal that DISH also had developed a service to enable the Hopper to record and playback copyrighted programming commercial-free.

49.      On May 10, 2012, DISH issued another press release—entitled "DISH Introduces Commercial-Free TV With 'Auto Hop'"—which announced that the "new 'Auto Hop' capability is being activated today."

50.      During discovery in this action, it has been revealed that during 2011, DISH initially intended to release the Hopper in February 2012 with both PrimeTime Anytime and AutoHop services included.  Thus, during the negotiation of the Retransmission Agreement, DISH intended to offer the AutoHop service as part of the Hopper, but deliberately chose to conceal this fact from CBS.

51.      Until just prior to its May 10, 2012 announcement, CBS did not know about AutoHop.  Had DISH disclosed to CBS during the negotiations the material facts that it had developed AutoHop and intended to provide its subscribers with AutoHop, CBS would not have entered into the Retransmission Agreement on the terms set forth in the current agreement.

## DISH Has Breached The Retransmission Agreement With CBS
## And Has Infringed The Copyrights Of The CBS Copyright Holders

52.   Section 23 of the Retransmission Agreement provides that: "Except as expressly authorized by this Agreement, DISH shall not, for pay or otherwise, record, copy, duplicate, or retransmit any portion of any Station's Broadcast Signal without the prior written consent of Broadcaster."   Notwithstanding this unambiguous language, the PrimeTime Anytime and AutoHop services *depend* upon illegal copying of CBS programming by the DISH Parties—copying that serves no purpose other than for DISH to provide these services.  To make their new services effective, the DISH Parties have recorded and copied all of CBS's primetime programming, have had their operators locate and time the commercial breaks, and then transmitted that information to the set top boxes leased to subscribers to enable commercial-skipping.  That act of copying CBS's primetime programming, and using those copies to ensure that AutoHop properly identifies, measures, and removes each commercial break, is a breach of Paragraph 23 of the Retransmission Agreement.

53.   By creating these unauthorized copies of the programming produced by the CBS Copyright Holders, DISH and EchoStar have also willfully infringed the copyrights owned by the CBS Copyright Holders.

## The CBS Parties Will Suffer Irreparable
## Harm Unless The DISH Parties Are Enjoined

54.   The DISH Parties' unauthorized conduct, which constitutes both copyright infringement and a contractual breach, seriously threatens the CBS Parties' ability to earn revenue from their copyrighted works. Unless enjoined, the DISH Parties' illegal conduct will irreparably injure the CBS Parties in numerous ways that are incapable of calculation or redress through monetary damages.

55.     The DISH Parties' unlawful conduct, if not enjoined, will also ultimately harm the public, because it will reduce the incentive to create quality programming and will undermine the economic foundation of free television.

## CLAIMS FOR RELIEF

## COUNT I

## (BY THE CBS COPYRIGHT HOLDERS FOR DIRECT COPYRIGHT INFRINGEMENT AGAINST ALL COUNTERCLAIM-DEFENDANTS)

56.     The CBS Copyright Holders incorporate by reference all of the foregoing allegations as though fully set forth herein.

57.     The CBS Copyright Holders are the copyright owners of the works listed in Exhibit A, as well as many other television programs broadcast in the United States, each of which contain a large number of creative elements wholly original to the CBS Copyright Holders and that are copyrightable subject matter under the laws of the United States.

58.     Through and in connection with the operation of their PrimeTime Anytime and AutoHop services, the DISH Parties have reproduced and distributed, and unless enjoined will continue to reproduce and distribute, the CBS Copyright Holders' copyrighted works (the "Works"), including but not limited to the programs listed in Exhibit A, without the permission or consent of the CBS Copyright Holders.

59.     By engaging in and imminently engaging in these acts, the DISH Parties are violating and will imminently violate the CBS Copyright Holders' exclusive rights in violation of 17 U.S.C. § 106, including sections 106(1) and 106(3), and 17 U.S.C. § 501.

60.     These acts of infringement are willful, intentional, and purposeful, in disregard of the CBS Copyright Holders' rights under the Copyright Act.  The CBS Copyright Holders have not consented to the DISH Parties' conduct.

19

61.     The CBS Copyright Holders have been damaged as a direct and proximate result of the infringing acts set forth above.

62.     As a result of the DISH Parties' willful copyright infringement, the CBS Copyright Holders have suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money.

**COUNT II**

**(BY THE CBS COPYRIGHT HOLDERS FOR INDUCEMENT OF COPYRIGHT INFRINGEMENT AGAINST ALL COUNTERCLAIM-DEFENDANTS)**

63.     The CBS Copyright Holders incorporate by reference each of the foregoing allegations as though fully set forth herein.

64.     The CBS Copyright Holders allege the following as an alternative to their direct infringement claim in the event that the DISH Parties establish that the unlawful copying described herein is done solely by DISH subscribers:

65.     By providing and promoting PrimeTime Anytime and AutoHop to subscribers for the wholesale reproduction and on-demand, commercial-free viewing of every Work broadcast during primetime, the DISH Parties have induced and are inducing direct infringement by DISH subscribers of the CBS Copyright Holders' exclusive rights under 17 U.S.C. § 106, including section 106(1).  The DISH Parties provide the Hopper and its PrimeTime Anytime and AutoHop services with the object of promoting their use for infringement.  The DISH Parties' conduct demonstrates their purposeful promotion of infringement by DISH subscribers.  Among other things, the DISH Parties have marketed the Hopper and its PrimeTime Anytime and AutoHop services expressly for copying and creating libraries of programming that include the Works, and that allow the Works to be viewed in an on-demand, commercial-free format. The DISH Parties also have marketed their services as a substitute for licensed methods of accessing the Works,

such as iTunes.

66.     These acts of inducement are willful, intentional, and purposeful, in disregard of the CBS Copyright Holders' rights under the Copyright Act. The CBS Copyright Holders have not authorized or consented to the DISH Parties' conduct.

67.     As a result of the DISH Parties' misconduct, including these acts of inducement, DISH subscribers have infringed (and continue to infringe) the CBS Copyright Holders' rights by using the Hopper and its Primetime Anytime and AutoHop services to reproduce their Works, including but not limited to the programs listed in Exhibit A, without the permission or consent of the CBS Copyright Holders.

68.     The CBS Copyright Holders have been damaged as a direct and proximate result of the infringing acts set forth above.

69.     As a result of the DISH Parties' willful inducement of copyright infringement, the CBS Copyright Holders have suffered and will continue to suffer substantial irreparable harm that cannot be fully compensated or measured in money damages.

