UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AUTOHOP LITIGATION<br>This Document Relates To:<br>DISH Network L.L.C., 12 Civ. 4155 (LTS)(KNF) | 12 Civ. 4155 (LTS) (KNF)<br>**DECLARATION OF ERIC SAHL**<br>**REDACTED PUBLIC FILING, ORIGINAL FILED UNDER SEAL** |

I, Eric Sahl, declare:

1.  I am a principal in SKMG, a consulting and advisory group specializing in the video content and distribution space.  Prior to co-founding SKMG in 2009, I was the Senior Vice President of Programming at DISH Network L.L.C. ("DISH").  Except as otherwise stated herein, I have personal knowledge of the facts stated in this declaration.

2.  As the Senior Vice President of Programming at DISH, I was responsible for content acquisition, including negotiation of contracts with broadcasters, studios, media conglomerates and sports leagues, among others.  In that role, I was responsible for negotiating the Digital Retransmission Consent Agreement between DISH (then known as EchoStar Satellite L.L.C.) and ABC, Inc. ("ABC") dated September 15, 2005 (the "RTC").  The primary negotiator for ABC was David Preschlack, an executive with ABC affiliate ESPN.  Justin Connolly, another executive with ABC affiliate ESPN, was also involved in the negotiations.

3.  [REDACTED]

4.  I understand that Mr. Connolly states in a declaration submitted to this Court that ABC did not charge DISH any fee in the RTC for the right to retransmit the digital signals of ABC's owned and operated affiliates.  That is incorrect.  [REDACTED]

1

██████████████████████████████████████████████
████████

5. It was common in the television industry in 2005 for broadcast conglomerates to structure contracts to provide for national licensing fees to be paid with reference to their cable properties (which would be calculated based on DISH's national subscriber base), and not to specifically allocate per-subscriber fees to the network-owned and operated local broadcast network affiliate stations. However, there is no way to rationally separate the fees paid for the cable networks from the consideration provided for the network-owned and operated local broadcast network stations. ████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████

6. I understand that Mr. Connolly states in his declaration that the critical benefit that ABC receives under the RTC is advertising revenue. I disagree. There is no requirement in the RTC that DISH subscribers watch the commercials shown on ABC's owned and operated broadcast network stations and, relatedly, there is no prohibition on commercial-skipping. Instead, the RTC explicitly authorizes the use of home recording devices by DISH subscribers, including VCRs and DVRs.

7. In 2005, DISH was providing DVRs to its customers and ABC knew that DISH was doing so, as was every other major domestic pay television distribution platform. ABC also knew that those DVRs had fast-forward and 30-second skip capabilities that allowed DISH subscribers to skip commercials when playing back recorded shows. DISH offered more advanced DVRs than most other MVPDs and had been winning technology awards for its DVRs.

2

8. ███████████████████████████████████████████

███████████████████████████████████████████

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 20th day of December, 2012, at Denver, Colorado

_____
Eric Sahl