**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE AUTOHOP LITIGATION<br><br>This Document Relates To:<br><br>DISH Network L.L.C., 12 Civ. 4155 (LTS) (KNF) | MASTER FILE<br><br>12 Civ. 4155 (LTS) (KNF)<br><br>**REDACTED PUBLIC FILING,<br>ORIGINAL FILED UNDER SEAL** |

**MEMORANDUM OF LAW IN SUPPORT OF
DISH NETWORK LLC'S MOTION TO DISMISS COUNT VII
<u>OF CBS CORPORATION'S AMENDED COUNTERCLAIMS</u>**

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. PROCEDURAL HISTORY ...................................................................................................... 2

III. STATEMENT OF FACTS ........................................................................................................ 3

IV. ARGUMENT ............................................................................................................................ 6

    A. CBS's Counterclaim Fails To State A Claim For Fraud ........................................ 7

        1. DISH Had No Duty To Disclose AutoHop To CBS .................................. 8

        2. CBS Could Not Have Reasonably Relied On A Belief That DISH Would Not Launch AutoHop ...................................................................... 13

V. CONCLUSION ....................................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*380544 Canada, Inc. v. Aspen Tech., Inc.*,
  544 F. Supp. 2d 199 (S.D.N.Y. 2008) .................................................................................6, 11

*Achtman v. Kirby, McInerney & Squire, LLP*,
  464 F.3d 328 (2d Cir. 2006) ......................................................................................................6

*Amusement Indus., Inc. v. Stern*,
  693 F. Supp. 2d 327 (S.D.N.Y. 2010) .......................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................................................6, 7

*Boykin v. KeyCorp*,
  521 F.3d 202 (2d Cir. 2008) ......................................................................................................7

*BP Am. Prod. Co. v. Patterson*,
  263 P.3d 103 (Colo. 2011) ........................................................................................................8

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005) ......................................................................................................6

*Chambers v. TimeWarner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) ......................................................................................................6

*Cooney v. Osgood Mach., Inc.*,
  81 N.Y.2d 66, 612 N.E.2d 277 (N.Y. 1993) .............................................................................8

*D & R'S Aspen Ret. Plan, LLC v. DeGraff*,
  No. 09 Civ. 01963-LTB-CBS, 2010 WL 4024013 (D. Colo. Oct. 12, 2010) ...........................8

*Feick v. Fleener*,
  653 F.2d 69 (2d Cir. 1981) ........................................................................................................6

*Fox Broad. Co. v. Dish Network, L.L.C.*,
  --- F. Supp. 2d ----, No. CV 12-04529 DMG (SHx), 2012 WL 5938563
  (C.D. Cal. Nov. 7, 2012) ..............................................................................................2, 5, 12

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*,
  449 F.3d 377 (2d Cir. 2006) ......................................................................................................8

*Harsco Corp. v. Segui*,
   91 F.3d 337 (2d Cir. 1996)..................................................................................................7

*Horvat Invs., LLC v. Meadow Homes Dev. Corp.*,
   No. 06 Civ. 856, 2008 WL 3832236 (Colo. Dist. Ct. Mar. 20, 2008) ......................................9

*Ingels v. Ingels*,
   487 P.2d 812 (Colo. Ct. App. 1971) ......................................................................................9

*Kopeikin v. Merchs. Mortg. & Trust Corp.*,
   679 P.2d 599 (Colo. 1984)....................................................................................................8

*Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*,
   965 P.2d 105 (Colo. 1998)....................................................................................................8

*Nielson v. Scott*,
   53 P.3d 777 (Colo. Ct. App. 2002) ..................................................................................8, 13

*Ofori–Tenkorang v. American Int'l Group, Inc.*,
   460 F.3d 296 (2d Cir. 2006)..................................................................................................6

*Poly Trucking, Inc. v. Concentra Health Servs., Inc.*,
   93 P.3d 561 (Colo. Ct. App. 2004) ...........................................................................9, 10, 11

*RHC, LLC v. Quizno's Franchising, LLC*,
   No. 04CV985, 2005 WL 1799536 (Colo. Dist. Ct. July 19, 2005) ..................................13, 14

*San Diego Cnty. Emps. Ret. Ass'n v. Maounis*,
   749 F. Supp. 2d 104 (S.D.N.Y. 2010)....................................................................................8

*Sony Corp. of America v. Universal Studios*,
   464 U.S. 417 (1984)........................................................................................................1, 12

