LAW OFFICES

# WILLIAMS & CONNOLLY

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

KEVIN T. BAINE
(202) 434-5010
kbaine@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

July 30, 2013

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUL 3 1 2013

**BY FACSIMILE (212) 805-0426**

The Honorable Laura Taylor Swain
United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

> Re:  *In re AutoHop Litigation*, Master File No. 12 Civ. 4155 (LTS)(KNF)
> **This Document Relates to:** *DISH Network L.L.C. v. American Broadcasting Companies, Inc., et al.*, No. 12-cv-4155 (LTS)(KNF)

Dear Judge Swain:

A panel of the Court of Appeals for the Ninth Circuit has issued an opinion in the related case brought by Fox Broadcasting Co. Applying the "limited and deferential" review applicable to preliminary injunction appeals, and "without determining the ultimate merits of the case," the court concluded that the district court "did not abuse its discretion" in declining to grant a preliminary injunction. *Fox Broadcasting Co., et al. v. DISH Network L.L.C., et al.*, No. 12-57048, slip op. at 24-25 (9th Cir. July 24, 2013) (submitted at ECF No. 221) (citations omitted) (emphasis added). That opinion is not binding on this Court, *see, e.g., Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 112 n.1 (2d Cir. 2001), nor is its reasoning persuasive.

1.  The Ninth Circuit opinion misses the forest for the trees. It simply ignores the big picture, which is this: with PrimeTime Anytime and AutoHop, DISH has created a service that is designed and marketed as a way to "beat the system," and that deprives the networks of the revenue they would otherwise receive as copyright owners. The service is designed to create thousands of copies of programs that no viewer would ever choose to copy on her own, so that viewers can later decide which programs they want to watch on an on-demand, commercial-free basis. DISH thereby deprives the networks, on the one hand, of the advertising revenue they would get from ad-supported broadcast TV and, on the other hand, of the fees they would receive from providing their programs on demand in a commercial-free format. Nowhere in its opinion does the Ninth Circuit acknowledge or consider these central truths.

2.  The Ninth Circuit held that the district court did not abuse its discretion in concluding that "'[t]he user . . . , and not DISH, is "the most significant and important cause" of the cop[ies],'" because "'the user, not DISH, must take the initial step of enabling' PrimeTime Anytime." *Fox*, at 12 (quoting district court opinion, 905 F. Supp. 2d 1088, 1102 (C.D. Cal. 2012)). That conclusion—the central conclusion in the opinion—ignores the law and the facts.

a. The court's "**most** significant and important cause" standard is one that appears nowhere else in the case law and is, in fact, a misquotation (first by the district court and now by the Ninth Circuit) of the Prosser treatise. *See* ABC P.I. Mem. ("Mem.") 21 n.9 (ECF No. 155). Prosser stated only that proximate causation in general is "sometimes said to depend on whether the conduct has been **so** significant and important a cause that the defendant should be legally responsible." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 42, at 273 (5th ed. 1984) (emphasis added) (quoted by *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 132 (2d Cir. 2008) ("*Cablevision*")). Consistent with this notion of proximate cause, more than one actor may be jointly liable for direct copyright infringement. *See Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 57-58 (1st Cir. 2012).

b. DISH subscribers here are not, in any event, "the most significant and important cause" of the copies, and by no means the ones who "take the initial step" in the copying process. The "initial" and "most significant and important" step is DISH's selection of a particular lineup of programs to be copied—the entire primetime lineup of the four most popular networks. Subscribers, who activate PrimeTime Anytime by pressing "Enable" once, cannot use the service to record any other programs and cannot deselect individual programs that DISH has included in the service. The Ninth Circuit failed to acknowledge the significance of DISH's unilateral selection of the programs to be included in PrimeTime Anytime. Indeed, the court's analysis of volitional conduct did not even mention this critical step. *See Fox*, at 11-13. It said simply that DISH does not become the copier by "operating a system used to make copies at the user's command." *Id.* at 12. But DISH does much more than that: it "actively selects and makes available beforehand the individual programs available for [subsequent] viewing"—conduct that *Cablevision* presented as indicative of direct copying. 536 F.3d at 132.

