



ORRICK, HERRINGTON & SUTCLIFFE LLP
51 WEST 52ND STREET
NEW YORK, NEW YORK 10019-6142

tel +1-212-506-5000
fax +1-212-506-5151

WWW.ORRICK.COM

August 2, 2013

**VIA FACSIMILE**

Peter A. Bicks
(212) 506-3742
pbicks@orrick.com

The Honorable Laura T. Swain
United States District Judge
United Sates District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: **AUG 0 5 2013**

Re:    *In re AutoHop Litigation*, Master File No. 12 Civ. 4155 (LTS)(KNF)
       **This document relates to:** *DISH Network L.L.C.*, No. 12 Civ. 4155 (LTS)(KNF)

Dear Judge Swain:

The Ninth Circuit decision that ABC labels "non-persuasive" was issued on a *nearly identical* preliminary injunction motion to the one pending before this Court. The only difference is the network—there Fox, here ABC. The DVR features at issue, PrimeTime Anytime ("PTAT") and AutoHop, are the same. The copyright claims are the same. The contracts contain similar authorizations for home recording devices and the presumption against injunctive relief on contract claims applies in both fora. Analyzing the same issues, and relying on the Second Circuit's decision in *Cablevision*, and the Supreme Court's decision in *Sony*, the Ninth Circuit affirmed the district court's holding that "Fox did not demonstrate a likelihood of success on its copyright infringement and breach of contract claims regarding DISH's implementation of PrimeTime Anytime and AutoHop." *Fox Broadcasting Co., et al. v. DISH Network L.L.C., et al.*, No. 12-57048, slip op. at 10 (9th Cir. July 24, 2013); *see Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008) ("*Cablevision*"); *Sony Corp. of Am. v Universal City Studios, Inc.*, 464 U.S. 417 (1984). ABC provides no basis for this Court to deviate from the Ninth Circuit's well-reasoned opinion *See Marine Recreational Opportunities, Inc. v. Berman*, 15 F.3d 270, 272 (2d Cir. 1994) (refusing to "create a conflict among the circuits" without a "compelling reason").

The Ninth Circuit confirmed that this case is an update of *Sony*, that DVRs cannot be distinguished from VCRs for copyright purposes, and that PTAT and AutoHop cannot be distinguished from other common DVR features. *All* DVRs allow users "to create thousands of copies of programs" and watch them on a "commercial-free basis" (ABC Ltr. at 1) with a few clicks of the remote control—"record" and "fast-forward" or "30-second skip." The PTAT and AutoHop features of DISH's Hopper "Whole-Home" HD DVR simply make easier what tens of millions of Americans are already doing, and have been doing for years. Fox's and ABC's attack on PTAT and AutoHop is a thinly veiled attack on DVRs in general.

The Ninth Circuit had no difficulty affirming the district court's conclusion that Fox is unlikely to succeed on its direct infringement claim. *Fox*, at 11-13. As the Ninth Circuit held, "operating a system used to make copies at the user's command does not mean that the system operator, rather than the user, caused the copies to be made. Here, Dish's program creates the copy only in response to the user's command." *Id.* at 14. "Therefore," the Ninth Circuit continued, "the

district court did not err in concluding that the user, not Dish, makes the copy." *Id.* Perhaps recognizing that this reasoning is unassailable—both as a matter of law, and common sense—ABC faults the Ninth Circuit for applying what it claims is a "'most significant and important cause' standard" for direct infringement. ABC Ltr. at 1-2 (emphasis omitted). However, the standard applied by the Ninth Circuit came directly from *Cablevision*: "Infringement of the reproduction right requires 'copying *by* the defendant,' which comprises a requirement that the defendant cause the copying." *Fox*, at 12 (citations omitted). The question, as *Cablevision* puts it, and as the Ninth Circuit recognized, is "'*who* made' the copies[?]" *Id.* (quoting *Cablevision*, 536 F.3d at 130). With respect to PTAT, the "who" in "'*who* made' the copies" is the subscriber, not DISH.

Even though the Ninth Circuit expressly considered, and rejected, Fox's argument that DISH should be held directly liable because it "decides how long copies are available for viewing, modifies the start and end times of the primetime block, and prevents users from stopping a recording," *Fox*, at 12, ABC blames that court for "fail[ing] to acknowledge the significance of DISH's unilateral selection of the programs to be included in PrimeTime Anytime." ABC Ltr. at 2. There is no "significance." First of all, ABC's claim that DISH "actively selects and makes available beforehand the individual programs available for [subsequent] viewing," (*id.* quoting *Cablevision*, 363 F.3d at 132)), is simply wrong. DISH does not "actively select" any "programs" "beforehand," or ever. Just like Cablevision, DISH "has no control over what programs are made available on individual channels or when those programs will air, if at all." *Cablevision*, 535 F.3d at 132. PTAT is a timer-based feature that relies upon existing broadcast network primetime schedules. More importantly, the design of the PTAT feature to streamline the user's choice to record primetime programming on some or all of the broadcast networks, on some or all nights of the week, does not change the immutable fact that the "program creates the copy only in response to the user's command." *Fox*, at 12. Or, more to the point, *what* the user may record with the PTAT feature (existing primetime schedules, like any DVR) does not bear on *who* makes the copy.

