**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE AUTOHOP LITIGATION

12-CV-4155 (LTS) (KNF)

**REDACTED PUBLIC**
**FILING, ORIGINAL FILED**
**UNDER SEAL**

Oral Argument Requested

**CBS'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO**
**COMPEL THE PRODUCTION OF DOCUMENTS AND OTHER INFORMATION**

Defendants/Counterclaim-Plaintiffs CBS Corporation, CBS Broadcasting Inc., CBS Studios Inc., and Survivor Productions, LLC (collectively, "CBS") respectfully submit this reply brief in support of CBS's motion to compel discovery from Plaintiff/Counterclaim-Defendant DISH Network L.L.C. and Counterclaim-Defendants DISH Network Corporation and EchoStar Technologies LLC (collectively, "DISH").[1]

## I. DISH'S CHANGED POSITIONS IN DISCOVERY REGARDING THE PRODUCTION AND ACCESSIBILITY OF ITS PTAT AND AUTOHOP USAGE DATA HAVE PREJUDICED CBS IN THE PREPARATION OF ITS CASE.

Since January 2013, CBS has sought the production of data that DISH collects about customer usage of PTAT and AutoHop. The reason that CBS sought this data is that DISH relied on it in opposing Fox's and ABC's separate requests for preliminary injunctions. DISH asserted in both actions that this data shows that ███████████████████ ███████ Furthermore, following the preliminary injunction briefings, DISH presented statistics about customer usage of PTAT and AutoHop in its Answers to Interrogatories. (CBS has sought the data to prove that these statistics are misleading.) Thus, in a variety of ways, DISH has put this data squarely at issue in this case. Yet DISH has refused to produce this data to CBS for more than 18 months.

---

[1] On June 25, 2014, the Court ordered the parties to file their reply briefs to their cross motions to compel by July 9, 2014. (ECF No. 264.) DISH, however, has refused to file its opposition papers with the Court that it served on CBS on May 2 because the position that DISH took in these papers regarding its inability to produce data tracking the rate at which DISH customers use Primetime Anytime ("PTAT") and AutoHop is false and misleading. To avoid filing false and misleading papers with the Court, DISH served new opposition papers more than two months later. DISH emailed its revised papers to CBS the night July 3, just a few days before reply briefs were to be filed. DISH has not indicated whether it intends to file its new set of opposition papers, but any filing at this juncture is untimely. DISH has therefore waived its opposition to CBS's motion to compel. And as explained in more detail below, DISH's belief that it can withhold filing papers that it served on CBS and then unilaterally amend them right before reply briefs are due, all without authorization of the Court, is but another instance of DISH's repeated gamesmanship when it comes to the PTAT and AutoHop usage data. Furthermore, CBS has been prejudiced by DISH's failure to file its original papers and by DISH's attempt to submit a new set of opposition papers containing new facts, evidence, and legal arguments on the night of July 3 without CBS's consent. Consequently, this Court should not consider DISH's amended opposition papers in ruling on CBS's motion.

More than six months after CBS first requested production of the usage data, DISH said
that it was "investigating the practicalities of potentially producing raw data." (Ex. 4 at 2.)[2]
Then, in February 2014, DISH took the position that "it is infeasible and impractical for that raw
[usage] data to be produced" and that data was not "in a format that CBS's outside experts could
interpret or analyze." (Ex. 5 at 1-2.) After CBS filed a motion to compel in April 2014 seeking
production of the usage data, DISH maintained this position in opposing CBS's motion.
In its opposition papers, DISH relied on a declaration from Keith Gerhards, the Director of
Software for EchoStar. In his declaration, Mr. Gerhards testified as to specific burdens
associated with producing the usage data to CBS. (*See, e.g.*, Ex. 9 ¶¶ 16, 19, 25, 28.) However,
when CBS deposed Mr. Gerhards two weeks later, he repeatedly was unable to answer questions
arising directly from his sworn declaration. Instead, Mr. Gerhards repeatedly asserted that he
would have to ask his colleagues for the answers. (*See, e.g.*, Ex. 11 at 60:23-25, 62:4-5, 63:11-
13, 91:12-16, 133:5-7.)

