UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                       :
IN RE: AUTOHOP LITIGATION            :        **MEMORANDUM AND ORDER**[1]

                                     :             12-CV-4155 (LTS)(KNF)
-------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE


        This is an action by DISH Network L.L.C., a satellite television provider, seeking a

declaratory judgment that it is in compliance with its retransmission agreements with CBS

Corporation, CBS Broadcasting Inc., CBS Studios Inc. and Survivor Productions, LLC

(collectively "CBS").  CBS brought counterclaims against DISH Network, L.L.C. and EchoStar

Technologies LLC (collectively "DISH") for copyright violations, breach of contract and fraud.

Before the Court is DISH's motion, pursuant to Rule 37 of the Federal Rules of Civil Procedure,

to compel CBS "to produce documents responsive to DISH's Fourth Request for Production."

CBS opposes the motion.

***DISH's Contentions***

        According to DISH, CBS alleges in its counterclaims that DISH's Prime Time Any Time

("PTAT") and Autohop features that enable the user to skip commercials when playing certain

recorded shows threaten to harm its licensing agreements with internet-based distributors such as

Amazon, Netflix, Hulu and others.  DISH contends that, in connection with those allegations,

DISH requested, in its Fourth Request for Production, document request Nos.1[2] and 2,[3] CBS's

---

        [1] This is a redacted version of the September 24, 2014 Memorandum and Order, Docket
Entry No. 310, that was sealed to protect certain commercially sensitive information.

        [2] DISH's document request No. 1 states: "All retransmission agreements in effect as of
                                                                        (continued...)

retransmission consent agreements between CBS and multichannel video programming distributors ("MVPDs"), such as Comcast, Time Warner, DirecTV and DISH, "in effect as of January 1, 2012," to the present. DISH asserts that the retransmission consent agreements, which form, in large part, the basis of the current "economic foundation" of broadcast network television, "authorize MVPDs to retransmit the broadcast networks' programming signals to their pay-television subscribers, for a significant fee. CBS publicly touts the importance of its steadily increasing retransmission consent fees to its economics."

According to DISH, after refusing initially to produce any responsive documents, CBS agreed to produce portions of retransmission consent agreements [**REDACTED**]. DISH asserts that such partial production "is wholly insufficient." It contends that the retransmission consent agreements, in effect as of January 1, 2012, are relevant to CBS's damages claim because they "can be used to quantify the value of the works both before and after the alleged infringement," and especially to the fair use analysis, which is focused on the presence of harm to the value of the copyrighted works. DISH contends that, to show lack of harm to CBS "is to show that there

---

[2](...continued)
January 1, 2012 between You and any MVPD that include the right to retransmit the signal of any of Your owned and operated ABC broadcast network television stations." In response to this request, CBS states, inter alia: "CBS assumes that Request No. 1 reflects a clerical error, and that the reference to 'ABC broadcast network television stations,' was intended to be a reference to 'CBS broadcast network television stations.'" The Court assumes that "ABC" was an error and DISH intended to say "CBS."

[3] DISH's document request No. 2 states: "All retransmission consent agreements in effect from January 1, 2012 to the present between You and any MVPD that include the right to retransmit the signal of any of Your owned and operated ABC broadcast television stations." In response to this request, CBS states, inter alia: "CBS assumes that Request No. 2 reflects a clerical error, and that the reference to 'ABC broadcast network television stations,' was intended to be a reference to 'CBS broadcast network television stations.'" The Court assumes that "ABC" was an error and DISH intended to say "CBS."

was no material change in valuation of the works as a result of DISH's alleged infringement," for which a "before-and-after comparison of CBS's retransmission consent agreements" will be used. [**REDACTED**]

DISH contends that the retransmission consent agreements, in effect as of January 1, 2012, are also relevant to CBS's breach of contract and fraud claims, because of what they say about home recording devices and commercial-skipping, as well as whether CBS has put a price on commercial-skipping.  Moreover, "if the alleged cost of commercial-skipping is quantifiable, and, indeed, had been quantified, that precludes the issuance of a permanent injunction against AutoHop."

DISH contends that CBS should also produce its retransmission consent negotiation documents mentioning the Hopper, PTAT or AutoHop, as requested in DISH's Fourth Request for Production, document request Nos. 3,[4] 4[5] and 5.[6]  DISH maintains that CBS cannot claim that PTAT and AutoHop threaten the economic foundation of broadcast television, "and refuse to produce documents mentioning PTAT or AutoHop in connection with its negotiations over agreements that are an important part of the 'economic foundation.'"  What CBS and other

---

[4] DISH's document request No. 3 states: "All documents related to Your negotiation or renegotiation of retransmission consent agreements between January 1, 2012 and the present that mention the Hopper or its AutoHop or PrimeTime Anytime features."

