```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
IN RE: AUTOHOP LITIGATION                                   :    MEMORANDUM AND ORDER[1]
                                                            :    12-CV-4155 (LTS)(KNF)
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
```

This is an action by DISH Network L.L.C., a satellite television provider, seeking a declaratory judgment that it is in compliance with its retransmission agreements with CBS Corporation, CBS Broadcasting Inc., CBS Studios Inc. and Survivor Productions, LLC (collectively "CBS").  CBS brought counterclaims against DISH Network, L.L.C. and EchoStar Technologies LLC (collectively "DISH") for copyright violations, breach of contract and fraud.  Before the Court is DISH's motion, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel CBS to: (1) produce documents responsive to document request Nos. 1, 3, 9, 17 and 19-21 (Third Request for Production), Nos. 1, 3-7 and 15 (Fifth Request for Production), and Nos. 1-2 and 4 (Eighth Request for Production); (2) answer interrogatory No. 9 (Second Set of Interrogatories); (3) designate Scott Koondel ("Koondel") as a custodian for electronically stored information ("ESI"); and (4) remove redactions to documents produced in response to DISH's requests for production.  CBS opposes the motion.

***DISH's Contentions***

DISH contends that CBS alleges that DISH's Prime Time Any Time ("PTAT") PTAT and AutoHop features will hinder its ability to sell advertising time, but it refuses to produce

---

[1] This is a redacted version of the September 24, 2014 Memorandum and Order, Docket Entry No. 311, that was sealed to protect certain commercially sensitive information.

details on its advertising sales. According to DISH, "[t]he bulk of network advertising deals are made at the 'Upfronts,' which is when advertisers purchase advertising time in advance of the upcoming television season," and "[a]dvertising time that is not sold at the Upfronts held each May is sold in the 'scatter market.'" DISH contends that "CBS and other broadcast networks sell advertising time on a 'CPM,' or cost per thousand impressions, basis." DISH asserts that, in response to its document request Nos. 1, 3-7 (Fifth Request for Production), CBS produced only the presentations it made to advertisers at the Upfronts from 2009 through 2013, which is insufficient to assist DISH in examining CBS's claims of harm to advertising sales. DISH contends that

> CBS's Upfront agreements from the past five television seasons will be probative of whether PTAT and AutoHop have had any actual impact on CBS's efforts to sell advertising time since the time that the features were released in 2012. The same is true of CBS's scatter market rates, sales volumes, and revenues. CBS's detailed advertising sales results from the 2013 Upfronts, and the average CPM that advertisers agreed to pay for the 2013-2014 television season, bear directly on CBS's allegation that because of PTAT and AutoHop, "advertisers will not pay, or will pay substantially less, to place their advertisements within and around CBS programming.

DISH maintains that it "is entitled to discovery into the factors bearing on CBS's advertising revenues," to test CBS's allegation that PTAT and Autohop will undermine those revenues. CBS provided only general information about its overall business, but since CBS's copyright claim is asserted with respect to each copyrighted work, damages must be ascertained with respect to each specific work. DISH is unable to challenge the allegation that advertisers will not pay or pay substantially less to place their advertisements within and around CBS programming, without knowing what advertisers actually paid to place their advertisements within and around CBS programs. DISH asserts that is why CBS's results at the Upfronts and in the scatter market, as well as documents discussing those results are relevant to CBS's

allegations of harm to advertising sales and should be produced.

DISH contends that CBS should produce documents on alternative advertising. According to DISH, the sale of 30-second advertising spots within program breaks is not the only advertising model for a broadcaster to earn advertising revenue, because advertising alternatives exist, including "product placement" and "embedded advertising." CBS asserted that DISH's use of the PTAT and AutoHop features is not fair use. DISH contends that in determining fair use, "the effect of the use upon the potential market for or value of the copyright work" is considered. For that reason DISH seeks documents analyzing alternative advertising revenue opportunities in its document request Nos. 19-21 (Third Request for Production). CBS agreed to produce only "studies of alternative advertising models," but refuses to produce "business plans, projections, reports, or memoranda on product placement or embedded advertising." According to DISH,

> CBS's ability to make up any claimed decrease through "product placement" and "embedded advertising," in particular, and "alternative advertising models," in general, which would not be affected by AutoHop use, undercuts CBS's claim that PTAT and AutoHop will harm the market for its primetime programming—and indeed, "undermine the economic foundation of free television." Moreover, DISH may use these documents to test CBS's assertion that the 30-second spot is its primary revenue source . . . and an essential element of its agreement with DISH.