## **COUNT III**

### **(BY THE CBS COPYRIGHT HOLDERS FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT AGAINST ALL COUNTERCLAIM-DEFENDANTS)**

70.     The CBS Copyright Holders incorporate by reference each of the foregoing allegations as though fully set forth herein.

71.     The CBS Copyright Holders allege the following as an alternative to their direct infringement claim in the event that the DISH Parties establish that the unlawful copying described herein is done solely by DISH subscribers:

72.     By participating in, facilitating, assisting, enabling, materially contributing to, and

encouraging the infringing reproductions of the CBS Copyright Holders' Works, with full knowledge of their illegal consequences, and with the ability to take simple measures to prevent or limit infringement, the DISH Parties have contributed and are contributing to infringement of the CBS Copyright Holders' Works, in violation of 17 U.S.C. § 106, including section 106(1).

73.     The DISH Parties make the infringement described above possible and provide the site and facilities for the infringement.

74.     The DISH Parties know or have reason to know of the actual or imminent infringing acts of DISH subscribers.  Indeed, on information and belief, the DISH Parties monitor their subscribers' infringing activity and technologically and personally assist their subscribers throughout their illegal acts.  The DISH Parties' service agreement with their subscribers states that they collect information regarding "the programming service options [subscribers] have chosen." The agreement also states: "When you use our interactive or other transactional television services, the satellite system automatically collects certain information on your use of these services."

75.     The DISH Parties' contributions to their subscribers' infringement have been willful, intentional, and purposeful, in disregard of the CBS Copyright Holders' rights under the Copyright Act. The CBS Copyright Holders have not authorized or consented to the DISH Parties' conduct.

76.     The CBS Copyright Holders have been damaged as a direct and proximate result of the infringing acts set forth above.

77.     As a result of the DISH Parties' willful contributory copyright infringement, the CBS Copyright Holders have suffered and will continue to suffer substantial irreparable harm that cannot be fully compensated or measured in money damages.

22

## COUNT IV

### (BY THE CBS COPYRIGHT HOLDERS FOR VICARIOUS COPYRIGHT INFRINGEMENT AGAINST ALL COUNTERCLAIM-DEFENDANTS)

78.    The CBS Copyright Holders incorporate by reference each of the foregoing allegations as though fully set forth herein.

79.    The CBS Copyright Holders allege the following as an alternative to their direct infringement claim in the event that the DISH Parties establish that the unlawful copying described herein is done solely by DISH subscribers:

80.    By providing and promoting PrimeTime Anytime and AutoHop to subscribers for the wholesale reproduction and on-demand, commercial-free viewing of every Work broadcast during primetime, the DISH Parties have engaged in vicarious infringement of the CBS Copyright Holders' exclusive rights under 17 U.S.C. § 106, including section 106(1).

81.    The DISH Parties have the right and ability to supervise and control the infringing conduct of their subscribers, described above, and have failed to exercise that right and ability.

82.    The DISH Parties' contract with DISH subscribers states:

> "We may add, delete, rearrange and/or change any and all programming, programming packages and other Services that we offer, as well as the prices and fees related to such programming, programming packages and Services, at any time, including without limitation, during any term commitment period to which you have agreed."

83.    The DISH Parties' regular involvement in their subscribers' copying is an indispensable link in such infringing conduct.  The DISH Parties control their subscribers' ability to record primetime content using Primetime Anytime.  In addition, the DISH Parties go to great lengths and efforts to enable their subscribers to skip entire commercial segments. On information and belief, in order to achieve this goal, the DISH Parties must study the television programs that are transmitted, and "push" certain data to the Hopper DVRs resident in the homes

of subscribers (but owned by the DISH Parties). Absent the DISH Parties' conduct, subscribers simply could not automatically skip commercials.

84.     On information and belief, all of the infringing activity is actively monitored by the DISH Parties.  The DISH Parties' service agreement with DISH subscribers states that they collect information regarding "the programming service options [subscribers] have chosen."  The agreement also states: "When you use our interactive or other transactional television services, the satellite system automatically collects certain information on your use of these services."

85.     The DISH Parties also receive a direct financial benefit from the infringement described above.  On information and belief, the DISH Parties have attracted, obtained, and retained subscribers as a result of their infringing offerings. PrimeTime Anytime and AutoHop constitute draws to the DISH Parties' services.  The DISH Parties actively advertise the infringing capabilities of the Hopper, and receive payments from subscribers who possess the Hopper.

86.     The DISH Parties' refusal to stop or limit their subscribers' infringement has been willful, intentional, and purposeful, in knowing disregard of the CBS Copyright Holders' rights under the Copyright Act. The CBS Copyright Holders have not authorized or consented to this infringement.

87.     The CBS Copyright Holders have been damaged as a direct and proximate result of the infringing acts set forth herein.

88.     As a result of the DISH Parties' willful vicarious copyright infringement, the CBS Copyright Holders have suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money.

## COUNT V

### (BY CBS FOR BREACH OF CONTRACT AGAINST DISH ONLY)

89.     CBS incorporates by reference each of the foregoing allegations as though fully set forth herein.

90.     CBS and DISH are parties to a Retransmission Agreement executed as of January 5, 2012.

91.     CBS has duly performed all terms and conditions required to be performed under the terms of the Retransmission Agreement, except to the extent excused or prevented by DISH's breaches or other wrongful conduct.

92.     As alleged above, DISH has materially breached the Retransmission Agreement by recording, copying, duplicating, and retransmitting portions of CBS's programming in connection with PrimeTime Anytime and AutoHop, without CBS's written consent.

93.     As a direct and proximate result of DISH's breaches, CBS has suffered damages.

94.     As a direct and proximate result of DISH's breaches, CBS has suffered and will continue to suffer substantial irreparable harm that cannot be fully compensated or measured in money.

## COUNT VI

### (BY CBS FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST DISH ONLY)

95.     CBS incorporates by reference each of the foregoing allegations as though fully set forth herein.

96.     By providing CBS's primetime programming to DISH subscribers on-demand and on a commercial-free basis, as hereinabove alleged, DISH has deprived CBS of the right to receive the benefits of the Retransmission Agreement, including the advertising revenues

associated with CBS's programming and the fees for commercial-free programming. DISH thereby has breached the covenant of good faith and fair dealing implied by law in the Retransmission Agreement.