*Verzani v. Costco Wholesale Corp.*,
   641 F. Supp. 2d 291 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 50 (2d Cir. 2010).........................6

*Vickery v. Evelyn v. Trumble Living Trust*,
   277 P.3d 864 (Colo. Ct. App. 2011) cert. denied, 11SC706, 2012 WL 1018415
   (Colo. Mar. 26, 2012) ..............................................................................................8, 9, 10

**Statutes**

Federal Rule of Civil Procedure 9(b)...............................................................................................7

Federal Rule of Civil Procedure 12(b)(6) ........................................................................................6

**Other Authorities**

Restatement (Second) of Torts § 551(2).............................................................................8, 10, 11

I.    **PRELIMINARY STATEMENT**

CBS Corporation ("CBS") asserts that DISH supposedly committed fraud-by-omission during contract negotiations in December 2011 by giving CBS a sneak-peak preview of its new Hopper Whole-Home HD DVR and the PrimeTime Anytime ("PTAT") feature that DISH was on the cusp of announcing in early January 2012 at the International Consumer Electronics Show ("CES"). According to CBS, DISH could not fairly disclose some aspects of the Hopper without letting it know of all updates that might be coming down the pike. CBS is wrong. It did not have a right to pre-approval of DISH's AutoHop commercial-skipping DVR feature that was launched on May 10, 2012. The law does not require DISH to disclose highly confidential product development plans for features that are months away from market. CBS's fraud-by-omission claim should be dismissed for failure to state a claim upon which relief may be granted.

CBS fails to plausibly plead all of the required elements of a claim for fraud by omission, because: (1) DISH had no duty to disclose; and (2) any supposed reliance by CBS on an assumption that DISH would not offer enhanced commercial-skipping features to its customers was unreasonable. The Retransmission Consent and Video on Demand Agreement (the "Agreement") executed between CBS and DISH on January 5, 2012 was the result of arms-length negotiations between sophisticated parties. DISH made no bones about its continued intention to offer time-shifting[1] technology to its customers. ███████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ The only court to date to consider the legality of DISH's AutoHop

---

[1] "Time-shifting" is the practice of recording television content and playing it back at a later time, to watch at the viewer's convenience. *Sony Corp. of America v. Universal Studios*, 464 U.S. 417, 421 (1984).

1

commercial-skipping feature found that it implicates no copyright interest, and thus does not require a license. *Fox Broad. Co. v. Dish Network, L.L.C.*, --- F. Supp. 2d ----, No. CV 12-04529 DMG (SHx), 2012 WL 5938563, at *18 (C.D. Cal. Nov. 7, 2012) ("Importantly . . . neither the marking announcements nor the ad-skipping effect of AutoHop implicates any copyright interest."). Under these circumstances, DISH had no legal duty to disclose its AutoHop time-shifting feature to CBS and any supposed reliance by CBS on DISH's non-disclosure was patently unreasonable. CBS's fraud claim should be dismissed.

## II.    PROCEDURAL HISTORY

On May 24, 2012, certain CBS affiliates sued DISH in the Central District of California asserting that the PTAT and AutoHop features on the Hopper violate CBS's copyrights. Echtman Decl. ¶ 2. After that action was transferred to this Court, in October 2012, the CBS affiliates asserted those copyright claims as counterclaims in this declaratory judgment action by DISH, and CBS added breach of contract claims against DISH relating to the same features. *Id.* Ex. 2. In February 2013, CBS amended its counterclaims to add a fraud-by-omission claim. *Id.* Ex. 3. In the allegations meant to support the fraud claim, CBS concedes that it knew about the Hopper and its PTAT feature before signing its latest Agreement with DISH and before that information was publicly available. *See* Am. Counterclaims ¶¶ 42-48. Far from showing fraud-by-omission, this pleading demonstrates that CBS was in-the-know about DISH's Hopper DVR well-before it went to court to claim that features on that DVR infringe CBS's copyrights and breach the parties' Agreement. CBS's fraud pleadings are implausible, as set forth in more detail below.

### III.  STATEMENT OF FACTS[2]

DISH and CBS engaged in active contract negotiations in December 2011, during which DISH executives met with CBS executives in Denver, Colorado.  Am. Counterclaims ¶¶ 43-47.  In the course of those December 2011 negotiations, DISH executives described DISH's soon-to-be unveiled Hopper DVR to CBS, and even showed the CBS executives a stuffed animal kangaroo as a sample of DISH's new logo.  Id. ¶¶ 44-47.  These negotiations involved some of the highest ranking executives at DISH and CBS.  CBS alleges that its Executive Vice President Martin Franks met with DISH Chairman Charles Ergen and DISH CEO Joseph Clayton.  Id. ¶ 47.  The Agreement was executed on January 5, 2012.  Id. ¶ 1.  On January 9, 2012, DISH issued a press release about its introduction of the Hopper and its PTAT feature to the public at International CES.  Id. ¶ 48; Echtman Decl. Ex. 4.