c. Here, the facts demonstrate that subscribers and DISH are both engaged in volitional conduct. DISH's volitional conduct consists not only of "actively select[ing]" the programs for copying **before** subscribers start using the service, but of a series of actions by which DISH implements and controls the copying for months and even years **after** each subscriber's one-time activation. *See* ABC P.I. Reply ("Reply") 4-5 (ECF No. 178). The Ninth Circuit in *Fox* and this Circuit in *Cablevision* left open the question of "'whether one's contribution to the creation of an infringing copy may be so great that it warrants holding that party directly liable for the infringement, even though another party has actually made the copy.'" *Fox*, at 13 (quoting *Cablevision*, 536 F.3d at 133). In DISH's own view, its "contribution to the creation" of the copy is much "great[er]" than the subscriber's: its advertising promises that "Hopper remembers to record primetime even if you don't" (ECF No. 171-1, at 903), and a DISH executive confirms that you "don't have to think about what to watch. . . . [You] always have something from last night sitting right there waiting." Mem. 19.

3. DISH has no valid fair use defense for its own concededly commercial copying of all of ABC's primetime programs because, among other reasons, a direct infringer cannot defend its own copying by asserting the fair use defense of others. *See* Mem. 22 n.10; Reply 6.

4. In assessing fair use in the context of subscriber copying, the Ninth Circuit concluded that "any analysis of the market harm should exclude consideration of AutoHop" (even though AutoHop is available only to PrimeTime Anytime users), because Fox does not own the copyrights to the ads and, therefore, "ad-skipping does not implicate Fox's copyright interests."

*Fox*, at 14-15. In fact, ABC does own the copyrights in the ABC promotional spots that are skipped with AutoHop. Mem. 12 ("The biggest advertiser on ABC is ABC."). And regardless of who owns the ads, an examination of whether PrimeTime Anytime has an effect on "the potential market for or value of the copyrighted work[s]," 17 U.S.C. § 107, cannot ignore how AutoHop works in conjunction with PrimeTime Anytime. "Market substitution" is the touchstone of unfair use under the Supreme Court's leading decision on the topic, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591 (1994)—a case that the *Fox* Ninth Circuit opinion does not even cite. PrimeTime Anytime copies that are made to feed into the AutoHop commercial skipping service operate as a "market substitut[e]" for the commercial-free programming ABC licenses distributors like Apple and Amazon to provide. Even putting AutoHop aside altogether, PrimeTime Anytime, by creating an on-demand library of the latest shows, itself acts as a market substitute for ABC's licensed VOD services and for streaming services like Hulu and Hulu Plus. Indeed, a DISH executive admitted "I don't think you'd ever need Hulu Plus or Hulu after this." Mem. 14, 24. The Ninth Circuit ignored these market realities.

5. DISH subscribers' use is not "noncommercial," as the Ninth Circuit concluded, *Fox*, at 15, but commercial in the sense that these subscribers avoid the fees they would have to pay licensed providers such as Apple and Amazon for on-demand, commercial-free TV programming. *See* Mem. 29-33. And even a noncommercial use is unfair when "it would adversely affect the potential market" for the work "if it should become widespread." *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984). Neither the VOD market nor the market for paid commercial-free programming existed when *Sony* was decided. Even then, *Sony* did **not** hold that the market harm analysis should "exclude consideration of" commercial skipping. *Fox*, at 15. To the contrary, the *Sony* Court **considered** the potential harm to broadcasters' advertising revenues caused by VCR copying; it merely found the showing of harm inadequate based on the district court's findings that Nielsen ratings fully counted VCR recordings (no longer the case) and that fast-forwarding under then-available technology (where the screen went blank during fast-forwarding) was a matter of tedious guess-work. *See* 464 U.S. at 451-52 & n.36.

6. Finally, DISH is in breach of its Retransmission Consent Agreement with ABC because, even if it is not itself engaging in copying, it has "authorized" the massive copying of ABC's primetime programs. *See* Mem. 15. The Ninth Circuit quoted the "authorize" language in the Fox-DISH agreement, *Fox*, at 5, but neither analyzed its application to Fox's contract claim nor acknowledged that there is no fair use defense to a breach of contract claim. Further, unlike the contract considered in *Fox*, which permitted copying "by consumers for private home use," *Fox*, at 5, the only exception contained in the ABC-DISH agreement's broad prohibition on copying is an allowance for DISH's "practice of connecting subscribers' home recording devices," Mem. 6, which is far too narrow to permit the operation of an ongoing service that copies every primetime program every night.

For these reasons, the *Fox* opinion is not persuasive authority in this case.

Respectfully submitted,

*[signature]*

Kevin T. Baine
*Counsel for the ABC Parties*

cc: All counsel (by facsimile)
Magistrate Judge Fox (by facsimile)

3