The Ninth Circuit also expressly considered, and rejected, Fox's claim that DISH should be held liable "concurrently with its users." *Id.* In arguing to the contrary, ABC points out that "subscribers and DISH are both engaged in volitional conduct." ABC Ltr. at 2. The Ninth Circuit was, however, fully aware of DISH's "volitional conduct," but recognized that DISH does not "cause[] copies to be made." *Fox*, at 12. Indeed, the Ninth Circuit took note of DISH's "participat[ion] in the operation of PrimeTime Anytime"—that is, the exact same "series of actions" proffered by ABC, (ABC Ltr. at 2)—but nevertheless held that "these facts do not establish that Dish made the copies." *Fox*, at 12-13. Nor is it DISH's "own view" that its "'contribution to the creation of the copies is much 'great[er]' than the subscriber's." ABC Ltr. at 2. DISH's advertising, and the statement of its executive, (*id.*), in no way undermine the fact that the PTAT feature "creates the copy only in response to the user's command." *Fox*, at 12.[1]

As to secondary infringement, the Ninth Circuit also correctly rejected Fox's assault on common behavior occurring every day in consumers' homes. In concluding that consumers are likely engaging in fair use, the Ninth Circuit recognized that the decision in *Sony* is controlling—just as it is here. Here too, *Sony* squarely forecloses ABC's argument that PTAT is anything other than a "noncommercial" use. *Fox*, at 15 (citing *Sony*, 464 U.S. at 449). With respect to market harm, the Ninth Circuit held that "any analysis of the market harm should exclude consideration of AutoHop because ad-skipping does not implicate Fox's copyright interests." *Id.* at 13-15. As the Ninth Circuit astutely observed, "Fox owns the copyrights to the television programs, not to the ads aired

---

[1] While the Ninth Circuit had no occasion to address the issue, and notwithstanding ABC's assertion to the contrary, (ABC Ltr. at 2), even if DISH makes the PTAT copies—which it assuredly does not—PTAT is a fair use. *See* DISH Mem. in Opp. ("Opp.") at 27-28 (ECF No. 174).

in the commercial breaks." *Id.* at 14-15. "If," as the Supreme Court held in *Sony,* "recording an entire copyrighted program is a fair use, the fact that viewers do not watch the ads not copyrighted by Fox cannot transform the recording into a copyright violation." *Id.* at 15.

ABC tries to distinguish by arguing that it sometimes promotes its own shows during commercial breaks. ABC Ltr. at 3. ABC does not, however, explain how those copyrights could possibly be implicated when AutoHop does not reproduce, distribute, or publicly perform ABC's "promotional spots." *See* Opp. at 16. There is, after all, nothing in the Copyright Act that *requires* people to watch a copyrighted work. *See* 17 U.S.C. § 106. And, in any event, ABC has not pled a violation of a registered copyright in a "promotional spot," nor has it claimed a compilation copyright in the combination of its shows and promotional spots. In any event, the Family Movie Act would protect network promo skipping, even if promos could be viewed as portions of a single work. *See* 17 U.S.C. § 110(11).

While ABC asserts that an examination of the alleged market harm from PTAT "cannot ignore how AutoHop works in conjunction with PrimeTime Anytime," it offers no justification for departing from the Ninth Circuit's reasoning. ABC Ltr. at 3. ABC points to no evidence, for example, that consumers using AutoHop are skipping any greater number of ads than they did without AutoHop. Instead, ABC faults the Ninth Circuit for purportedly failing to cite *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569 (1994), on the issue of "market substitution." *Id.* Rather than "ignor[e] ... market realities," (*id.*), the Ninth Circuit expressly recognized that "[b]ecause Fox licenses its programs to distributors such as Hulu and Apple, the market harm analysis is somewhat different than in *Sony,* where no secondary market existed for the copyright-holders' programs." *Fox,* at 16. The court squarely rejected the argument of harm—as it should, since nothing about the two to eight-day default window for saving PTAT recordings (with or without AutoHop) is a substitute for iTunes. ABC simply does not like the outcome of the Ninth Circuit's inquiry into the "market realities," which found no market harm from the consumers' PTAT copies. *Id.* at 16-17. *Campbell,* a parody case, does nothing to change this conclusion. The record evidence of lack of harm is even stronger here than it was in *Fox. See* Opp. at 20-23.

Finally, ABC faults the Ninth Circuit for supposedly failing to analyze all of Fox's contractual language. ABC Ltr. at 3. But DISH's agreement with ABC contains a broad authorization of home recording devices: "[t]he foregoing shall not preclude [DISH's] practice of connecting subscribers' home recording devices such as VCRs and DVRs." Opp. at 5. PTAT is a recording feature of a "*home recording device,*" i.e., the Hopper "*DVR.*" ABC admits that this clause "obviously allow[s] for use of ... DVR[s] by subscribers." ABC Reply at 2 (ECF No. 178). There is no breach of contract. *See* Opp. at 11-14.

ABC provides no reason why the outcome here should be any different from the Ninth Circuit.

Respectfully submitted,

Peter Bicks

Peter A. Bicks

cc:     All counsel (via email)
        Magistrate Judge Fox (via facsimile)