Following Mr. Gerhards' deposition, DISH changed its position 180 degrees. In June
2014, sixteen months after CBS first requested the usage data, DISH acknowledged that it could
produce some of this data. However, DISH said that this production would (1) contain only a
portion of all the usage data, (2) ████████████████████████, and (3) occur after
the stipulated close of discovery in August. (Ex. 16.) Before CBS could respond, DISH
amended this offer, stating that it would produce the raw usage data to CBS in a "flat file" format
by the end of discovery in August. (Ex. 17.) However, according to DISH's IT Manager Eric
Moore, who also submitted a declaration opposing CBS's motion to compel, producing the usage
data in a flat file "would not do CBS (or anyone else) any good." (Ex. 8 ¶ 44.) If accepted, this

[2] All references to "Ex." refer to exhibits attached to the Supplemental Declaration of Joshua I. Schiller, dated July
9, 2014 ("Schiller Supp. Decl.").

2

proposal meant that CBS would receive unusable data after already deposing all of DISH's

witnesses, and could not take additional discovery about the data before fact discovery closed.

In this setting,[3] and for the reasons set forth below, CBS respectfully requests that this

Court preclude DISH from using this data.

## II.      DISH'S CONDUCT IN DISCOVERY, WHICH HAS PREJUDICED CBS, MANDATES A SANCTION PRECLUDING DISH FROM RELYING ON THE USAGE DATA IN THIS PROCEEDING.

As courts have long recognized, discovery cannot be both a sword and a shield. *See*

*Upper Deck Co., LLC v. Breakey Int'l, BV*, 390 F. Supp. 2d 355, 362 (S.D.N.Y. 2005) (holding

that a party "cannot shield itself from discovery and then use the same information it sought to

withhold as a sword to defeat summary judgment"). Yet that is exactly how DISH has used this

data throughout the past year-and-a-half and will continue to do so absent an order prohibiting

DISH from relying on any of the usage data. At this late stage in the litigation, DISH has

deprived CBS of a meaningful opportunity to analyze the usage data. DISH's failure to produce

this data in a timely fashion and in a useful manner has prejudiced CBS. Therefore, CBS

requests that the Court sanction DISH under Federal Rule of Civil Procedure 37 and/or the

Court's inherent power and preclude DISH from relying on any PTAT and AutoHop usage data.

### A.      This Court should sanction DISH pursuant to Federal Rule of Civil Procedure 37.

A party that fails to provide information required by Rule 26(a) or 26(e) "is not allowed

to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the

failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In the instant case,

---

[3] CBS respectfully directs the Court's attention to the attached Appendix for a timeline of DISH's positions regarding the PTAT and AutoHop usage data. Moreover, in its related litigation, Fox also has moved for an order precluding DISH from relying on any of the PTAT and AutoHop usage data. CBS respectfully refers the Court to Fox's submission, attached hereto as Ex. 19, for a more in-depth discussion of DISH's gamesmanship with regard to the PTAT and AutoHop usage data.

DISH has relied on the usage data in both this action and the related litigation with ABC and Fox. It also is apparent that, absent a sanction, DISH intends to rely on the usage data going forward. Consequently, DISH knew that it would be obligated to disclose and produce this usage data to CBS pursuant to Rules 26(a) and 26(e) of the Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 26(a)(1)(A)(ii) (obligating a party to disclose "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment"). Yet DISH has refused to do so.

By its express terms, Rule 37(c)(1) "does not require a showing of bad faith," and the Second Circuit has declined to read such a requirement into the rule. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).[4] Indeed, the sanction under Rule 37(c)(1) "is automatic in the sense that there is no need for the opposing party to make a motion to compel disclosure . . . as a predicate for imposition of the sanction of exclusion." 8B Wright et al., *Federal Practice & Procedure* § 2289.1 (3d ed. 2014). Rather, the sanction is appropriate where, as here, four factors militate in favor of preclusion: (a) the obstinate party's explanation for nonproduction or untimely production, (b) the importance of the evidence, (c) the prejudice to the requesting party, and (d) the possibility of a continuance in the proceedings. *See, e.g.*, *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 70-71 (E.D.N.Y. 2012) (citing factors outlined in *Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006)).

In this instance, all four factors weigh heavily in favor of sanctioning DISH. To begin with, DISH now admits that its explanation over the past 18 months—that all of the usage data is inaccessible and burdensome to produce—is spurious. At the eleventh hour of discovery,

---

[4] As CBS explains in Part II(B), *infra*, in this case DISH has acted with bad faith.