[5] DISH's document request No. 4 states: "All documents evidencing any retransmission consent agreement terms related to the Hopper or its features that were requested by You or by any MVPD during retransmission consent agreement negotiations between January 1, 2012 and the present."

[6] DISH's document request No. 5 states: "All documents evidencing any connections related to the Hopper or its features that were requested of You or made by You in connection with negotiations of any retransmission consent agreement between You and any MVPD between January 1, 2012 and the present."

MVPDs said and did concerning PTAT and AutoHop in the context of their negotiations "goes directly to CBS's allegations of harm from PTAT and AutoHop," [**REDACTED**].  DISH is entitled to receive this information so it can rebut CBS's claim of harm from PTAT and AutoHop.

 Furthermore, the requested documents are relevant to CBS's contract claim because CBS alleges "that advertising revenue from DISH subscribers viewing commercials is an essential element of its consideration under the parties' Retransmission Agreement."  Thus, any negotiations that CBS had with other MVPDs mentioning PTAT and AutoHop "will likely be probative of whether CBS considers advertising viewing an essential element of its agreements with those other MVPDs," and will reveal whether "CBS or any MVPD has attempted to put a price on AutoHop."

## CBS's Contentions

  CBS contends that its retransmission consent agreements are irrelevant for determining the fair market value of CBS's primetime programming on an on-demand, commercial-free basis.  According to CBS, "the relevant market for determining fair market value is the actual or potential market for CBS primetime programming on an on-demand, commercial-free basis," and, "it is the market for on-demand, commercial free playback that DISH's PTAT and AutoHop technologies threaten to supplant if these technologies were to become widespread."  CBS maintains that "the retransmission market is not the market at issue in this litigation because it does not speak to the value of copying CBS primetime programming for on-demand, commercial-free playback."  CBS already produced the relevant licensing agreements involving relevant markets, which are "its VOD [video-on-demand] and Internet license agreements for these on-demand, commercial-free markets."  According to CBS, DISH "wants retransmission

agreements that CBS has entered into both before and after PTAT and AutoHop were released to DISH customers in March and May of 2012, respectively." [**REDACTED**]  There is nothing more that DISH is entitled to."

With respect to DISH's claim that retransmission consent agreements are relevant to CBS's contract and fraud claims, "DISH does not claim [**REDACTED**] that there even exists an ambiguity in the Retransmission Agreement that necessitates the need to consider extrinsic evidence," or "explain how or why other retransmission agreements executed prior to the release of PTAT and AutoHop 'bear on the meaning' of the terms of the Retransmission Agreement at issue in this case."  CBS contends that its negotiation documents from its retransmission consent agreements, which are "highly commercially sensitive and proprietary," are also irrelevant, and [**REDACTED**].

***DISH's Reply***

According to DISH, CBS asserted in its fraud claim that if CBS had known about the PTAT and AutoHop features on the Hopper, it would not have entered into its retransmission agreement with DISH, or would have entered into an agreement on materially different terms. DISH contends:

> In order to test this proposition DISH is entitled to production of the [retransmission consent] agreements that CBS entered into with other MVPDs both before and after the release of the PTAT and AutoHop features, in order to discover whether CBS has in fact prohibited similar DVR features in its contracts and, if it did not, whether CBS imposed materially different terms on those MVPDs.  CBS's refusal to produce all of the [retransmission consent] agreements in their entirety, with all economic terms, deprives DISH of the ability to challenge the veracity of CBS's claims as to how it would have behaved had it known of DISH's DVR features.

DISH maintains that it has already argued successfully, as shown in the district judge's October 1, 2013 opinion and order, that its DVR technology is not different from any other DVR technology, only more advanced, because "all DVRs give consumers the ability to record programming and play it back 'on-demand, commercial-free.'"  Moreover, while "CBS may now be conceding that there is no effect on the pay-television market, and thus it is not at issue, . . . that position is directly inconsistent with its and the other networks' claims of sustained harm," alleging "that DISH's DVR features will impact their negotiations with other MVPDs." Furthermore, CBS's retransmission consent agreements with "other MVPDs will show whether CBS required commercial-viewing by MVPD customers, as part of its basic bargain, or whether those other agreements, like the one with DISH, are silent on the subject."