DISH asserts that "CBS put the distribution of its primetime programming through non-linear distribution platforms squarely at issue," claiming that those platforms are "directly undercut" by PTAT and AutoHop. To test CBS's allegations of harm and the impact of PTAT and AutoHop, DISH requested analyses of Internet television viewing habits and consumer usage of alternative distribution platforms in its document request Nos. 15 (Fifth Request for Production) and 1 (Eighth Request for Production). CBS refused to produce these documents "on grounds that it already produced 'reports' analyzing the Internet-based distribution and VOD

3

[video-on-demand] 'markets.'" DISH contends that its requests do not seek analyses of markets; rather, they seek studies and analyses of Internet television viewing habits and research into consumer usage of alternative television viewing platforms. According to DISH,

> [h]ow consumers watch television on the Internet and use alternative television viewing platforms—as compared to how consumers use PTAT and AutoHop—bear directly on CBS's claim that PTAT and AutoHop compete with and will thus harm Internet-based distribution platforms and VOD. If, for example, consumers watching television on the Internet are generally "cord-cutters," without any cable or satellite television service, that undermines CBS's claim that DISH's DVR features will somehow lure consumers away from CBS.com and similar websites. In addition, if only those consumers most amenable to watching advertisements will use CBS.com as a platform to watch television, that undercuts CBS's argument that the AutoHop feature will lure those viewers away from CBS.com. The manner in which consumers use alternative television viewing platforms bears directly on whether those platforms compete with DVR [digital video recorder] usage—including DVR features such as PTAT and AutoHop. Indeed, CBS runs a "Television City" consumer research operation, that operates 365 days a year . . . and must have studies and analyses of the requested viewing and usage habits.

DISH maintains that CBS should produce details on its distribution channels because, "[t]o assess CBS's claims of harm to its Internet-based distribution, DISH needs to know which CBS primetime programs were offered through which particular platform and the time windows in which those programs were offered." DISH asserts that the networks claim that they calibrated carefully their strategies about which shows they offer on which platforms in which time frames, known as "windowing." With respect to DISH's document request No. 1 (Third Request for Production), CBS produced only a list of CBS's current season primetime titles offered on CBS.com, "CAN" and "EST," without further detail, including a definition of "CAN" and "EST." However, DISH contends, CBS should produce a list of all CBS primetime programs offered through Internet-based distribution platforms, specifying the particular platform and the timeframe for each offering. Similarly, DISH's interrogatory No. 9 (Second Set of Interrogatories) seeks information on CBS's licensing of the copyrighted works at issue in

this action to Internet-based distributors and the terms of those licenses, which is relevant to CBS's claim that PTAT and AutoHop compete with and "directly undercut" Internet-based distribution platforms.

DISH contends that CBS should produce details of its distribution revenue categories, in response to document request No. 3 (Third Request for Production). CBS [**REDACTED**] did not produce information sufficient to show its Internet revenues from advertising, subscription, impulse-buying, and any other category of revenue. DISH asserts that CBS's Internet-based distribution revenue should be broken down by category so that DISH can understand the sources that contribute to it and challenge the claim that PTAT and AutoHop will have a negative impact on those revenues.

DISH contends that its document request No. 4 (Eighth Request for Production) seeks documents tracking viewership of CBS programming on VOD platforms from January 2007 to the present to challenge CBS's claim that PTAT and AutoHop compete with and harm VOD distribution. CBS should also respond to DISH's document request No. 2 (Eighth Request for Production), seeking documents discussing CBS's goal and plan to move as much DVR viewing to VOD. Although CBS agreed to produce "general documents on its 'goal' to move consumers to VOD," it refused to provide any specific "plans" in furtherance of that goal.