97.     DISH has committed this breach of the implied covenant of good faith and fair dealing in bad faith or reckless indifference to the rights of CBS as reflected by, among other things, DISH's intentional nondisclosure during the parties' negotiations of the Retransmission Agreement of AutoHop and of DISH's plans to activate the Hopper's AutoHop feature.

98.     As a direct and proximate result of DISH's breach of the Retransmission Agreement, CBS has been damaged.

99.     As a direct result of DISH's breach, CBS has suffered and will continue to suffer substantial irreparable harm that cannot be fully compensated or measured in money.

<u>**COUNT VII**</u>

**(FRAUDULENT CONCEALMENT AND FRAUD IN THE INDUCEMENT AGAINST DISH ONLY)**

100.    CBS incorporates by reference each of the foregoing allegations as though fully set forth herein.

101.    As alleged herein above, DISH concealed material facts from CBS in connection with its negotiation of the Retransmission Agreement. In particular, DISH deliberately or with reckless disregard failed to disclose to CBS during the negotiation of the Retransmission Agreement that DISH at that time had developed a service (i.e., AutoHop) that would allow it to offer to subscribers CBS's primetime programming on a commercial-free basis. If CBS had known that DISH had developed and intended to offer this service, CBS would not have entered into the Retransmission Agreement on the terms set forth in the current agreement.  Thus, CBS was fraudulently induced into executing the Retransmission Agreement by virtue of DISH's

26

fraudulent concealment.

102.    DISH had a duty to disclose these material facts before the parties executed the Retransmission Agreement because DISH had knowledge of the information during the parties' negotiations, the information was not readily available to CBS, and DISH knew that CBS was acting on the basis of its mistaken knowledge when it executed the Retransmission Agreement. These material facts were basic to the agreement that CBS and DISH were negotiating and CBS would reasonably expect disclosure of them.

103.    As alleged herein above, DISH deliberately or with reckless disregard made partial, incomplete statements of material fact about DISH's services, including the Hopper.  For example, as described herein above, DISH executives told CBS about the Hopper, but did not disclose that DISH had developed and planned to implement AutoHop, which would allow the Hopper to play back CBS's primetime broadcasts on a commercial-free basis.

104.    DISH had a duty to disclose that it had developed and planned to implement AutoHop to correct or otherwise complete its partial and misleading statements of material fact before the parties executed the Retransmission Agreement.

105.    At the time the Retransmission Agreement was negotiated, DISH was aware of AutoHop, and was aware that CBS did not know about AutoHop. DISH made partial, incomplete representations of material facts to CBS about the Hopper, and intentionally failed to disclose the existence of AutoHop in order to induce CBS to enter into the Retransmission Agreement.

106.    In entering into the Retransmission Agreement, DISH made materially incomplete misrepresentations, and chose to conceal material information, with knowledge of the misleading nature of its discussions with CBS, and with knowledge that any omitted facts were material facts.

27

107.     DISH made incomplete and misleading representations and concealed material facts about AutoHop with the intent to induce CBS to enter into the Retransmission Agreement, and which CBS justifiably relied on to its detriment.

108.     As a direct and proximate result of DISH's conduct, CBS has been damaged.

109.     As a direct result of DISH's conduct, CBS is entitled to rescission of the Retransmission Agreement or to damages caused by DISH's fraudulent concealment, based on an election of remedies that CBS is entitled to make during the course of this litigation.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimants pray that this Court enter judgment in their favor and against Counterclaim-Defendants, and each of them, as follows:

(a)     On Counts I through IV, permanently enjoin, pursuant to 17 U.S.C. § 502, Counterclaim-Defendants, their respective officers, agents, servants, employees, and those persons in active concert or participation with Counterclaim-Defendants, or any of them, from inducing infringement or directly, contributorily, and/or vicariously infringing by any means, including but not limited to specifically in connection with the PrimeTime Anytime and AutoHop services, the CBS Copyright Holders' exclusive rights under the Copyright Act, including, but not limited to any of the CBS Copyright Holders' rights in any of the Works listed on Exhibit A, and from licensing any other person to do the same;

(b)     On Counts V and VI, for damages according to proof at trial, and for an order permanently enjoining and restraining DISH, and its officers, agents, servants, employees, and all those acting in concert with them, or any of them, from making the PrimeTime Anytime and AutoHop services available to subscribers;

(c)     On Count VII, for damages caused by DISH's fraudulent concealment, or

alternatively to any damages award on Counts V, VI, and VII, for an award of rescission of the Retransmission Agreement;

(d)      Award the CBS Copyright Holders statutory damages in accordance with 17 U.S.C. § 504 and other applicable law;

(e)      Award the CBS Copyright Holders costs and reasonable attorneys' fees in accordance with 17 U.S.C. § 505, and other applicable law; and

(f)      Award Counterclaimants such further and additional relief as the Court may deem just and proper.

Respectfully submitted,

BOIES, SCHILLER, & FLEXNER LLP

/s/ Jonathan D. Schiller
Jonathan D. Schiller
Joshua I. Schiller
575 Lexington Avenue, 7th Floor,
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Hamish P.M. Hume
5301 Wisconsin Ave., NW, Suite 800
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

*Attorneys for CBS Corporation, CBS Broadcasting Inc., CBS Studios Inc. and Survivor Productions, LLC*

January 22, 2013

# Exhibit A

Exhibit A:

CBS Illustrative Copyright Registrations

| | Program Title | Copyright Registration No. | Copyright Registration Date | Copyright Owner |
|---|---|---|---|---|
| 1 | 48 HOURS MYSTERY | PA-1-759-508 | 10/27/2011 | CBS Broadcasting Inc. |
| 2 | 60 MINUTES | PA-1-805-026 | 08/30/2012 | CBS Broadcasting Inc. |
| 3 | BLUE BLOODS: "A Night On The Town" | PA-1-768-009 | 12/12/2011 | CBS Studios Inc. |
| 4 | BLUE BLOODS: "Critical Condition" | PA-1-768-019 | 12/12/2011 | CBS Studios Inc. |
| 5 | BLUE BLOODS: "Mercy" | PA-1-768-241 | 12/12/2011 | CBS Studios Inc. |
| 6 | CSI: CRIME SCENE INVESTIGATION: "CSI Unplugged" | PA-1-781-093 | 03/27/2012 | CBS Broadcasting Inc. |
| 7 | CSI: CRIME SCENE INVESTIGATION: "Willows in the Wind" | PA-1-776-200 | 02/16/2012 | CBS Broadcasting Inc. |
| 8 | CSI: NY: "Officer Involved" | PA-1-759-640 | 11/07/2011 | CBS Broadcasting Inc. |
| 9 | CSI: NY: "Slainte" | PA-1-788-518 | 05/09/2012 | CBS Broadcasting Inc. |
| 10 | CSI: NY: "Officer Involved" | PA-1-759-640 | 11/07/2011 | CBS Broadcasting Inc. |
| 11 | CSI: NY: "Crossroads" | PA-1-768-711 | 11/28/2011 | CBS Broadcasting Inc. |
| 12 | HAWAII FIVE-O: "Ua Hala (Death in the Family)" | PA-1-793-980 | 06/22/2012 | CBS Studios Inc. |
| 13 | HAWAII FIVE-O: "Kupale (Defender)" | PA-1-790-485 | 05/22/2012 | CBS Studios Inc. |
| 14 | HAWAII FIVE-O: "Mai Ka Wa Kahiko (Out of the Past)" | PA-1-780-794 | 02/23/2012 | CBS Studios Inc. |
| 15 | NCIS: | PA-1-778-988 | 03/13/2012 | CBS Studios Inc. |

1

| | "Secrets" | | | |
|---|---|---|---|---|
| 16 | NCIS:<br>"Enemy on the Hill" | PA-1-767-917" | 12/12/2011 | CBS Studios Inc. |
| 17 | NCIS:<br>"Playing with Fire" | PA-1-790-730 | 06/01/2012 | CBS Studios Inc. |
| 18 | NCIS: LOS ANGELES:<br>"Greed" | PA-1-768-118 | 12/19/2011 | CBS Studios Inc. |
| 19 | NCIS: LOS ANGELES:<br>"The Watchers" | PA-1-778-905 | 02/23/2012 | CBS Studios Inc. |
| 20 | SURVIVOR: ONE WORLD<br>"Perception Is Not Always<br>Reality" | PA-1-787-956 | 05/29/2012 | Survivor<br>Productions,<br>LLC |
| 21 | SURVIVOR: PHILIPPINES:<br>"Don't Be Blinded by the<br>Headlights" | Application<br>Filed 10/3/2012 | | Survivor<br>Productions,<br>LLC |
| 22 | SURVIVOR: PHILIPPINES:<br>"Survivor Smacked Me in the<br>Chops" | Application<br>Filed<br>10/03/2012 | | Survivor<br>Productions,<br>LLC |
| 23 | THE GOOD WIFE<br>"Long Way Home" | PA-1-791-007 | 06/01/2012 | CBS Studios Inc. |
| 24 | THE GOOD WIFE<br>"Alienation of Affections" | PA-1-780-801 | 02/23/2012 | CBS Studios Inc. |
| 25 | THE GOOD WIFE<br>"Feed the Rat" | PA-1-768-220 | 12/12/2011 | CBS Studios Inc. |
| 26 | THE GOOD WIFE:<br>"Get A Room | PA-1-768-219 | 12/12/2011 | CBS Studios Inc. |

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-759-508

**Effective date of registration:**

October 27, 2011

---

## Title

**Title of Work:** 48 HOURS MYSTERY: September 24, 2011

## Completion/Publication

**Year of Completion:** 2011

**Date of 1st Publication:** September 24, 2011     **Nation of 1st Publication:** United States

## Author

■ **Author:** CBS News Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Citizen of:** United States     **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** CBS Broadcasting Inc.

51 West 52 Street, 31/15-45, New York, NY, 10019, United States

**Transfer Statement:** By written agreement

## Limitation of copyright claim

**Material excluded from this claim:** Some footage

**New material included in claim:** All other cinematographic material including compilation

## Rights and Permissions

**Organization Name:** CBS Broadcasting Inc.

**Name:** Carla Rothenberg

**Email:** carla.rothenberg@cbs.com     **Telephone:** 212-975-3286

**Address:** 51 West 52 Street

31/15-76

New York, NY 10019 United States

## Certification

---

**Name:**  Carla Rothenberg

**Date:**  October 24, 2011



**Registration #:**  PA0001759508
**Service Request #:**  1-676186563



CBS Broadcasting Inc.
Carla Rothenberg
51 West 52nd Street
31/15-76
New York, NY 10019  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-805-026

**Effective date of registration:**

August 30, 2012

---

## Title

**Title of Work:** 60 MINUTES: July 15, 2012

## Completion/Publication

**Year of Completion:** 2012

**Date of 1st Publication:** July 15, 2012    **Nation of 1st Publication:** United States

## Author

■ **Author:** CBS News Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Citizen of:** United States    **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** CBS Broadcasting Inc.

51 West 52 Street, 31/15-45, New York, NY, 10019, United States

**Transfer Statement:** By written agreement

## Limitation of copyright claim

**Material excluded from this claim:** Some footage from 60 Minutes: Steve Jobs (Steve Kroft OAD: 10/23/11); 60 Minutes: Apps for Autism (Lesley Stahl OAD: 10/23/11)

**New material included in claim:** All other cinematographic material including compilation

## Rights and Permissions

**Organization Name:** CBS Broadcasting Inc.

**Name:** Carla Rothenberg

**Email:** carla.rothenberg@cbs.com    **Telephone:** 212-975-3286

**Address:** 51 West 52 Street

31/15-76

New York, NY 10019  United States

## Certification

**Name:** Carla Rothenberg

**Date:** August 27, 2012



**Registration #:**  PA0001805026

**Service Request #:**  1-814814321



CBS Broadcasting Inc.
Carla Rothenberg
51 West 52nd Street
31/15-76
New York, NY 10019  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-768-009**

**Effective date of
registration:**

December 12, 2011

## Title

**Title of Work:** BLUE BLOODS - Show # 205 "A Night On The Town"

## Completion/Publication

**Year of Completion:** 2011

**Date of 1st Publication:** October 20, 2011          **Nation of 1st Publication:** United States

## Author

    ■    **Author:** CBS Studios Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** CBS Studios Inc.

4024 Radford Ave., Admin Building, Room 390G, Studio City, CA, 91604,
United States

## Certification

**Name:** Lura Burton

**Date:** December 1, 2011

**Registration #:**   PA0001768009
**Service Request #:**   1-692216508



Youngblood Group
Juliette Youngblood
3000 Olympic Blvd.
Suite 2520
Santa Monica, CA 90404  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-768-019**

**Effective date of registration:**

December 12, 2012

---

## Title

**Title of Work:** BLUE BLOODS - Show # 202 "Critical Condition"

## Completion/Publication

**Year of Completion:** 2011

**Date of 1st Publication:** October 6, 2011          **Nation of 1st Publication:** United States

## Author

■          **Author:** CBS Studios Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** CBS Studios Inc.