CBS complains that, in December 2011, when DISH "described to CBS specific systems DISH was developing for introduction to subscribers, including the Hopper" (and the Hopper's PTAT feature, as to which CBS claims no ignorance), DISH supposedly had an additional obligation to tell CBS all about the highly confidential AutoHop commercial-skipping feature that DISH introduced approximately five months later, in May 2012.  Am. Counterclaims ¶ 44.

CBS says that this obligation exists, because it told DISH on December 16, 2011 that it was not "looking to have this arrangement include *new businesses* that DISH may choose to enter into in the future, whether they be Netflix-like businesses, new mobile services, or other new platforms."  Id. ¶ 45 (emphasis added).  CBS asserts that the AutoHop feature somehow constitutes a "new business."  However, commercial-skipping on home recordings is not a "new business."  It is common knowledge that DVR users can fast-forward or use a 30-second skip

---

[2] For purposes of this Motion to Dismiss only, DISH accepts the well-pleaded factual allegations of CBS's Amended Counterclaims as true.  However, DISH does not accept as true any inferences or conclusions that CBS attempts to draw from the pleaded facts.

3

button to bypass commercials on recorded shows.  AutoHop is an innovation that a DISH subscriber can use to commercial-skip without holding onto the remote control.  It is a time-shifting feature that works with the playback of recorded television content.  CBS knew full well that DISH was already in the business of leasing and selling time-shifting technology, such as DVRs, to its customers.  *Id.* ¶ 44.

Moreover, CBS does not allege that DISH ever affirmatively led the network astray.  CBS does not say that DISH ever said that it was not planning on ever upgrading the Hopper by adding an ad-skipping feature or any other feature.  Nor does it say that DISH ever represented that DISH's limited courtesy heads-up about the Hopper and PTAT was intended as a comprehensive be-all, end-all declaration of its plans in the time-shifting arena.

In fact, the parties' Agreement shows otherwise.  That Agreement, which is incorporated by reference in the Amended Counterclaims, ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

4



The only court to have considered the legality of the AutoHop feature, in the context of a motion for a preliminary injunction, allowed DISH to continue to provide the feature to its customers, and ruled that there was no likelihood of success on the merits to a claim of unlawfulness under the Copyright Act. *Fox Broad. Co.*, 2012 WL 5938563, at *18 ("Importantly . . . neither the marking announcements nor the ad-skipping effect of AutoHop implicates any copyright interest."). The Fox Broadcasting Company (and other Fox affiliates) moved for a preliminary injunction against the AutoHop feature, which was

denied by the district court in the Central District of California.  *Id.*

IV.  **ARGUMENT**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all of the factual allegations contained in the [pleading]," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in [the pleading party's] favor," *Ofori–Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).  However, the Court should *not* credit "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 237 (2d Cir. 2006).

Where, as here, the pleader "has 'reli[ed] on the terms and effect of a document in drafting the complaint,' and that document is thus 'integral to the [pleading],' [the Court] may consider its contents even if it is not formally incorporated by reference." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *see also Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 297-98 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 50 (2d Cir. 2010) ("Where the claim is for breach of contract, the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiffs' claim.").  And if the pleading party's "allegations are contradicted by a document that the [pleading] incorporates by reference, the document controls." *380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 215 (S.D.N.Y. 2008) (citation omitted); *see also Feick v. Fleener*, 653 F.2d 69, 75 (2d Cir. 1981) ("Since the documents upon which appellants based their claim show on their face absence of any grounds for relief, dismissal was proper.").

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the pleading must meet a standard of "plausibility." *Twombly*, 550 U.S. at 564.  A claim is facially plausible only "when

6

the [pleading party] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). This standard requires "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

Additionally, when, as here, a pleading alleges fraud, it must clear an even higher hurdle. "[Federal] Rule [of Civil Procedure] 9(b) requires that allegations of fraud be pleaded with particularity." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996). This means that the pleading "must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Id.*

### A. CBS's Counterclaim Fails To State A Claim For Fraud

CBS has not alleged a plausible fraud claim, let alone pleaded fraud with the heightened particularity that Rule 9(b) requires. Namely, CBS has not alleged facts sufficient to raise a plausible inference that: (1) DISH had a duty to tell CBS about AutoHop during the December 2011 negotiations; or that (2) CBS reasonably relied on a purported belief that DISH would not offer an AutoHop-type feature on the Hopper.