DISH's counsel admitted to CBS counsel, during a meet and confer related to the pending motion to compel, that DISH previously did not want to produce *any* usage data, and therefore none was produced.  Counsel also stated that it took a long time for DISH to change its mind, but that ultimately: "Yes, we changed our position."  (Schiller Supp. Decl. ¶ 17; Declaration of Gary R. Studen ("Studen Decl.") ¶ 3, dated July 9, 2014.)  As detailed above, DISH now acknowledges that it is capable of producing some of this data.[5]  Moreover, the usage data is of great importance to CBS in this case because, if CBS had been afforded a meaningful opportunity to analyze it, the data would have established the high usage rates of PTAT and AutoHop by DISH customers.[6]  *See Lujan*, 284 F.R.D. at 70-71 (holding that the second factor "weighs heavily in favor of preclusion" where the unproduced materials "are at the heart of [the requesting party's] allegations in this matter"); *see also Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93 Civ. 4001, 2004 WL 345551, at *11 (S.D.N.Y. Feb. 23, 2004) (explaining that important evidence that is withheld "only serves to underscore the inexcusable quality of its delayed submission").[7]

DISH's conduct has unduly prejudiced CBS.  DISH spent 18 months hiding behind false claims of undue burden and inaccessibility before acknowledging before the close of discovery

---

[5] To the extent DISH still claims that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓ that is a problem of DISH's own creation. ▓▓▓▓▓▓▓▓▓▓▓▓▓ despite relying on the data and knowing that CBS had requested it as early as January 2013. *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (defining spoliation as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation") (internal quotation marks omitted); *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 437 (S.D.N.Y. 2010) ("Even those courts that do not denominate downgrading as a violation of the preservation obligation appear prepared to remedy any prejudice that it causes.").

[6] The harm that DISH's technologies have caused would amplify exponentially were the technologies to become widespread. *See Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 928 (2d Cir. 1994) (discussing in the fair use context the analysis of market harm based on widespread use of technology permitting unauthorized copying).

[7] To the extent that DISH can argue that this data also is important to its own case, New York courts have repeatedly recognized that the importance of evidence to a party facing a Rule 37(c)(1) sanction is outweighed where, as here, the other three factors weigh heavily in favor of preclusion. *See, e.g.*, *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296-97 (2d Cir. 2006) (upholding Rule 37(c)(1) sanctions, including "severe sanctions," despite the evidence being "essential" to the sanctioned party's case).

5

that it could produce some of the data.  At the same time, however, DISH has relied on certain data when convenient to support its arguments in the litigation.  Finally, a continuance is not a viable option given that DISH's proposal to produce some usage data would be in a format that "would not do CBS (or anyone else) any good."  (Ex. 8 ¶ 44.)  Moreover, discovery would have to be reopened given that:  (1) DISH's witnesses with knowledge about this data already would have been deposed; and (2) CBS would likely need to serve follow-up document requests, interrogatories, or request additional depositions based on information learned from this data.

      **B.**      **This Court should sanction DISH pursuant to this Court's inherent power.**

Even setting aside the strong basis for sanctioning DISH under Rule 37(c)(1), this court may "impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs."  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002).  Courts in the Second Circuit have sanctioned parties where there is a "finding of bad faith."  *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998).  On at least one occasion the Second Circuit has approved a sanction on a party "based solely on gross negligence."  *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999).  Beyond bad faith, and in determining whether and how to sanction a party, courts consider six elements: "(a) willfulness or bad faith on the part of the noncompliant party; (b) the history, if any, of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party has been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party."  *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 138 (S.D.N.Y. 2009).

In the instant case, the nature of DISH's actions over the course of the last 18 months makes clear that all six elements support a sanction precluding DISH from relying on the usage

data.[8]  DISH has acted in bad faith in continuing to oppose CBS's requests for production of the

usage data by claiming that the data was inaccessible and burdensome to produce when, all

along, some of the data was accessible but DISH simply did not want to produce it to CBS.

When DISH abandoned this argument and offered to produce some data with just weeks left in

discovery, it did so not because it suddenly became aware of new circumstances, but because

DISH's witness, Mr. Gerhards, could not support DISH's claims that the data was inaccessible.[9]

Furthermore, lesser sanctions will not ameliorate the harm caused to CBS in this case.