According to DISH, discovery that has taken place since this motion was filed reinforces the relevance of the retransmission consent agreements requested. [**REDACTED**]

### Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  The scope of discovery under Rule 26(b) is broad.  See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389 (1978) (relevant for the purposes of Rule 26(b) means "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case").

On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

6

Fed. R. Civ. P. 37(a)(1).

Upon any motion or application involving discovery or disclosure requests or responses under Fed. R. Civ. P. 37, the moving party shall specify and quote or set forth verbatim in the motion papers each discovery request and response to which the motion or application is addressed. The motion or application shall also set forth the grounds upon which the moving party is entitled to prevail as to each request and response.

Local Civil Rule 37.1.

"[M]otions to compel under Fed. R. Civ. P. 37 . . . are entrusted to the sound discretion of the

district court." United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000).

***Application of Legal Standard***

<u>Procedural Deficiencies</u>

DISH's motion is procedurally deficient because it does not contain a certification that it

has in good faith conferred or attempted to confer with CBS in an effort to obtain discovery

without court intervention, as required by Rule 37(a)(1) of the Federal Rules of Civil Procedure.

Although DISH submitted exhibits demonstrating letters exchanged between the parties in

connection with various discovery requests, such letters are not contemplated by Rule 37, and

they place an unnecessary burden on the Court to ascertain what, if any, efforts have been made

by DISH to confer or attempt to confer with CBS to resolve the discovery issues raised in this

motion without court intervention. However, the Court has reviewed the parties' submissions on

the motion, including discovery-related communications between the parties. Notwithstanding

the procedural deficiencies and to save time and resources in accordance with Rule 1 of the

Federal Rule of Civil Procedure, the Court will analyze the motion on the merits.

<u>Document Request Nos. 1 and 2: Retransmission Consent Agreements In Effect As of January 1, 2012 To the Present</u>

Although, in response to DISH's Fourth Request for Production, document request Nos.

7

1 and 2, CBS objected initially that the requests are overbroad and unduly burdensome, not likely to lead to the discovery of admissible evidence and seek "highly confidential and competitively sensitive" information, in opposition to the motion CBS contends only that document request Nos. 1 and 2 are irrelevant. Since CBS abandoned its objections except on the ground of relevancy, the Court will analyze the relevancy of DISH's document request Nos. 1 and 2.

CBS's objection that the retransmission consent agreements are irrelevant is meritless. CBS concedes the relevancy of retransmission consent agreements "that were executed after the Hopper was released," because it offered to disclose those agreements to DISH, albeit redacted, [**REDACTED**]. And this is exactly what CBS has offered to produce to DISH."
[**REDACTED**]

CBS's focus on its definition of the relevant market as "the market for on-demand, commercial free playback that DISH's PTAT and AutoHop technologies threaten to supplant" is misguided because CBS alleged in its counterclaims against DISH that, by offering its subscribers PTAT and AutoHop, "DISH threatens to undermine the economic foundation on which free, over-the-air broadcast television has been built." Thus, CBS's allegations, in its pleading, that PTAT and AutoHop threaten to harm its "economic foundation" are broader than what CBS attempts to convey in its opposition, namely that the threat of harm of PTAT and AutoHop is limited to a particular "market for on-demand, commercial free playback." Furthermore, the retransmission consent agreements in effect as of January 1, 2012, before the introduction of PTAT in March 2012, are relevant to the extent they include any language about home recording devices and commercial-skipping, given that the retransmission consent agreement between CBS and DISH was executed on January 5, 2012.

The Court finds that the retransmission consent agreements in effect as of January 1, 2012, between CBS and any MVPD, are relevant and must be produced unredacted in their entirety, since the parties have a confidentiality agreement in place to address any confidentiality concerns.

Document Request Nos. 3, 4 and 5: Negotiations Related to Retransmission Consent Agreements

CBS's only argument is that, "[a]s with the production of CBS's retransmission agreements, the negotiation documents are equally irrelevant." In light of the Court's determination that CBS's retransmission consent agreements with any MVPD, in effect as of January 1, 2012, and to the present, are relevant, the Court finds that the related negotiation documents are also relevant and must be produced.

**Conclusion**

For the foregoing reasons, DISH's motion to compel, Docket Entry No. 253, is granted. On or before September 29, 2014, CBS must produce to DISH unredacted responses to DISH's Fourth Request for Production, Document Nos. 1, 2, 3, 4 and 5.

Dated: New York, New York                    SO ORDERED:
       November 3, 2014

                                             Kevin Nathaniel Fox
                                             KEVIN NATHANIEL FOX
                                             UNITED STATES MAGISTRATE JUDGE