DISH also seeks documents on consumer recording and commercial-skipping devices and its studies and analyses of VCR (videocassette recorder) and DVR recording, storage and playback capabilities, as requested in its document request Nos. 9 and 17 (Third Request for Production). DISH asserts that whether CBS attempted to restrict television recording and commercial-skipping devices similar to PTAT and AutoHop is relevant to CBS's claims of harm from PTAT and AutoHop, and "DISH is entitled to discovery into which aspects of home

5

recording devices CBS believes are harmful."

DISH seeks to include Koondel, CBS's chief corporate licensing officer, as an ESI custodian because documents produced by CBS from other custodians demonstrate that Koondel possesses relevant and responsive documents on CBS's strategy with respect to Internet-based distribution and VOD. [**REDACTED**]

DISH contends "[t]he Retransmission Agreement, which authorizes DISH to retransmit the signal for CBS broadcast network programming, was negotiated at the same time as agreements for carriages of various cable networks owned by CBS, including Showtime." According to DISH, CBS redacted improperly what it considers to be "discussions of its cable properties" from documents relating to the parties' negotiation of the Retransmission Agreement, asserting they are irrelevant. However, DISH contends, the redactions make it impossible to decipher the documents and the negotiations between DISH and CBS over the Retransmission Agreement, which are the basis of CBS's fraud claim and must be put in context.

***CBS's Contentions***

CBS contends it produced sufficient information on its advertising revenue, namely net primetime advertising revenue for broadcast television for the period 2008 to 2013. According to CBS, concerning DISH's document request No. 1 (Fifth Request for Production), "[n]ot only are the Upfront agreements highly commercially sensitive and proprietary, but the burden of producing these agreements far outweighs any marginal relevance they may have to the litigation." CBS contends that "actual revenue results, which CBS has produced, are the true measure of advertising sales," and "DISH will gain no insight into the effect that PTAT and AutoHop have had on CBS's advertising revenue during the Upfronts by reviewing a substantial number of advertising contracts with third parties." CBS asserts that, in connection with DISH's

6

different request, document request No. 2 (Fifth Request for Production), it "has agreed to conduct a reasonable search for responsive documents, in electronic or hard copy form, for references to PTAT and AutoHop in connection with the 2013 Upfronts," and "[t]hat request is a more efficient and practical way for DISH to assess the impact of PTAT and AutoHop on CBS's advertising revenue than asking CBS to produce a substantial number of highly commercially sensitive and proprietary advertising contracts with third parties." Concerning the remaining requests in DISH's document request Nos. 3-7 (Fifth Request for Production), CBS contends, "[t]he most practical and reasonable way for DISH to test whether CBS's advertising revenue has been affected by PTAT and AutoHop is to analyze CBS's year-end advertising revenue, which reflects actual revenue earned," which CBS already produced.

CBS contends that it will produce documents on alternative advertising, "[e]ven though CBS disputes the relevancy of documents about alternative advertising," and it "has been working diligently to try and reach a compromise with DISH and avoid burdening the Court with this dispute." [**REDACTED**] DISH's motion with respect to DISH's document request Nos. 19-21 (Third Request for Production), is moot.

CBS asserts it has produced information on Internet television viewing habits and alternative television viewing platforms, and it "agrees to conduct additional reasonable searches for responsive documents." Thus, with respect to DISH's document request No. 15 (Fifth Request for Production), and DISH's document request No. 1 (Eighth Request for Production ), "this Court need not intervene." CBS also contends that it "will supplement its list of primetime shows," pursuant to DISH's document request No. 1 (Third Request for Production ), making this issue moot.

With respect to DISH's interrogatory No. 9 (Second Set of Interrogatories), CBS asserts

7

it is unduly burdensome. CBS contends that it agreed to produce its Internet license agreements with third-party licensees subject to consent from those third parties, which may include redactions, and these license agreements contain the information requested by the interrogatory. Given that Rule 33(d) of Federal Rules of Civil Procedure and Local Civil Rule 33.3 of this court permit response by a more practical and efficient means, producing the Internet license agreements is warranted. CBS is working to produce more agreements; thus, the motion with respect to interrogatory No. 9 (Second Set of Interrogatories) warrants denial.