4024 Radford Ave., Admin Building, Room 390G, Studio City, CA, 91604, United States

## Certification

**Name:** Lura Burton

**Date:** December 1, 2011

**Registration #:**   PA0001768019
**Service Request #:**   1-692216413



Youngblood Group
Juliette Youngblood
3000 Olympic Blvd.
Suite 2520
Santa Monica, CA 90404  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-768-241

**Effective date of
registration:**

December 12, 2011

---

## Title

**Title of Work:** BLUE BLOODS - Show # 201 "Mercy"

## Completion/Publication

**Year of Completion:** 2011

**Date of 1st Publication:** September 22, 2011   **Nation of 1st Publication:** United States

## Author

■ **Author:** CBS Studios Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** CBS Studios Inc.

4024 Radford Ave., Admin Building, Room 390G, Studio City, CA, 91604,
United States

## Certification

**Name:** Lura Burton

**Date:** December 1, 2011

**Registration #:**  PA0001768241
**Service Request #:**  1-692216378



Youngblood Group
Juliette Youngblood
3000 Olympic Blvd.
Suite 2520
Santa Monica, CA 90404  United States

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-781-093**

**Effective date of registration:**

March 27, 2012

---

### Title

**Title of Work:** CSI: CRIME SCENE INVESTIGATION - CSI Unplugged - #1216

### Completion/Publication

**Year of Completion:** 2012

**Date of 1st Publication:** February 29, 2012          **Nation of 1st Publication:** United States

### Author

- **Author:** CBS Broadcasting Inc.

  **Author Created:** entire motion picture

  **Work made for hire:** Yes

  **Citizen of:** United States

- **Author:** Entertainment AB Funding LLC

  **Author Created:** entire motion picture

  **Work made for hire:** Yes

  **Citizen of:** United States

### Copyright claimant

**Copyright Claimant:** CBS Broadcasting Inc.

51 West 52nd Street, New York, NY, 10019, United States

**Copyright Claimant:** Entertainment AB Funding LLC

85 Broad Street, New York, NY, 10004, United States

### Rights and Permissions

**Organization Name:** CBS Broadcasting Inc.

**Name:** Thomas Lane

**Email:** thomas.lane@cbs.com          **Telephone:** 818-655-1649

**Address:** 4024 Radford Avenue

Carpenter Building

Studio City, CA 91604 United States

Page 1 of

## Certification

**Name:** Thomas Lane

**Date:** March 20, 2012



**Registration #:**   PA0001781093
**Service Request #:**   1-740902018



CBS Broadcasting Inc.
Denise Lopez
4024 Radford Avenue
Carpenter Building
Studio City, CA 91604  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-776-200

**Effective date of registration:**

February 16, 2012

---

## Title

**Title of Work:** CSI: CRIME SCENE INVESTIGATION - Willows in the Wind - #1212

## Completion/Publication

**Year of Completion:** 2012

**Date of 1st Publication:** January 25, 2012     **Nation of 1st Publication:** United States

## Author

■     **Author:** CBS Broadcasting Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Citizen of:** United States

■     **Author:** Entertainment AB Funding LLC

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Citizen of:** United States

## Copyright claimant

**Copyright Claimant:** CBS Broadcasting Inc.

51 West 52nd Street, New York, NY, 10019, United States

**Copyright Claimant:** Entertainment AB Funding LLC

85 Broad Street, New York, NY, 10004, United States

## Rights and Permissions

**Organization Name:** CBS Broadcasting Inc.

**Name:** Thomas Lane

**Email:** thomas.lane@cbs.com     **Telephone:** 818-655-1649

**Address:** 4024 Radford Avenue

Carpenter Building

Studio City, CA 91604  United States

## Certification

**Name:** Thomas Lane

**Date:** February 10, 2012



**Registration #:**   PA0001776200
**Service Request #:**   1-723370430



CBS Broadcasting Inc.
Denise Lopez
4024 Radford Avenue
Carpenter Building
Studio City, CA 91604  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-759-640

**Effective date of
registration:**

November 7, 2011

---

## Title

**Title of Work:** CSI: NY - Officer Involved - #804

## Completion/Publication

**Year of Completion:** 2011

**Date of 1st Publication:** October 14, 2011     **Nation of 1st Publication:** United States

## Author

■     **Author:** CBS Broadcasting Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Citizen of:** United States

■     **Author:** Entertainment AB Funding LLC

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Citizen of:** United States

## Copyright claimant

**Copyright Claimant:** CBS Broadcasting Inc.

51 West 52nd Street, New York, NY, 10019, United States

**Copyright Claimant:** Entertainment AB Funding LLC

85 Broad Street, New York, NY, 10004, United States

## Rights and Permissions

**Organization Name:** CBS Broadcasting Inc.

**Name:** Thomas Lane

**Email:** thomas.lane@cbs.com     **Telephone:** 818-655-1649

**Address:** 4024 Radford Avenue

Carpenter Building

Studio City, CA 91604  United States

## Certification

**Name:** Thomas Lane

**Date:** October 26, 2011



**Registration #:**  PA0001759640
**Service Request #:**  1-677986704



CBS Broadcasting Inc.
Denise Lopez
4024 Radford Avenue
Carpenter Building
Studio City, CA 91604  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-788-518

**Effective date of registration:**

May 9, 2012

---

## Title

**Title of Work:** CSI: NY - Slainte - #816

## Completion/Publication

**Year of Completion:** 2012

**Date of 1st Publication:** April 27, 2012     **Nation of 1st Publication:** United States

## Author

■    **Author:** CBS Broadcasting Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Citizen of:** United States

■    **Author:** Entertainment AB Funding LLC

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Citizen of:** United States

## Copyright claimant

**Copyright Claimant:** CBS Broadcasting Inc.

51 West 52nd Street, New York, NY, 10019, United States

**Copyright Claimant:** Entertainment AB Funding LLC

85 Broad Street, New York, NY, 10004, United States

## Rights and Permissions

**Organization Name:** CBS Broadcasting Inc.

**Name:** Thomas Lane

**Email:** thomas.lane@cbs.com      **Telephone:** 818-655-1649

**Address:** 4024 Radford Avenue

Carpenter Building

Studio City, CA 91604 United States

## Certification

**Name:** Thomas Lane

**Date:** May 4, 2012



**Registration #:**  PA0001788518
**Service Request #:**  1-762115827



CBS Broadcasting Inc.
Denise Lopez
4024 Radford Avenue
Carpenter Building
Studio City, CA 91604  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-759-640