The essential elements of CBS's claim for fraudulent concealment include:

> (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

7

*BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 109 (Colo. 2011)[3]; *see also Kopeikin v. Merchs. Mortg. & Trust Corp.*, 679 P.2d 599, 601-02 (Colo. 1984). In addition, the pleading party must plead and prove reasonable reliance on "the assumption that the concealed fact does not exist." *Nielson v. Scott*, 53 P.3d 777, 780 (Colo. Ct. App. 2002). Put in terms of the five elements, the pleading party must plead and prove that its "action on the concealment" was the result of reasonable reliance. *See id.* (fraudulent concealment claim failed because the plaintiffs could not show that they reasonably relied on the nondisclosure).

CBS's fraud in the inducement claim requires essentially the same showing. *D & R'S Aspen Ret. Plan, LLC v. DeGraff*, No. 09 Civ. 01963-LTB-CBS, 2010 WL 4024013, at *7 (D. Colo. Oct. 12, 2010) (setting out the elements of fraud in the inducement under Colorado law, which are identical to the elements of fraudulent concealment).

### 1. DISH Had No Duty To Disclose AutoHop To CBS

CBS's fraud claim fails because DISH had no duty to disclose that it had a commercial-skipping feature in development. Whether a party has a duty to disclose "is a question of law" that can properly be resolved at the motion to dismiss stage. *Vickery v. Evelyn v. Trumble Living Trust*, 277 P.3d 864, 871 (Colo. Ct. App. 2011) cert. denied, 11SC706, 2012 WL 1018415 (Colo.

---

[3] CBS's fraud-by-omission counterclaims are governed by Colorado law. Both the Agreement (§ 18) and New York's choice of law rules provide for it. For fraud claims, "the law of the jurisdiction where the tort allegedly occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 384 (2d Cir. 2006) (citing *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72, 612 N.E.2d 277 (N.Y. 1993)). Here, CBS alleges that the non-disclosure occurred during negotiations in Colorado. (Am. Counterclaims ¶ 46.) Where, as here, "a single state was the overwhelming center of the events giving rise to the case, and that state has a strong interest in regulating the conduct performed within its borders," the New York courts will apply the law of that state. *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 341 (S.D.N.Y. 2010); *see also San Diego Cnty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 124-25 (S.D.N.Y. 2010) (applying the law of the location where "a substantial portion of the fraudulent conduct has occurred").

8

Mar. 26, 2012).[4]

Where, as here, contracting parties "[are] not in a fiduciary or trust relationship" and do not have "any expectation that either party or its counsel would act to protect the other party's interest," the counterparty to negotiations takes on a duty to disclose only if he "make[s] an[] affirmative [mis]representation," a "statement[] that w[as] false, or that bec[o]me[s] false" and therefore incurs the obligation to set the record straight. *Poly Trucking, Inc. v. Concentra Health Servs., Inc.*, 93 P.3d 561, 565 (Colo. Ct. App. 2004).

With sophisticated parties dealing at arms' length while represented by counsel, "concealment by mere silence is not enough to constitute fraud" under Colorado law. *Poly Trucking*, 93 P.3d at 565; *see also Vickery*, 277 P.3d at 871 (affirming decision granting motion to dismiss fraudulent-concealment claim); *Horvat Invs., LLC v. Meadow Homes Dev. Corp.*, No. 06 Civ. 856, 2008 WL 3832236 (Colo. Dist. Ct. Mar. 20, 2008) (emphasizing, in denying a fraudulent-concealment claim, that "the contract was the product of an arm's length transaction between plaintiffs and defendants [and] [b]oth parties were represented by counsel"). Rather, "[t]here must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Poly Trucking*, 93 P.3d at 565 (citing *Ingels v. Ingels*, 487 P.2d 812, 815 (Colo. Ct. App. 1971)); *see also Vickery*, 277 P.3d at 871.

In *Vickery*, the court granted a motion to dismiss a fraudulent concealment claim, concluding that defendant did not have a duty to disclose "information about the likelihood that [the plaintiff] would be able to collect her judgment" pursuant to a settlement agreement, because there was no "trick or contrivance intended to exclude suspicion or prevent inquiry." 277 P.3d at 871.