DISH delayed until the last possible moment to offer the usage data in a form that would be

useless to CBS.  With a lesser sanction than preclusion, CBS would still face the prospect of

rebutting DISH's analysis of the usage data without being able to independently analyze and

understand the data.  This has resulted in great prejudice to CBS.  Finally, according to its

attorneys, it was DISH that did not want to produce the data to CBS over the course of the past

---

[8] This is not the first litigation in which DISH's practices during discovery have been called into question.  In fact, DISH has been sanctioned by courts at least four times in the past nine years for improper discovery practices. *See Dino Broccoli v. EchoStar Commc'ns Corp.*, 229 F.R.D. 506, 512 (D. Md. Aug. 4, 2005) (imposing a spoliation sanction against EchoStar upon a finding that "Echostar clearly acted in bad faith in its failure to suspend its email and data destruction policy or preserve essential personnel documents in order to fulfill its duty to preserve the relevant documentation for purposes of potential litigation"); *VOOM HD Holdings, LLC v. EchoStar Satellite, LLC.*, No. 600292/08, 2010 WL 8400073 (N.Y. Sup. Ct. Nov. 13, 2010) (imposing a spoliation sanction against EchoStar based on its "pattern of egregious conduct and questionable — and, at times, blatantly improper — litigation tactics"), *aff'd*, 939 N.Y.S.2d 321 (N.Y. App. Div. 2012); *DISH Network, LLC v. Fun Dish, Inc.*, No. 1:08-cv-1540, 2012 WL 4322605, at *6-7 (N.D. Ohio Sep. 20, 2012) (holding that DISH engaged in several sanctionable practices during discovery, including failing to produce a witness with proper knowledge to provide testimony about a subject matter); *United States v. DISH Network, LLC*, No. 09-cv-3073, 2013 WL 1749930, at *1 (C.D. Ill. Apr. 24, 2013) (imposing discovery sanctions against DISH upon a finding that DISH's "conduct during discovery has been, at times, evasive, obstructive, and willful").

[9] Mr. Gerhards also testified that he could not explain usage statistics DISH had provided in Answers to Interrogatories even though he had certified the Answers pursuant to 28 U.S.C. § 1746.  (Ex. 11 at 191:15-192:4)

18 months.  Likewise, the decision in recent weeks to offer some of the data also was made by

DISH.[10]

### CONCLUSION

For the reasons discussed above, this Court should preclude DISH from relying on the

PTAT and AutoHop usage data going forward in this litigation, and should award CBS fees and

costs associated with briefing its motion to compel.


Dated: New York, New York
       July 9, 2014

Respectfully submitted,

BOIES, SCHILLER & FLEXNER LLP

Jonathan D. Schiller
Joshua I. Schiller
Gary R. Studen
575 Lexington Avenue, 7th Floor
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for CBS Corporation, CBS
Broadcasting Inc., CBS Studios Inc. and
Survivor Productions, LLC*

---

[10] Given that DISH has yet to file an opposition brief in response to CBS's motion to compel, even though it has served CBS with two vastly different versions of opposition papers, CBS respectfully rests on its opening brief for arguments regarding discovery materials other than the usage data.  Additionally, because DISH has now agreed to add Mr. Schlichting as an ESI custodian, this request in CBS's motion is moot.

## **APPENDIX**

The following is a summary of facts relevant to this motion about the PTAT and

AutoHop usage data:

- September 2012 and January 2013: After DISH opposed Fox's and ABC's separate requests for preliminary injunctions by relying on PTAT and AutoHop usage data (Ex.1; Ex. 2), CBS and Fox submitted document requests calling for the production of this data (Ex. 3 at Request No. 12 (Second); Ex. 19 at 4-5.)

- November 2013: After numerous meet and confers, DISH still represented that it was "investigating the practicalities of potentially producing raw data, including feasibility and burden, as well privacy and confidentiality issues." (Ex. 4 at 2.)

- February 2014: DISH objected that CBS's request was "overly broad and unduly burdensome, as well as incomprehensibly vague." (Ex. 5 at 1.) Moreover, DISH represented that "it is infeasible and impractical for that raw data to be produced" and that data was not "in a format that CBS's outside experts could interpret or analyze." (*Id.* at 1-2.)

- March 25, 2014: DISH stated that the usage data was archived and not maintained in an "accessible format." (Ex. 6 at 1.)

- April 11, 2014: CBS moved to compel the production of the usage data or, in the alternative, sought a sanction precluding DISH from relying on any of the data going forward in the litigation.