     CBS contends it produced the requested revenue for primetime programing on Internet-based platforms for the years 2008-2012, in the way they are kept in the usual course of business, in response to DISH's document request No. 3 (Third Request for Production). Thus, CBS asserts, this issue is moot. Moreover, CBS will produce additional documents tracking viewership on VOD platforms dating back to 2010, in response to DISH's document request No. 4 (Eighth Request for Production ), and this issue is moot.

     CBS asserts that DISH's document request No. 9 (Third Request for Production), seeking evidence of actions CBS has taken against other unauthorized television technologies is irrelevant to this action because it concerns devices other than PTAT and AutoHop. However, notwithstanding that the documents sought are irrelevant, CBS proposed a compromise when it identified nine publicly filed lawsuits involving unauthorized retransmission services and devices used for commercial-skipping or substituted commercials, but DISH rejected it.

     Concerning documents about DVR and VCR recording, storage and playback capabilities, sought in DISH's document request No. 17 (Third Request for Production), they have no bearing on the issues in this litigation, as no connection exists "between the commercial-skipping technology available in the Hopper DVR and the general recording, storage, and

playback capabilities of VCRs." Moreover, the request is overly broad. CBS contends it has agreed to add Koondel as an ESI custodian and that request is moot.

CBS maintains that its discussions of its cable properties are irrelevant to the litigation and should not be unredacted. According to CBS, "[b]ecause the PTAT and AutoHop services relate solely to CBS's broadcast business, only the Retransmission Agreement—and not the contract covering the cable properties—is relevant to this litigation."

*DISH's Reply*

DISH contends that CBS's generalized advertising revenue production is insufficient to test its "sweeping allegations of harm to its advertising sales and revenues," without obtaining detailed discovery on CBS's advertising sales. CBS's argument that "the price of its Upfronts agreements 'may be reflective of economic market factors entirely unrelated to PTAT or AutoHop,'" goes to the weight of the evidence and not to its admissibility or "discoverability." CBS's sole objection to interrogatory No. 9 (Second Set of Interrogatories) is that it is unduly burdensome, but that is not the reason to refuse to respond to it. DISH should not be forced to wait any longer for CBS's production. DISH asserts that CBS's contention that this case is about PTAT and AutoHop and not other devices is wrong because "PTAT and AutoHop are the latest evolution of longstanding technologies—starting with the VCR, and evolving to today's DVRs," and the impact of similar technologies on the market for CBS's primetime programming is relevant to CBS's allegations of harm from PTAT and AutoHop. CBS mischaracterized what DISH's document request Nos. 9 and 17 (Third Request for Production) seek. CBS should produce all documents discussing its goal and plan to move DVR viewing to VOD, as it has agreed to do originally. Moreover, CBS's heavy redactions of responsive documents are improper because "relevance is no basis for redacting otherwise responsive documents." DISH

9

asserts that the other aspects of its motion are not moot because CBS "avoids actually agreeing to produce the requested documents."

*Legal Standard*

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.
>
> Fed. R. Civ. P. 37(a)(1).
>
> Upon any motion or application involving discovery or disclosure requests or responses under Fed. R. Civ. P. 37, the moving party shall specify and quote or set forth verbatim in the motion papers each discovery request and response to which the motion or application is addressed. The motion or application shall also set forth the grounds upon which the moving party is entitled to prevail as to each request and response.
>
> Local Civil Rule 37.1.

"[M]otions to compel under Fed. R. Civ. P. 37 . . . are entrusted to the sound discretion of the district court." United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000).