**Effective date of
registration:**

November 7, 2011

## Title ───────────────

**Title of Work:** CSI: NY - Officer Involved - #804

## Completion/Publication

**Year of Completion:** 2011

**Date of 1st Publication:** October 14, 2011     **Nation of 1st Publication:** United States

## Author ───────────────

■     **Author:** CBS Broadcasting Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Citizen of:** United States

■     **Author:** Entertainment AB Funding LLC

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Citizen of:** United States

## Copyright claimant ───────────────

**Copyright Claimant:** CBS Broadcasting Inc.

51 West 52nd Street, New York, NY, 10019, United States

**Copyright Claimant:** Entertainment AB Funding LLC

85 Broad Street, New York, NY, 10004, United States

## Rights and Permissions ───────────────

**Organization Name:** CBS Broadcasting Inc.

**Name:** Thomas  Lane

**Email:** thomas.lane@cbs.com          **Telephone:** 818-655-1649

**Address:** 4024 Radford Avenue

Carpenter Building

Studio City, CA 91604  United States

## Certification

**Name:**   Thomas Lane

**Date:**   October 26, 2011



**Registration #:**   PA0001759640
**Service Request #:**   1-677986704



CBS Broadcasting Inc.
Denise Lopez
4024 Radford Avenue
Carpenter Building
Studio City, CA 91604  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-768-711

**Effective date of
registration:**

November 28, 2011

---

## Title

**Title of Work:** CSI: NY - Crossroads - #808

## Completion/Publication

**Year of Completion:** 2011

**Date of 1st Publication:** November 11, 2011      **Nation of 1st Publication:** United States

## Author

■      **Author:** CBS Broadcasting Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Citizen of:** United States

■      **Author:** Entertainment AB Funding LLC

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Citizen of:** United States

## Copyright claimant

**Copyright Claimant:** CBS Broadcasting Inc.

51 West 52nd Street, New York, NY, 10019, United States

**Copyright Claimant:** Entertainment AB Funding LLC

85 Broad Street, New York, NY, 10004, United States

## Rights and Permissions

**Organization Name:** CBS Broadcasting Inc.

**Name:** Thomas Lane

**Email:** thomas.lane@cbs.com      **Telephone:** 818-655-1649

**Address:** 4024 Radford Avenue

Carpenter Building

Studio City, CA 91604  United States

## Certification

**Name:** Thomas Lane

**Date:** November 28, 2011



**Registration #:**  PA0001768711
**Service Request #:**  1-691359255



CBS Broadcasting Inc.
Denise Lopez
4024 Radford Avenue
Carpenter Building
Studio City, CA 91604  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-793-980

**Effective date of registration:**

June 22, 2012

---

## Title

**Title of Work:** HAWAII FIVE-0 - Show # 223 "Ua Hala (Death in the Family)"

## Completion/Publication

**Year of Completion:** 2012

**Date of 1st Publication:** May 13, 2012    **Nation of 1st Publication:** United States

## Author

■     **Author:** CBS Studios Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** CBS Studios Inc.

4024 Radford Ave., Admin Building, Room 390G, Studio City, CA, 91604, United States

## Certification

**Name:** Lura Burton

**Date:** May 29, 2012

**Registration #:**  PA0001793980
**Service Request #:**  1-772242323



Youngblood Group
Juliette Youngblood
3000 Olympic Blvd.
Suite 2520
Santa Monica, CA 90404  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-790-485**

**Effective date of registration:**

May 22, 2012

---

## Title

**Title of Work:** HAWAII FIVE-0 - Show # 217 "Kupale (Defender)"

## Completion/Publication

**Year of Completion:** 2012

**Date of 1st Publication:** February 19, 2012       **Nation of 1st Publication:** United States

## Author

**Author:** CBS Studios Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** CBS Studios Inc.

4024 Radford Ave., Admin Building, Room 390G, Studio City, CA, 91604, United States

## Certification

**Name:** Lura Burton

**Date:** May 14, 2012

**Registration #:**  PA0001790485
**Service Request #:**  1-766663813



Youngblood Group
Juliette Youngblood
3000 Olympic Blvd.
Suite 2520
Santa Monica, CA 90404  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-780-794

**Effective date of registration:**

February 23, 2012

---

## Title

**Title of Work:** HAWAII FIVE-0 - Show # 215 "Mai Ka Wa Kahiko (Out of the Past)"

## Completion/Publication

**Year of Completion:** 2012

**Date of 1st Publication:** February 5, 2012          **Nation of 1st Publication:** United States

## Author

**Author:** CBS Studios Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** CBS Studios Inc.

4024 Radford Ave., Admin Building, Room 390G, Studio City, CA, 91604, United States

## Certification

**Name:** Lura Burton

**Date:** February 16, 2012

**Registration #:** PA0001780794
**Service Request #:** 1-726374403



Youngblood Group
Juliette Youngblood
3000 Olympic Blvd.
Suite 2520
Santa Monica, CA 90404  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-778-988

**Effective date of registration:**

March 13, 2012

## Title

**Title of Work:** NCIS - Show # 201 "Secrets"

## Completion/Publication

**Year of Completion:** 2012

**Date of 1st Publication:** February 13, 2012　　**Nation of 1st Publication:** United States

## Author

**■　　Author:** CBS Studios Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** CBS Studios Inc.

4024 Radford Ave., Admin Building, Room 390G, Studio City, CA, 91604, United States

## Certification

**Name:** Lura Burton

**Date:** March 6, 2012

**Registration #:**   PA0001778988
**Service Request #:**   1-734746323



Youngblood Group
Juliette Youngblood
3000 Olympic Blvd.
Suite 2520
Santa Monica, CA 90404  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-767-917

**Effective date of registration:**

December 12, 2011

---

## Title
      **Title of Work:** NCIS - Show # 190 "Enemy on the Hill"

## Completion/Publication
      **Year of Completion:** 2011
      **Date of 1st Publication:** October 10, 2011    **Nation of 1st Publication:** United States

## Author
      ■   **Author:** CBS Studios Inc.
      **Author Created:** entire motion picture

      **Work made for hire:** Yes
      **Domiciled in:** United States

## Copyright claimant
      **Copyright Claimant:** CBS Studios Inc.

      4024 Radford Ave., Admin Building, Room 390G, Studio City, CA, 91604, United States

## Certification
      **Name:** Lura Burton
      **Date:** December 1, 2011

---

**Registration #:**  PA0001767917
**Service Request #:**  1-692567908



Youngblood Group
Juliette Youngblood
3000 Olympic Blvd.
Suite 2520
Santa Monica, CA 90404  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

PA 1-790-730

**Effective date of
registration:**

June 1, 2012

---

## Title

**Title of Work:** NCIS - Show # 208 "Playing with Fire"

## Completion/Publication

**Year of Completion:** 2012

**Date of 1st Publication:** April 30, 2012        **Nation of 1st Publication:** United States

## Author

■        **Author:** CBS Studios Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** CBS Studios Inc.