---

[4] Under Colorado law, the duty to disclose attaches only in the limited circumstances enumerated in Restatement (Second) of Torts § 551(2). *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111 (Colo. 1998).

9

CBS does not allege that DISH did anything that even arguably could be called a "trick or contrivance." CBS does not allege that DISH, in its courtesy heads-up about the Hopper and PTAT, also promised CBS that no more time-shifting technology would be forthcoming. All DISH did was "not disclose anything regarding AutoHop" specifically (Am. Counterclaims ¶ 44), "reference . . . AutoHop" by name (*id.* ¶ 47), or more generally "reference . . . the existence or possible use of any service that would allow DISH or its subscribers to record and playback the CBS Parties' primetime programming on a commercial-free basis" (*id.* ¶ 46). That was no "trick or contrivance." It was an unremarkable instance of one sophisticated, counseled contracting party *not* hand-delivering its entire product development roadmap to a counterparty that it held at arms-length. *See Vickery*, 277 P.3d at 871 ("[W]here the parties are in an adversarial relationship and each is represented by counsel, concealment by mere silence does not constitute fraud.").

*Poly Trucking* is instructive. The parties in *Poly Trucking*—Concentra and Poly—agreed to a settlement releasing Concentra from liability. 93 P.3d at 563. Poly then filed suit against doctors employed by Concentra, and Concentra argued that Poly had fraudulently concealed that it did not intend to release the doctors. *Id.* Concentra claimed that Restatement (Second) of Torts § 551(2)(e) created a duty to disclose. That section may require disclosure of "facts basic to the transaction"[5] when a party to that transaction "knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of

---

[5] The comments to the Restatement clarify that a "basic fact" is not simply a material fact, but rather it "is a fact that is assumed by the parties as a basis for the transaction itself. It is a fact that goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargained for or dealt with. Other facts may serve as important and persuasive inducements to enter into the transaction, but not go to its essence." Restatement (Second) of Torts § 551(2) cmt. j. Furthermore, "[i]f the parties expressly or impliedly place the risk as to the existence of a fact on one party or if the law places it there by custom or otherwise the other party has no duty of disclosure." *Id.*

10

those facts." Restatement (Second) of Torts § 551(2)(e).  The court rejected Concentra's argument, holding that neither "the circumstances nor the relationship between the parties created a duty to disclose," because "[t]he parties were not in a fiduciary or trust relationship, nor was there any expectation that either party or its counsel would act to protect the other party's interests. . . . Quite the contrary, the parties were in an adversarial relationship where each party was expected to act on behalf of itself only, and each counsel had a duty to his or her client to protect the client's interests."  *Poly Trucking*, 93 P.3d at 565.  Thus, Restatement § 551(2)(e) did not apply.

Concentra also argued that there was a duty to disclose pursuant to Restatement § 551(2)(b), which may require disclosure of "matters known to" a party to a transaction "that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading."  Restatement (Second) of Torts § 551(2)(b).  Concentra asserted that the written agreement was ambiguous as to Poly's intent to sue the doctors.  *Poly Trucking*, 93 P.3d at 565. The court held that "[t]he agreement specified that it was between Concentra and Poly and that it resolved matters relating to the lawsuit 'as to them,'" and furthermore, "the parties agree[d] that during the negotiations, no one raised or discussed the subject of suing the doctors."  *Id.*

Likewise, in the instant case, CBS cannot point to the existence of any ambiguous or partial statement that would obligate DISH to disclose its intent to develop AutoHop.   *See 380544 Canada, Inc.*, 544 F. Supp. 2d at 215 (stating that if a pleader's "allegations are contradicted by a

11

document that the [pleading] incorporates by reference, the document controls"). █

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████ If that did not

suffice to put CBS on notice that more time-shifting technology would be on the horizon, it is

hard to imagine what would have. ███████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████ *Fox Broad. Co.*, 2012 WL 5938563, at *18.

      CBS nonetheless claims that a duty for DISH to disclose all of its Hopper product development plans arose when CBS Executive Vice President Martin Franks stated in an email message to DISH "that CBS was not 'looking to have this arrangement include new businesses that DISH may choose to enter into in the future, whether they be Netflix-like businesses, new mobile services, or other new platforms.'" Am. Counterclaims ¶ 45.  That theory is misplaced.