- May 2, 2014: DISH served its opposition brief on CBS, consisting of 20 pages of argument and four declarations devoted solely to the claim that the usage data is inaccessible and would be unduly burdensome to produce. (*See, e.g.*, Ex. 7 at 6) ("There are several huge problems in making any of the actual underlying data itself available to CBS."). CBS informed DISH that it wanted to depose two DISH declarants (Keith Gerhards and Eric Moore)—prior to agreeing on a date for reply briefs—to test DISH's claims.

- May 15, 2014: CBS and DISH exchanged proposed redactions to their respective briefs in light of the confidential information discussed therein for the purpose of filing the briefs with the Court. (Ex. 10.)

- May 16, 2014: CBS deposed Mr. Gerhards. As CBS stated in a previous letter to the Court, Mr. Gerhards was unprepared to testify about the subject matter of his declaration and could not explain the prior usage statistics on which DISH had relied in its Answers to Interrogatories. (Ex. 15 at 2-3.)

- <u>May 20, 2014</u>:  DISH abruptly cancelled the deposition of Mr. Moore, the IT Manager for DISH, less than 36 hours before Mr. Moore was to be deposed.  (Ex. 12.)  DISH failed for weeks to provide a new date for Mr. Moore, thereby unilaterally delaying reply briefing on the motions to compel, and ignored CBS's and Fox's requests to reschedule Mr. Moore's deposition.

- <u>June 6, 2014</u>:  DISH informed CBS that it no longer intended to file its May 2 opposition papers to CBS's motion to compel with the Court, but refused to explain why.  (Ex. 13; Studen Decl. ¶ 2.)

- <u>June 12, 2014</u>:  After weeks of failing to provide a reply date for Mr. Moore or explain why it no longer would file its opposition papers that it served on CBS on May 2, DISH acknowledged for the first time that it could provide CBS and Fox with some of the usage data.  DISH stated that it was working on a proposal to present to CBS and Fox regarding production of the data, which DISH was still not willing to share at that time.  DISH also stated that, in the event CBS did not accept DISH's proposal, DISH would "revise" its May 2 opposition papers "to reflect the revised position."  (Ex. 14.)

- <u>June 25, 2014</u>:  Less than six weeks before discovery closes, CBS and Fox met and conferred with DISH about production of the usage data.  When CBS's counsel asked DISH's counsel why DISH was refusing to file its May 2 opposition papers, DISH's counsel stated that the reason DISH previously had claimed all of the usage data was inaccessible was because DISH did not want to produce it to CBS.  DISH's counsel also stated to CBS counsel that it took a long time for DISH to change its mind about producing the data, but that ultimately: "Yes, we changed our position."  (Schiller Supp. Decl. ¶ 17; Studen Decl. ¶ 3.)

  o  Following the meet and confer, DISH emailed its proposal to CBS and Fox.  DISH stated that it was willing to produce certain usage data at a cost of approximately ▬▬▬ to be split among the parties, but that the data production would require an extension of fact discovery for purposes of this production only, and require an extension of expert discovery by four months.  (Ex. 16.)

- <u>June 30, 2014 at 11:54 a.m.</u>:  DISH changed its proposal and stated that it could produce some of the usage data within approximately 10 days and the rest within approximately 30 days.  However, DISH said that it would produce the data in a "flat file format," which DISH acknowledged in its now-discarded May 2 opposition papers "would not do CBS (or anyone else) any good" because it would be in an unusable format and would require DISH's proprietary software to analyze.  (Ex. 8 ¶¶ 41-44.)  DISH claimed that its proposal "moots all pending and/or contemplated motions."  (Ex. 17.)

2

- <u>June 30, 2014 at 7:51 p.m.</u>: Fox rejected DISH's latest hollow proposal and said that it would be filing a motion in its proceeding seeking to preclude DISH from relying on any usage data. (Ex. 18.)

- <u>July 2, 2014</u>: After CBS also rejected DISH's proposal because it would "not provide CBS with any meaningful opportunity to analyze the PTAT/AutoHop usage data," DISH asserted that CBS should withdraw its previous motion to compel and file a new motion given that DISH had changed its position. (Ex. 20; Ex. 21.)

- <u>July 3, 2014 at 7:15 p.m.</u>: On the evening of July 3, a few days before the Court ordered reply briefs to be filed, DISH emailed CBS a new set of opposition papers containing new facts, evidence, and legal arguments. (Ex. 22.) As of July 8, 2014, DISH had not filed this second set of opposition papers with the Court.