*Application of Legal Standard*

Procedural Deficiencies

DISH's motion is procedurally deficient because it does not contain a certification that it has in good faith conferred or attempted to confer with CBS in an effort to obtain discovery

without court intervention, as required by Rule 37(a)(1) of the Federal Rules of Civil Procedure. Although DISH submitted exhibits demonstrating letters exchanged between the parties in connection with various discovery requests, such letters are not contemplated by Rule 37, and they place an unnecessary burden on the Court to ascertain what, if any, efforts have been made by DISH to confer or attempt to confer with CBS to resolve the discovery issues raised in this motion without court intervention. However, the Court has reviewed the parties' submissions on the motion, including discovery-related communications between the parties. Notwithstanding the procedural deficiencies and to save time and resources in accordance with Rule 1 of the Federal Rule of Civil Procedure, the Court will analyze the motion on the merits.

> Details on CBS's Advertising Sales: Document Request Nos. 1, 3, 4, 5, 6, and 7 (Fifth Request for Production)

CBS's contention that, with respect to DISH's document request No. 1 (Fifth Request for Production), the "actual revenue results, which CBS has produced, are the true measure of advertising sales," and they should be sufficient for CBS "to assess the impact of PTAT and AutoHop on CBS's advertising revenue" rather "than asking CBS to produce a substantial number of highly commercially sensitive and proprietary advertising contracts with third parties," is meritless. DISH's document request No. 1 (Fifth Request for Production) seeks relevant documents and is limited in scope to "the last five television seasons." CBS's opinion that "[t]he most practical and reasonable way for DISH to test whether CBS's advertising revenue has been affected by PTAT and AutoHop is to analyze CBS's year-end advertising revenue," is of no consequence and does not form a proper ground for objecting to DISH's request. The parties entered into a confidentiality agreement, and CBS failed to explain the basis for its concern for producing "highly commercially sensitive and proprietary advertising

11

contracts with third parties." Accordingly, CBS must produce documents in response to DISH's document request No. 1 (Fifth Request for Production).

Similarly, CBS's argument that DISH mischaracterized Upfronts and scatter market [**REDACTED**] is meritless because that is, <u>inter alia,</u> what DISH seeks to ascertain by its document request Nos. 3-7 (Fifth Request for Production), and it is not a proper basis for objection. Thus, CBS must produce documents responsive to DISH's document request Nos. 3-7 (Fifth Request for Production).

<u>Documents on Alternative Advertising: Document Request Nos. 19, 20 and 21 (Third Request for Production)</u>

Despite disputing the relevancy of DISH's document request Nos. 19-21 (Third Request for Documents), CBS produced some responsive documents. This production effectively waived CBS's relevancy objection because objecting and producing at the same time is inherently contradictory. Documents are either relevant or not, and only relevant documents need be produced. <u>See</u> Fed. R. Civ. P. 26(b)(1). Moreover, CBS's argument that it "had been working diligently to try and reach a compromise with DISH and avoid burdening the Court" is disingenuous, given that DISH had made the instant motion and contended in its reply that, despite CBS's claims in the opposition to the motion, no further documents have been produced. Thus, CBS must produce documents responsive to DISH's document request Nos. 19, 20 and 21 (Third Request for Production).

<u>Analyses of Internet Television Viewing Habits and Consumer Usage of Alternative Distribution Platforms: Document Request No. 15 (Fifth Request for Production) and Document Request No. 1 (Eighth Request for Production)</u>

Although CBS contends that it agreed to produce documents responsive to DISH's document request No. 15 (Fifth Request for Production) and document request No. 1 (Eighth Request for Production), and this issue is moot, DISH contends in its reply that no such

12

agreement exists. Thus, CBS must produce documents responsive to DISH's document request No. 15 (Fifth Request for Production) and document request No. 1 (Eighth Request for Production).

<ins>Details on CBS's Distribution Channels: Document Request No. 1 (Third Request for Production) and Interrogatory No. 9 ( Second Set of Interrogatories)</ins>

CBS's contention that DISH's document request No.1 (Third Request for Production) is moot because CBS "will supplement its list" is meritless because in its reply, DISH contends that no such supplement was made. Accordingly, CBS must produce documents responsive to DISH's document request No. 1 (Third Request for Production).