4024 Radford Ave., Admin Building, Room 390G, Studio City, CA, 91604,
United States

## Certification

**Name:** Lura Burton

**Date:** May 29, 2012

---

**Registration #:**   PA0001790730
**Service Request #:**   1-772242518



Youngblood Group
Juliette Youngblood
3000 Olympic Blvd.
Suite 2520
Santa Monica, CA 90404  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-768-118

**Effective date of registration:**

December 19, 2011

## Title

**Title of Work:** NCIS: LOS ANGELES - Show # 308 "Greed"

## Completion/Publication

**Year of Completion:** 2011

**Date of 1st Publication:** November 7, 2011        **Nation of 1st Publication:** United States

## Author

- **Author:** CBS Studios Inc.

  **Author Created:** entire motion picture

  **Work made for hire:** Yes

  **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** CBS Studios Inc.

4024 Radford Ave., Admin Building, Room 390G, Studio City, CA, 91604, United States

## Certification

**Name:** Lura Burton

**Date:** December 1, 2011

**Registration #:**  PA0001768118
**Service Request #:**  1-692707838



Youngblood Group
Juliette Youngblood
3000 Olympic Blvd.
Suite 2520
Santa Monica, CA 90404  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-778-905

**Effective date of registration:**

February 23, 2012

---

## Title

**Title of Work:** NCIS: LOS ANGELES - Show # 312 "The Watchers"

## Completion/Publication

**Year of Completion:** 2012

**Date of 1st Publication:** January 2, 2012      **Nation of 1st Publication:** United States

## Author

■ **Author:** CBS Studios Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** CBS Studios Inc.

4024 Radford Ave., Admin Building, Room 390G, Studio City, CA, 91604, United States

## Certification

**Name:** Lura Burton

**Date:** February 9, 2012

---

**Registration #:** PA0001778905
**Service Request #:** 1-723052023



Youngblood Group
Juliette Youngblood
3000 Olympic Blvd.
Suite 2520
Santa Monica, CA 90404  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-787-956**

**Effective date of
registration:**

May 29, 2012

## Title

**Title of Work:** SURVIVOR: ONE WORLD - Perception Is Not Always Reality - #2414

## Completion/Publication

**Year of Completion:** 2012

**Date of 1st Publication:** May 13, 2012     **Nation of 1st Publication:** United States

## Author

**Author:** Survivor Productions, LLC

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Citizen of:** United States

## Copyright claimant

**Copyright Claimant:** Survivor Productions, LLC

4024 Radford Avenue, Studio City, CA, 91604, United States

## Rights and Permissions

**Organization Name:** CBS Broadcasting Inc.

**Name:** Ray White

**Email:** rwhite@cbs.com     **Telephone:** 818-655-1668

**Address:** 4024 Radford Ave.

Carpenter Building

Studio City, CA 91604

## Certification

**Name:** Ray White

**Date:** May 24, 2012

**Registration #:** PA0001787956
**Service Request #:** 1-771481802

CBS Broadcasting Inc.
Denise Lopez
4024 Radford Avenue
Carpenter Building
Studio City, CA 91604  United States

*-APPLICATION-*

## Title

**Title of Work:** SURVIVOR: PHILIPPINES - Don't Be Blinded by the Headlights - #2502

## Completion/Publication

**Year of Completion:** 2012

**Date of 1st Publication:** September 26, 2012       **Nation of 1st Publication:** United States

## Author

**Author:** Survivor Productions, LLC

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Citizen of:** United States

## Copyright claimant

**Copyright Claimant:** Survivor Productions, LLC

4024 Radford Avenue, Studio City, CA, 91604, United States

## Rights and Permissions

**Organization Name:** CBS Broadcasting Inc.

**Name:** Ray White

**Email:** rwhite@cbs.com                          **Telephone:**   818-655-1668

**Address:** 4024 Radford Ave.

Carpenter Building

Studio City, CA 91604

## Certification

**Name:** Ray White

**Date:** October 3, 2012

**Registration #:**

**Service Request #:**  1-832019591

**Priority:**  Special Handling          **Application Date:**  October 3, 2012 12:25:24 PM

## Correspondent

**Organization Name:** CBS Broadcasting Inc.

**Name:** Denise Lopez

**Email:** dlopez@cbs.com          **Telephone:** 818-655-1640

**Address:** 4024 Radford Ave.          **Alt. Telephone:** 818-655-1696
Carpenter Building          **Fax:** 818-760-8948
Studio City, CA 91604 United States

## Mail Certificate

CBS Broadcasting Inc.
Denise Lopez
4024 Radford Avenue
Carpenter Building
Studio City, CA 91604 United States

# *-APPLICATION-*

## Title
**Title of Work:** SURVIVOR: PHILIPPINES - Survivor Smacked Me in the Chops - #2501

## Completion/Publication
**Year of Completion:** 2012

**Date of 1st Publication:** September 19, 2012     **Nation of 1st Publication:** United States

## Author
■     **Author:** Survivor Productions, LLC

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Citizen of:** United States

## Copyright claimant
**Copyright Claimant:** Survivor Productions, LLC

4024 Radford Avenue, Studio City, CA, 91604, United States

## Rights and Permissions
**Organization Name:** CBS Broadcasting Inc.

**Name:** Ray White

**Email:** rwhite@cbs.com     **Telephone:** 818-655-1668

**Address:** 4024 Radford Ave.

Carpenter Building

Studio City, CA 91604

## Certification
**Name:** Ray White

**Date:** October 3, 2012

**Registration #:**

**Service Request #:**  1-831722282

**Priority:**  Special Handling        **Application Date:**  October 3, 2012 12:25:13 PM

## Correspondent

**Organization Name:** CBS Broadcasting Inc.

**Name:** Denise Lopez

**Email:** dlopez@cbs.com                    **Telephone:** 818-655-1640

**Address:** 4024 Radford Ave.             **Alt. Telephone:** 818-655-1696
Carpenter Building
Studio City, CA 91604 United States           **Fax:** 818-760-8948