      The AutoHop feature is not a "new *business*."  It's a DVR *feature* that DISH introduced in one of its decidedly *old* businesses:  providing pay TV consumers with time-shifting technology.  And it is certainly not a new business like any of the examples CBS mentioned in its e-mail.  Unlike Netflix, the AutoHop feature does not stream content to subscribers from a central server.  Unlike mobile services, the AutoHop feature does not deliver content over a mobile network.  It is not a "platform" (new or old) for anything.  It is simply a feature that makes it easier for consumers to skip over commercials when they playback recorded shows on the Hopper, in order to watch those shows at their convenience and on their own timetable.  Commercial-skipping has been part and parcel of time-shifting since the days of the Betamax.  *See, e.g.*, *Sony Corp. of America*, 464 U.S. at 423 (with time-shifting on a Betamax, "a person may watch a program at home in the evening even though it was broadcast while the viewer was

12

at work during the afternoon," "[t]he fast forward control allows enables the viewer of a previously recorded program to run the tape rapidly when a segment he or she does not desire to see is being played back on the television screen," and "[t]he pause button, when depressed, deactivates the recorder until it is released, thus enabling a viewer to omit a commercial advertisement from the recording"). CBS's theory on DISH's supposed duty to disclose cannot be credited, and CBS's fraud claim should be dismissed.

### 2. CBS Could Not Have Reasonably Relied On A Belief That DISH Would Not Launch AutoHop

CBS's fraud claim also fails, because any reliance by CBS on a purported belief that DISH would not launch an AutoHop-type feature could not have been reasonable, as a matter of law. *See Nielson*, 53 P.3d at 780 (requiring reasonable reliance to make out a fraud claim). Under Colorado law, claims of reasonable reliance will fail if they are contradicted by contractual language. For example, in *RHC, LLC v. Quizno's Franchising, LLC*, the court held that the plaintiffs, Quizno's franchisees, could not prove reasonable reliance with respect to Quizno's advice that their proposed store site was in a good location. No. 04CV985, 2005 WL 1799536, *11 (Colo. Dist. Ct. July 19, 2005). The court specifically held that "the terms of the [contract] belie[d] any claim of reasonable reliance" since, under the contract, "Quizno's retained the right to open its own stores or approve other franchises" and "Quizno's was not providing any guarantees of success." *Id.*

As CBS emphasizes in its pleadings, it thinks commercials are the "lifeblood of broadcast television" and that ad-skipping "threatens to undermine the economic foundation on which [CBS's] free, over-the-air broadcast television [programming] has been built." Am. Counterclaims ¶ 6. It is common knowledge, however, that consumers regularly use DVRs to skip commercials on recorded programming by using the fast-forward function or a 30-second

13

skip button on the remote control. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Such circumstances foreclose any assertion of reasonable reliance under Colorado law.  *See RHC, LLC*, 2005 WL 1799536, *11 (holding that "the terms of the [contract] belie[d] any claim of reasonable reliance").  DISH's disclosure of the Hopper and its PTAT feature to CBS provided CBS with no reasonable basis to assume that DISH would not, at a later date, offer enhanced commercial-skipping technology to its customers.

## V.     CONCLUSION

For the foregoing reasons, CBS's fraud-by-omission allegations fail to state a claim because DISH had no duty to disclose as a matter of law and CBS's claim of reasonable reliance is contradicted by the parties' Agreement.  This Court should accordingly dismiss Count VII of CBS's Amended Counterclaims.

Dated: New York, New York
March 14, 2013

        Respectfully submitted,

        ORRICK HERRINGTON & SUTCLIFFE LLP

        _/s/ Peter A. Bicks_

        Peter A. Bicks
        pbicks@orrick.com
        Elyse D. Echtman
        eechtman@orrick.com
        Lisa T. Simpson
        lsimpson@orrick.com
        E. Joshua Rosenkranz
        jrosenkranz@orrick.com
        51 West 52nd Street
        New York, New York 10019-6142
        (212) 506-5000

        Annette L. Hurst
        ahurst@orrick.com
        The Orrick Building
        405 Howard Street
        San Francisco, California 94105-2669
        (415) 773-5700

        Of Counsel:

        Mark A. Lemley
        mlemley@durietangri.com
        Michael Page
        MPage@durietangri.com
        Durie Tangri LLP
        217 Leidesdorff Street
        San Francisco, California 94111
        (415) 362-6666

        *Attorneys for DISH Network Corporation, DISH Network L.L.C. and DISH Technologies L.L.C.*