Concerning DISH's Interrogatory No. 9 (Second Set of Interrogatories), CBS contends it is unduly burdensome, but, other than asserting that it: (i) "would need to identify" the 27 shows that aired on CBS each week during 2013-2014 primetime season; and (ii) "would be required to provide each and every license term for each and every episode of each and every show," it does not explain how or why doing those things is overly burdensome. Moreover, CBS invokes, for the first time in its opposition to DISH's motion, Local Civil Rule 33.3, claiming that it should be permitted to respond to DISH's interrogatory No. 9 (Second Set of Interrogatories) "by a more practical and efficient means," which is "producing the Internet agreements." However, CBS waived this objection by not raising it until its opposition to DISH's motion. Additionally, DISH contends in its reply that CBS has not produced such agreements. Having failed to convince the Court that responding to this interrogatory is overly burdensome, CBS must respond to DISH's interrogatory No. 9 (Second Set of Interrogatories).

<ins>Details of CBS's Distribution Revenue Categories: Document Request No. 3 (Third Request for Production)</ins>

CBS's contention that DISH's document request No. 3 (Third Request for Production ) is

moot because CBS "has provided its advertising revenue from Internet-based platforms and will provide the subscription revenue that DISH seeks" is meritless because, in its reply, DISH contends no such documents were provided. Thus, CBS must provide documents responsive to DISH's document request No. 3 (Third Request for Production).

> Documents Tracking Viewership on VOD Platforms: Document Request No. 4 (Eighth Request for Documents)

CBS contends that DISH's document request No. 4 (Eighth Request for Production) is moot because "CBS will produce these documents." However, DISH, in its reply, contends that no such production occurred. Accordingly, CBS must produce documents responsive to DISH's document request No. 4 (Eighth Request for Production).

> CBS's Plans to Move DVR Viewing to VOD: Document Request No. 2 (Eighth Request for Production

CBS contends DISH's document request No. 2 (Eighth Request for Production ) "is incredibly overbroad" without any explanation. Having failed to explain how or why this request is "incredibly overbroad," CBS did not meet its burden of showing that sustaining its objection is warranted. Thus, CBS must produce DISH's document request No. 2 (Eighth Request for Production).

> Documents on Consumer Recording and Commercial-skipping Devices and CBS's Studies and Analyses of VCR and DVR Recordings, Storage and Playback Capabilities: Document Request Nos. 9 and 17 (Third Request for Production)

CBS objects that DISH's document request Nos. 9 and 17 (Third Request for Production) seek "highly proprietary and confidential retransmission agreements." However, CBS does not explain why such an objection is proper in light of the parties' confidentiality agreement. Since DISH seeks relevant documents for which no privilege is asserted by CBS, CBS must respond to DISH's document request Nos. 9 and 17 (Third Request for Production).

Designating Koondel as an ESI Custodian

CBS contends that DISH's request to designate Koondel as an ESI custodian is moot because CBS agreed to add him during the parties' May 2, 2014 meet-and-confer conference. DISH confirmed in its reply that no dispute exists about this issue any longer. Therefore, DISH's request to compel CBS to designate Koonder as an ESI custodian is moot.

Compelling CBS to Remove Redactions from Retransmission Agreement and Related Documents

DISH makes no citation to binding authority for its proposition that "relevance is no basis for redacting otherwise responsive documents." On the contrary, "[r]edactions of documents are commonplace where sensitive and irrelevant materials are mixed with highly relevant information." The New York Times Co. v. Gonzales, 459 F.3d 160, 170 (2d Cir. 2006). Given that the parties disagree about whether the material redacted is relevant, CBS must produce the unredacted documents to the Court for an in camera review.

***Conclusion***

For the foregoing reasons, DISH's motion to compel, Docket Entry No. 256, is granted. It is ORDERED that:

(A)   on or before September 29, 2014, CBS must submit to the Court, for an in camera review, unredacted documents it produced to DISH; and \

(B)   on or before October 1, 2014, CBS must provide responses as described above.

Dated:  New York, New York
       November 3, 2014

SO ORDERED:

_____
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

15