## Mail Certificate

CBS Broadcasting Inc.
Denise Lopez
4024 Radford Avenue
Carpenter Building
Studio City, CA 91604  United States

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-791-007**

**Effective date of registration:**

June 1, 2012

---

## Title

**Title of Work:** THE GOOD WIFE - Show # 317 "Long Way Home"

## Completion/Publication

**Year of Completion:** 2012

**Date of 1st Publication:** March 10, 2012     **Nation of 1st Publication:** United States

## Author

■  **Author:** CBS Studios Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** CBS Studios Inc.

4024 Radford Ave., Admin Building, Room 390G, Studio City, CA, 91604, United States

## Certification

**Name:** Lura Burton

**Date:** May 29, 2012

**Registration #:**  PA0001791007
**Service Request #:**  1-772174358



Youngblood Group
Juliette Youngblood
3000 Olympic Blvd.
Suite 2520
Santa Monica, CA 90404  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

PA 1-780-801

**Effective date of registration:**

February 23, 2012

## Title

**Title of Work:** THE GOOD WIFE - Show # 312 "Alienation of Affection"

## Completion/Publication

**Year of Completion:** 2012

**Date of 1st Publication:** January 7, 2012     **Nation of 1st Publication:** United States

## Author

■ **Author:** CBS Studios Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** CBS Studios Inc.

4024 Radford Ave., Admin Building, Room 390G, Studio City, CA, 91604, United States

## Certification

**Name:** Lura Burton

**Date:** February 9, 2012

**Registration #:**   PA0001780801
**Service Request #:**   1-723017931



Youngblood Group
Juliette Youngblood
3000 Olympic Blvd.
Suite 2520
Santa Monica, CA 90404  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-768-220

**Effective date of registration:**

December 12, 2011

---

## Title

**Title of Work:** THE GOOD WIFE - Show # 304 "Feed The Rat"

## Completion/Publication

**Year of Completion:** 2011

**Date of 1st Publication:** October 15, 2011          **Nation of 1st Publication:** United States

## Author

**Author:** CBS Studios Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** CBS Studios Inc.

4024 Radford Ave., Admin Building, Room 390G, Studio City, CA, 91604, United States

## Certification

**Name:** Lura Burton

**Date:** December 1, 2011

---

**Registration #:**  PA0001768220
**Service Request #:**  1-692216672



Youngblood Group
Juliette Youngblood
3000 Olympic Blvd.
Suite 2520
Santa Monica, CA 90404  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-768-219

**Effective date of registration:**

December 12, 2011

---

## Title

**Title of Work:** THE GOOD WIFE - Show # 303 "Get A Room"

## Completion/Publication

**Year of Completion:** 2011

**Date of 1st Publication:** October 8, 2011     **Nation of 1st Publication:** United States

## Author

- **Author:** CBS Studios Inc.
  **Author Created:** entire motion picture

  **Work made for hire:** Yes
  **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** CBS Studios Inc.

4024 Radford Ave., Admin Building, Room 390G, Studio City, CA, 91604, United States

## Certification

**Name:** Lura Burton

**Date:** December 1, 2011

---

**Registration #:**   PA0001768219
**Service Request #:**   1-692216647



Youngblood Group
Juliette Youngblood
3000 Olympic Blvd.
Suite 2520
Santa Monica, CA 90404  United States

# Exhibit B

4650336.1/44025-00003



4650336.1/44025-00003



4650336.1/44025-00003

### WATCH COMMERICAL-FREE TV

Hate commercials? DISH created commercial-free TV so you can save an hour each night! Now you can automatically skip commercials in primetime TV on ABC, CBS, FOX and NBC in HD. Only on the Hopper. Only from DISH.

*Feature must be enabled by customer and is subject to availability. Only available with playback of select shows.*

### Record up to 6 HD Channels at Once with PrimeTime Anytime™.

Record up to six live HD channels at once during primetime, including your 4 local HD networks and 2 channels of your choosing, and stream four recorded HD programs to different TVs simultaneously. That means you can watch more and miss less of your favorite programs.

### Massive 2 TB Hard Drive.

HOPPER

OVERVIEW  WHOLE-HOME HD DVR  PRIMETIME ANYTIME  FEATURES  APPS  MOVIES  REVIEWS



4650336.1/44025-00003



4650336.1/44025-00003





4650336.1/44025-00003



4650336.1/44025-00003



# HOPPER VIDEO GALLERY.

OVERVIEW     WHOLE-HOME HD DVR     PRIME TIME ANYTIME     FEATURES     APPS     MOVIES     REVIEWS

## Intuitive Search.

Search by title, actor, channel and more to find your favorite shows, recorded programs and On Demand content. Plus with predictive search, the Hopper will start showing results immediately as you type, so you'll find your favorite shows faster than ever.

## TV Everywhere™ Technology.

Connect your Hopper to the Sling® Adapter and experience TV Everywhere™ brand technology from DISH. Watch live TV programming and DVR recordings anywhere you travel. **Watch Video**

*Sling Adapter sold separately.*

## SIRIUSXM SATELLITE RADIO

Music lovers will love this. Only DISH offers over 70 channels of SiriusXM satellite radio, the same music channels available in your car, with America's Top 120, DishLATINO Clasico, and higher packages. DISH is the only pay TV provider to give you SiriusXM satellite music.

4650336.1/44025-00003



**Full Offer Details**

*Actual recording capacity for Hopper varies based on types of programming. ^Based on viewing 4 live local shows, pull mph.*

HOPPER     OVERVIEW     WHOLE-HOME HD DVR     PRIME TIME ANYTIME     FEATURES     APPS     MOVIES     REVIEWS

ORDER NOW

| CORPORATE | RESOURCES | CONNECT |
|---|---|---|
| Our Company | Find A Retailer | Send Feedback |
| Career Opportunities | DishLATINO | Newsletter |
| Press Center | Business Owners | Contact Us |
| Investor Relations | DISH Media Sales | |
| Legal | | |

© 2012 DISH Network L.L.C. All rights reserved.

